UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
PAUL PHILLIPS,

Plaintiff,

   -against-                                  **COMPLAINT**

THE CITY OF NEW YORK and NEW YORK CITY     Index No.
POLICE DEPARTMENT MEMBERS JOHN AND JANE
DOES 1-10,

Defendants.

------------------------------------------------------------------------X

Plaintiff PAUL PHILLIPS, by his attorneys, Gideon Orion Oliver and COHEN & GREEN P.L.L.C., hereby complains of Defendants as follows:

<u>**PRELIMINARY STATEMENT**</u>

1.     On July 3, 2020, Mr. Phillips was falsely arrested and held by New York City Police Department ("NYPD") members and New York City Department of Correction ("DOC") officers in connection with a non-existent warrant and held against his will on Riker's Island for four days, without access to critical medication, at the height of the COVID-19 pandemic in New York City.

2.     Plaintiff now seeks redress for Defendants' violations of his rights under the United States Constitution and federal laws as well as the New York State Constitution and state laws.

<u>**JURISDICTION AND VENUE**</u>

3.     Plaintiff brings this action pursuant to 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution, New York law, and the New York State Constitution.

1

4.      This Court has jurisdiction over Plaintiff's federal civil rights claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, and over Plaintiff's New York law-based claims under 28 U.S.C. § 1367.

5.      Venue is proper pursuant to 28 U.S.C. § 1391, *et seq.,* in the Southern District of New York, where Defendant City of New York has offices and the majority of the actions complained of herein occurred.

## GENERAL MUNICIPAL LAW COMPLIANCE

6.      Plaintiff timely served a Notice of Claim on the municipal Defendant on or about September 28, 2020, and otherwise complied with all conditions precedent to commencing an action under New York law.

7.      At least thirty days have elapsed since service of Plaintiff's Notice of Claim and adjustment and payment thereof has been neglected or refused.

8.      Plaintiff has initiated this action within one year and ninety days of the accrual of Plaintiff's claims pursuant to New York State Law.

## PARTIES

9.      At all times mentioned herein, Plaintiff Paul Phillips has been a resident of Schenectady County in the State of New York.

10.      At all relevant times mentioned herein, Defendant City of New York ("New York City" or "NYC") was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the NYPD and DOC and their employees.

11.     At all times hereinafter mentioned, Defendants NYPD Members John and/or Jane Doe 1 was a NYPD member, and Defendants DOC Officers Does 2-10, were NYPD members or DOC officers, who violated Plaintiff's rights, as set forth and described more fully below.

12.     At all times hereinafter mentioned, those non-municipal Defendants (the "Individual Defendants") were employed by the City of New York working at the NYPD or DOC.

13.     At all times hereinafter mentioned, Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

14.     Each and all of the acts and omissions of the Individual Defendants alleged herein occurred while said Individual Defendants were acting within the scope of their employment by the Defendant City.

15.     The Individual Defendants were duly appointed and acting officers, servants, employees, and agents of Defendant City who were acting for, and on behalf of, and with the power and authority vested in them by Defendant City, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

16.     The Individual Defendants were each and all responsible, in whole and/or in part, for the planning for and/or creation, promulgation, implementation, and/or enforcement of the unconstitutional policies, practices and/or customs complained of herein, and/or condoned, acquiesced in, adopted, and/or approved of the same, through their acts and/or failures to act, as set forth more fully below.

17.     At all times relevant herein, and as set forth more fully below, the Individual

Defendants' actions and/or failures to act were malicious, intentional, knowing, and/or with a

deliberate indifference to or a reckless regard for the natural and probable consequences of their

acts and/or omissions.

18.     Although they were aware of the conduct, present for it, and knew or should have

known it was unconstitutional, at no time did any of the Individual Defendants, or any other

member of the NYPD or DOC, take any steps to intervene in, prevent, or otherwise limit the

unconstitutional conduct engaged in by their fellow officers.

## STATEMENT OF FACTS

19.     On around the morning of July 3, 2020, Plaintiff PAUL PHILLIPS was pulled

over by a New York State Trooper in Guilderland, New York in connection with an alleged

traffic infraction.

20.     After pulling Mr. Phillips over and obtaining and checking his driver's license as

well as the proof of registration and insurance, the NYS Trooper directed Mr. Phillips to get out

of his car, which Mr. Phillips did.

21.     The NYS Trooper told Mr. Phillips in sum that Mr. Phillips had a warrant from

New York City in the 1980's.

