```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK

In re:                              :
                                        Docket #1:21-cv-08149-
PHILLIPS,                           : ALC-SLC

                    Plaintiff,      :

   - against -                      :

CITY OF NEW YORK, et al.,           : New York, New York
                                      August 22, 2022
                    Defendants.     :
                                      REMOTE INITIAL CASE
------------------------------------ : MANAGEMENT CONFERENCE

                    PROCEEDINGS BEFORE
                THE HONORABLE SARAH L. CAVE,
               UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          COHEN & GREEN P.L.L.C.
                        BY:  REMY GREEN, ESQ.
                        1639 Centre Street - Suite 216 11385
                        Ridgewood, New York 11207

                        MARYANNE K. KAISHIAN, ESQ.
                        65 Quincy St #1
                        Brooklyn, New York 11238

For Defendants:         NEW YORK CITY LAW DEPARTMENT
                        SPECIAL FEDERAL LITIGATION
                        BY:  MOSTAFA KHAIRY, ESQ.
                        100 Church Street, Room 3-215
                        New York, New York 10007



Transcription Service:  Carole Ludwig, Transcription Services
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Email:  Transcription420@aol.com

Proceedings conducted telephonically and recorded by
electronic sound recording;
Transcript produced by transcription service
```

## INDEX

### E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|
| None | | | | |

### E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|-----|-----|-----------|
| None | | | | |

```
 1                      PROCEEDINGS              3

 2              HONORABLE SARAH L. CAVE (THE COURT):  Good

 3   afternoon.  This is Magistrate Judge Cave.  We're here

 4   for a conference in Phillips vs. City of New York, case

 5   number 21-cv-8149.

 6              May I have the appearances starting with the

 7   plaintiff, please?

 8              MS. MARYANNE K. KAISHIAN:  Good afternoon.

 9   This is Maryanne K. Kaishian; I'm of counsel to Cohen &

10   Green P.L.L.C., here on behalf of Mr. Phillips.  And I

11   am joined also by Mx. Remy Green, also of Cohen & Green;

12   and by Maya Baker, our summer associate with our office.

13              THE COURT:  Okay.  Good afternoon.

14              MR. MOSTAFA KHAIRY:  Mostafa Khairy from the

15   Office of the Corporation Counsel here on behalf of

16   defendant City of New York.  Good afternoon, your Honor.

17              THE COURT:  Okay.  Good afternoon.  All right,

18   so we're here for the parties' Initial Case Management

19   Conference.  And I have the parties' report of their

20   Rule 26F conference and Proposed Case Management Plan.

21              So, Ms. Kaishian, as I understand it,

22   Mr. Phillips was arrested upstate and then was in

23   custody for, I think it was, four days at Rikers and

24   then released, is that right?

25              MS. KAISHIAN:  Yes, that's right, your Honor.
```

1

2  Approximately four days.  But Mr. Phillips was

3  transferred directly from NYPD custody to Department of

4  Corrections custody without seeing a judge, which is the

5  crux of the issue in this case, of course on top of his

6  actual damages here.

7          THE COURT:  Understood.  Okay.  And did he

8  suffer any physical injuries during his four days in

9  detention?

10         MS. KAISHIAN:  Yes, your Honor.  So

11 Mr. Phillips was in recovery, successful recovery for

12 substance use disorder during the time previous leading

13 up to his arrest and incarceration.  However, while he

14 was incarcerated in DOC custody, he did not receive the

15 medications that he desperately needed to remain

16 healthy, and so he did, unfortunately, enter into full-

17 blown opioid withdrawal and suffered significant

18 physical ramifications as a result.

19         THE COURT:  Okay.  All right.  And his release

20 on or around the fourth day came as a result of what

21 action?  Was there a court order for that, or just the

22 warden decided to release him, or what?

