UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | : |
| PHILLIPS, | : Docket #1:21-cv-08149-ALC-SLC |
| Plaintiff, | : |
| - against - | : |
| CITY OF NEW YORK, et al., | : New York, New York<br>August 22, 2022 |
| Defendants. | : |
| ------------------------------------ | : REMOTE INITIAL CASE MANAGEMENT CONFERENCE |

PROCEEDINGS BEFORE
THE HONORABLE SARAH L. CAVE,
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff: COHEN & GREEN P.L.L.C.
BY: REMY GREEN, ESQ.
1639 Centre Street - Suite 216 11385
Ridgewood, New York 11207

MARYANNE K. KAISHIAN, ESQ.
65 Quincy St #1
Brooklyn, New York 11238

For Defendants: NEW YORK CITY LAW DEPARTMENT
SPECIAL FEDERAL LITIGATION
BY: MOSTAFA KHAIRY, ESQ.
100 Church Street, Room 3-215
New York, New York 10007

Transcription Service: Carole Ludwig, *Transcription Services*
155 East Fourth Street #3C
New York, New York 10009
Phone: (212) 420-0771
Email: Transcription420@aol.com

Proceedings conducted telephonically and recorded by electronic sound recording;
Transcript produced by transcription service

# INDEX

## E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---|---|---|---|---|
| None | | | | |

## E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|---|---|---|---|---|
| None | | | | |

HONORABLE SARAH L. CAVE (THE COURT): Good afternoon. This is Magistrate Judge Cave. We're here for a conference in Phillips vs. City of New York, case number 21-cv-8149.

May I have the appearances starting with the plaintiff, please?

MS. MARYANNE K. KAISHIAN: Good afternoon. This is Maryanne K. Kaishian; I'm of counsel to Cohen & Green P.L.L.C., here on behalf of Mr. Phillips. And I am joined also by Mx. Remy Green, also of Cohen & Green; and by Maya Baker, our summer associate with our office.

THE COURT: Okay. Good afternoon.

MR. MOSTAFA KHAIRY: Mostafa Khairy from the Office of the Corporation Counsel here on behalf of defendant City of New York. Good afternoon, your Honor.

THE COURT: Okay. Good afternoon. All right, so we're here for the parties' Initial Case Management Conference. And I have the parties' report of their Rule 26F conference and Proposed Case Management Plan.

So, Ms. Kaishian, as I understand it, Mr. Phillips was arrested upstate and then was in custody for, I think it was, four days at Rikers and then released, is that right?

MS. KAISHIAN: Yes, that's right, your Honor.

Approximately four days. But Mr. Phillips was transferred directly from NYPD custody to Department of Corrections custody without seeing a judge, which is the crux of the issue in this case, of course on top of his actual damages here.

THE COURT: Understood. Okay. And did he suffer any physical injuries during his four days in detention?

MS. KAISHIAN: Yes, your Honor. So Mr. Phillips was in recovery, successful recovery for substance use disorder during the time previous leading up to his arrest and incarceration. However, while he was incarcerated in DOC custody, he did not receive the medications that he desperately needed to remain healthy, and so he did, unfortunately, enter into full-blown opioid withdrawal and suffered significant physical ramifications as a result.

THE COURT: Okay. All right. And his release on or around the fourth day came as a result of what action? Was there a court order for that, or just the warden decided to release him, or what?

MS. KAISHIAN: Yes, so Mr. Phillips was able to contact his partner, who in turn was able to contact the Legal Aid Society. And so the Legal Aid Society was

able to get the Court to issue a cut slip for him effectively, that should not have been necessary because it was not something that should have needed to be ordered at that point, given the procedures that had happened previously. However, because he had that outside advocacy happening, that was in fact the outcome for him.

THE COURT: Okay. And that release was end of story as far as any criminal proceedings with respect to the arrest, or was there anything else?

MS. KAISHIAN: That's all, your Honor, because the bench warrant in this instance was a -- it was an arrest warrant from the New York County Criminal Court, but it should have been vacated. It had been issued in 1989. Mr. Phillips was subsequently arrested on other matters 30 years ago at this point, and those cases were all resolved. So it was an error that the bench warrant was active, but of course, again, the issue is that, regardless of the status of the warrant, that's really for a judge to decide, which is why the CPL has that protection.

