

January 23, 2023

Honorable Sarah L. Cave, U.S.M.J.
United States District Court, Southern District of New York
500 Pearl Street
New York, NY 10007-1312

By Electronic Filing.

      Re:     Phillips v. City of New York, 21-CV-8149 (ALC)(SLC)

Dear Judge Cave:

      As the Court may recall, our firm represents Plaintiffs and the putative class in the case above. Per the Court's rules, I write in reply to the portion of Defendants' letter at Dkt. No. 44 that opposes our motion to expedite discovery. In light of the immediate relief the motion seeks, we ask that the Court promptly schedule a conference or otherwise rule on this motion — and Plaintiffs will submit their opposition to Defendants' separate motions in the time set by the Court's rules.[1] I will make myself available to appear at any time in the next few days.

      Defendants' opposition is without any merit. And Defendants do not deal in any way with the plain text of the Federal Rules that permit expedited discovery. That alone suffices to deny the motion.

      Past there, Defendants misrepresent Plaintiffs' positions, and rely principally on a misreading of the live pleading. For example, Plaintiffs did not, in fact, state the "only changes that [we[2]] would be making in the Second Amended Complaint would be to add hours that the courts are open in support of plaintiffs' argument that judges are available to adjudicate warrants at most times of the day" — rather, we offered that as an example of the kind of thing we would clarify because Defendants

---

[1] Ultimately, Plaintiffs have no objection to staying discovery outside of what they have already served. Had Defendants engaged at the meet and confer, rather than simply cutting it off, we would have said as much. Additionally — and perhaps relatedly — Defendants are simply wrong when they claim Plaintiffs "had been working on [the motion] for days" (Dkt. No. 44 at 3 n. 2). I drafted the entire motion while waiting for Defendants to respond to the request to meet and confer, and after the very brief meeting. While Plaintiffs anticipated that *some* motion might be necessary given weeks of trying to raise the bait and switch issue, we thought counsel was likely to understand that basic class discovery needed to come before a motion to strike class allegations.

[2] Defendants' counsel misgenders me *repeatedly* in the letter — using "he" pronouns (see Dkt. No. 44 at 2 n. 1; at 3 n. 2). I note this in opposition with a request that it not happen again. See 22 N.Y.C.R.R. 1200, Rule 8.4(g); Professional Ethics Committee of the New York City Bar, *Formal Opinion 2020-4: Unlawful Discrimination in the Practice of Law* (Dec. 1, 2020); cf., e.g., New York City Commission on Human Rights Legal Enforcement Guidance on Discrimination on the Basis of Gender Identity or Expression: Local Law No. 3 (2002).

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York  ·  11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



inexplicably treated the facts pled (*see, e.g.,* Dkt. No. 33 ¶¶ 45³-49; *but see* Dkt. No. 40 at 3) as if they are not.  There are many similar examples — and that collection of glosses is what the forthcoming amendment is intended to address.

Moreover, Defendants' vigor in their proposed motion to dismiss seems to stem from a basic misunderstanding:  they discuss the standards for "excessive pre-***arraignment*** detention" (Dkt. No. 40 at 3 (emphasis added)) but the very nature of the bench warrant arrests and confinement at issue here is that there is rarely (if ever) any arraignment *on that arrest*.⁴  That is, far from being "arraigned promptly" (Dkt. No. 40 at 2-3), as we understand it, Plaintiffs were not arraigned on the relevant arrests ***at all***.⁵  Of course, Plaintiffs may have been arraigned in their underlying cases where the warrants were issued, but by the time they were placed in jail as relevant in this case, they were post-arraignment.  That's even the basic problem:  as the complaint explains, "Because members of the class described below are admitted to jail with no future court date listed on their paperwork through this direct NYPD-to-DOC exchange of custody, illegally cutting out the court process entirely, they languish for days at a time—possibly more—without any action taken to address the cause of their incarceration."  Dkt. No. 33 ¶ 11.

Finally, even on its own terms, Defendants' argument here is puzzling.  Without explanation for the elision, Defendants say the time each Plaintiff spent in custody in these cases was reasonable.  What they elide is that even if the standards for pre-arraignment detention applied, as Defendants claim they do, each Plaintiff would have an indisputably viable claim because they were all held for presumptively unreasonable periods under either the New York 24-hour standard or the Federal 48-hour standard.  *See McLaughlin*, 500 U.S. 56 (1991); *Brown*, 77 NY2d 422 (1991); *see also,* note 5 below.

---

³ "Criminal courts in New York City operate arraignment parts where judges address bench and arrest warrant matters seven days per week, 365 days per year, including holidays, and processing by police can be done around the clock."

