

<div style="text-align: right;">February 3, 2023</div>

Hon. Andrew L. Carter, Jr., U.S.D.J.
United States District Court, Southern District of New York
500 Pearl Street
New York, NY 10007-1312

<u>By Electronic Filing.</u>

      Re:    <u>Phillips v. City of New York</u>, 21-CV-8149 (ALC)(SLC)

Dear Judge Carter:

      My firm, with co-counsel represents Plaintiffs and the putative class in the case above. I write regarding Defendants' request for a briefing schedule on their motion to dismiss.[1]

      Plaintiffs ask that either (1) the Court hold its ordinary conference and allow a substantive response over Defendants' two proposed motions — ideally setting both for after Judge Cave has addressed the pending discovery disputes at the conference scheduled for February 2, 2023 or (2) the Court set a briefing schedule that sets Plaintiffs' response to the motion for at least 40 days after service of the motion. Part of the reason for this is that Defendants make clear they intend to challenge the facts pled in the complaint in their motion to dismiss. And the other part is that Defendants' version of the facts is both (1) new to Plaintiffs and (2) perhaps not actually inconsistent with the allegations in the complaint, but warrants investigation given the assertions.

### Discussion

      By way of background, Defendants initially filed a letter seeking a pre-motion conference on a motion to dismiss and motion to strike class allegations — after saying they needed several months to review the first amended complaint — on January 3. Dkt. No. 40. At Plaintiffs' request (Dkt. No. 41), the Court held off the time to file a letter setting out opposition, giving Defendants two weeks from a proposed amended complaint to review and indicate their new position. That amendment, filed late last night (*see* Dkt. No. 52), added some 188 paragraphs of detail and clarification. Yet, somehow, in less than 24 hours from that new pleading, Defendants apparently have made a decision.

      Part of that decision appears to be a fundamental misunderstanding of the motion to dismiss standard. As Defendants themselves explained it, they believe their motion to dismiss is a "strong

---

[1] As noted in prior correspondence, Plaintiffs also intend to cross-move for affirmative summary judgment or judgment on the pleadings as to liability if the motion goes forward. The requests to admit at issue in the motions in front of Judge Cave would be sufficient on that issue — and mean the Court only needs to address the questions about whether there is any limit to the time the City can hold a person on a bench warrant once. *See, e.g.,* note 8, below.

    motion" because their "investigations to date still demonstrate that the facts as to at least three of the four named plaintiffs are dissimilar to the municipal liability issue" and that "Plaintiffs' allegations … ***are simply wrong*** as to at least three of the four plaintiffs." Dkt. 53 at 1-2 (emphasis added). If that is the core of the motion Defendants make, it is not a motion the Court should entertain.[2] After all, it is beyond cavil that, on a motion to dismiss, courts are "constrained to accept as true the factual allegations contained in the complaint and draw all inferences in plaintiff's favor." *Global Network Communs., Inc. v City of NY*, 458 F3d 150, 154 (2d Cir 2006). Defendants cite no case whatsoever that would allow them to seek a stay of discovery, and then strike an entire complaint, on the basis that "Plaintiffs' allegations … are simply wrong." Such an expansion of the motion to dismiss standard would be stunning.

Similarly, as explained in Plaintiffs' pending motion for discovery in front of Judge Cave, Defendants have employed a bait-and-switch tactic on class issues. *See, e.g.,* Dkt. Nos. 43 at 1-3, 46 at 3, and 48, generally. Put briefly, Defendants initially resisted informal class discovery, saying they would respond once the allegations formally existed. Then, once the allegations existed, Defendants moved to strike. And part of Defendants' theory that Plaintiffs are wrong about the ease of class discovery appears to be that the City's own day to day officials were not understanding what they were doing when they said — in direct response to the problem at the core of this case, raised by the Legal Aid Society in formal correspondence — they had created a "system" to address the issues in this case, appointed "an individual to be primarily responsible for addressing this issue," and set that person to the task of needing to "review a list of everyone who was in with a warrant to identify those individuals who were lodged solely on the basis of an outstanding criminal or supreme court warrant." *See* Dkt. No. 52 ¶¶ 299-304.[3] Indeed, that person was supposed to "review this list on daily, and notify the appropriate clerk if he identifies someone who falls into the above category so that this individual is brought before a judge expeditiously." *Id.* ¶ 303. That "category" is the members of the Class.[4] It is not clear why Defendants cannot simply produce those lists (particularly given that they unambiguously anticipated litigation at the time they were created).

