

**THE CITY OF NEW YORK**

| HON. SYLVIA O. HINDS-RADIX<br>*Corporation Counsel* | **LAW DEPARTMENT**<br>100 CHURCH STREET<br>NEW YORK, NY 10007 | MARK D. ZUCKERMAN<br>Senior Counsel<br>E-mail: mzuckerm@law.nyc.gov<br>Phone: (212) 356-3519<br>Fax: (212) 788-9776 |
|---|---|---|

February 6, 2023

**VIA ECF**
The Honorable Andrew L. Carter, Jr.
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re: <u>Paul Phillips, et. al. v. The City of New York, et. al.</u>, 21 Civ. 8149 (ALC)(SLC)

Your Honor:

  I am a Senior Counsel in the office of the Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, representing defendant City of New York in the above referenced matter. We write in opposition to plaintiffs' motion for a conference, or in the alternative, for forty days to respond to the City's anticipated motions to dismiss and strike plaintiffs' class allegations. The City respectfully requests that the Court adhere to its prior Order at Docket 42 and set a briefing schedule on the City's motions that does not include a forty day response time for plaintiffs. Plaintiffs' obvious stalling tactics must come to an end.

  At the outset, when the City filed its pre-motion conference letter in anticipation of its motion to dismiss at Docket 40, plaintiffs' response was to request three weeks to file an amended complaint, and that they not have to file a substantive response to the City's letter, which outlined the arguments which supported dismissal. (Docket 41) Plaintiffs explicitly asked the Court to not have to substantively respond to the City's pre-motion conference letter. The Court then allowed plaintiffs to amend their complaint (which they did not have as of right) and ruled that it would set a briefing schedule on the City's anticipated motion to dismiss after plaintiffs amended their complaint yet again. (Docket 42) Thereafter, it became clear that plaintiffs did not need the three weeks requested to amend the complaint, but rather plaintiffs had requested the time the Court gave them merely to serve discovery requests on the City, which in turn led to the disputes that are presently before Magistrate Judge Cave for resolution.

Plaintiffs' letter at Docket 55 is really an attempt to deflect from the undeniable truth that at least two of the named plaintiffs, Rosario and Thompson, have brought frivolous claims. Although plaintiffs appear to now be attempting to shift their municipal liability claim because their existing claim is untenable, it is clear that the heart of plaintiffs' municipal liability claim is set forth in paragraph 15 of the Second Amended Class Complaint: "[R]ather than taking these individuals directly to the appropriate court to appear before a judge in accordance with the law, specifically Criminal Procedure Law (C.P.L.) §530.70 and related statutes, members of the NYPD routinely bring people, including the named Plaintiffs, directly to Riker's Island or other City jails, where they are transferred into DOC custody." Similarly, in their proposed class definition, plaintiffs state that they are attempting to certify a class of individuals "[w]ho NYPD and/or DOC did not bring to court prior to incarceration." (SAC, ¶347(d))[1]

In its letter to Magistrate Judge Cave at Docket 53, the City exposed plaintiffs' false allegations. The plaintiff Rosario was arrested for evidence tampering in connection with a homicide for which he was indicted by a Grand Jury. An arrest warrant and a probable cause i-card issued for the evidence tampering charges, and which led to his arrest. He was brought immediately to the Queens County Supreme Court to see a judge after he surrendered. Not surprisingly, plaintiffs' letter to Your Honor at Docket 55 fails to refute anything that defendants said about the circumstances surrounding Rosario's arrest.

With respect to Thompson, the City exposed plaintiffs' false allegations in its letter to Magistrate Judge Cave at Docket 53 as well. Thompson was arrested for her theft of a credit card and misuse of it thereafter. She was brought to Manhattan Central Booking immediately after her arrest to be arraigned. She also had two open warrants at the time of her underlying arrest. In response, plaintiffs make the unbelievable assertion that the City must have been looking at the wrong documents because if the plaintiff Thompson was arrested by NYPD warrants officers, that means that the arrest must have been on the open warrants, and not the credit card theft. What plaintiffs do not understand is that NYPD warrants officers/detectives also pick individuals up on i-cards. With respect to Thompson, a probable cause i-card had been issued for her arrest on the credit card charges. Simply, she was arrested on charges arising out of her theft of a credit card and brought promptly to Manhattan Central Booking to be arraigned.

