

**HON. SYLVIA O. HINDS-RADIX**
*Corporation Counsel*

T**HE** C**ITY OF** N**EW** Y**ORK**
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

MARK D. ZUCKERMAN
Senior Counsel
E-mail: mzuckerm@law.nyc.gov
Phone: (212) 356-3519
Fax: (212) 788-9776

April 19, 2023

**VIA ECF**
The Honorable Sarah L. Cave
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

        Re:  Paul Phillips, et. al. v. The City of New York, et. al., 21 Civ. 8149 (ALC)(SLC)

Your Honor:

        I am a Senior Counsel in the office of the Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, representing defendant City of New York in the above referenced matter. We write in further opposition to plaintiffs' motion for certain Doe discovery as requested at Dockets 67 and 79.

        For a number of reasons, plaintiffs' motion should be denied.[1] The plaintiffs Phillips and Wright seek the identities of the Doe defendants in order to proceed on §1983 claims for deliberate indifference to medical needs. To state a claim for deliberate indifference to medical needs under §1983, a plaintiff must satisfy a two-prong test. "The first prong is objective: 'the alleged deprivation of adequate medical care must be sufficiently serious.'" McNair v. Ponte, 16 Civ. 1722 (LAP), 2019 U.S. Dist. LEXIS 54287, at *35 (S.D.N.Y. Mar. 29, 2019) (quoting White v. City of New York, 16 Civ. 6183 (LGS), 2017 U.S. Dist. LEXIS 131614, at *7 (S.D.N.Y. Aug. 17, 2017)). To satisfy the first prong, "'the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health.'" Id. (quoting Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013). "To create such risk,

---

[1] At the last conference, Your Honor stated that what plaintiffs should look for was a "couple of people or a particular day or shift." (Docket 74, pp. 20-21) Not surprisingly, plaintiffs in their submission at Docket 79 have gone well beyond that which Your Honor stated was going to be allowed.

a condition must be one 'of urgency, one that may produce death, degeneration, or extreme pain, exists.'" Id. (quoting Holmes v. City of New York, 17 Civ. 3874 (WHP), 2018 U.S. Dist. LEXIS 150257, at *18 (S.D.N.Y. Sept. 4, 2018)).

"The second prong is subjective and requires a court to consider the defendant's mental state. Under this prong, 'a defendant possesses the requisite mens rea when he acts or fails to act under circumstances in which he knew, or should have known, that a substantial risk of serious harm to the pretrial detainee would result.'" Id., at 36 (quoting Feliciano v. Anderson, 15 Civ. 4106 (LTS), 2017 U.S. Dist. LEXIS 47893, at *24-25 (S.D.N.Y. Mar. 30, 2017)) (applying Darnell [v. Pieniero, 849 F.3d 17, 29 (2d Cir. 2017)] to a deliberate indifference to medical needs claim).

1. John Doe 1-Plaintiffs contend that John Doe 1 somehow had responsibility for the medical treatment that the plaintiff Phillips later received at Rikers Island (when John Doe 1 clearly was not even present), and despite the fact that plaintiffs concede that Phillips was allowed to take his medications to Rikers Island by John Doe 1.  Plaintiffs further suggest that handwriting samples should be collected from the NYPD's Bronx Warrants Squad because whoever wrote the subject command and holding pen entries took Phillips to Rikers Island from the NYPD's Bronx Warrants Squad.  Plaintiffs have no basis whatsoever to support this contention and it is simply wrong.  Lt. John Pirando wrote the subject command log entry and he was the desk officer at the NYPD's 50th Pct. (which is at the same location as the Bronx Warrants Squad) on July 3, 2020, when Phillips was there.  The desk officer is normally responsible for making such entries in the command log.  In response to Your Honor's Order of February 7, 2023, Lt. Pirando was identified as the desk officer in the City's discovery responses which were served on February 27, 2023.  As the desk officer, Lt. Pirando would not have been the person who drove Phillips to Rikers Island on July 3, 2020, and is therefore not John Doe 1 as asserted in plaintiffs' Second Amended Complaint, ¶108.  We are still trying to identify who did take Phillips to Rikers Island, though any claim against that officer for deliberate indifference to medical needs is meritless under the foregoing authorities.

