**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Phillips, et al.

*Plaintiffs,*

v.

The City of New York, et al.,

*Defendants*

**21-cv-8149 (ALC) (SLC)**

---

**PLAINTIFFS' REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF THEIR MOTION TO STRIKE DEFENDANTS'**
**MOTION TO DISMISS (IN PART OR IN WHOLE)**

---

**COHEN&GREEN P.L.L.C.**
J. Remy Green
1639 Centre St., Suite 216
Ridgewood, New York 11385
t : (929) 888-9480

**GIDEON ORION OLIVER**
277 Broadway, Suite 1501
New York, NY 10007
t: 718-783-3682

**KAISHIAN & MORTAZAVI LLC**
Maryanne K. Kaishian
55 Washington St., Suite 728
Brooklyn, NY 11201

April 25, 2023

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ...................................................................................................... iii

PRELIMINARY STATEMENT .................................................................................................. 1

FACTUAL STATEMENT ........................................................................................................... 2

ARGUMENT ................................................................................................................................ 4

    I.    Defendants Waive Opposition to the Substance of the Motion .......................................... 5

    II.   Defendants' Argument About *Kramer* Misreads *Kramer* ................................................. 7

    III.  Defendants' Aside About Injunctive Relief (Opp. at 7-8) Makes a Fairly Basic Mistake, Which In Turn Undermines Their Aruguments About Remedies. ......................................... 8

    CONCLUSION ........................................................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barnett v Mount Vernon Police Dept.*,
  523 F App'x 811 (2d Cir. 2013)...................................................................................6

*In re Eur. Govt. Bonds Antitrust Litig.*,
  2022 US Dist LEXIS 45011 (SDNY Mar. 14, 2022)......................................................7

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
  2023 US Dist LEXIS 22328 (ND Cal Feb. 9, 2023).......................................................9

*First Cap. Asset Mgmt., Inc. v. Brickellbush, Inc.*,
  218 F.Supp.2d 369 (S.D.N.Y. 2002)............................................................................5

*Gallagher v NY State Bd. of Elections*,
  477 F Supp 3d 19 (SDNY 2020)...............................................................................4, 5

*Kramer v Time Warner, Inc.*,
  937 F2d 767 (2d Cir. 1991)......................................................................................7, 8

*Lemay v. Mays*,
  18 F.4th 283 (8th Cir. 2021) .......................................................................................6

*Marlin v City of NY*,
  2016 US Dist LEXIS 122426 (SDNY Sep. 7, 2016)............................................*passim*

*Martinez v City of NY*,
  2022 US Dist LEXIS 210204 (E.D.N.Y. Nov. 18, 2022) ...............................................2

*Putman v. City of Minneapolis*,
  No. 22-cv-1369, 2022 U.S. Dist. LEXIS 138540 (D. Minn. Aug. 4, 2022) ....................6

*Roth v. Jennings*,
  489 F.3d 499 (2d Cir. 2007) ..............................................................................1, 6, 8, 9

*SEC v Medallion Fin. Corp.*,
  2022 US Dist LEXIS 137463 (SDNY Aug. 2, 2022)......................................................9

*In re UBS AG Sec. Litig.*,
  No. 07 Civ. 11225, 2012 U.S. Dist. LEXIS 141449, 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012)
  ....................................................................................................................................5

*Wagner v Royal Bank of Scotland Grp. PLC*,
  2013 US Dist LEXIS 127551 (SDNY Sep. 5, 2013).......................................................7

**Other Authorities**

Chris Gelardi, *Rikers Staff Tampered With Records, Hiding Intake Rule Violations, Documents Show*, N.Y. Focus (Oct. 17. 2022) ................................................................................................................................... 3

Fed. R. Civ. P. 15(a)(1)(B) .............................................................................................................. 10

Ind'l Practices of Judge Andrew L. Carter § 2(D)(i) and (ii) (Sep. 18, 2020) ......................................... 10

Louis A. Molina, *Testimony before the New York City Council Committee on Criminal Justice* (Mar. 23, 2022) 3

