

May 12, 2023

Hon. Sarah L. Cave, U.S.M.J.
United States District Court, Southern District of New York
500 Pearl Street
New York, NY 10007-1312

<u>By Electronic Filing.</u>

        Re:    <u>Phillips v. City of New York</u>, 21-CV-8149 (ALC)(SLC)

Dear Judge Cave:

      As the Court may recall, our firm represents Plaintiffs and the putative class in the case above. I write in response to the Court's Order at Dkt. No. 92.

      As we discussed at previous conferences, there is a big picture question and caveat to all this — and we think a brief teleconference to discuss would be appropriate — that amounts to "how do Plaintiffs amend to add Does without disrupting the ongoing process around Defendants' motion to dismiss?"

      Leaving room for that caveat, discussed at the end of this letter, here is how Plaintiffs think we should proceed. For convenience, we have included, in italics, Defendants' notes on investigation, so the Court only needs to look at one document. Because of the overlap in items 2(b), (d), (e), and (f), we address item 2(c) at the end.

      **2(a)**: *John Doe No. 1 in plaintiffs' letter at Docket 79, upon information and belief, is NYPD Det. Michael Prilook. Det. Ruben Guerrero and Sgt. Brian Garay, upon information and belief, were also in the NYPD vehicle that was used to transport plaintiff to Rikers Island on July 3, 2020.*

      Defendants have identified the Doe, so Plaintiffs are prepared to name that person.

      **2(b):** *DOC has identified 8 correction officers who were assigned to AMKC Intake for the tour in which plaintiff is believed to have been brought to AMKC on July 3, 2020*

      **2(d):** *DOC has identified 11 correction officers who were assigned to the AMKC medical clinic for the relevant tour on July 3, 2020.*

      **2(e):** *DOC has identified 7 non-white female captains working at AMKC the morning of March 22, 2020 and 12 non-white female captains working at AMKC the morning of March 23, 2020.*

      **2(f):** *DOC has identified 2 non-white male captains who were working at VCBC on March 29, 2020 at lunchtime and 4 non-white captains who were working at VCBC on March 30, 2020. (One of the captains worked at that time on both days)*



For these four items (and the relevant part of 2(c), as discussed below), Defendants appear to have narrowed the universe of potential Does significantly — and certainly below the level the Court had expressed a burden concern over. Given that, we do not believe there is any live objection (other than Defendants' general objection to doing any discovery at all) to producing the information necessary for Plaintiffs to figure out if these small groups of 8, 11, 7, 12, 2, and 4 respectively actually contain the Does.

So, as we discussed at the conference, and as mentioned in prior correspondence (*see* Dkt. No. 79 at 1), we believe receiving a list[1] of the handful of people responsive to each item, along with a photograph of that person, is the best way to proceed. As for how Plaintiffs' "intend to proceed," given the impending potential statute of limitations (*see* Dkt. No. 67 at 2-3 (mentioning the COVID-19 toll, which may be picked up with the state statute of limitations under § 1983[2])), Plaintiffs either would ask that the Court enter an order requiring those items, or they will move to compel production of them.

From there, Plaintiffs can see which if any of the people are the people they remember interacting with, or whether there is some further relief they believe they need to move for to have diligently attempted to name the Does.

**2(c):** *Immediately following the filing of this letter, I will be forwarding to plaintiffs' counsel the medical records for Paul Phillips that this office obtained with the medical release provided by Mr. Phillips. The medical records reflect the identities of the medical personnel involved in Mr. Phillips's treatment while at AMKC. As to Jane Roe 10 in plaintiffs' letter at Docket 79, the woman who was purportedly working at the medication counter at AMKC in the late morning of July 4 or 5, 2020, HHC has identified the women who were working at the medication counter on those two dates. They are different women for each of the two days. (one per morning).*

For the final sentence about Jane Roe 10, the discussion above applies — that is, we think the next step is that Defendants identify the two "different women" for each date, and provide pictures, so that Plaintiffs can determine which one is Jane Roe 10.

For the rest, given Defendants' representation that the medical records "reflect the identities of the medical personnel involved in Mr. Phillips's treatment" (or non-treatment), that places those people in the same situation as for 2(a), and in the place where we do not think any further investigation is necessary — since Defendants are representing there are not *other* medical personnel outside the records.

Finally, the caveat. There is currently a fully briefed motion about Defendants' improper use of documents on the motion to dismiss, that we think is likely to result in the Court striking the

---

[1] As a point of clarity, we do not yet have the lists Defendants have compiled. That is not to say we believe Defendants were required to give them to us, but just to be clear on who has what.

[2] Courts have generally reached that result. *Bell v Saunders*, 2022 US Dist LEXIS 101994, at *9-10 (NDNY June 8, 2022). However, there is no binding authority yet, so missing a potential statute of limitations — that the City will certainly argue is the drop dead date — remains significantly prejudicial.



Page 2 of 3

Cohen&Green P.L.L.C.   ·   1639 Centre Street, Suite 216 · Ridgewood, New York · 11385   ·   t : (929) 888.9480   ·   f : (929) 888.9457   ·   FemmeLaw.com



motion.  But if Plaintiffs amend now, that stack of motions would collapse, given that amendment would technically moot out Defendants' motion in its entirety.[3]  The parties would then likely have to re-brief everything, since it is clear no one agrees on whether Defendants are allowed to use police and prison documents for the truth of what they say on a motion to dismiss (Plaintiffs say they may not (Dkt. No. 78 at 18); Defendants say they may (Dkt. No. 80 at 8)), and so Defendants' new motion would likely still try to assert the allegations in the complaint are untrue using documents.

As I mentioned at the conference, to avoid causing that procedural trainwreck, there are likely two options — (1) agreement between the parties (which strikes me as unlikely, given the more recent history on this docket) to some version of tolling, or the like; and (2) Plaintiffs file a separate action, with identical allegations, that only names the Does, and marks it related.  Given the fact that it concerns managing the Court's docket, we would appreciate a brief conference and understanding how the Court believes would be best to proceed.  And given the time sensitivity on naming the Does, we believe that figuring out the path forward need not wait for the next steps on items 2(b)-(f).[4]

As always, we thank the Court for its continued time and attention.

Respectfully submitted,

/s/
_____

J. Remy Green
*Honorific/Pronouns: Mx., they/their/them*
**COHEN&GREEN P.L.L.C.**
*Attorneys for Plaintiffs*
1639 Centre St., Suite 216
Ridgewood, New York 11385

cc:
All relevant parties by electronic filing.

---

[3] Plaintiffs raised the potential, for what it's worth, that this would get thorny in this way in advance of the motion to dismiss.  *See* Dkt. No. 43 at 3 and at 3 n. 6; Dkt. No. 55 at 4.

[4] Although if Defendants oppose providing that information, perhaps a conference would be helpful on that issue too.

   Page 3 of 3

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com