

May 22, 2023

Honorable Sarah L. Cave, U.S.M.J.
United States District Court, Southern District of New York
500 Pearl Street
New York, NY 10007-1312

By Electronic Filing.

      Re:     Phillips v. City of New York, 21-CV-8149 (ALC)(SLC)

Dear Judge Cave:

      As the Court may recall, our firm represents Plaintiffs and the putative class in the case above. As directed by the Court (ECF No. 94), I write to provide a joint letter on the four issues the Court identified — and in the interest of efficiency, move to compel the remaining discovery necessary to identify the Doe Defendants, since Defendants categorically oppose any discovery.

      The Court directed the parties to meet on four topics:

(i)     a potential tolling agreement with respect to additional Defendants Plaintiffs seek to name in this action;

(ii)    the discovery Plaintiffs intend to seek to identify additional individuals currently named as Doe or Roe Defendants;

(iii)   whether Defendants will consent, without prejudice to the arguments raised in their pending motion to dismiss (ECF No. 62), to Plaintiffs filing a third amended complaint naming additional Defendants in light of the information Defendants have provided (the "TAC"); and

(iv)   if a TAC were filed, a briefing schedule for Defendants' renewed motion to dismiss.

Outside of Plaintiffs agreeing to whatever time Defendants wanted for a renewed motion if they move for leave to file a TAC and that motion is granted, no agreements of any kind were reached. The parties provide their positions below.

**Plaintiffs' Position and Motion to Compel**

     **I. Defendants Oppose Everything.**

      Defendants categorically oppose, apparently, doing anything in this case. On each, Defendants refused to state positions clearly (more on that below), but it was clear they were unwilling to agree to anything. Given that,[1] however, Plaintiffs have to list their *understanding* of Defendants

---

[1] Plaintiffs had a legal intern on the meet and confer to take notes. If the Court wants to review those notes, we are happy to submit them in camera.



positions, because Defendants refused to state them clearly or clarify at the meeting.[2]  Plaintiffs also put their understandings in writing after the meeting (that email is attached as **Exhibit 1**), and Defendants did not ever object specifically to those descriptions — but *did* follow up asking for a draft of this letter.  Ex. 1 at 1.

So, on (i), Plaintiffs understand Defendants to categorically oppose any tolling agreement of any kind.  Not only that, but Defendants also indicated they would oppose any motion to toll the statute of limitations, saying (after much prodding) that their opposition would be based on "other factors," in addition to (1) the fact that the Law Department does not represent the Doe/Roe Defendants and (2) a claim Plaintiffs have not been sufficiently diligent under CPLR 1024 (*see Hogan v. Fischer*, 738 F.3d 509, 519 (2d Cir. 2013)) in seeking to identify the Does (more on this later too).  Defendants said their diligence claim was about whether Plaintiffs had done enough in the first year to two years of the statutory period.  That said, "[t]he City offer[ed] no reason why [Plaintiffs] w[ere] required to telescope" their diligence "into a shorter time frame than the statute permits.  *Valentin v. Dinkins*, 121 F.3d 72, 75-76 (2d Cir. 1997).

On (ii), Plaintiffs understand Defendants to believe **any** discovery is "abusive," and — notwithstanding that the Court has indicated that Plaintiffs are likely entitled to some discovery on Does (*see, e.g.,* ECF No. 73) — categorically oppose producing a single page or piece of information.  On this, Defendants' approach to the case was most striking.  Here is a close to verbatim (*see,* n. 1, above) transcript of a representative exchange, starting a few exchanges after Plaintiffs began be asking saying, "Ok to be clear then, on number 2, there is absolutely no discovery you will agree to produce without being compelled to":[3]

> Remy Green:  I take it that the Defendants' position is that they oppose any discovery, is that accurate?
>
> Mark Zuckerman:  I answered your question.
>
> RG: I understand your answer to be saying "yes."  Please correct me if I am wrong.  Otherwise, I think you are opposing to all discovery.

---

[2] One difficulty was Mr. Zuckerman's constant use of the phrase "at this time."  Whenever Plaintiffs asked for a position, Mr. Zuckerman was only willing to say a position "at this time."  When asked what it meant, he simply said, "It means at this point in time, the answer is no" and then "I said what I said."

