**21-UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Phillips, et al.,<br><br>              *Plaintiff*s,<br><br>   v.<br><br>The City of New York, et al.,<br><br>              *Defendant*s. | 21-cv-8149 (ALC) (SLC)<br><br>**DECLARATION OF KATHRYN TEWSON** |

I, Kathryn Tewson, being duly sworn, depose and say:

1.      I am an OSINT investigator.

2.      Plaintiffs in the case above have retained me as a digital forensic professional to investigate whether certain email addresses would reliably deliver documents to Defendant Renan Beauchard.

3.      I have done significant past work as a digital forensic investigator, including in multiple cases in federal court, often related — as here — to using small pieces of information to confirm or discovery in the first instance the actual people behind email addresses or usernames.

4.      As set out below, to a reasonable degree of professional certainty, I have concluded the email address "rbeauchard96@gmail.com" would reliably reach Dr. Beauchard, and belongs to the specific Dr. Beauchard named in this case.

5.      The information I have been given prior to conducting this investigation[1] is that Dr. Beauchard worked on Rikers Island, and that he lived at the address 53 West Clarkstown Rd, Clarkstown, NY 10956 (the "Property") at the least during his employment on Rikers Island.

---

[1] *Cf.* Fed. R. Civ. P. 26(a)(2)(B)(ii).  This Declaration is not intended to be as formal expert report.

## DISCUSSION AND CONCLUSIONS

6.      The email address rbeauchard96@gmail.com has a display name of Renan Beauchard. The creator of this email address chose the display name himself; in my experience, this connection is highly reliable.

7.      I searched for the email address rbeauchard96@gmail.com in the telecommunications program Skype, which yielded a listing for Renan Beauchard. Skype accounts are created from information entered by the user; whoever created this Skype account entered this email address and chose this display name. In my experience, these connections and associations are highly reliable. A true and correct screenshot of the Skype account information is below:



8.      The user of the email address rbeauchard96@gmail.com left a five-star Google review for "Skyrock Mortgage- Team formerly linked to MR Capital Group" approximately three years ago. A true and correct screenshot of this review, which includes the display name of Renan Beauchard previously referenced and which can be viewed online at https://www.google.com/maps/contrib/117600850431455408120/, is below:



9.      Renan Beauchard purchased the Property. A true and correct copy of the "unofficial" deed of sale for this purchase, instrument number 2020-00033692 as downloaded from the Rockland County Clerk Land Office Records website at https://www.rocklandcountyny.gov/departments/clerk-s-office/land-records and bearing Dr. Beauchard's signature, is attached hereto as **Exhibit 1.**

10.      At the time of purchase, a mortgage in the amount of $310,000 on the Property (the "Mortgage") was also recorded, instrument number 2020-00033693. A true and correct copy of this record as downloaded from the Rockland County Clerk Land Office records website at https://www.rocklandcountyny.gov/departments/clerk-s-office/land-records and bearing Dr. Beauchard's signature is attached hereto as **Exhibit 2.**

11.      The lender on the Mortgage is identified as FM Home Loans LLC. Ex. 3 at 1. The loan originator on the Mortgage was David Sanders, NMLS ID 1269392. Ex. 3 at 12. A search of the Nationwide Multistate Licensing System database

confirmed that David Sanders is licensed under that ID number and that he is authorized to represent Skyrock Mortgage; expanding the Self-Reported Employment History category shows that from December 2014 to December of 2022, he reported his employer as FM Home Loans LLC. A true and correct copy of this licensing report, available online at

https://www.nmlsconsumeraccess.org/EntityDetails.aspx/INDIVIDUAL/1269392, is attached hereto as **Exhibit 3.**

12.    The Weekly Banking Bulletin issued by the New York Department of Finance for the week of April 22, 2022 shows that "MR Capital Group" was a DBA name used by FM Loans LLC. A true and correct screenshot taken from this bulletin, which is available online at

https://www.dfs.ny.gov/reports_and_publications/weekly_bulletins/wb20220422, is below:

License to engage in the business of a Mortgage Banker Branch surrendered:

April 18, 2022 (MB-MBD)
Norwich Commercial Group, Inc.  D/B/A Norcom Mortgage
24 Sanford Street, Suite 2, Glens Falls, NY 12801
Effective Date: April 12, 2022

April 19, 2022 (MB-MBD)
FM Home Loans, LLC D/B/A MR Capital Group
455 First Street, 2nd Floor, Brooklyn, NY 11215
Effective Date: April 15, 2022

April 19, 2022 (MB-MBD)
East Coast Capital Corp.
551 East Putnam Avenue, Suite 2A, Cos Cob, CT 06807
Effective Date: April 11, 2022

April 20, 2022 (MB-MBD)
Mountain Mortgage Corp.
33 West Hawthorne Avenue, Suite 205, Valley Stream, NY 11580
Effective Date: April 12, 2022

13.    In summary:

    a.  The email address rbeauchard96@gmail.com has a user-configured
display name of Renan Beauchard;

    b.  The Skype account associated with the email address
rbeauchard96@gmail.com has a user-configured display name of
Renan Beauchard;

    c.  The Google Reviews account associated with the email address
rbeauchard96@gmail.com left a review for "Skyrock Mortgage-
Team formerly linked to MR Capital Group" approximately three
years ago;

    d.  Renan Beauchard purchased the Property and signed the Mortgage
in November 2020 (that is, a little more than approximately three
years ago);

    e.  The loan originator on the Mortgage, David Sanders, is currently
associated with Skyrock Mortgage and was formerly associated FM
Home Loans LLC, the lender on the Mortgage;

    f.  "MR Capital Group" was a DBA for FM Home Loans LLC at the
time the Mortgage was issued;

    g.  November 2020 was approximately three years ago, the same time
frame as rbeauchard96@gmail.com left the Google review for
"Skyrock Mortgage- Team formerly linked to MR Capital Group."

14.    Accordingly, I reach the following conclusions to a reasonable degree of

professional confidence:

    a.  I believe it is virtually certain that the email address rbeauchard96@gmail.com belongs not just to *a* Renan Beauchard, but to the same Renan Beauchard who purchased the Property and signed the Mortgage; and

    b.  The Google review left for "Skyrock Mortgage- Team formerly linked to MR Capital Group" by the rbeauchard96@gmail.com account was left by Renan Beauchard in connection with this purchase.[2]

I declare, under penalty of perjury, that the statements above are true and correct.

Executed On:  March 4, 2024

Kathryn Tewson

---

[2] According to the Clarkstown Assessor's Office, Renan Beauchard still owns the property at 53 West Clarkstown Rd as of March 2, 2020. A true and correct copy of the assessor's record as found from the Property Assessment Search on the Clarkstown Assessor's Office website at https://www.clarkstown.gov/assessor/ is attached hereto as **Exhibit 4**.  However, I understand from reviewing the docket that the "current occupants of the above referenced premises denied knowing the defendant and refused service" when a process server attempted to serve them.  Accordingly, I express no view on whether (1) Dr. Beauchard is subletting the property through some third party; (2) Dr. Beauchard or his spouse attempted to hide from a process server; or (3) something else entirely.

# Exhibit 1

1 South Main St., Ste. 100
New City, NY 10956
(845) 638-5070

## Rockland County Clerk Recording Cover Sheet

**Received From :**
MEISTER ABSTRACT CORP
11 NORTH AIRMONT RD
SUITE 12
SUFFERN, NY 10901

**Return To :**
MEISTER ABSTRACT CORP
11 NORTH AIRMONT RD
SUITE 12
SUFFERN, NY 10901

**Method Returned :** ERECORDING

**First GRANTOR**

CALZETTA, PASQUALINA AS -AKA

**First GRANTEE**

BEAUCHARD, RENAN

**Index Type :** Land Records
**Instr Number :** 2020-00033692
**Book :**                    **Page :**

**Type of Instrument :** Deed
**Type of Transaction :** Deed
**Recording Fee:**                    $201.00

**Recording Pages :**                    5

The Property affected by this instrument is situated in Clarkstown, in the County of Rockland, New York

| Real Estate Transfer Tax | |
|---|---|

State of New York

County of Rockland

**RETT # :**                    2239
**Deed Amount :**                    $345,000.00
**RETT Amount :**                    $1,380.00
**Total Fees :**                    $1,581.00