22.     On July 3, 2020, there was no active warrant for Mr. Phillips' arrest from the

1980's or any other time.

23.     The warrant in question had in fact been vacated decades earlier.

24.     Upon information and belief, reviewing Mr. Phillips' criminal history-related

information, it was or should have been clear to the NYS Trooper that, on July 3, 2020, there was

no active warrant for Mr. Phillips' arrest from the 1980's or any other time.

25.     Mr. Phillips told the NYS Trooper in substance that he was certain had no warrants and that this was a mistake, and that he had completed parole successfully and had full warrant checks performed on his background, in the course of which there was no mention of any such warrant.

26.     Nevertheless, the NYS Trooper placed Mr. Phillips into handcuffs and under arrest.

27.     The NYS Trooper then transported Mr. Phillips to a NYS Trooper Barracks.

28.     Mr. Phillips' fiancée met them at the NYS Trooper Barracks.

29.     There, Mr. Phillips' fiancée provided NYS Troopers with Mr. Phillips' medications for psychiatric issues, opioid dependency, and nerve pain.

30.     Upon information and belief, NYS Troopers verified that the medications Mr. Phillips' fiancée brought were in fact his prescribed medications.

31.     After some time, NYS Troopers transported Mr. Phillips from the NYS Trooper Barracks to Poughkeepsie, New York, where he was transferred to another NYS Trooper car, and eventually transported down to the New York City Police Department ("NYPD") Bronx Warrant Division.

32.     At the NYPD Bronx Warrant Division, NYS Troopers turned Mr. Phillips over to the DEFENDANT JOHN DOE NO. 1, who processed Mr. Phillips' arrest at the NYPD Bronx Warrant Division.

33.     Upon information and belief, reviewing Mr. Phillips' criminal history-related information, it was or should have been clear to Defendant Doe 1 that, on July 3, 2020, there was no active warrant for Mr. Phillips' arrest from the 1980's or any other time.

34.    Defendant Doe 1 told Mr. Phillips in substance that this was a mistake and Mr. Phillips should not be there.

35.    Mr. Phillips responded in sum that he had been saying that the whole time he had been under arrest.

36.    Defendant Doe 1 replied to Mr. Phillips in substance that he would try to contact the Office of the Bronx County District Attorney to try to get him released.

37.    Later, Defendant Doe 1 told Mr. Philips he could not and that Mr. Phillips would have to go to Riker's Island to be processed.

38.    Rather than promptly ascertaining whether the decades-old warrant was still active, and, if so, delivering Mr. Phillips to the New York County pre-arraignment system "without unnecessary delay" as is required under New York Criminal Procedure Law ("CPL") § 140.20(1), Defendant Doe 1 instead brought Mr. Phillips to the New York City Department of Correction ("DOC") facility at Riker's Island, where he remained for four days, until July 7, 2020.

39.    After some time in Defendant Doe 1's and NYPD custody at the NYPD Bronx Warrant Division, Defendant Doe 1 transported Mr. Phillips from that location to Riker's Island.

40.    Upon information and belief, Defendant Doe 1 had Mr. Phillips' medications with him when he transported Mr. Phillips to Riker's Island.

41.    Upon information and belief, Defendant Doe 1 knew, or should have known, that Mr. Phillips required medical attention and access to his prescription medications.

42.    Once at Riker's Island, Defendant Doe 1 turned Mr. Phillips over to custody of Defendant John or Jane Doe 2, an employee of the New York City Department of Correction ("DOC").

43.     Upon information and belief, based on Mr. Phillips' criminal history-related information, it was or should have been clear to Defendant Doe 2 that, in July of 2020, there was no active warrant for Mr. Phillips' arrest from the 1980's or any other time.

44.     Nevertheless, Mr. Phillips remained in custody against his will at Riker's Island for four days, between July 3, 2020 and July 7, 2020.

45.     During Mr. Phillips's four-day detention at Riker's Island, Mr. Phillips' fiancée called and repeatedly advocated with the Office of the Bronx County District Attorney for Mr. Phillips' release.

46.     During Mr. Phillips's four-day detention at Riker's Island, based on Mr. Phillips' criminal history-related information, Defendants Does 2-10 – DOC employees who were involved in detaining Mr. Phillips – knew or should have known that, in July of 2020, there was no active warrant for Mr. Phillips' arrest from the 1980's or any other time.