23         MS. KAISHIAN:  Yes, so Mr. Phillips was able to

24 contact his partner, who in turn was able to contact the

25 Legal Aid Society.  And so the Legal Aid Society was

```
 1                      PROCEEDINGS                      5
 2   able to get the Court to issue a cut slip for him
 3   effectively, that should not have been necessary because
 4   it was not something that should have needed to be
 5   ordered at that point, given the procedures that had
 6   happened previously.  However, because he had that
 7   outside advocacy happening, that was in fact the outcome
 8   for him.
 9            THE COURT:  Okay.  And that release was end of
10   story as far as any criminal proceedings with respect to
11   the arrest, or was there anything else?
12            MS. KAISHIAN:  That's all, your Honor, because
13   the bench warrant in this instance was a -- it was an
14   arrest warrant from the New York County Criminal Court,
15   but it should have been vacated.  It had been issued in
16   1989.  Mr. Phillips was subsequently arrested on other
17   matters 30 years ago at this point, and those cases were
18   all resolved.  So it was an error that the bench warrant
19   was active, but of course, again, the issue is that,
20   regardless of the status of the warrant, that's really
21   for a judge to decide, which is why the CPL has that
22   protection.
23            THE COURT:  Okay.  Understood.  Thank you for
24   that background.
25            Mr. Khairy, I can imagine you dispute some of
```

```
 1                          PROCEEDINGS                    6
 2   that.  Any other background you want to give me on the
 3   claims at this point?
 4            MR. KHAIRY:  This is Mostafa Khairy.  Your
 5   Honor, not much in this case is actually in dispute when
 6   it comes to plaintiff's false arrest and excess
 7   detention claim.  He was arrested upstate in New York on
 8   July 3rd.  He got pulled over for some sort of traffic
 9   infraction, as I understand it.  And when the trooper
10   received his license, the warrant popped from 1989,
11   which in the system still appeared active.  He was
12   brought to the NYPD detective squad which handles
13   upstate arrests for processing.  As I understand it, he
14   was then transferred to Rikers and held there until July
15   7th, when a -- I believe NYPD -- I'm not aware of the
16   cut slip, you know, the cut slip reference that
17   Ms. Kaishian just referenced -- but as I understand it
18   from his DOC file, NYPD Warrant Squad faxed over -- sent
19   a fax to DOC saying that this warrant was vacated by the
20   Court on July 7th, release him immediately.  And then he
21   was released within a couple of hours, as I understand
22   it.
23            There is a little bit of a dispute as to what -
24   - his deliberate indifference to medical needs claim.
25   You know, plaintiff claims that he didn't receive the
```

| | PROCEEDINGS | 7 |

necessary meds.  His DOC records indicate that he was

seen at the clinic, as well as I have other medical

records which have been provided to plaintiff from one

of his doctors where he admits to getting his meds, just

a different dosage or a lower dosage, I should say.  You

know, and as I previously indicated to plaintiff's

counsel, that doesn't necessarily sound in a

constitutional violation.  That's, if anything, an

alleged claim for medical malpractice.  That doesn't

necessarily rise to the level of deliberate

indifference, based on the case law.

THE COURT:  Okay.  Thank you.  That's helpful.

And have you had any settlement discussions?

I'm not asking you to tell me what they were

specifically, but has there been a demand made,

Ms. Kaishian?

MS. KAISHIAN:  Yes, there has, your Honor.

THE COURT:  Okay.  And, Mr. Khairy, where are

you in the process of responding to that?

MR. KHAIRY:  This is Mostafa Khairy.  We did

respond to it.  We also partook in planned mediation;