THE COURT: Okay. Understood. Thank you for that background.

Mr. Khairy, I can imagine you dispute some of

that. Any other background you want to give me on the claims at this point?

MR. KHAIRY: This is Mostafa Khairy. Your Honor, not much in this case is actually in dispute when it comes to plaintiff's false arrest and excess detention claim. He was arrested upstate in New York on July 3rd. He got pulled over for some sort of traffic infraction, as I understand it. And when the trooper received his license, the warrant popped from 1989, which in the system still appeared active. He was brought to the NYPD detective squad which handles upstate arrests for processing. As I understand it, he was then transferred to Rikers and held there until July 7th, when a -- I believe NYPD -- I'm not aware of the cut slip, you know, the cut slip reference that Ms. Kaishian just referenced -- but as I understand it from his DOC file, NYPD Warrant Squad faxed over -- sent a fax to DOC saying that this warrant was vacated by the Court on July 7th, release him immediately. And then he was released within a couple of hours, as I understand it.

There is a little bit of a dispute as to what -- his deliberate indifference to medical needs claim. You know, plaintiff claims that he didn't receive the

necessary meds. His DOC records indicate that he was seen at the clinic, as well as I have other medical records which have been provided to plaintiff from one of his doctors where he admits to getting his meds, just a different dosage or a lower dosage, I should say. You know, and as I previously indicated to plaintiff's counsel, that doesn't necessarily sound in a constitutional violation. That's, if anything, an alleged claim for medical malpractice. That doesn't necessarily rise to the level of deliberate indifference, based on the case law.

THE COURT: Okay. Thank you. That's helpful.

And have you had any settlement discussions? I'm not asking you to tell me what they were specifically, but has there been a demand made, Ms. Kaishian?

MS. KAISHIAN: Yes, there has, your Honor.

THE COURT: Okay. And, Mr. Khairy, where are you in the process of responding to that?

MR. KHAIRY: This is Mostafa Khairy. We did respond to it. We also partook in planned mediation; however, you know, both sides seemed to disagree on the legal issues of this case as they pertain to each of the claims. So that's sort of why everything's sort of been

on a standstill.

THE COURT: Okay. All right. I understand. Well, we can revisit that at some point.

So, then, Ms. Kaishian, do you in fact have at least some of the medical records that Mr. Khairy was describing?

MS. KAISHIAN: I believe we have some of them. I don't believe they are complete at this point. But we've also shared with the defendant some information from Mr. Phillips' doctors who are currently treating him and who were treating him prior to his arrest, as well. So there has been an exchange of some of the medical documentation here.

THE COURT: Okay. Great. And then what other types of documents do you need from the defendant?

MS. KAISHIAN: So I think this is probably a good time to raise an outstanding issue. So it was not raised at the 26F. The plaintiff in this case had signaled to defendants in multiple conversations with Mr. Khairy that we might be amending to assert class-wide claims. We were not sure if this was something that we were going to be able to do. We're still looking to ensure numerosity in order to assert those claims. We of course want to be accurate when we're

asserting these claims; however, based on our conversations at this point with defendant organizations and potential plaintiffs, it appears that we do -- you know, we do intend to assert those class-wide claims, which would require, of course, an amendment but also we are asking for Mr. Khairy -- I signaled this to him last week, admittedly quite late in the week, and Mr. Khairy was out of the office, so this remains unresolved for that reason only, but we did ask for two weeks with a specific request for any data or documentation that defendants have regarding numerosity of these potential plaintiffs in this claims. But we really don't believe and we know for sure Mr. Phillips is not the only person who's been wrongfully, you know, in opposition to the CPL 53070 has been directly delivered to Rikers Island and other city jails in violation of the law.

THE COURT: Okay. On an old bench warrant like he was or what's involved in --

MS. KAISHIAN: So we're not --

THE COURT: Okay. Sorry. Go ahead.

MS. KAISHIAN: I apologize, your Honor.

THE COURT: No, that's okay. Go ahead.