⁴ While this letter is not the appropriate vehicle to fully parse the distinctions here, Defendants have conflated the post-arrest arraignment process in a novel, uncharged case (governed by C.P.L. § 140.20, *et seq.*) with bench warrant executions (§ 530.70, *et seq.*) in a manner that reflects neither the relevant statutes nor the arguments in Plaintiffs' live complaint.  A person who has what reasonably appears to be an active bench warrant in their name must be brought promptly to a judge to assess the warrant and address the matter according to the posture of the existing case giving rise to the bench warrant; whether or not this process includes an arraignment, as might be required in the event of a missed Desk Appearance Ticket appearance or a secret indictment, is not an operative fact.  In any event, it is also a clear misrepresentation for Defendants to suggest that arraignment—or any proceeding before a court—occurred promptly.

⁵ While this reply cannot exhaustively deal with all the similar mistakes, another basic issue that bears mentioning is that Defendants simply gloss over about what the pleading says about time in custody.  Defendants say that "plaintiffs' claims are false— and it appears that the plaintiffs Thompson, Rosario and Wright were promptly arraigned upon their arrests" (Dkt. No. 40 at 1).  Of course, that's fundamentally wrong:  unless Defendants are asserting that, contrary to binding authority (*Cty. Of Riverside v. McLaughlin*, 500 U.S. 56 (1991); *People ex rel. Maxian v. Brown*, 77 NY2d 422 (1991)), a delay of four days (Dkt. No. 33 ¶ 82) to ***seventeen days*** (*id.* ¶ 120) is reasonable, they are simply making things up.
But more to the point, that also ignores the basics of ***other*** claims:  for example, Defendants do not even ***attempt*** to explain how starving Plaintiff Wright for seventeen days without ***any food whatsoever*** (because his jaw was wired shut) is not actionable.

COHEN&GREEN    Page 2 of 4

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



Put simply, how the City can claim holding a person for seventeen days with no process while deliberately starving him has no claims is a mystery.[6]

Next, Defendants' arguments about the relevance of class discovery fail to cite any meaningfully relevant authority — citing, instead, cases about where a failure to plead plausible class allegations were obvious from the face of the complaint. Defendants' arguments all rely on a motion they have not yet made, that turns on basic misunderstandings set out above. Moreover, it is hard to see how Defendants can claim it is not plausible that this problem harmed more than 40 people when the City itself made significant commitments to at least try to work with "DOC, PD, and OCA to make sure there are better processes in place" to ensure people did not face these problems. Dkt. No. 33 ¶ 163 (quoting an email). Indeed, the City assigned a special "individual to be primarily responsible for addressing this issue" (*id.* ¶ 165)— which Defendants do not deny — and that person even apparently had a list, which he reviewed daily, of "individuals who were lodged solely on the basis of an outstanding criminal or supreme court warrant." *Id.* ¶ 165-168. How that does not live up to plausibly alleging a meaningfully sized problem, the City never bothers explaining.

Finally, Defendants' typicality arguments are misguided: the basic problem is that people are brought to jail instead of to court when NYPD members pick them up on bench warrants. That is common, typical, and predominates. It does so because the NYPD takes that approach ***regardless*** of the nature of the warrants, arrests, and court availability. It is, in fact, impossible to square Defendants' assertions that there is no policy with their separate assertions that what happened to Plaintiffs gives rise to no claim ***at all***. That is, Defendants say — at the same time — that there is no policy, but also, there is no need to name individual defendants,[7] because it was totally fine to lock Mr. Wright on Rikers for 17 days without food while his jaw was wired shut.[8] But the point is this: there is no case-by-case issue here: Class liability turns (at least as a sufficient condition) on the initial decision to not bring people within New York City to the courts that are open 365 days a year, and at virtually all hours.

At bottom, Defendants never explain why they should be allowed to pull the bait and switch they have on class discovery. They opposed informal discovery, and now they are trying to oppose discovery once a complaint formally asserts class allegations. Their explanation is that they vigorously dispute the merits of the case. It is hard to come up with a case where the City has not done just that. But the City's *ipse dixit* is not a basis to deny discovery — if it was, the exception would leave no rule to speak of.

Thus, we would ask the Court to either promptly compel answers to the discovery/Doe requests, or schedule a conference to discuss in short order.

---

[6] This is, of course, another thing we intend to amend to emphasize. Defendants appear to be asserting that these allegations are too conclusory, so the amendment will make very clear the amount of time each Plaintiff was in custody.

[7] Defendants also fail to address the fact that at least some of the Doe Defendants already made the argument, through prior counsel, that they were just following policy.

[8] The point being: either that was pursuant to policy, and there's *Monell* liability; or it wasn't, and there's individual liability. The City cannot escape that bind by trying to avoid having to identify whose fault it was.


Page 3 of 4

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



As always, we thank the Court for its continued time and attention.

                                        Respectfully submitted,

                                             /s/
                                      _____

                                        J. Remy Green
                                            *Honorific/Pronouns: Mx., they/their/them*
                                        **COHEN&GREEN P.L.L.C.**
                                        *Attorneys for Plaintiff*
                                        1639 Centre St., Suite 216
                                        Ridgewood, New York 11385

cc:
All relevant parties by electronic filing.

Page 4 of 4

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com