The flipside of these issues is that — for the very first time in a letter filed yesterday (Dkt. No. 53 at 2) — Defendants asserted a profoundly different version of the facts, presumably based on *something*. Plaintiffs take that seriously, and intend to look into Defendants version of the facts. The chasm between the versions of the facts is something that, from Plaintiffs perspective, calls for investigation and discovery both. Plaintiffs intend to look into, as much as they can on their own,

---

[2] Indeed, if Defendants make such a motion, Plaintiffs will likely move to strike it. A motion that is premised, as Defendants admit theirs would be, on an assertion that "Plaintiffs' allegations … are simply wrong" would, presumably, at ***least*** try to offer some exhibits or some reason beyond a bare assertion the allegations "are simply wrong." But exhibits would be easy cause for a motion to strike. *SEC v. Medallion Financial Corp.*, No. 21-cv-11125 (LAK), 2022 WL 3043224 (S.D.N.Y. Aug. 2, 2022) ("There is no responsible case for failing to grant the plaintiff's motion to strike").

[3] These quotes are taken directly from City officials' emails, shared with us by the Legal Aid Society pursuant to a common interest agreement.

[4] Another easy way to find Class members would simply be to identify all people in City jails without future court dates. And if the City claims it is not capable of determining that, that would speak to a potential habeas crisis of staggering proportions.

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com



the fact claims Defendants make in Dkt. No. 53.  As a first step, Plaintiffs intend to ask Defendants to pass along — as an informal measure — whatever documents form the basis for Defendants' factual claims so they can look into the claims.

      Relatedly, it seems like Defendants are missing or misunderstanding what is relevant in how they describe their version of the facts.  As an example, consider what Defendants have said about Mr. Wright.  Defendants' claim that Mr. Wright's facts are wrong seems based on a basic misunderstanding:  his entire claim is based on the *post*-hospitalization period.  That is, the entire claim — being taken to jail instead of court on a warrant, and starved in jail for 17 days — takes place in the last sentence of Defendants' most recent letter, where they say, "[a]t some point after his hospitalization (he was discharged from the hospital late in the next evening) he was brought to DOC custody."  Dkt. No. 53.[5]  That is, Defendants admit Mr. Wright never saw a judge over the "open warrant [that] was discovered" (Dkt. No. 53 at 2 (passive voice in original) seemingly after the DA had already declined to prosecute.  Nor do Defendants explain why that warrant was not raised to the DA when Mr. Wright was *already in court* and it could have been resolved.  Finally, and perhaps most critically, Defendants offer no argument — no matter *how* Mr. Wright was brought to DOC custody — that 17 days of literal starvation was (1) justified or (2) amounts to delivering him to court "promptly upon [his] arrest[.]"  Dkt. No. 40 at 2.  What happened before that just amounts to little more than an attempt to use uncharged allegations as a reflection on Mr. Wright's character.  All of which is to say, if Defendants' contrary version of the facts is supported, Plaintiffs will — of course — look into and amend to address any issues.  But it also seems that Defendants may be looking *not* at the warrant arrests, but instead, the first arrests in the underlying criminal cases.[6]  So, some method of sorting this out on the facts (something a motion to dismiss cannot do) seems warranted.

      Additionally, even if Defendants have documents that suggest facts counter to those in the complaint, Rikers officials have a history of forging documents.  Indeed, City officials at Rikers have specifically tampered with records to try to hide the fact that they were illegally holding people for longer than 24 hours in intake cells.  *See, e.g.,* Chris Gelardi, *Rikers Staff Tampered With Records, Hiding Intake Rule Violations, Documents Show*, N.Y. FOCUS (Oct. 17. 2022); *accord also*, Elliot Weld, *Rikers Guards Faked Sick Leave With Forged Docs, Feds Say*, LAW360 (Nov. 10, 2022); *In re New York City Policing During Summer 2020 Demonstrations*, 20-cv-8924 (SDNY 2022), Dkt. Nos. 523, 524, and 525 (setting out, as the Court put it, the "revelation" that a senior Law Department attorney forged documents to hide non-compliance with a court order, and was ultimately terminated for it).  That is not to say the documents Defendants have are forged, of course.  Rather, it is to say that if Defendants want to claim contrary facts, the way to do so is to engage substantively — in discovery

---

[5] Defendants *do* seem to concede, as the complaint alleges, that the underlying charge was bail-eligible (Dkt. No. 53 at 2 (discussing broadly that the charge was "possession of narcotics"), making the 17 days of starvation particularly horrifying.