With respect to the plaintiff Wright, plaintiffs contend that his outstanding "warrant was not raised to the DA when Mr. Wright was already in court and it could have been resolved." Like Rosario and Thompson, Wright was promptly brought to Court (even during the outset of the COVID frenzy) upon his underlying narcotics arrest, and contrary to plaintiffs' core allegation. It appears that the Criminal Court then remanded him to custody on an open warrant (unrelated to anything NYPD or DOC did), but he then requested to go the hospital instead of going directly to jail. With respect to the scandalous and unsupported allegation that he was then "starved," a claim for deliberate indifference to medical needs is subject to the PLRA exhaustion of

---

[1] Although plaintiffs continually refer to "lists" compiled by DOC **after the four arrests of the individual plaintiffs** herein that would allegedly easily identify class members, as previously argued to Magistrate Judge Cave, there are no lists of individuals picked up on warrants and brought directly to DOC custody by NYPD without being brought to Court.

2

administrative remedies requirement.  <u>Fernandez v. New York City Dep't of Correction</u>, 08 Civ. 4294 (KMW), 2010 U.S. Dist. LEXIS 29686, at *19 (S.D.N.Y. Mar. 29, 2010).  To the extent that plaintiffs do not concede that the exhaustion requirement was not met with respect to Wright (and Phillips), "a court may convert the motion to dismiss 'pursuant to Rule 12(b), to one for summary judgment limited to the narrow issue of exhaustion [because exhaustion of administrative remedies is an affirmative defense] and the relatively straightforward questions about the plaintiff's efforts to exhaust, whether remedies were available, or whether exhaustion might be, in very limited circumstances, excused.'"  <u>Washington v. City of New York, et. al.</u>, 18 Civ. 12306 (CM), 2019 U.S. Dist. LEXIS 212654, at *6-8 (S.D.N.Y. Mar. 15, 2020) (quoting <u>McCoy v. Goord</u>, 255 F. Supp.2d 233, 251 (S.D.N.Y. 2003)).

   Plaintiffs, despite previously asserting in their submissions to Magistrate Judge Cave that the discovery they had already served was the entirety of the discovery needed at this juncture, now contend that they need more discovery to "investigate" these plaintiffs' allegations and/or that they will now "investigate" these plaintiffs' allegations further.[2]  This is contrary to Rule 11 as Rule 11 dictates that a sufficient investigation must have been conducted by plaintiffs prior to bringing these claims.

   To this date, plaintiffs have still never squarely addressed the arguments the City raised for dismissal of plaintiffs' municipal liability claims.  It is clear at this juncture that the plaintiffs Rosario, Thomspon and Wright were all brought directly to court upon their arrests by NYPD.  No other individual identified in plaintiffs' Second Amended Complaint is alleged to have been brought directly by NYPD to DOC custody on a warrant and detained excessively.  As outlined in the City's pre-motion conference request at Docket 40, plaintiffs' municipal liability claims fail.

   Plaintiffs now contend that they intend to make some sort of dipositive cross-motion.  Plaintiffs have never outlined the basis of this proposed motion in accordance with Your Honor's Individual Rules of Practice, which require such an outline in the form a pre-motion conference submission.  Plaintiffs contend that they will be in a position to make their motion upon taking certain discovery in the form of the Requests for Admissions they have served by email.  As Your Honor is aware, the City has brought a motion for a protective order in connection with these Requests for Admission which is presently before Magistrate Judge Cave for resolution.  Plaintiffs also do not seem to recognize that Requests for Admission are "best used to narrow issues for trial, not to 'discover' information."  <u>Siani v. SUNY Farmingdale</u>, 09 Civ. 407 (JFB)(WDW), 2009 U.S. Dist. LEXIS 93593, at *3 (E.D.N.Y. Oct. 7, 2009).

   The City therefore respectfully requests that a briefing schedule be set on its motion to dismiss in accordance with the Court's prior Order at Docket 42 and that plaintiffs' stalling come to an immediate end.

   Thank you for your consideration herein.

---

[2] Plaintiffs do not in any way address in the SAC how the applicable courts either treated any warrant issues and/or the courts' availabilities to hear warrant issues **in their individual cases**.

Respectfully submitted,

/s/ Mark D. Zuckerman
Mark D. Zuckerman

cc: All counsel (via ECF)