2. John Roes 1 and 2-DOC may be able to identify these intake officers from when Phillips arrived at Rikers Island on July 3, 2020.  However, the allegation against the John Roes 1 and 2, that they merely told Phillips that his concerns over medications would be resolved at the clinic, falls far short of stating a plausible deliberate indifference to medical needs claim.

3. Jane Roe 3, John and Jane Roes 6-8, Jane Roe 10 and "unknown medical personnel"-For the first time, plaintiffs contend that they wish to expand this litigation yet again, and to include as defendants the medical personnel with whom Phillips interacted at Rikers Island, or from whom he received medical care while detained.  These individuals were not even John and Jane Does in plaintiffs' Second Amended Complaint, as the John and Jane Does that plaintiffs claimed they were seeking in the Second Amended Complaint were the identities of "the Department of Corrections Members John and Jane Does 1-14, [who] were DOC employees or staff, who violated Plaintiffs' rights, as set forth and described more fully below."  Upon information and belief, the medical personnel who plaintiffs now want to add as defendants are or were employees of Correctional Health Services.  Further, Phillips has never provided a

medical release in order to obtain his medical records, which may shed more light on which medical personnel was involved.

4. John Roes 4 and 5-John Roes 4 and 5, according to plaintiffs, "were stationed at the desk in the clinic on July 3, 2020 at or around 7-8 p.m." (Docket 79, p. 4) While DOC may be able to identify the officers who were assigned to the AMKC clinic on July 3, 2020 while Phillips was there, it is unfathomable how such officers could be liable pursuant to a deliberate indifference medical needs theory when the decisions of which Phillips complains were medical decisions made by medical personnel. DOC officers do not make medical decisions of the type of which Phillips complains.

5. John Roe 9-John Roe 9, according to plaintiffs, is a DOC officer with whom Phillips interacted on July 4, 2020, and who allegedly suggested to Phillips that he "put in for a sick call." Even if DOC could identify the officers working in Phillips' housing area for the "day shift" on July 4, 2020, Phillips' allegation against John Roe 9 falls far short of plausibly alleging a claim for deliberate indifference to medical needs.

6. John and Jane Roes 11-15-John and Jane Roes 11-15 are purportedly correction officers who the plaintiff Wright interacted with at VCBC. Even if the allegations that plaintiffs set forth in their letter at Docket 79 could set forth a plausible claim for deliberate indifference to medical needs by Wright, which they do not under the foregoing authorities, Wright does not provide sufficient information for DOC to identify such officers. Wright does not provide with any certainty what day he had such interactions or what time of day or what tour of duty in which these purported interactions took place. At a minimum, Wright could have interacted with at least, and approximately, 20 correction officers each day while at VCBC. Given the undue burden on DOC as to any attempt to identify these correction officers, this branch of plaintiffs' motion should be denied.

There is also a more fundamental problem with what plaintiffs are attempting to do here and which they do not address. They have already amended their complaint twice. Pursuant to Rule 15, Fed. R. Civ. P., they clearly do not have an amendment as of right remaining at this time. The City has already filed its motion to dismiss pursuant to Judge Carter's scheduling orders. The City's motion to dismiss addresses plaintiffs' deliberate indifference to medical needs claims made in the Second Amended Complaint, and seeks the dismissal thereof. None of the factual allegations set forth in plaintiffs' letter at Docket 79 are even set forth in the Second Amended Complaint. Plaintiffs should not be allowed a further amendment at this juncture, which once again would only delay this case to the City's prejudice.

Based on the foregoing, plaintiffs' motion for Doe discovery should be denied.

Thank you for your consideration herein.

Respectfully submitted,

/s/ Mark D. Zuckerman
Mark D. Zuckerman

cc: All counsel (via ECF)