## PRELIMINARY STATEMENT

Defendants' Opposition (Dkt. No. 80, "Opp.") doesn't really merit much reply at all.  It fails to cite — much less engage with — the governing Second Circuit case.[1]  It openly admits Defendants are trying to persuade the Court, on a motion to dismiss, that contrary to the facts alleged in the complaint, three plaintiffs "were only brought to DOC custody after they were brought to court to see a judge."  Opp. at 5.  Their only argument that the Court can take that approach is a claim that, because Defendants say so, "Plaintiff[s'] story is not true."  *Marlin v City of NY*, 2016 US Dist LEXIS 122426, at *4 (SDNY Sep. 7, 2016).[2]  And indeed, Defendants get to do this (they explain) because they *also* say the for-truth-accuracy of the documents they're attaching is "not subject to dispute."  Opp. at 5.  Thus, (Defendants conclude) the Court has no option but to take *their* version of the story as true, and conclude Plaintiffs' version is full of "untruths" (Opp. at 5), "lying and games" (Dkt. No. 71 at 2), and "false allegations" (Dkt. No. 56 at 2).  If the gambit works, it's a pretty neat trick.

But it does not work.  That is not how any of this works.  A motion to dismiss is, as Judges of this Court have needed to remind the City "lamentabl[y]" often, "not the time for asserting that Plaintiff's story is not true, or that things did not happen as Plaintiff described them, or for establishing that the police officers did nothing wrong."  *Marlin*, 2016 US Dist LEXIS 122426, at *3.  Quite the opposite.  Attachments to a motion that are "solely evidence presented by Defendants to establish their version of the facts … [they] will not be considered." *Id.* at *26.

One hopes that, "[e]ventually, the City will figure out that the least expensive way to litigate these cases is sometimes to join issue." *Id.*  Until that time, Courts will apparently have to deal with motions like this one.

---

[1] *Roth v. Jennings,* 489 F.3d 499, 510 (2d Cir. 2007)
[2] Like *Roth*, the City does not bother to cite *Marlin*, waiving any opposition to its application.

**FACTUAL STATEMENT**

Defendants do not address, even in passing, the fact that the documents they attach do not say the things they cite them for.  *See* Dkt. No. 78 at 8-16; *but see generally,* Opp.  For example, Zuckerman Ex. E, is an "OLPA" form that said — as of March 20, 2022 at 0122 (e.g., about 1 a.m.) that Mr. Wright "***WILL*** BE RETURNED ***IN THE MORNING*** FOR A SUPREME COURT WARRANT."  Zuckerman Ex. E at 2 (emphasis added), *discussed, with same emphasis, in* Dkt. No. 78 at 10.  As noted in the moving papers, because the document's latest entry discussed what would theoretically happen the next morning, "[g]iven the existence of linear time, the document cannot say anything about what actually happened 'in the morning.'"  *Id.*  Put simply:  A statement about what will supposedly happen in the future is not a statement about what ultimately did happen.[3]

But Defendants do not even address this.  Even with the issue appearing in the motion, Defendants respond by simply declaring that exhibits stand for "the simple (and which also should be undisputed) facts that the plaintiffs Wright, Rosario and Thompson were brought directly to court to see a judge upon their arrests on charges unrelated to any warrants, as well as each of their arrest to arraignment times."  Opp. at 4.

But since the City has not substantively contested that the documents ***do not say*** Plaintiffs "were brought directly to court to see a judge," that is factually conceded for this motion.[4]  And that leaves the underlying motion to dismiss based on both incorrect version of events.  As it stands, no document shows that any Plaintiff saw a judge on their warrant.  Indeed, the ***absence*** of the authoritative documents — Court records such as "a court order, a transcript, hearing minutes, and

---

[3] Perhaps this requires no further explanation, but for the sake of completeness, Plaintiffs note that the day-to-day examples that show this are legion.  Imagine:  Yesterday, I texted my partner I was "going to do yoga tomorrow."  Perhaps I even really meant it at the time.  But today, my motivation was gone.  I ordered take out and watched a movie instead.  My texts from yesterday certainly do not show I ultimately did that yoga session.