[3] Our office's practice, for some time with the City, has been to always have a careful notetaker at meet and confers.  I can confirm, from personal experience, that the practice is shared in cases against the City by, among others, the New York State Office of the Attorney General, the Legal Aid Society, Davis Wright Tremaine, the New York Civil Liberties Union, and the National Press Photographers Association.  No other attorney has ever claimed they cannot behave "normal[ly]" (*post* at 7 n. 9) — and instead must play games and engage in silent treatment rather than simply taking positions — just because someone is taking notes.

For us, that practice has emerged because of how routinely City attorneys deny what they said at meet and confers.  Indeed, fairly recently, we caught a City attorney forging emails to try to deny our version of meet and confer events — she was promptly dismissed.  *See In re New York City Policing During Summer 2020 Demonstrations*, 20-cv-8924 (SDNY 2022), Dkt. Nos. 523, 524, and 525.  But in any event, accurately stating a party's position is, in no sense, a "gotcha" — and that is the goal of keeping careful notes.

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



MZ:  I answered your question, Remy.

RG:  [legal intern], please make sure you have that as close to verbatim as possible.  I asked if there is any discovery you would agree to or if you categorically oppose discovery.  You said "I have your position," so I said, "is that a yes, you oppose all discovery"?  You said, "I have your position."  Have I misstated anything?

**[approximately 15 seconds of silence]**

RG: Mark?

MZ: Is there anything else you wish to talk about?

RG: Have I misstated anything?

MZ: Is there anything else you wish to talk about?

RG: Yes, but have I misstated anything?

MZ: Is there anything else you want to cover?

That is, Defendants would not even state whether they opposed discovery categorically — and attempted a "silent treatment" response to an attempt to clarify.[4]  There is no non-obstructive reason to refuse to clarify a party's position or refuse to state it clearly (or, at the least, if a party is going to refuse to take a position, they should just say they are refusing to take a position).  To put it directly, the stuff of Local Rule 26.4's command that counsel "are expected to cooperate with each other" throughout discovery, this was not.

On (iii), Defendants will not consent to anything.[5]  And on (iv), Plaintiffs indicated they would consent to whatever time Defendants asked for to file their motion (including the 45 days they asked for initially), on the hope that Defendants would extend similar courtesies on opposition — but given that Defendants would not consent to anything, a briefing schedule could only be hypothetical.

---

[4] Notably, Defendants do not deny that the transcript — including the "silent treatment" game playing — is accurate.

[5] Given that, and the risk of prejudice from an opposed motion to amend, Plaintiffs intend to file a separate complaint naming the Does and mark it related.  That course of action may also be best anyway, in that it avoids the need to moot and re-brief the two pending motions.



Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



## II. The Court Should Compel the Nearly Burden-Free Remaining Discovery to Identify the Does, and Should Grant Mandatory Fees Because Defendants' Opposition Lacks Any (Let Alone "Substantial") Justification.

Courts routinely permit pre-statute of limitations discovery to identify John and Jane Doe Defendants. Plaintiffs, at least, believed the Court had already rejected Defendants' categorical opposition when it charted a course aimed to identify those Does that could be identified without any substantial burden. The Court's concern, as we understood it, lay in weighing the burden of expansive discovery on this (which may have been necessary to do a ***complete*** job of the thing). But what is left has no burden at all. In fact, the hard part is already done — Defendants' ***only*** remaining objection is that they want Plaintiffs to lose their claims for procedural reasons. That is:

- Defendants have, in hand, lists of who the Does might be (*see* ECF No. 91 at 1-2);
- Those remaining ***potential*** Does number 44 in total;
- Defendant have access to personnel files, and official photographs, essentially at the push of a button; and
- Plaintiffs have absolutely no objection to photographs and names being disclosed pursuant to the in-place 1983 Plan Confidentiality Order.

So, there is no reason Defendants should not turn over those names and photographs. Defendants identified no burden at the meet and confer. And it is hard to see why the case followed this path at all, if not to end with exactly this disclosure.