I hereby certify that the within and foregoing was recorded in the Clerk's office for Rockland County, New York

On (Recorded Date) : 11/12/2020

At (Recorded Time) : 2:36:00 PM



Donna Gorman Silberman

Donna Gorman Silberman
Act Cnty Clk

Executor's Deed–Individual or Corporation
CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT – THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY

THIS INDENTURE, made the 5th day of November, 2020

BETWEEN **Deborah M. Galluzzo**, residing at 3 Maiden Lane, New City New York, 10956 and **Virginia Raymond**, residing at 24 Claudia Court, Tappan, New York, 10983,
As   Co- executrixes of the last will and testament of **Pasqualina Calzetta A/K/A Pausqualena Calzetta a/k/a Lena Calzetta**, late of 53 West Clarkstown Road, New City, New York, 10956, who died on the 21st  day of February, 2020, party of the first part, and

**Renan Beauchard**, residing at 21 Maryland Avenue, Freeport, New York, 11529, party of the second part,

**WITNESSETH**, that whereas letters testamentary were issued to the party of the first part by the Surrogate's Court, Rockland County, New York, on and by virtue of the power and authority given in and by said last will and testament, and/or by Article 11 of the Estates, Powers and Trusts Law, and in consideration of Three Hundred Forty Five Thousand Dollars ($345,000.00) Dollars paid by the party of the second part, does hereby grant and release unto the party of the second part, the distributees or successors and assigns of the party of the second part forever,

**ALL** that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the **See Schedule A attached hereto and made a part hereof.**

**Being and intended to be the same premises conveyed to Tino Calzetta and Lena Calzetta, his wife by deed from Josephine Caska, deceased, dated November 26, 1968, and recorded November 29, 1968 in the Rockland County Clerk's Office in Liber 852, page 417. Tino Calzetta having died February 4, 2020 leaving the subject premises to his surviving spouse Pasqualina Calzetta A/K/A Pasqualena Calzetta A/K/A Lena Calzetta.**

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been incumbered in any way whatever, except as aforesaid.

Subject to the trust fund provisions of section thirteen of the Lien Law.

The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

**IN WITNESS WHEREOF,** the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF

Grantor(s):

*Deborah M. Galluzzo, Co Executrix*
**Deborah M. Galluzzo, Co-Executrix**

*Virginia Raymond Co-Executrix*
**Virginia Raymond, Co-Executrix**

## SCHEDULE A (Description)

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of Clarkstown, County of Rockland, and state of New York, more particularly bounded and described as follows:

BEGINNING at a point on the easterly line of West Clarkstown Road at the southwesterly corner of the premises described hereunder and running thence

(1) North 13 degrees 25 minutes 50 seconds East along the easterly line of West Clarkstown Road, 141.32 feet to a point thereon distant 1196.85 feet south of the southerly end of the curve connecting the easterly line of West Clarkstown Road with the southerly line of New Hempstead Road; thence

(2) South 72 degrees 46 minutes 00 seconds East 202.95 feet to an iron pin; thence

(3) South 15 degrees 47 minutes 00 seconds West 139 feet to an iron pin and thence

(4) North 73 degrees 21 minutes 50 seconds West 197.11 feet to the point or place of BEGINNING.