47.     During Mr. Phillips's four-day detention at Riker's Island, both Mr. Phillips and his fiancée told DOC employees among Defendants Does 2-10 that Mr. Phillips needed access to his prescription medications that he needed to take to treat his Bipolar Disorder, Opioid addiction, and Post-Traumatic Stress Disorder.

48.     During Mr. Phillips's four-day detention at Riker's Island, both Mr. Phillips and his fiancée told DOC employees among Defendants Does 2-10 that there was no warrant for Mr. Phillips' arrest.

49.     On July 6, 2020, an attorney from the Legal Aid Society spoke with a Doe Defendant at the Anna M. Kross Center (AMKC) to determine how and why Mr. Phillips had been held over for days without release or arraignment and was informed in substance that Mr. Phillips was being held on a warrant for an old case and that DOC could not bring him to court

7

because he did not have a court date or appearance scheduled and that in sum the courts were not open.

50.    During Mr. Phillips's four-day detention at Riker's Island, Defendants Does 2-10 denied Mr. Phillips access to his prescription medications that he needed to take to treat his Bipolar Disorder, Opioid addiction, and Post-Traumatic Stress Disorder, causing him to suffer Opioid withdrawal as well as severe Bipolar episodes and extreme and enduring pain, panic, and anxiety.

51.    Mr. Phillips was eventually released from Riker's Island on July 7, 2020, without any paperwork or other information as to why he had been held for four days.

52.    When Mr. Phillips was finally released from Riker's Island, it was too late for him to get home because the trains and buses had stopped running, Phillips had no money, phone, or wallet, and his fiancée had to arrange for an Uber and hotel room for him.

53.    Since his release, Mr. Phillips has continued to suffer from emotional and psychiatric injuries as a result of his arrest and four-day unlawful detention without access to his necessary medication at Riker's Island.

54.     For example, Mr. Phillips' pain and anxiety levels have been greatly increased and exacerbated, and with respect to his post-traumatic stress disorder and anxiety, it feels to him as though he has back-slided a great deal after around a decade of progress.

55.    Mr. Phillips has feared leaving his home at all some recent times.

56.    Mr. Phillips worries that, if he has another encounter with law enforcement and is stopped, he will again be incarcerated.

57.    When Mr. Phillips recently saw a police car while out driving, he felt like he was going to have a heart attack.

58.     Additionally, it has been necessary for Mr. Phillips to increase his medications, including in order to sleep at night in light of night horrors that have dogged him and to help him cope with physical pain.

59.     Beyond that, it has been necessary for Mr. Phillips to increase the frequency of his counselling sessions and to seek other ongoing medical and psychiatric care.

## FIRST CLAIM FOR RELIEF

**Unlawful Seizure / False Arrest**
***Pursuant to 42 U.S.C. § 1983 for the Individual Defendants' Violations of Plaintiffs' Rights Under the Fourth and Fourteenth Amendments to the United States Constitution***

60.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

61.     The Individual Defendants did not have probable cause to seize, detain, or arrest Plaintiff.

62.     The Individual Defendants seized Plaintiff without a written judicial warrant authorizing them to do so.

63.     The Individual Defendants' seizure of Plaintiff was without privilege or lawful justification.

64.     Plaintiff did not consent and was conscious of Plaintiff's confinement by the Individual Defendants.

65.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of Plaintiff's federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

9

66.     Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## SECOND CLAIM FOR RELIEF

### Excessive Detention
*Pursuant to 42 U.S.C. § 1983 for the Individual Defendants' Violations of Plaintiff's Rights Protected Under the Fourth and Fourteenth Amendments to the United States Constitution*

67.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

68.     After Mr. Phillips' warrantless arrest, Defendants were obligated to ensure that a judge made a *prompt* determination that there was probable cause to continue to detain him.

69.     Under the United States Constitution, judicial determinations of probable cause within 48 hours are presumptively reasonable. *See, e.g., Cty. Of Riverside v. McLaughlin*, 500 U.S. 56 (1991).

70.     After Mr. Phillips' warrantless arrest, the Individual Defendants unreasonably delayed the prompt judicial probable cause determination Mr. Phillips was entitled to, detaining him for four days – an excessive and unreasonably prolonged period of time that doubled the presumptively reasonable pre-arraignment detention period – without ever ensuring that he was presented to a judge.