however, you know, both sides seemed to disagree on the

legal issues of this case as they pertain to each of the

claims.  So that's sort of why everything's sort of been

```
 1                        PROCEEDINGS                8
 2   on a standstill.
 3            THE COURT:  Okay.  All right.  I understand.
 4   Well, we can revisit that at some point.
 5            So, then, Ms. Kaishian, do you in fact have at
 6   least some of the medical records that Mr. Khairy was
 7   describing?
 8            MS. KAISHIAN:  I believe we have some of them.
 9   I don't believe they are complete at this point.  But
10   we've also shared with the defendant some information
11   from Mr. Phillips' doctors who are currently treating
12   him and who were treating him prior to his arrest, as
13   well.  So there has been an exchange of some of the
14   medical documentation here.
15            THE COURT:  Okay.  Great.  And then what other
16   types of documents do you need from the defendant?
17            MS. KAISHIAN:  So I think this is probably a
18   good time to raise an outstanding issue.  So it was not
19   raised at the 26F.  The plaintiff in this case had
20   signaled to defendants in multiple conversations with
21   Mr. Khairy that we might be amending to assert class-
22   wide claims.  We were not sure if this was something
23   that we were going to be able to do.  We're still
24   looking to ensure numerosity in order to assert those
25   claims.  We of course want to be accurate when we're
```

```
 1                      PROCEEDINGS                    9
 2  asserting these claims; however, based on our
 3  conversations at this point with defendant organizations
 4  and potential plaintiffs, it appears that we do -- you
 5  know, we do intend to assert those class-wide claims,
 6  which would require, of course, an amendment but also we
 7  are asking for Mr. Khairy -- I signaled this to him last
 8  week, admittedly quite late in the week, and Mr. Khairy
 9  was out of the office, so this remains unresolved for
10  that reason only, but we did ask for two weeks with a
11  specific request for any data or documentation that
12  defendants have regarding numerosity of these potential
13  plaintiffs in this claims.  But we really don't believe
14  and we know for sure Mr. Phillips is not the only person
15  who's been wrongfully, you know, in opposition to the
16  CPL 53070 has been directly delivered to Rikers Island
17  and other city jails in violation of the law.
18          THE COURT:  Okay.  On an old bench warrant like
19  he was or what's involved in --
20          MS. KAISHIAN:  So we're not --
21          THE COURT:  Okay.  Sorry.  Go ahead.
22          MS. KAISHIAN:  I apologize, your Honor.
23          THE COURT:  No, that's okay.  Go ahead.
24          MS. KAISHIAN:  So we have four potential --
25  essentially two large classes, which would be supreme
```

```
 1                      PROCEEDINGS              10
 2  court warrants and criminal court warrants.  And inside
 3  of those classes there would be claims where people were
 4  arrested for valid and invalid warrants.  So, regardless
 5  of the validity of the warrants, if the police
 6  department is flagging someone's name as having an
 7  active warrant, part of the reason he needs to go to
 8  court is because the judge is in the best position to
 9  determine whether the warrant is valid, what the status
10  of the case is and what needs to happen next.  So really
11  the validity is almost ancillary to the actual issue;
12  however, we do have those subclasses defined for
13  Mr. Khairy so that when we're doing a numerosity
14  evaluation, we can be in a better position to answer
15  that question directly.
16          THE COURT:  Okay.  And so the two weeks that
17  you asked for is -- was two weeks from now or two weeks
18  from some other point in time?
19          MS. KAISHIAN:  Two weeks from now.  But if the
20  timing is the only issue that Mr. Khairy identifies, of
21  course we'd be more than happy to set something else
22  down, you know, if two weeks is not enough time.
23          THE COURT:  Okay.  And so you need the data
24  from him about other potential claims, or you have that
25  already?
```

1

2          MS. KAISHIAN:  That's the data that we're

3   seeking from him.  Of course, we've also done our own

4   potential plaintiff outreach, so we know other cases do

5   exist.  But in terms of actual numerosity, we have

6   reason to believe it's dozens of people per year that

7   this is happening to, and so we want to see confirmation

8   before we make a claim like that officially.

9          THE COURT:  Understood.  Okay.  Mr. Khairy,

10   have you had a chance to reflect on the plaintiff's

11   request for more data?

12          MR. KHAIRY:  This is Mostafa Khairy.

13   Admittedly, I am not, you know, as I indicated to

14   Ms. Kaishian this morning, I was on vacation last week,

15   the end of last week, so I didn't see the email till

16   this morning when I had gone into the office and have

17   not had time to confer internally about sort of the next

18   steps.  However, I know at this point we would need to

19   see an amended Complaint before any sort of discovery or

20   statistics are released because as of right now I'm

21   still unclear what the actual Monell theory is.  I know

22   we have had discussions about this in the past; I know

23   the most substantive one occurred in April right before

24   the planned mediation.  However, whether or not they can

25   actually state a claim for a class action based on an

```
 1                          PROCEEDINGS                    12
 2    unconstitutional policy is a different story.  And I
 3    would first need to see an Amended Complaint before I
 4    know how to respond to it, because it's possible that we
 5    do end up moving to dismiss in lieu of, you know,
 6    actually proceeding to discovery at first.  As of right
 7    now there is no Monell claim. Plaintiff brought this
 8    original case with the City as a defendant under a
 9    respondeat theory, not a Monell one.  So I have to first
10    see the Monell claim before I'm in a better position to
11    partake in discovery or even respond to anything.
12            THE COURT:  Okay.  Understood.
13            Ms. Kaishian, where are you in drafting an
14    Amended Complaint for a hypothetical class?
15            MS. KAISHIAN:  We are certainly working on
16    that, of course.  We're hoping to have just the
17    statistics.  You know, assuming that -- I don't want to
18    sound naïve or overly optimistic about the DOC's
19    reporting requirements and the spreadsheet they're
20    keeping in terms of who is actually the team; however,
21    all we're really seeking is just a strict by-the-number.
22    You know, I'm certain that there must be some sort of
23    policy, whether it's adhered to or not, to track the
24    mechanisms by which people are being sent into these
25    jails and when they're leaving and why they're there.
```