MS. KAISHIAN: So we have four potential -- essentially two large classes, which would be supreme

court warrants and criminal court warrants. And inside of those classes there would be claims where people were arrested for valid and invalid warrants. So, regardless of the validity of the warrants, if the police department is flagging someone's name as having an active warrant, part of the reason he needs to go to court is because the judge is in the best position to determine whether the warrant is valid, what the status of the case is and what needs to happen next. So really the validity is almost ancillary to the actual issue; however, we do have those subclasses defined for Mr. Khairy so that when we're doing a numerosity evaluation, we can be in a better position to answer that question directly.

THE COURT: Okay. And so the two weeks that you asked for is -- was two weeks from now or two weeks from some other point in time?

MS. KAISHIAN: Two weeks from now. But if the timing is the only issue that Mr. Khairy identifies, of course we'd be more than happy to set something else down, you know, if two weeks is not enough time.

THE COURT: Okay. And so you need the data from him about other potential claims, or you have that already?

MS. KAISHIAN: That's the data that we're seeking from him. Of course, we've also done our own potential plaintiff outreach, so we know other cases do exist. But in terms of actual numerosity, we have reason to believe it's dozens of people per year that this is happening to, and so we want to see confirmation before we make a claim like that officially.

THE COURT: Understood. Okay. Mr. Khairy, have you had a chance to reflect on the plaintiff's request for more data?

MR. KHAIRY: This is Mostafa Khairy. Admittedly, I am not, you know, as I indicated to Ms. Kaishian this morning, I was on vacation last week, the end of last week, so I didn't see the email till this morning when I had gone into the office and have not had time to confer internally about sort of the next steps. However, I know at this point we would need to see an amended Complaint before any sort of discovery or statistics are released because as of right now I'm still unclear what the actual Monell theory is. I know we have had discussions about this in the past; I know the most substantive one occurred in April right before the planned mediation. However, whether or not they can actually state a claim for a class action based on an

unconstitutional policy is a different story. And I would first need to see an Amended Complaint before I know how to respond to it, because it's possible that we do end up moving to dismiss in lieu of, you know, actually proceeding to discovery at first. As of right now there is no Monell claim. Plaintiff brought this original case with the City as a defendant under a *respondeat* theory, not a Monell one. So I have to first see the Monell claim before I'm in a better position to partake in discovery or even respond to anything.

THE COURT: Okay. Understood.

Ms. Kaishian, where are you in drafting an Amended Complaint for a hypothetical class?

MS. KAISHIAN: We are certainly working on that, of course. We're hoping to have just the statistics. You know, assuming that -- I don't want to sound naïve or overly optimistic about the DOC's reporting requirements and the spreadsheet they're keeping in terms of who is actually the team; however, all we're really seeking is just a strict by-the-number. You know, I'm certain that there must be some sort of policy, whether it's adhered to or not, to track the mechanisms by which people are being sent into these jails and when they're leaving and why they're there.

That's really all that we're seeking at this point.

There is definitely a Monell claim that we've spoken with Mr. Khairy about. Moreover, he did indicate during that substantive call he mentioned in April that, you know, upon conferring with some of the defendants in this case, this is not an unusual policy. That is what he actually shared with us at that point.

And, you know, furthermore, I know that this is a policy. As a public defender I represented people who were brought in wrongly on these sorts of cases where they really should not have gone directly to jail. And so we know that this is happening. We also know that there's a clear CPL statute governing it. And, yet, that does not jibe with what either Mr. Khairy has said or what was actually happening in the real world. And so we're just seeking to ensure numerosity, but this is not an issue about whether we're just fishing for whether this is happening or whether it's a policy. We know that it is.

THE COURT: Right. No, no, no. I understand. I guess what I was thinking is if you can draft it and just leave, you know, the number sort of blank; but in terms of sketching out what the theory is. As I heard what Mr. Khairy was saying, that's what he's looking for

from you is if you could share that with him, and then he could get back to you on whether he's willing to voluntarily share the data with you or whether you'll have to go on, you know, some other basis. So do you think you could proceed in that vein, you know, so like I said, sort of leaving a blank space for what the estimated number of people would be, but otherwise setting out what the theory is?

MS. KAISHIAN: You know, I'm actually going to ask Mx. Green to weigh in here, just because they are more familiar with the class element here. But I will also say that we have engaged in many talks with the City. And so I think we have previously put in writing what our Monell theory is. And I'd be more than happy to just do that again in light of this conversation, as well.