[6] Similarly, it is hard to square Defendants' claim that Ms. Thompson was "not arrested on an open warrant" with their (supposed) correction that she was "arrested by NYPD warrants officers."  It looks like Defendants may have simply pulled the wrong records — but that is hard to evaluate without seeing the records they are citing.  And all of that makes little sense on a motion to dismiss.

COHEN&GREEN     Page 3 of 5

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



or otherwise — on those facts.  The path to do so is simply not a motion to dismiss, and it's not clear why the City thinks it is.

Finally, and moving back to the substance of Defendants' proposed motion, it is hard to see how the City has explained much of the ultimate relief it seeks.  As described, the City's proposed motion seeks to knock out all claims in this case, without exception. Dkt. No. 40 at 3.  It is not at all clear how it intends to do so — which means it has not set forth the basis for the motion as required by the Court's rules.  Consider two easy examples:[7]

- Mr. Wright was nearly starved to death over 17 days with literally no food — in part because his jaw was wired shut when he was delivered to jail, and the City refused to provide any food.  Dkt. No. 52 ¶¶ 166-210.
- Mr. Phillips went into full-blown opiate withdrawal, acute bipolar episodes, and PTSD relapse because the City refused to provide basic prescription medications — and his fiancée was actively even trying to deliver those medications, while Mr. Phillips was constantly asking for them.  Dkt. No. 52 ¶¶ 126-127; 135-142.  He *still* hasn't recovered.

Yet, the City never explains how it is supposedly allowed to knowingly starve someone for 17 days or knowingly force them into acute medical withdrawal.[8]

## Conclusion

To sum up, Plaintiffs believe that following the ordinary pre-motion process here — if only to clarify for the City that it may not assert Plaintiffs are simply "wrong" about their claims or to back off the broad scope of the motion — would be best, and would reduce the need for meta-litigation over what can be filed on a motion to dismiss.  To begin that process, it seems to make sense for Defendants to actually submit a letter that fully explains how they intend to move on each claim — including, especially, individual liability (since Defendants have opposed disclosing the names of Doe officers, *see,* Dkt. No. 44).

---

[7] Other claims are similarly ill-addressed.

[8] Which is to say nothing of the fact that the City does not grapple meaningfully with even the core claims.  The core claims here are about, essentially, the interaction between *People ex rel. Maxian v Brown*, 77 NY2d 422, 426-27 (1991); C.P.L. 140.20; C.P.L. 530.70; and *Cty. Of Riverside v. McLaughlin*, 500 U.S. 56 (1991) (relevant facts alleged at, among other places, Dkt. No. 52 ¶¶ 61-88; 426-435, many of which were newly added to the second amended complaint).  Each Plaintiff was held for four days or longer.  And it is presumptively unreasonable, as a matter of law to hold a person for more than 24 hours when there is **much** more city officials need to do than in the warrant context.  The same language that created the 24 hour state law requirement and cause of action is used in both C.P.L. 140.20 and 530.70.  *See* Dkt. No. 52 ¶¶ 429-435 (quoting language and citing authority).

Yet the City never explains why it should be allowed to hold people more than **twice** as long as the federal standard (and more than **four times** the state law standard) for arraignments when there is less work to do on a warrant than in an initial arrest and arraignment, other than to say "there were indisputably warrants."  Dkt. No. 40 at 3.  But the fact that these were warrant arrests is exactly the point.

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



In the alternative, Plaintiffs ask the Court to set a schedule that includes at least 40 days to respond, so Plaintiffs can address any facts Defendants assert are ill-founded, and appropriately handle a motion that attempts to contest facts in the complaint (whether by motion to strike or otherwise).

As always, we thank the Court for its continued time and attention.

<div style="text-align:right">

Respectfully submitted,

/s/

_____

J. Remy Green
    *Honorific/Pronouns: Mx., they/their/them*
**COHEN&GREEN P.L.L.C.**
*Attorneys for Plaintiffs*
1639 Centre St., Suite 216
Ridgewood, New York 11385

</div>

cc:
All relevant parties by electronic filing.

COHEN&GREEN    Page 5 of 5

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com