[4] Nor does the City contest that the documents they provided are misdescribed in the Zuckerman Declaration.  *See, e.g.,* Dkt. No. 78 at 8 n. 5 (detailing how it would be impossible for the warrant submitted to be "exactly" the invalid 1989 bench warrant).

the like" that show the warrants **were** adjudicated (*discussed, and uncontested*, in Dkt. No. 78 at 10-11) — would at the least allow Plaintiffs to argue inferences from their absence to the jury. *See, e.g., Martinez v City of NY*, 2022 US Dist LEXIS 210204, at *28-29 (E.D.N.Y. Nov. 18, 2022). But the motion itself is left premised on an assertion that the **truth** of the contents — contents Defendants now tacitly concede they've misrepresented — of various documents means the Court can disregard the allegations in the operative complaint. As set out below, that calls for the motion to be stricken and remade — if Defendants can manage it — in proper form.

Defendants also concede (again by silence) that the City knows DOC personnel forge the kinds of records at issue routinely (as well as the authenticity of the email saying so). The moving papers detailed an exchange where City officials noticed, over a "few days," "17 incidents where a person in custody in the EMTC intake had their 'In Custody at Court' start time (the time reported on their Securing Order) changed on the DOC's Intake Dashboard" to hide illegally long detentions. *See* Dkt. No. 78 at 22-24. That is, the City has admitted that over a few days, there were at least 17 incidents of DOC personnel forging exactly those documents it is asserting could not possibly be wrong here.

With the City's concession those forgeries happened, its bald assertion that the truth-of-the-matter-asserted accuracy of records it admits have been forged rings quite hollow. But the point is simple: The City admits these are kinds of records that DOC officials have forged at stunning rates. So, as the DOC's spokesperson, Louis Molina, has said, "No one should accept data that obscures mismanagement and neglect or covers up inhumane and dangerous conditions." Chris Gelardi, *Rikers Staff Tampered With Records, Hiding Intake Rule Violations, Documents Show*, N.Y. FOCUS (Oct. 17. 2022), *quoting* Louis A. Molina, *Testimony before the New York City Council Committee on Criminal Justice* (Mar. 23, 2022).[5]

---

[5] *Available at* https://www.nyc.gov/site/doc/media/commissioner-molina-tetimony-03-2022.page

Finally, Defendants baldly assert there is "no serious dispute that Operations Order 6/92 is presently in effect at DOC." Opp. at 7 n. 1. Even now, the City does not offer even a declaration to that effect (just a promise that they might offer one at some point) — let along a judicially noticeable record, which is all that would be permissible on a motion to dismiss. The point is not to raise a fact dispute (which, again, is not the purpose of a motion to dismiss at all) — but that the mode in which Defendants offered a record referenced nowhere in the complaint amounted to them just saying, "trust us," without even the vague assurance that *maybe* perjury penalties would follow for a mistruth.[6] Again, unlike the Patrol Guide, the DOC's Operations Orders are not publicly available. They are not, as far as Plaintiffs understand, even available to the Law Department without specific requests. There is no competent testimony — one way or the other — about what DOC's current policy is. And an Operations Order that is more than 30 years old, noticed for its contents, does not establish by itself what DOC policy is today.

## **ARGUMENT**

In the main, Defendants' opposition leaves the motion uncontested because of what it waives. It is well-settled that a "failure to respond to Plaintiff[s'] substantial argument can be taken as a concession of the case's applicability." *Gallagher v NY State Bd. of Elections*, 477 F Supp 3d 19, 48, n. 4 (SDNY 2020). So the fact that Defendants simply don't bother citing most of the authority in the moving papers — "much less distinguish" it — leaves the motion conceded on the substance.