Yet, Defendants oppose. Indeed, in context, they are basically saying, "we've got the names, but you can't have them." Or, as one Court bluntly put it, they are trying to "transform discovery of the names of [correctional] officers who engaged the Plaintiff into a game of hide-and-seek." *Archibald v. City of Hartford*, 274 F.R.D. 371, 382 (D. Conn. 2011). And though they are "not entitled" to do so, "[r]egrettably, that is what it became in this case — and needlessly so." *Id.*

On the merits, assuming Defendants will not consent to tolling (as they say they won't), there is no justification at all to avoid discovery. If there is no tolling agreement, the prejudice worked by Defendants' refusal to turn over this discovery is hard to measure. And there is little question Plaintiffs have been diligent in seeking this information — and indeed, raising the concern of a time crunch at the end — for many, many months.

Likewise, since Plaintiffs have had to brief a motion to compel any discovery at all, the costs and fees provided by Rule 37 are appropriate. Unless a party's position is substantially justified, such fees are mandatory. *Underdog Trucking, L.L.C. v. Verizon Servs. Corp.*, 273 F.R.D. 372, 377 (S.D.N.Y. 2011). At this stage, there is no cognizable objection remaining to providing the list of names Defendants ***have already assembled*** (at least, according to their letter at ECF No. 91) — and likewise no conceivable objection to the minimally burdensome additional disclosure of database photographs so Plaintiffs can identify which people are actually the Does. Instead, the objections Defendants are making appear to come from decision made — after prior counsel left — to adopt a total scorched earth approach to this case. Whatever its upside, such an approach eventually burns everyone. And

COHEN&GREEN                                                                                                        Page 4 of 9

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



Rule 37 exists precisely to discourage that tactic — or at a minimum, to give it a cost. At this stage, it is hard to believe Defendants' counsel sincerely believes the Court is going to refuse **all** discovery.[6] Rather, apparently the City wants to impose costs on Plaintiffs. So, in turn, Rule 37 imposes costs for those positions that are not just not *justified,* but not *substantially* justified.

Finally, Defendants' suggestion that Doe discovery should include "fillers" cites no case law and provide no reasoning. Identifying Does is not the same thing as an identification at trial or during a police investigation — and current pictures will already present issues because people do not always look the way a person did (putting aside the other difficulties faced by Plaintiffs because of the City's treatment of them). Fillers serve little purpose in this context. Doe identification is intended to identify the ***right*** people — and by no means prevents those people from either (1) asserting they've been named in error or (2) raising any other defenses they have.[7]

### III. Defendants' Positions On Tolling and Discovery, Taken Together, are Frivolous.

Finally, a brief word on the particular way Defendants' positions are structured is (we think) in order. Courts have long expressed concerns over situations that "would permit defense counsel to eliminate claims against any John Doe defendants merely by resisting discovery until the statute of limitations has ended." *Byrd v. Abate*, 964 F.Supp. 140, 145 (S.D.N.Y. 1997) (allowing late amendment naming former John Doe defendant to relate back under Rule 15(c)). Defendants' tack here is to claim — before the statute of limitations has expired — that Plaintiffs have not been sufficiently diligent on one hand; while refusing to cooperate in ***any*** discovery on the other. One or the other of those must give: Either (1) there can be no tolling, so the prejudice to Plaintiffs of not receiving discovery is far to great to outweigh the admittedly minor burden; or (2) there should be tolling, so refusing to agree to it is frivolous.

Indeed, consider this: Defendants complain that the discovery sought is "abusive," yet ***at the same time*** say they believe Plaintiffs are ***not doing enough***. Taking both of those positions at once is not good faith.

It is, instead, of kind with the kind of failure to live up to the higher standards for government attorneys discussed by the late Judge Weinstein in *Dacosta v. City of N.Y.*, 296 F. Supp. 3d 569, 604-05 (E.D.N.Y. 2017). That is, Defendants are not seeking to serve procedural fairness — instead, here the Corporation Counsel is asserting a ***right*** to "s[i]t in silence while a resident it serves ha[s] a readily curable defect in his complaint" so that "Corporation Counsel [can later] claims [that defect] deprives him of his right to have his claim adjudicated on the merits." *Id.* at 605. That kind of "indifference to fairness of outcome and process" is troubling. *Id.*

---

[6] If some aspect of this was somehow burdensome, Plaintiffs were certainly open to a narrower approach. Hence the repeated attempt to clarify whether Defendants were genuinely refusing to produce ***anything***.