FOR INFORMATION ONLY:
Premises being known as and by 53 West Clarkstown Road, New City, New York;
District: ; Section: 42.20; Block: 3; Lot: 27

Schedule A Description Page 1 of 1

*Acknowledgment Taken Within New York State (RPL 309(a))*

State of New York :
                       : ss.:
County of Rockland :

On the 5th day of November in the year 2020 before me, the undersigned, personally appeared **Deborah M. Galluzzo** and **Virginia Raymond**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies) as Co- Executrixes, and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

TEHILA ALEXANDER
Notary Public - State of New York
No. 01AL6126491
Qualified in Rockland County
My Commission Expires May 9 2021

*Acknowledgment Taken Outside New York State (RPL 309(b))*

State, District of Columbia, :
Territory, Possession, or : ss.:
Foreign Country :

On the _____ day of _____ in the year _____ before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

**EXECUTOR'S DEED**
**Title # MAC8315**

**Grantor:**
**Estate of Pasqualina Calzetta, A/K/A**
**Pasqualena Calzetta and Lena Calzetta**

**TO**

**Grantee:**
**Renan Beauchard**

**ADDRESS:53 West Clarkstown Road**
                  **New City, New York, 10956**

**SECTION:42.20**
**BLOCK:3**
**LOT:27**
**COUNTY:Rockland**

**Record and Return to:**

MEISTER ABSTRACT CORP.
11 NORTH AIRMONT ROAD
SUITE 12
SUFFERN NY 10901

INSTRUCTIONS(RP-5217-PDF-INS): www.orps.state.ny.us

| FOR COUNTY USE ONLY | 392089 | **New York State Department of** |
|---|---|---|

**C1. SWIS Code**

**C2. Date Deed Recorded** 11/12/2020

**C3. Book** 2020 **C4. Page** 33692

**New York State Department of Taxation and Finance**

Office of Real Property Tax Services

**RP- 5217-PDF**

Real Property Transfer Report (5/10)

**PROPERTY INFORMATION**

**1. Property Location**
53 • STREET NUMBER
West Clarkstown Road • STREET NAME

Clarkstown • CITY OR TOWN
VILLAGE
10956 • ZIP CODE

**2. Buyer Name**
BEAUCHARD • LAST NAME/COMPANY
RENAN • FIRST NAME

LAST NAME/COMPANY
FIRST NAME

**3. Tax Billing Address**
Indicate where future Tax Bills are to be sent if other than buyer address(at bottom of form)
LAST NAME/COMPANY
FIRST NAME

STREET NUMBER AND NAME
CITY OR TOWN
STATE
ZIP CODE

**4. Indicate the number of Assessment Roll parcels transferred on the deed** 1 # of Parcels OR ☐ Part of a Parcel

Check as they apply:
**4A.** Planning Board with Subdivision Authority Exists ☐
**4B.** Subdivision Approval was Required for ... ☐
**4C.** Parcel Approved for Sub... ☐

**5. Deed Property Size**
X • FRONT FEET
0.64 • DEPTH
• ACRES

**6. Seller Name**
CALZETTA • LAST NAME/COMPANY
Estate of Pasqualina • FIRST NAME

LAST NAME/COMPANY
FIRST NAME

**7. Select the description which most accurately describes the use of the property at the time of sale:**

A. One Family Residential

Check the boxes below as they apply:
**8.** Ownership Type is Condominium ☐
**9.** New Construction on Vacant Land ☐
**10A.** Property Located within an Agricultural District ☐
**10B.** Buyer received a disclosure notice indicating that the property is in an Agricultural District ☐

**SALE INFORMATION**

**11. Sale Contract Date** 08/27/2020

**12. Date of Sale/Transfer** 11/05/2020

**13. Full Sale Price** 345,000.00

( Full Sale Price is the total amount paid for the property including personal property. This payment may be in the form of cash, other property or goods, or the assumption of mortgages or other obligations.) Please round to the nearest whole dollar amount.