71.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of Plaintiff's federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

72.     Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## THIRD CLAIM FOR RELIEF

**Due Process - Indifference to Plaintiff's Serious Medical Conditions**
*Pursuant to 42 U.S.C. § 1983 for the Individual Defendants' Violations of Plaintiff's Rights Protected Under the Fourteenth Amendment to the United States Constitution*

206.    Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

207.    The Individual Defendants knew or should have known that Mr. Phillips suffered from serious medical conditions, including, but not limited to, Bipolar Disorder, Opioid addiction, and PTSD, that required prescription medication and medical treatment during the four days he was in the custody of the Defendants.

208.    The Individual Defendants knew or should have known that a substantial risk of serious harm to Mr. Phillips existed unless he received timely and adequate prescription medication and access to medical attention.

209.    The Individual Defendants deprived Mr. Phillips of his rights to be free from deliberate indifference to his serious medical conditions when they repeatedly ignored his requests for medication and medical attention and when they failed to provide him with timely and adequate medical care and attention.

210.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of Plaintiff's federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

211.    Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## FOURTH CLAIM FOR RELIEF

### Violations of New York State Law
### *Pursuant to the New York State Constitution and New York State Law*

212.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

### *Respondeat Superior* **Liability**

213.    The conduct of the police officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as police officials, and/or while they were acting as agents and employees of Defendant City, clothed with and/or invoking state power and/or authority, and, as a result, Defendant City is liable to the Plaintiff pursuant to the state common law doctrine of *respondeat superior*.

### Assault

214.    Defendants committed assault within the meaning of New York common law against Plaintiff by intentionally placing Plaintiff in fear of imminent harmful or offensive contact.

### Battery

215.    Defendants committed battery within the meaning of New York common law against Plaintiff by intentionally physically contacting Plaintiff without Plaintiff's consent.

### False Imprisonment

216.    By the actions described above, the police officials described above did falsely arrest and/or imprison Plaintiff within the meaning of New York common law without

reasonable or probable cause, illegally and without a written warrant, and without any right or authority to do so.

217.    Plaintiff was conscious of the confinement and it was without Plaintiff's consent.

**Unreasonable and Excessive Detention**

218.    Under New York's CPL 140.20(1), "[a] police officer, after performing without unnecessary delay the required preliminary police duties, must without unnecessary delay bring a person arrested without a warrant to a local criminal court for arraignment."

219.    The New York Court of Appeals has determined that, under the New York State Constitution and New York law, a delay of arraignment of more than 24 hours is presumptively unreasonable. *See People ex rel. Maxian v. Brown*, 77 NY2d 422 (1991).

220.    After Mr. Phillips' warrantless arrest, the Individual Defendants unreasonably delayed the prompt judicial probable cause determination Mr. Phillips was entitled to, detaining him for four days – an excessive and unreasonably prolonged period of time that quadrupled the presumptively reasonable pre-arraignment detention period – without ever ensuring that he was presented to a judge.

**Negligent Hiring, Training and Supervision**

221.    Upon information and belief, Defendant City negligently supervised, and trained the police officials described above.

**Violations of the New York State Constitution**

222.    Defendants, acting under color of law, violated Plaintiff's rights pursuant to Article I, §§ 6, 11, and 12 of the New York State Constitution.

223.    A damages remedy here is necessary to effectuate the purposes of Article I, §§ 6, 11, and 12 of the New York State Constitution, and appropriate to ensure full realizations of Plaintiff's rights under those sections.

224.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of Plaintiff's federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

225.    Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

## DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff demands judgment against the individual Defendants and the City of New York as follows:

i.     Actual and punitive damages against the individual Defendants in an amount to be determined at trial;

ii.    Actual damages in an amount to be determined at trial against the City of New York;

iii.   Statutory attorney's fees, disbursements, and costs of the action pursuant to, *inter alia,* 42 U.S.C. §1988 and New York common law; and

iv.    Such other relief as the Court deems just and proper.

Dated: New York, New York
       October 1, 2021

**GIDEON ORION OLIVER**

14

277 Broadway, Suite 1501
New York, NY  10007
t: 718-783-3682
f: 646-349-2914
Gideon@GideonLaw.com


**COHEN&GREEN P.L.L.C.**


By: _____
Elena L. Cohen
J. Remy Green
Jessica Massimi

1639 Centre Street, Suite 216
Ridgewood (Queens), NY 11385
    t: (929) 888-9480
    f: (929) 888-9457
    e: elena@femmelaw.com
       remy@femmelaw.com
       jessica@femmelaw.com