1                              PROCEEDINGS                    13

2     That's really all that we're seeking at this point.

3              There is definitely a Monell claim that we've

4     spoken with Mr. Khairy about.  Moreover, he did indicate

5     during that substantive call he mentioned in April that,

6     you know, upon conferring with some of the defendants in

7     this case, this is not an unusual policy.  That is what

8     he actually shared with us at that point.

9              And, you know, furthermore, I know that this is

10    a policy.  As a public defender I represented people who

11    were brought in wrongly on these sorts of cases where

12    they really should not have gone directly to jail.  And

13    so we know that this is happening.  We also know that

14    there's a clear CPL statute governing it.  And, yet,

15    that does not jibe with what either Mr. Khairy has said

16    or what was actually happening in the real world.  And

17    so we're just seeking to ensure numerosity, but this is

18    not an issue about whether we're just fishing for

19    whether this is happening or whether it's a policy.  We

20    know that it is.

21             THE COURT:  Right.  No, no, no.  I understand.

22    I guess what I was thinking is if you can draft it and

23    just leave, you know, the number sort of blank; but in

24    terms of sketching out what the theory is.  As I heard

25    what Mr. Khairy was saying, that's what he's looking for

PROCEEDINGS                    14

1

2  from you is if you could share that with him, and then

3  he could get back to you on whether he's willing to

4  voluntarily share the data with you or whether you'll

5  have to go on, you know, some other basis.  So do you

6  think you could proceed in that vein, you know, so like

7  I said, sort of leaving a blank space for what the

8  estimated number of people would be, but otherwise

9  setting out what the theory is?

10         MS. KAISHIAN:  You know, I'm actually going to

11  ask Mx. Green to weigh in here, just because they are

12  more familiar with the class element here.  But I will

13  also say that we have engaged in many talks with the

14  City.  And so I think we have previously put in writing

15  what our Monell theory is.  And I'd be more than happy

16  to just do that again in light of this conversation, as

17  well.

18         THE COURT:  Okay.  Mx. Green?

19         MX. REMY GREEN:  Yes.  Good afternoon, your

20  Honor.  I think the answer is we're not looking for

21  formal discovery.  I think in any number of class action

22  contexts, I think this is perhaps a little more common

23  in consumer class actions than in 1983 class actions,

24  but informal discovery about numerosity is, you know, I

25  think fairly routine.  You know, I've seen any number of

```
 1                          PROCEEDINGS                    15
```

2  minute orders that just say by such-and-such a date,

3  defendants will state the number of people in the class.

4          I think we're being a little overcautious, and

5  perhaps the best answer is that we could just file a

6  class action complaint in the next few days.  Like, it

7  will not take us particularly long to do it.  It is just

8  a -- you know, with the City of New York and with the

9  seriousness of the allegations, it's really just belt

10  and suspenders we're trying to do here.  And, you know,

11  our thought is it should not be particularly hard to

12  say, you know, how many people do you bring to -- you

13  know, do you bring to Rikers or other jails without

14  bringing them to court first every year.  Right?  That

15  should be written down somewhere or easily discernible

16  from data that really ought to be kept if it's not.

17  And, you know, if the answer is that it's not kept,

18  then, you know, I think it's just a -- there's a

19  chicken-and-egg issue here, obviously.