THE COURT: Okay. Mx. Green?

MX. REMY GREEN: Yes. Good afternoon, your Honor. I think the answer is we're not looking for formal discovery. I think in any number of class action contexts, I think this is perhaps a little more common in consumer class actions than in 1983 class actions, but informal discovery about numerosity is, you know, I think fairly routine. You know, I've seen any number of

minute orders that just say by such-and-such a date, defendants will state the number of people in the class.

I think we're being a little overcautious, and perhaps the best answer is that we could just file a class action complaint in the next few days. Like, it will not take us particularly long to do it. It is just a -- you know, with the City of New York and with the seriousness of the allegations, it's really just belt and suspenders we're trying to do here. And, you know, our thought is it should not be particularly hard to say, you know, how many people do you bring to -- you know, do you bring to Rikers or other jails without bringing them to court first every year. Right? That should be written down somewhere or easily discernible from data that really ought to be kept if it's not. And, you know, if the answer is that it's not kept, then, you know, I think it's just a -- there's a chicken-and-egg issue here, obviously.

THE COURT: Yes, not --

MX. GREEN: And, you know, I think it should be easy enough, but if the City's position is that we're not entitled to that information, I think then the answer is that's fine, we're probably just going to then -- unless the Court strongly disagrees, you know, I

think -- I feel like if that's where they are, then certainly they can't accuse me of not being diligent when I say it's numerous.

THE COURT: Of course, no, no, no. Right. Yes, of course. No, no, no, I understand. I guess not having been privy to the correspondence and prior conversations about this, I guess I can understand a little bit why it's helpful to see sort of your theory in writing. And, you know, given that it is an individual Complaint right now, I'm not sure -- a opposed to a putative class, you know, that discovery might arguably be sort of outside the scope. But I understand your hesitancy of, you know, wanting to have as much information as you could possibly have. But I guess -- and in terms of actually filing, the defendants have already answered, so you do need leave of Court in order to file an Amended Complaint, anyway. I guess what I'm suggesting is what I've done in other cases where the plaintiff has indicated an interest in amending is sharing the proposed Amended Complaint, albeit obviously in draft form, with the City and seeing if you can get an answer to two questions, one of which is, you know, would you share the data with us, and then two is will you consent. And then you can file your

motion and let know and, you know, be letting the Court know whether you have -- whether you're amending on consent or whether you're asking me for leave without consent. And then, obviously, we would have a briefing schedule on that.

MX. GREEN: That makes a lot of sense. And I think your idea of putting a blank in makes sense, as well.

THE COURT: Good. Good.

All right, so when do you think you would be in a position to share a draft with Mr. Khairy?

MX. GREEN: So given that we also have subclasses and Mr. Phillips both has some somewhat unique damages and, you know, I don't know that I'd view that solely as a hurdle, but obviously we'd like to have more than one plaintiff, and we have multiple subclasses, our retainers are going out to our potential other representatives right now, I think we could share a draft without those plaintiffs within a couple of days, with those plaintiffs within, you know, let's say three weeks.

THE COURT: Okay. Well, I think it's probably -- the more you have, the better. So I'm not trying to rush you; I was just trying to get --

MX. GREEN: No, no, no, I --

THE COURT: -- makes sense. So my suggestion would be, you know, I'm happy to give you the three weeks, and then give Mr. Khairy -- you know, I'll ask him how much time he needs -- but at least a week or two to let you know one way or the other whether he consents and/or will share the data. And then I'll set a deadline either for you to file the proposed Amended Complaint or let me know that you need more time because the parties are still talking about whether the defendant will consent and/or whether we'll share the data. You know, so basically within a month or so I'm either seeing a motion with the proposed Amended Complaint or you're updating me on where you are in the process. Fair enough?

MX. GREEN: Fantastic. Yes, your Honor.

MS. KAISHIAN: Yes, thank you.

THE COURT: All right, Mr. Khairy, does that work for you?

MR. KHAIRY: This is Mostafa Khairy. That's fine, your Honor, thank you. You know, I'm not trying to rush plaintiff, as well, either. The more information I have, the better position I'll be in to respond. So if they need longer than three weeks,

that's also fine by me.