A few other things bear mentioning directly: First, ***None of Plaintiffs' claims turn on what processing records say***. Every case Defendants cite, in some way, turns on noticing the ***fact*** of the

---

[6] Since Defendants admit by silence that it is not true that the version of the 1989 warrant is the actual warrant, it is relevant that there is likely to be no consequence for that misstatement. And again, that is not to say there ***should*** be a consequence (even if one would be technically supported) — but instead, that discovery serves the necessary function of making sure these ground level facts are vetted, and not simply sourced from one party's *ipse dixit*.

contests of various records.  They do not cite a single case when a Court noticed the ***truth*** of the assertions in a document never mentioned in a complaint, because, of course, that case does not exist.  Likewise, Defendants just saying "there is no dispute" does not mean there is no dispute.  Defendants say "'No dispute exists regarding the authenticity or accuracy' of any of the documents submitted the City [sic]."  Opp. at 7.  ***But of course there is a dispute about the accuracy*** — or at least the accuracy of Defendants' aggressive reading of those records.  Defendants explicitly say "refute … plaintiffs' untruths."  Opp. at 5.  To then turn around and say "no dispute exists" is bad faith — and amateurish bad faith at that.  There is a dispute about accuracy (or again, at least the accuracy of Defendants' readings of the documents).  That's literally the reason Defendants care so much about getting to use these records.

In sum, for essentially the reasons set out in the moving papers, the motion should be granted.  And because Defendants are so candid that they are using documents to — as they put it — "***refute … plaintiffs' untruths***" (Opp. at 5 (emphasis added)), they tacitly admit their motion is fully run through with the impermissible use of documents.  And therefore, the only way to cure that, without prejudice to Plaintiffs, is to strike the entire motion — none of the arguments in the motion even make sense without ignoring the facts in the complaint.

## I.   <u>Defendants Waive Opposition to the Substance of the Motion.</u>

As noted above, "failure to respond to Plaintiff[s'] substantial argument can be taken as a concession of the case's applicability."  *Gallagher*, 477 F Supp 3d at 48, n. 4, *citing In re UBS AG Sec. Litig.*, No. 07 Civ. 11225, 2012 U.S. Dist. LEXIS 141449, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (recognizing that a party "concedes through silence" to arguments by its opponent that it fails to address); *First Cap. Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F.Supp.2d 369, 392-93 & n.116 (S.D.N.Y. 2002) (considering an argument not addressed in opposition brief to be waived).  Thus,

when a party does "not cite—much less distinguish—" core cases cited by its adversaries, it waives

opposition.   Here, that waiver covers, for a total failure to cite — much less distinguish — the

following (among other cases):

- *Roth v Jennings*, 489 F3d 499 (2d Cir. 2007), holding that even when a Court **can** consider certain documents, "the court is to consider them on a Rule 12(b)(6) motion only to determine what the documents stated, and **not to prove the truth of their contents**" (*id.* at 509 (emphasis in original));[7]

- *Marlin v City of NY*, 2016 US Dist LEXIS 122426, at *4 (SDNY Sep. 7, 2016), holding a motion to dismiss "is not the time for asserting that Plaintiff's story is not true, or that things did not happen as Plaintiff described them, or for establishing that the police officers did nothing wrong," and excoriating the City for doing the opposite (*id.* at *4 and *26); and

- *Barnett v Mount Vernon Police Dept.,* 523 F App'x 811, 813 (2d Cir. 2013), directly holding that use of the substantive content of police reports for their truth is improper on a motion to dismiss;

Each of these failures largely waives the motion.