[7] A final thought. Putting aside that Defendants' motion to dismiss was made improperly, and they could get it resolved by simply making a proper motion, nothing in the discovery chain here seeks to avoid responding to that motion. Defendants' claim otherwise ignores both what we told them at the meet and confer and the substance of note 5 above (which they read before preparing their position), where Plaintiffs explicitly state their goal is to "avoid[] the need to moot and re-brief the two pending motions."

COHEN&GREEN                                                                                                      Page 5 of 9

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



  The Second Circuit has taken a "strong position that the district court and municipal attorney ha[ve] an obligation to assist the plaintiff in identifying the [government defendants] involved in the case." *Id.* at 605, *describing Valentin*, 121 F.3d at 74-76.  Given all of that one or the other of Defendants' positions (ethically, at least) must give.  Perhaps Plaintiffs have been sufficiently diligent to allow for tolling.[8]  If so, Defendants have no non-frivolous basis to oppose a tolling motion.  Or, perhaps Plaintiffs have **not** been sufficiently diligent.  If so, Defendants cannot oppose — while the period for diligence remains open — **further** diligence to meet that standard.

  But either way, a government attorney cannot ethically take both of those positions at once.  This is a Catch-22.  Plaintiffs cannot toll the statute of limitations to identify Doe Defendants, because they have not been diligent enough.  But they also cannot seek any discovery or conduct any diligence.  Catch-22.  **That** is well beyond any duty to "vigorously advocate the legal position of the City," and crosses into "indifferen[ce] to the fairness of the outcome and its impact."  *Dacosta*, 296 F. Supp. 3d at 602, *quoting* Corporation Counsel's Message (as of Nov. 6, 2017).

**[this space left blank at Defendants' request]**

---

[8] Plaintiffs certainly think so.  *Accord, e.g., Hogan v. Fischer*, 738 F.3d 509, 519 (2d Cir. 2013) ("multiple discovery requests" sent at *some* point prior to the statute of limitations showed plaintiff had "clearly 'exercised due diligence'").  And, if I recall correctly, the Court used the word "diligent" itself at the most recent in-person conference.  So, Defendants' claim Plaintiffs were insufficiently diligent, even in this case with the history the Court is well aware of, genuinely caught Plaintiffs' counsel by surprise — particularly in light of the apoplectic opposition to everything Plaintiffs have sought in discovery over the last many months. *See, e.g.,* Dkt. No. 43 (seeking expedited John Doe discovery more than six months before the statute of limitations, after which Plaintiffs have filed everything possible (and indeed, been accused of harassment for doing so) to try to obtain the identity of the Doe Defendants); *and cf. Perez-Victorio v. City of N.Y.*, 2022 U.S. Dist. LEXIS 81300, at *17 (S.D.N.Y. Apr. 14, 2022) (denying relation back on the basis that plaintiff did not kick into high gear with "five months left before the statute of limitations ran").

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



**Defendants' Position.**

1) The City cannot enter into a tolling agreement with plaintiffs at this time as it does not represent any of the John and Jane Doe defendants;[9]

2) The City understands plaintiffs' discovery desires to be 1) the names of all of the individuals who are categorized in defendants' letter to the Court of May 11, 2023; and 2) photographs of all of such individuals. If defendants understand plaintiffs' position, plaintiffs would then pick and choose which of these individuals they wish to name as defendants in this case.

The City opposes plaintiffs' proposed discovery. Simply providing plaintiffs the names of these individuals would be highly and improperly suggestive and lead to potential abuse.[10] Simply providing the names of all of the individuals referenced in defendants' letter at Docket 91 would be unfair because plaintiffs' letter at Docket 79 did not describe these individuals by name in any way. So, providing the names of these individuals could not possibly lead to a fair process of identifying such individuals.

Second, as to plaintiffs' request for the photographs of all of these individuals, providing such photographs would be highly and improperly suggestive and lead to potential abuse as well. In their submission at Docket 79, plaintiffs (for the first time) provided descriptions (as vague as it was) of the individuals they wanted to add as defendants, other than John Doe No. 1. So, providing the photographs of all of these individuals could just cause the plaintiffs Phillips and Wright to pick out certain persons from the photographs and all of them would necessarily have to be individuals the City identified in its submission at Docket 91. Plaintiffs' descriptions are simply too vague for this process to continue, other than for John Doe 1 and the medical personnel who treated Phillips.