**14. Indicate the value of personal property included in the sale**

**15. Check one or more of these conditions as applicable to transfer:**
A. Sale Between Relatives or Former Relatives
B. Sale between Related Companies or Partners in Business.
C. One of the Buyers is also a Seller
D. Buyer or Seller is Government Agency or Lending Institution
E. Deed Type not Warranty or Bargain and Sale (Specify Below)
F. Sale of Fractional or Less than Fee Interest (Specify Below)
G. Significant Change in Property Between Taxable Status and Sale Dates
H. Sale of Business is Included in Sale Price
I. Other Unusual Factors Affecting Sale Price (Specify Below)
☒ J. None
Comment(s) on Condition:

**ASSESSMENT INFORMATION** - Data should reflect the latest Final Assessment Roll and Tax Bill

**16. Year of Assessment Roll from which information taken(YY)** 20

**17. Total Assessed Value** 87,400

**18. Property Class** 210

**19. School District Name** East Ramapo

**20. Tax Map Identifier(s)/Roll Identifier(s) (If more than four, attach sheet with additional identifier(s))**

42.2-3-27

**CERTIFICATION**

I Certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and I understand that the making of any willful false statement of material fact herein subject me to the provisions of the penal law relative to the making and filing of false instruments.

SELLER SIGNATURE

**BUYER SIGNATURE**

BUYER SIGNATURE

DATE

**BUYER CONTACT INFORMATION**

(Enter information for the buyer. Note: If buyer is LLC, society, association, corporation, joint stock company, estate or entity that is not an individual agent or fiduciary, then a name and contact information of an individual/responsible party who can answer questions regarding the transfer must be entered. Type or print clearly.)

Beauchard • LAST NAME
Renan • FIRST NAME

(845) 721-4527 • AREA CODE • TELEPHONE NUMBER

45 • STREET NUMBER
West Clarkstown Road • STREET NAME

New City • CITY OR TOWN
NY • STATE
10956 • ZIP CODE

**BUYER'S ATTORNEY**

Chakan • LAST NAME
John • FIRST NAME

(845) 671-0108 • AREA CODE • TELEPHONE NUMBER

**UNOFFICIAL**

# Exhibit 2

1 South Main St., Ste. 100
New City, NY 10956
(845) 638-5070

## Rockland County Clerk Recording Cover Sheet

**Received From :**
MEISTER ABSTRACT CORP
11 NORTH AIRMONT RD
SUITE 12
SUFFERN, NY 10901

**Return To :**
MEISTER ABSTRACT CORP
11 NORTH AIRMONT RD
SUITE 12
SUFFERN, NY 10901

**Method Returned : ERECORDING**

**First GRANTOR**
BEAUCHARD, RENAN

**First GRANTEE**
FM HOME LOANS LLC

**Index Type :** Land Records

**Instr Number :** 2020-00033693

**Book :**       **Page :**

**Type of Instrument :** Mortgage
**Type of Transaction :** Mtg Type B
**Recording Fee:**      $100.00

**Recording Pages :**      12

The Property affected by this instrument is situated in Clarkstown, in the County of Rockland, New York

### Mortgage Taxes

**Property Located :**      Clarkstown

**Serial Number :**      DL5502

**Mortgage Amount :**      $310,500.00

**Basic Tax :**      $1,552.50

**Local Tax :**      $0.00

**Additional Tax :**      $901.50

**Transportation Auth Tax :**      $776.25

**SONYMA :**      $0.00

**County Tax :**      $776.25

**Total :**      $4,006.50

**Total Fees :**      $4,106.50

State of New York

County of Rockland

I hereby certify that the within and foregoing was recorded in the Clerk's office for Rockland County, New York

On (Recorded Date) : 11/12/2020

At (Recorded Time) : 2:37:00 PM



Donna Gorman Silberman
Act Cnty Clk

This sheet constitutes the Clerk's endorsement required by Section 319 of Real Property Law of the State of New York

Entered By : NYROCKLANDUSER17  Printed On : 11/13/2020        At : 2:37:11PM

When recorded, return to:
FM Home Loans, LLC
c/o Docprobe, LLC
1125 Ocean Avenue
Lakewood, NJ 08701

Section 42.20
Block    3
Lot       27

Title Order No.: MAC - 8315

LOAN #: 2720066695

[Space Above This Line For Recording Data]

## MORTGAGE

MIN 1004194-0300807747
MERS PHONE #: 1-888-679-6377

**WORDS USED OFTEN IN THIS DOCUMENT**
(A) "Security Instrument." This document, which is dated  **November 5, 2020**,       together with all Riders
to this document, will be called the "Security Instrument."
(B) "Borrower."  **RENAN BEAUCHARD,**

whose address is   **4252 Union Street Apt 614, Flushing, NY  11355,**

sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a
nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware,
and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026, and a street address of 1901 E. Voorhees Street,
Suite C, Danville, IL 61834. The MERS telephone number is (888) 679-MERS. **FOR PURPOSES OF RECORDING
THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.**
(D) "Lender."  **FM Home Loans, LLC.**

will be called "Lender."