20          THE COURT:  Yes, not --

21          MX. GREEN:  And, you know, I think it should be

22  easy enough, but if the City's position is that we're

23  not entitled to that information, I think then the

24  answer is that's fine, we're probably just going to then

25  -- unless the Court strongly disagrees, you know, I

```
 1                     PROCEEDINGS                16
 2   think -- I feel like if that's where they are, then
 3   certainly they can't accuse me of not being diligent
 4   when I say it's numerous.
 5           THE COURT:  Of course, no, no, no.  Right.
 6   Yes, of course.  No, no, no, I understand.  I guess not
 7   having been privy to the correspondence and prior
 8   conversations about this, I guess I can understand a
 9   little bit why it's helpful to see sort of your theory
10   in writing.  And, you know, given that it is an
11   individual Complaint right now, I'm not sure -- a
12   opposed to a putative class, you know, that discovery
13   might arguably be sort of outside the scope.  But I
14   understand your hesitancy of, you know, wanting to have
15   as much information as you could possibly have.  But I
16   guess -- and in terms of actually filing, the defendants
17   have already answered, so you do need leave of Court in
18   order to file an Amended Complaint, anyway.  I guess
19   what I'm suggesting is what I've done in other cases
20   where the plaintiff has indicated an interest in
21   amending is sharing the proposed Amended Complaint,
22   albeit obviously in draft form, with the City and seeing
23   if you can get an answer to two questions, one of which
24   is, you know, would you share the data with us, and then
25   two is will you consent.  And then you can file your
```

```
 1                         PROCEEDINGS                    17
 2   motion and let know and, you know, be letting the Court
 3   know whether you have -- whether you're amending on
 4   consent or whether you're asking me for leave without
 5   consent.  And then, obviously, we would have a briefing
 6   schedule on that.
 7            MX. GREEN:  That makes a lot of sense.  And I
 8   think your idea of putting a blank in makes sense, as
 9   well.
10            THE COURT:  Good.  Good.
11            All right, so when do you think you would be in
12   a position to share a draft with Mr. Khairy?
13            MX. GREEN:  So given that we also have
14   subclasses and Mr. Phillips both has some somewhat
15   unique damages and, you know, I don't know that I'd view
16   that solely as a hurdle, but obviously we'd like to have
17   more than one plaintiff, and we have multiple
18   subclasses, our retainers are going out to our potential
19   other representatives right now, I think we could share
20   a draft without those plaintiffs within a couple of
21   days, with those plaintiffs within, you know, let's say
22   three weeks.
23            THE COURT:  Okay.  Well, I think it's probably
24   -- the more you have, the better.  So I'm not trying to
25   rush you; I was just trying to get --
```

```
 1                        PROCEEDINGS                    18
 2            MX. GREEN:  No, no, no, I --
 3            THE COURT:  -- makes sense.  So my suggestion
 4  would be, you know, I'm happy to give you the three
 5  weeks, and then give Mr. Khairy -- you know, I'll ask
 6  him how much time he needs -- but at least a week or two
 7  to let you know one way or the other whether he consents
 8  and/or will share the data.  And then I'll set a
 9  deadline either for you to file the proposed Amended
10  Complaint or let me know that you need more time because
11  the parties are still talking about whether the
12  defendant will consent and/or whether we'll share the
13  data.  You know, so basically within a month or so I'm
14  either seeing a motion with the proposed Amended
15  Complaint or you're updating me on where you are in the
16  process.  Fair enough?
17            MX. GREEN:  Fantastic.  Yes, your Honor.
18            MS. KAISHIAN:  Yes, thank you.
19            THE COURT:  All right, Mr. Khairy, does that
20  work for you?
21            MR. KHAIRY:  This is Mostafa Khairy.  That's
22  fine, your Honor, thank you.  You know, I'm not trying
23  to rush plaintiff, as well, either.  The more
24  information I have, the better position I'll be in to
25  respond.  So if they need longer than three weeks,
```

```
 1                        PROCEEDINGS                19
 2  that's also fine by me.
 3            THE COURT:  That's what I figured.  That's what
 4  I figured.  But we'll set a month from today -- I'll
 5  just make sure that that's -- hold on; I'm making sure
 6  that's a weekday.  Yes, September 22nd is a Thursday.
 7  So by September 22, either the plaintiff will file a
 8  motion for leave to amend the Complaint or, you know, if
 9  you're still working, you'll ask for an extension of
10  time to do that and tell me how much time you need, if
11  you're still talking with the defendant about that.
12  Okay?
13            MS. KAISHIAN:  Yes, thank you.
14            THE COURT:  All right, great.  Okay, then, as