THE COURT: That's what I figured. That's what I figured. But we'll set a month from today -- I'll just make sure that that's -- hold on; I'm making sure that's a weekday. Yes, September 22nd is a Thursday. So by September 22, either the plaintiff will file a motion for leave to amend the Complaint or, you know, if you're still working, you'll ask for an extension of time to do that and tell me how much time you need, if you're still talking with the defendant about that. Okay?

MS. KAISHIAN: Yes, thank you.

THE COURT: All right, great. Okay, then, as far as the rest of the schedule goes, then, does it kind of make sense to wait and see if we are actually -- it sounds like we're probably getting an Amended Complaint one way or the other, either one that we have to decide or want on consent. And so that's probably going to change the schedule. So my thought is that maybe we hold off on the rest of the Case Management Plan and we revisit this after we see what's happening with the Amended Complaint. Is that all right with you, Ms. Kaishian and Mx. Green?

MS. KAISHIAN: Yes, I think that sounds fine.

Thank you.

THE COURT: All right, Mr. Khairy?

MR. KHAIRY: This is Mostafa Khairy. Yes, I think that's the optimal way to proceed. Thank you, your Honor.

THE COURT: Okay. Great. All right. So we'll hold the rest of the schedule in abeyance. And then I guess once we see what the plaintiff is going to do, we may get you on for another conference to talk about the schedule or if it looks like we're going to have a briefing schedule on the motion for leave to amend, we'll figure out what the most efficient way will be to move the case forward. All right?

MX. GREEN: Your Honor, if I --

MS. KAISHIAN: Sounds --

THE COURT: Yes --

MX. GREEN: If I may raise one thing?

THE COURT: Yes.

MX. GREEN: You know, so we are thinking about, obviously, class certification as a potential motion. Defendants have indicated that they are considering a motion to dismiss, particularly if we have certain Monell claims. But as everyone has kind of said, it doesn't seem like any facts are in dispute, so of

course, (indiscernible) makes a lot of sense to -- you know, I don't think this is -- I think this may be one of those rare cases where a pre-discovery summary judgment or judgment on the pleadings motion makes a lot of sense. So perhaps the way we -- you know, I don't know that we need to do that today, but perhaps the way we should do it is we should just bundle all three of those things together and brief them together.

THE COURT: Okay. All right. Well, that makes sense. So how about you -- why don't you share your proposed Amended Complaint with Mr. Khairy? I guess that will be one of the things I'll ask you to talk about is, you know, because one thing he could do is he could consent to you filing it, but also then plan to file the motion for judgment on the pleadings sooner rather than later, as opposed to briefing a motion for leave to amend and then briefing a motion for judgment on the pleadings.

MX. GREEN: Right, right. And then I think we would have an affirmative motion for summary judgment in this case just because as my friend said, we don't really have a dispute; the question is just whether the CPL requires this.

THE COURT: Exactly. So maybe what you're

talking about is a briefing schedule on cross-motions either for summary judgment and/or on the pleadings or something else.

MX. GREEN: And class certification --

THE COURT: And class certification, exactly, yes.

Okay. All right, so I'll ask the parties to keep meeting and conferring. And the sooner you can share the proposed Amended Complaint with Mr. Khairy and then, like I said, we'll ask to hear back from you about what our next steps are going to be by September 22nd. Okay?

MX. GREEN: Thank you, your Honor.

MS. KAISHIAN: Yes, thank you.

THE COURT: Okay. Anything else you want to raise on the plaintiff's side?

MS. KAISHIAN: No, I believe that's all. Thank you.

THE COURT: Okay. Mr. Khairy?

MR. KHAIRY: No. Thank you, your Honor.

THE COURT: All right. And -- all right, so we'll look forward to hearing from you by September 22nd on the amendment and/or subsequent briefing. And we'll hold the rest of the schedule in abeyance until we get

that sorted out.

Thank you all very much. Have a good afternoon.

(Whereupon, the matter is adjourned.)

C E R T I F I C A T E

I, Carole Ludwig, certify that the foregoing transcript of proceedings in the case of Phillips v. City of New York et al, Docket #21-cv-08149-ALC-SLC, was prepared using digital transcription software and is a true and accurate record of the proceedings.

Signature_______________________________ (signed: Carole Ludwig)

Carole Ludwig

Date: October 12, 2022