*Roth* illustrates the point particularly clearly — although Defendants' failure to even cite *Barnett* is

also troubling.   In *Roth,* the Second Circuit authoritatively said documents can never be used on a

motion to dismiss "to prove the truth of their contents."   489 F3d at 509.   In fact, it put that text in

bold.   Yet Defendants explicitly say they are using the documents they submitted (in their words) "to

refute … plaintiffs' untruths."   Opp. at 5.   Since that use is unambiguously a use "to prove the truth

of their contents" — Defendants use a cognate of "truth" (and that's the only cognate in their entire

---

[7] On this same topic, Defendants also fail to cite — much less distinguish — quite a few other cases.  Those include *Lemay v. Mays*, 18 F.4th 283, 289 (8th Cir. 2021) ("he does not simply want us to consider the police report's existence. He also wants us to accept its narrative as truth…. Such use of documents outside the pleadings goes far beyond what we can consider at this stage of the litigation"); *Putman v. City of Minneapolis*, No. 22-cv-1369 (KMM/DTS), 2022 U.S. Dist. LEXIS 138540, at *2 n.2 (D. Minn. Aug. 4, 2022) (court "may not, at the pleading stage, consider" a "police report" for "the truth of the matter asserted").  This issue pervades Defendants' papers in opposition and the motion alike.  Indeed, Defendants admit explicitly that "Exhibit M is submitted for background *only to refute another of plaintiffs' untruths*."  Opp. at 5.  And somehow, that's the only time the word "truth" appears in Defendants' opposition.  It is genuinely hard to tell if Defendants are sincerely asserting this is how motions to dismiss work and that the Court should ignore the Second Circuit on this (unlikely) — or are just putting in opposition for the sake of opposition, and pulling together whatever they can come up with.

memo) — and Defendants provide no basis for the Court to ignore *Roth* (or any of the other cases above), Defendants concede their motion to dismiss is improper.

## II.   **Defendants' Argument About *Kramer* Misreads *Kramer*.**

Defendants make much of a line about "nuisance settlements" in *Kramer*.  *See* Opp. at 2 and 7. But *Kramer* has little bearing here.  *Kramer* involved a situation when a party quoted portions of a document — the "very documents that are alleged to contain the various misrepresentations or omissions" — and the Court found it was permissible to take "judicial notice of **the contents** of relevant public disclosure documents."  *Kramer v Time Warner, Inc.*, 937 F2d 767, 774 (2d Cir. 1991) (emphasis added).  Nothing *Kramer* establishes some kind of free-wheeling license for the City to selectively disclose its own records — omitting the best evidence — and use those records not for the fact of their contents, but to "refute" supposed "untruths."  Opp. at 5.  Put differently:  Defendants ignore that *Kramer* is (1) limited to notice for contents, not truth and (2) limited to documents quoted in the complaint.  The caution the *Kramer* Court offered was about a situation when a plaintiff selectively quoted from a record to argue the quote was misleading, but context would offer a different meaning.  Of course a court is not precluded from evaluating such a statement in context.  And by missing that context, Defendants make a strange claim that Plaintiffs are somehow making a "selective and misleading use of documents" when in fact, it is the City doing just that.  *See, e.g.*, pp. _____ above.

Indeed, it does not take long to find courts rejecting Defendants' attempted use of *Kramer* — whether the meritless use (1) stretches *Kramer* beyond application to documents quoted in a complaint or (2) rewrites *Kramer* to no longer bar use of documents for the truth of what they assert.  So, of course, *Kramer* does not permit a court to inspect documents for their contents when there are no allegations in a complaint about those documents.  *See, e.g., In re Eur. Govt. Bonds Antitrust Litig.*, 2022 US Dist LEXIS 45011, at *43 (SDNY Mar. 14, 2022) ("the FAC does not make any allegations about J.P. Morgan's code of conduct and the Court has no permissible reason to inspect the code to verify

whether an alleged statement was indeed made or omitted there"). And similarly, *Kramer* does not permit a court to take documents for the truth of what they assert. *Wagner v Royal Bank of Scotland Grp. PLC*, 2013 US Dist LEXIS 127551, at *9 (SDNY Sep. 5, 2013) ("Here, by contrast, the RBS Defendants rely on Form 4 not to demonstrate that certain statements were included or omitted, but rather to establish the truth of the matters asserted in those statements. That is not permitted.").