---

[9] Although it was the City's intent to only focus on the substance of the parties' disputes in this letter, given plaintiffs' accusations in their section of this joint letter, we are forced to briefly address these issues. Plaintiffs' conduct at the "meet and confer" was not designed to reach agreement or to have a good faith discussion about anything. The fact that plaintiffs recorded a transcript of the "meet and confer" is the first of its kind in my experience and was only designed to create "gotcha" type admissions. Plaintiffs only asked deposition type questions and attempted to put words into my mouth. This is not the first time that this has occurred in this litigation as plaintiffs' complaint bases their municipal liability claim on purported admissions that the City's prior counsel allegedly made during another "meet and confer." (Docket 51, SAC, ¶¶260-262) It is absolutely impossible to have a normal "meet and confer" with plaintiffs' counsel under these circumstances.

[10] The City has provided the identities of John Doe No. 1 (See Order at Docket 90, no. 2(a)), as well as the medical records of the plaintiff Phillips, which include the identities of the medical personnel who it is believed were involved with Phillips's care while incarcerated. (See Docket 90, no. 2(c)). The City respectfully submits that these are the only individuals responsive to plaintiffs' submission at Docket 79 that can, in all fairness to the individuals identified in response to the Court's Order at Docket 90, be identified with any precision such that the process is fair.

COHEN&GREEN    Page 7 of 9

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



If the Court is ultimately inclined to allow Phillips and Wright to look at photographs, there should be dozens (if not more) of photographs of "fillers" for each such John or Jane Doe, so there is some integrity to this process.

3) The City opposes another amendment of the complaint at this time. "Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2006). (internal quotation omitted) "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." Id. (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). "An amendment is considered futile when the proposed new claim would not withstand a motion to dismiss under Rule 12(b)(6)." Polanco v. NCO Portfolio Mgmt., 23 F. Supp.3d 363, 369 (S.D.N.Y. 2014).

As the Court is aware, plaintiffs have already amended their complaint twice. A motion to dismiss the entirety of plaintiffs' complaint is pending. As the Court noted during the last conference of April 20, 2023, the City has substantive objections to plaintiffs' proposed amendment. Any further amendment would thus be futile.

Further, contrary to plaintiffs' assertion of diligence, the opposite is true. Plaintiffs' first amended complaint was filed on October 24, 2023, more than two years after all events involving Phillips and Wright occurred. (Docket 34) Judge Carter thereafter provided plaintiffs another opportunity to amend, which they did on February 7, 2023. (Docket 58) Thereafter, when plaintiffs requested certain John and Jane Doe discovery on March 7, 2023 (Docket 67), the Court's initial ruling was that plaintiffs had failed to sufficiently identify the John and Jane Does with sufficient specificity to even allow the City to conduct an investigation. (Docket 73) **Only on April 5, 2023, at Docket 79, did plaintiffs sufficiently identify these individuals to allow the City to conduct any investigation at all (with the exception of John Doe 1).**[11] So, the blame of why the statute of limitations is so soon approaching (or may have even passed in some cases) lies with plaintiffs, not the City.[12]

As the City has repeated many times, plaintiffs will do anything to avoid responding to the arguments made in the City's motion to dismiss. At some point, they will simply have to respond to the arguments the City has made for dismissal of this case.

4) If a dozen or more new individual defendants are ultimately added as defendants, the City will have to determine whether our office can represent them before a response is served to the proposed Third Amended Complaint. We would therefore request 45 days after the last of them is served to serve a response to any Third Amended Complaint.

---

[11] The HHC medical personnel are not even John and Does in any of the complaints of plaintiffs, as plaintiffs only asserted that the pertinent John and Jane Doe defendants were DOC personnel.

[12] The Court even thanked the City for so quickly compiling the requested information ordered at Docket 90. I worked diligently with DOC, NYPD and HHC to quickly compile the information ordered by the Court and comply in a timely manner.

 Page 8 of 9

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com



                              Respectfully submitted,
                                  /s/
                            _____

                            J. Remy Green
                                *Honorific/Pronouns: Mx., they/their/them*
                            **COHEN&GREEN P.L.L.C.**
                            *Attorneys for Plaintiff*
                            1639 Centre St., Suite 216
                            Ridgewood, New York 11385

cc:
All relevant parties by electronic filing.

COHEN&GREEN        Page 9 of 9

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com