Lender is a corporation or association which exists under the laws of  **New Jersey.**
Lender's address is  **2429 Nostrand Avenue, 3rd Floor, Brooklyn, NY 11210**

(E) "Note." The note signed by Borrower and dated  **November 5, 2020,**       will be called the "Note." The
Note shows that I owe Lender **THREE HUNDRED TEN THOUSAND FIVE HUNDRED AND NO/100************
*******************************************  Dollars (U.S.  **$310,500.00**       )
plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay
the debt in full by  **December 1, 2050.**
(F) "Property." The property that is described below in the section titled "Description of the Property." will be called the
"Property."
(G) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the
Property" sometimes will be called the "Sums Secured."
(I) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The
following Riders are to be signed by Borrower [check box as applicable]:
☐ Adjustable Rate Rider      ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider              ☐ Planned Unit Development Rider  ☐ Other(s) [specify]
☐ 1-4 Family Rider           ☐ Biweekly Payment Rider
☐ V.A. Rider

(J)  "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances and adminis-
trative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will
be called "Applicable Law."

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3033 1/01
Ellie Mae, Inc.                              Page 1 of 10                        NYEDEED  0315
                                                                                NYEDEED (CLS)
                                                                                11/04/2020 01:14 PM PST



LOAN #: 2720066695

**(K) "Community Association Dues, Fees, and Assessments."** All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

**(L) "Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

**(N) "Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(O) "Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note and (ii) any amounts under Section 3 will be called "Periodic Payment."

**(Q) "RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

## DESCRIPTION OF THE PROPERTY

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at  53 West Clarkstown Road, New City,

<div align="right">[Street] [City, Town or Village]</div>

New York  10956
<div>[Zip Code]</div>

This Property is in  Rockland                                    County. It has the following legal description:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".



(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) though (F) of this section.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3033 1/01

Ellie Mae, Inc.                                    Page 2 of 10

<div align="right">NYEDEED 0315<br>NYEDEED (CLS)<br>11/04/2020 01:14 PM PST</div>

## SCHEDULE A (Description)

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of Clarkstown, County of Rockland, and state of New York, more particularly bounded and described as follows:

BEGINNING at a point on the easterly line of West Clarkstown Road at the southwesterly corner of the premises described hereunder and running thence

(1) North 13 degrees 25 minutes 50 seconds East along the easterly line of West Clarkstown Road, 141.32 feet to a point thereon distant 1196.85 feet south of the southerly end of the curve connecting the easterly line of West Clarkstown Road with the southerly line of New Hempstead Road; thence

(2) South 72 degrees 46 minutes 00 seconds East 202.95 feet to an iron pin; thence

(3) South 15 degrees 47 minutes 00 seconds West 139 feet to an iron pin and thence

(4) North 73 degrees 21 minutes 50 seconds West 197.11 feet to the point or place of BEGINNING.

FOR INFORMATION ONLY:
Premises being known as and by 53 West Clarkstown Road, New City, New York;
District: ; Section: 42.20; Block: 3; Lot: 27

Schedule A Description Page 1 of 1

LOAN #: 2720066695

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made in: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.** I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all

NEW YORK—Single Family—Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT** Form 3033 1/01



LOAN #: 2720066695

Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold. Lender will be limited to the lower amount.