15  far as the rest of the schedule goes, then, does it kind
16  of make sense to wait and see if we are actually -- it
17  sounds like we're probably getting an Amended Complaint
18  one way or the other, either one that we have to decide
19  or want on consent.  And so that's probably going to
20  change the schedule.  So my thought is that maybe we
21  hold off on the rest of the Case Management Plan and we
22  revisit this after we see what's happening with the
23  Amended Complaint.  Is that all right with you,
24  Ms. Kaishian and Mx. Green?
25            MS. KAISHIAN:  Yes, I think that sounds fine.
```

```
 1                         PROCEEDINGS                20
 2  Thank you.
 3          THE COURT:  All right, Mr. Khairy?
 4          MR. KHAIRY:  This is Mostafa Khairy.  Yes, I
 5  think that's the optimal way to proceed.  Thank you,
 6  your Honor.
 7          THE COURT:  Okay.  Great.  All right.  So we'll
 8  hold the rest of the schedule in abeyance.  And then I
 9  guess once we see what the plaintiff is going to do, we
10  may get you on for another conference to talk about the
11  schedule or if it looks like we're going to have a
12  briefing schedule on the motion for leave to amend,
13  we'll figure out what the most efficient way will be to
14  move the case forward.  All right?
15          MX. GREEN:  Your Honor, if I --
16          MS. KAISHIAN:  Sounds --
17          THE COURT:  Yes --
18          MX. GREEN:  If I may raise one thing?
19          THE COURT:  Yes.
20          MX. GREEN:  You know, so we are thinking about,
21  obviously, class certification as a potential motion.
22  Defendants have indicated that they are considering a
23  motion to dismiss, particularly if we have certain
24  Monell claims.  But as everyone has kind of said, it
25  doesn't seem like any facts are in dispute, so of
```

```
 1                    PROCEEDINGS              21

 2   course, (indiscernible) makes a lot of sense to -- you

 3   know, I don't think this is -- I think this may be one

 4   of those rare cases where a pre-discovery summary

 5   judgment or judgment on the pleadings motion makes a lot

 6   of sense.  So perhaps the way we -- you know, I don't

 7   know that we need to do that today, but perhaps the way

 8   we should do it is we should just bundle all three of

 9   those things together and brief them together.

10           THE COURT:  Okay.  All right.  Well, that makes

11   sense.  So how about you -- why don't you share your

12   proposed Amended Complaint with Mr. Khairy?  I guess

13   that will be one of the things I'll ask you to talk

14   about is, you know, because one thing he could do is he

15   could consent to you filing it, but also then plan to

16   file the motion for judgment on the pleadings sooner

17   rather than later, as opposed to briefing a motion for

18   leave to amend and then briefing a motion for judgment

19   on the pleadings.

20           MX. GREEN:  Right, right.  And then I think we

21   would have an affirmative motion for summary judgment in

22   this case just because as my friend said, we don't

23   really have a dispute; the question is just whether the

24   CPL requires this.

25           THE COURT:  Exactly.  So maybe what you're
```

```
 1                          PROCEEDINGS              22
 2   talking about is a briefing schedule on cross-motions
 3   either for summary judgment and/or on the pleadings or
 4   something else.
 5              MX. GREEN:  And class certification --
 6              THE COURT:  And class certification, exactly,
 7   yes.
 8              Okay.  All right, so I'll ask the parties to
 9   keep meeting and conferring.  And the sooner you can
10   share the proposed Amended Complaint with Mr. Khairy and
11   then, like I said, we'll ask to hear back from you about
12   what our next steps are going to be by September 22nd.
13   Okay?
14              MX. GREEN:  Thank you, your Honor.
15              MS. KAISHIAN:  Yes, thank you.
16              THE COURT:  Okay.  Anything else you want to
17   raise on the plaintiff's side?
18              MS. KAISHIAN:  No, I believe that's all.  Thank
19   you.
20              THE COURT:  Okay.  Mr. Khairy?
21              MR. KHAIRY:  No.  Thank you, your Honor.
22              THE COURT:  All right.  And -- all right, so
23   we'll look forward to hearing from you by September 22nd
24   on the amendment and/or subsequent briefing.  And we'll
25   hold the rest of the schedule in abeyance until we get
```

```
 1                       PROCEEDINGS                    23

 2  that sorted out.

 3          Thank you all very much.  Have a good

 4  afternoon.

 5          (Whereupon, the matter is adjourned.)

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

24

C E R T I F I C A T E

     I, Carole Ludwig, certify that the foregoing transcript of proceedings in the case of Phillips v. City of New York et al, Docket #21-cv-08149-ALC-SLC, was prepared using digital transcription software and is a true and accurate record of the proceedings.


Signature_____

             Carole Ludwig

Date:    October 12, 2022