Ultimately, Courts have not used *Kramer* as an exception to the rule in *Roth* — perhaps because the cases do not conflict at all. But Defendants seem to be arguing that *Kramer* means *Roth* meaningless, and that the *Kramer* Court didn't ***really*** mean it when it limited the rule to notice of a documents "contents[,] but only to determine ***what*** the documents stated" and "not to prove the truth of their contents." 937 F2d at 774 (emphasis added). But since Defendants do not bother citing *Roth* — which the moving papers cited for its opposite rule — to make that argument, it is waived. And because Defendants' *Kramer* argument needs to pass through that undistinguished rule from *Roth* to have any application, it can — perhaps must — therefore be ignored.

## III. <u>Defendants' Aside About Injunctive Relief (Opp. at 7-8) Makes a Fairly Basic Mistake, Which In Turn Undermines Their Aruguments About Remedies.</u>

Although Defendants say that somehow their argument about standing is different (Opp. at 7), they end up explaining exactly why the argument is the same. As Defendants explain, the standing argument turns on the claim that the truth of the facts in various documents "demonstrate that the named plaintiffs Wright, Rosario and Thompson's … w[ere] brought to court to see a judge." *Id.* Just so: Even on standing, Defendants arguments rely on the initial factual move of saying, "Plaintiffs are lying." But since Defendants fail to contest that this "is not the time for asserting that Plaintiff's story is not true, or that things did not happen as Plaintiff described them, or for establishing that the police

officers did nothing wrong," that argument fails for the same reasons. *Marlin,* 2016 US Dist LEXIS 122426, at *4 (SDNY Sep. 7, 2016).[8]

Further, Defendants demonstrate in that point and the remedy argument that follow (*e.g.,* Opp. at 7-9), the entire basis of every part of the motion is their argument that "things did not happen as Plaintiff described them." *Marlin,* 2016 US Dist LEXIS 122426, at *4 (SDNY Sep. 7, 2016).  Nothing in Defendants' Point II explains what argument would even **remain** in Defendants' motion if their basic refusal to accept the SAC's allegations as true falls away.  As far as Plaintiffs can tell, there is no other argument.  With perhaps some limited exceptions, all arguments in the motion to dismiss — regarding standing, remedies, class plausibility, and the like — turns on the initial assertion that every Plaintiff but Paul Phillips saw a judge (contrary to what is alleged in the SAC).[9]

In short, Defendants' arguments are completely pervaded by their use of external documents "**to prove the truth of their contents**."  *Roth,* 489 F3d at 509 (emphasis in original).  And far from being an "outlier" in result (Opp. at 8), *Medallion* was an outlier in attorney conduct.  As here, the issue was not — as Defendants assert without engaging with the decision's rationale — that there was some arbitrary cap on the **number** of exhibits a defendant can attach to a motion to dismiss.  *But see,* Opp. at 8 ("even in that case, Judge Kaplan was faced with a situation where the defendants submitted 39 exhibits").  Rather, as the decision explains fairly clearly, the problem was that the way the defendants used the exhibits meant the broader motion was "interspersed with material not properly considered."

---

[8] Defendants' assertion otherwise — Opp. at 9 n. 4 — provides no explanation.  But that seems to be because Defendants refuse to even conceive that it might be improper to argue that "things did not happen as Plaintiff described them" on a motion to dismiss.  *Marlin,* 2016 US Dist LEXIS 122426, at *4 (SDNY Sep. 7, 2016).  Thus, Defendants do not even notice that, as noted in n. 9 below, they are relying on that initial move.

[9] *See, e.g.,* Dkt. No. 64 at 24 (arguing the class allegations should be stricken because "the only individual who even arguably alleges that he was brought directly to DOC custody, which is the cornerstone of plaintiffs' class allegations (see Complaint, ¶¶ 1, 7, 15, 71(d), 254, 262 and 347(d)), is Phillips").