(b) **Lender's Obligations.** Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) **Adjustments to the Funds.** Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4.   **Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5.   **Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last preceding sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3033 1/01
Ellie Mae, Inc.                                           Page 4 of 10                                   NYEDEED  0315
                                                                                                        NYEDEED (CLS)
                                                                                              11/04/2020 01:14 PM PST



LOAN #: 2720066695

Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire. Their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6.  Borrower's Obligations to Occupy the Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7.  Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**
**(a)  Maintenance and Protection of the Property.** I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as described in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

**(b)  Lender's Inspection of Property.** Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8.  Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9.  Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3033 1/01
Ellie Mae, Inc.

Page 5 of 10

NYEDEED  0315
NYEDEED (CLS)
11/04/2020 01:14 PM PST



LOAN #: 2720066695

the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property, (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I will not give up the rights that I have as a tenant on the Property. I will not cancel or terminate my lease and I will not change or alter that lease unless Lender agrees in writing to the change or amendment. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage to me, from the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender, each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period that Lender required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of the Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other laws. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.



LOAN #: 2720066695

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date the Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have the judgment of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, or the case of Lender requires required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

(a) **Borrower's Obligations.** Lender may allow me, or a person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) **Lender's Rights.** Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may choose to exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make immediate payment in full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18, this Security Instrument, any Person who takes over my rights and obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3033 1/01

Ellie Mae, Inc.                                Page 7 of 10

NYEDEED  0315
NYEDEED (CLS)
11/04/2020 01:14 PM PST



change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys'

fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join, or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental

UNOFFICIAL

LOAN #: 2720066695

Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**
I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."**

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In the lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:
(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument.

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:
(1) The promise or agreement that I failed to keep or the default that has occurred;
(2) The action that I must take to correct that default;
(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;
(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full and Lender or another Person may acquire the Property by means of Foreclosure and Sale.
(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have any lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and
(6) That if I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and
(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

**23. Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

**24. Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.



LOAN #: 2720066695

**25. Borrower's Statement Regarding the Property [check box as applicable].**

☒ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 10 of this Security Instrument and in any Rider signed by me and recorded with it.

RENAN BEAUCHARD — 11/5/20 (Seal)
DATE

State of New York )
) SS:
County of Rockland )

**On the 5th day of NOVEMBER in the year 2020, before me, the undersigned, a Notary Public in and for said State, personally appeared RENAN BEAUCHARD, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the Instrument,the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.**

TEHILA ALEXANDER
Notary Public - State of New York
No. 01AL6126491
Qualified in Rockland County
My Commission Expires May 2021

**Notary Public**

**My Commission expires:** __________

**Lender: FM Home Loans, LLC**
**NMLS ID: 2212**
**Loan Originator: David Sanders**
**NMLS ID: 1269392**

UNOFFICIAL

# Exhibit 3



## David Alexander Sanders

| NMLS ID: 1269392 | Phone: 9734350303 | Fax: Not provided |
|---|---|---|

| Other Names : David Sanders | Prior Other Names : None | Prior Legal Names : None |
|---|---|---|

| Regulatory Actions   None posted in NMLS. |
|---|

### Employment

| Authorized to Represent : Skyrock Mortgage Corp (2106417) | Engaged in other businesses : No |
|---|---|

| From | To | Employer | Position | City | State | Zip Code | Financial Services |
|---|---|---|---|---|---|---|---|
| 01/2023 | Present | Skyrock Mortgage Corp | Loan Officer | Rutherford | NJ | 07070 | Yes |
| 06/2022 | 12/2022 | FM Home Loans, LLC | Loan Officer | New City | NY | 10956 | Yes |
| 12/2014 | 05/2022 | FM Home Loans, LLC | Loan Officer | Rutherford | NJ | 07070 | Yes |
| 10/2014 | 11/2014 | Unemployed | Unemployed | Passaic | NJ | 07055 | No |
| 09/2011 | 09/2014 | Thomas Edison State College | Student | Trenton | NJ | 08608 | No |
| 05/2011 | 08/2011 | Unemployed | Unemployed | Passaic | NJ | 07055 | No |
| 07/2007 | 04/2011 | Mercaz Hatorah | Student | Talpiot | NY | 00000 | No |
| 09/2003 | 06/2007 | Talmudical Academy Of Baltimore | Student | Baltimore | MD | 21208 | No |