*SEC v Medallion Fin. Corp.*, 2022 US Dist LEXIS 137463, at *7 (SDNY Aug. 2, 2022).[10]  Put differently, it was no more than a conventional application of *Roth*.[11]

While, of course, the Court might ordinarily pass on a "motion without considering any excluded exhibits" (Opp. at 8), the problem is that the **only** statement of facts here is drawn from the City's exhibits.  Again, the City does not dispute — as set out in the moving papers — that it is explicitly using the exhibits (in it its own words) to "expose plaintiffs' false allegations" (Dkt. No. 56 at 2), "refute another of plaintiffs' untruths" (Opp. at 5), show that Plaintiffs are "lying" (Dkt. No. 71 at 2), and the like.  Plaintiffs' version of the story does not appear in Defendants' motion.  So this is hardly an ordinary situation — indeed, it's not even clear if Defendants would be moving to dismiss if they were forced to accept the facts as pled.[12]

For essentially the same reasons, simply disregarding the exhibits is not an adequate remedy.  A motion to dismiss should give fair notice of the reason a party thinks a claim should be dismissed.  Indeed, that's the theory behind the Individual Rules of many judges of this Court (*see, e.g.,* Ind'l Practices of Judge Andrew L. Carter § 2(D)(i) and (ii) (Sep. 18, 2020)) and Federal Rule 15(a)(1)(B) — which all add up to ways to force parties to sort out whether amendments might address an alleged deficiency of pleading.  But here, Defendants' core theory of dismissal is that Plaintiffs are pleading "untruths" (Opp. at 5) and "things did not happen as Plaintiff described them."  *Marlin*, 2016 US Dist

---

[10] In that regard, the motion to dismiss here is far worse than the one in *Medallion*.  While the factual statement in the motion Judge Kaplan struck in *Medallion* was "drawn from the allegations in the Amended Complaint and documents" (2022 US Dist LEXIS 137463, at *7), here the version of facts alleged in the amended complaint barely makes an appearance in Defendants' motion.

[11] Even taking the City's claim that *Medallion* is an outlier at face value, it does not explain why it's a **bad** outlier.  Indeed, perhaps a little more outlier-type decision making is in order.  In *Marlin,* Judge McMahon mused that "[e]ventually, the City will figure out that the least expensive way to litigate these cases is sometimes to join issue" if it wants to "take advantage of the evidence in Defendants' possession."  *Marlin*, 2016 US Dist LEXIS 122426, at *26.  Yet, going on a decade later, the City is still doing exactly the same thing — and wasting everyone's time and money.  So, maybe some further assistance in "figur[ing] out" what can be done on a motion to dismiss is necessary.  *But cf. In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 2023 US Dist LEXIS 22328, at *16-17 (ND Cal Feb. 9, 2023) (Sometimes lawyers reflexively oppose the other side's requests without giving any thought to their actions. That does not seem like Facebook and Gibson Dunn.").

[12] Presumably, the answer, as a practical matter, is "yes" — but the current motion does nothing to explain **why**.

LEXIS 122426, at *3.  Defendants are certainly entitled to move to dismiss.  But likewise, Plaintiffs are entitled to understand exactly the basis of the motion.  So, striking the motion, given how Defendants have framed it — not even bothering to recite the facts as alleged — is the only way Plaintiffs can receive that notice.

## CONCLUSION

For all the reasons discussed above, and in particular because Defendants have essentially waived substantive opposition, Plaintiffs respectfully request that the Court grant their motion and strike the portions of ECF No. 63-1 identified above as the Records and the DOC Order, and further strike or deny the balance of the motion to dismiss without prejudice to renewing on proper papers, given that the improper material is fully interspersed throughout the motion.

Dated:  April 25, 2023
        Queens, New York

Respectfully Submitted,

**COHEN&GREEN P.L.L.C.**

/s/
_____

**BY:**      J. Remy Green

1639 Centre St., Suite 216
Ridgewood, New York 11385
t : (929) 888-9480
f:  (929) 888-9457
e:  remy@femmelaw.com

**GIDEON ORION OLIVER**
277 Broadway, Suite 1501
New York, NY 10007
t: 718-783-3682

**KAISHIAN & MORTAZAVI LLC**
Maryanne K. Kaishian
55 Washington St., Suite 728
Brooklyn, NY 11201