#### Office Locations

| Company | NMLS ID | Type | Street Address | City | State | Zip Code | Start Date |
|---|---|---|---|---|---|---|---|
| Skyrock Mortgage Corp | 2106417 | Main | 301 Route 17 N Suite 205 | Rutherford | NJ | 07070 | 01/01/2023 |

#### State Licenses/Registrations   (Displaying 4 Active of 6 Total)

| Regulator | Lic/Reg Name | Authorized to Conduct Business | Consumer Complaint |
|---|---|---|---|
| **Connecticut** | Mortgage Loan Originator License | Yes | **Submit to Regulator** |
| **Florida** | Mortgage Loan Originator License | Yes | **Submit to Regulator** |
| **Maryland** | Mortgage Originator License | Yes | **Submit to Regulator** |
| **New Jersey** | Mortgage Loan Originator License | Yes | **Submit to Regulator** |

| Regulatory Actions | While some state and federal agencies may add actions taken in previous years against a licensee, the majority are adding only new actions from 2012 or later. To view complete information regarding regulatory actions posted by the agency, click any regulator link. |
|---|---|

| No regulatory actions have been posted in NMLS. |
|---|

Information made available through NMLS Consumer Access℠ is derived from NMLS (**Nationwide Multistate Licensing System / Nationwide Mortgage Licensing System and Registry**), the financial services industry's online registration and licensing database. NMLS was created by the **Conference of State Bank Supervisors (CSBS)** and the **American Association of Residential Mortgage Regulators (AARMR)** and is owned and operated by the **State Regulatory Registry LLC (SRR)**, a wholly owned subsidiary of CSBS. For more information about the System, please visit the **NMLS Resource Center** or the **NMLS Federal Registry Resource Center** websites. | **Download PDF Reader**

# Exhibit 4

## Town of Clarkstown Rockland County, NY

Town of Clarkstown, NY Official Site

where families and businesses flourish

Search

☑ only search Town.Clarkstown.ny.us

| Home | Supervisor | Town Council | Town Departments | Police Department | Public Notices | Helpful Links | Town History |

### Town of Clarkstown Real Property Assessment Information

John J. Noto Jr, *IAO*
Assessor

## Assessment Report

| Tax Year | Uniform % of Value | Roll Section | Municipality |
|---|---|---|---|
| 2023 Tentative | 24.27000000 | 1 | CLARKSTOWN |

**Assessment Details**

| | |
|---|---|
| Assessed Total Value | $92,800 |
| Assessed Land Value | $43,100 |
| Market Value | $382,365 as of 7/1/2022 |
| Parcel ID | 42.20-3-27 |
| SWIS | 392089 |

**Property Details**

| | |
|---|---|
| Legal Address | 53 W CLARKSTOWN RD NEW CITY |
| Type | Residential |
| Property Class | 210 - 1 Family Res |
| Acreage | 0.64 |
| Neighborhood | 212 |
| School District | EAST RAMAPO CSD |

**Site Details**

| | |
|---|---|
| Building Style | Old Style |
| Year Built | 1921 |
| First Floor Area | 1036 |
| Second Floor Area | 0 |
| Total Living Area | 1036 |

| | |
|---|---|
| Finished Rec Room | No Rec Room |
| Bathrooms | 1.00000000 |
| Fireplaces | No Fireplace |
| Central Air | No |
| Garages | No Garage |

**Parcel Owner**

| | |
|---|---|
| Name | BEAUCHARD RENAN |
| Address | 53 W CLARKSTOWN RD |
| City | NEW CITY |
| State & Zip | NY 10956 |

**Sale Details**

| | |
|---|---|
| Sale Price | $345,000 |
| Sale Date | 11/05/2020 |
| Deed Book | 2020 |
| Deed Page | 33692 |

[Start a New Search](#)

© 1999 - 2024 Software Consulting Assoc., NY, USA

Powered by SCA
Proven Municipal Software

This service is maintained by Software Consulting Assoc.

