21 Civ. 8149 (ALC)(SLC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAUL PHILLIPS, et. al.,

Plaintiffs,

-against-

THE CITY OF NEW YORK, et. al.,

Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTIONS TO DISMISS COMPLAINT AND TO STRIKE CLASS ALLEGATIONS**

*MURIEL GOODE-TRUFANT*
*Acting Corporation Counsel of the City of New York*
*Attorney for Defendants City of New York,*
*Michael Prilook, Gabriel Montalvo, Edward*
*Horton, Krystalbella Murnane-Victorelli, Dr.*
*David Rosenberg, Dr. Aung Oo, Dr. Jasdeep*
*Mangat, Terry Gravesande, Mireille Zamy,*
*Terra Hailand, Christopher Johnson, Renan*
*Beauchard and Roman Maslovskiy*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Mark Zuckerman*
*Tel:  (212) 356-3519*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ iv

PRELIMINARY STATEMENT ........................................................................... 1

FACTUAL STATEMENT .................................................................................... 2

      A.  Paul Phillips ........................................................................ 2

      B.  Khaori Wright ..................................................................... 3

      C.  Randy Rosario ..................................................................... 3

      D.  Kylasia Thompson .............................................................. 4

LEGAL STANDARD FOR RULE 12(B)(6) MOTION ...................................... 4

ARGUMENT

      POINT I

          THE PLAINTIFF PHILLIPS'S FEDERAL FALSE
          ARREST CLAIM SHOULD BE DISMISSED .......................................... 6

      POINT II

          PLAINTIFFS'     FEDERAL     EXCESSIVE
          DETENTION CLAIMS SHOULD BE DISMISSED
          ........................................................................................ 7

      POINT III

          PHILLIPS  AND  WRIGHT'S  DELIBERATE
          INDIFFERENCE TO MEDICAL NEEDS CLAIMS
          SHOULD BE DISMISSED ....................................................... 11

      POINT IV

          THE ADA CLAIMS OF PHILLIPS AND WRIGHT
          SHOULD BE DISMISSED ....................................................... 14

      POINT V

          PLAINTIFFS' MUNICIPAL LIABILITY CLAIMS
          SHOULD BE DISMISSED ....................................................... 16

**Page**

POINT VI

    PLAINTIFFS LACK STANDING TO SEEK
INJUNCTIVE RELIEF ................................................................ 22

    A.  Legal Standard Upon Motion to Dismiss
Pursuant to Rule 12(b)(1), Fed. R. Civ. P .......................................... 22

    B.  Legal Standard For Standing to Seek Injunctive
Relief ..................................................................................... 22

    C.  Plaintiffs Cannot Demonstrate a Likelihood of
Future Harm ............................................................................ 24

    D.  Plaintiffs Have Not Plausibly Alleged "a Formal
Policy or Its Equivalent" Necessary to Confer
Standing ................................................................................. 25

    E.  Even Applying the Monell Standard, Plaintiffs
Fail to Plausibly Allege a "Formal Policy or its
Equivalent" ............................................................................. 26

    F.  Plaintiffs' Class Allegations Seeking Injunctive
Relief Should Be Dismissed ...................................................... 26

POINT VII

    THE COURT SHOULD DECLINE
SUPPLEMENTAL JURISDICTION OVER ANY
STATE LAW CLAIMS ............................................................... 26

POINT VIII

    PHILLIPS'S STATE LAW FALSE ARREST AND
ASSAULT AND BATTERY CLAIMS SHOULD
BE DISMISSED ...................................................................... 28

POINT IX

    PHILLIPS'S STATE LAW EXCESSIVE
DETENTION CLAIM SHOULD FAIL ........................................... 29

POINT X

    PHILLIPS'S STATE CONSTITUTIONAL
CLAIMS SHOULD BE DISMISSED ............................................ 29

**Page**

POINT XI

        PHILLIPS'S     MEDICAL     MALPRACTICE
        CLAIMS SHOULD BE DISMISSED ...................................................... 29

POINT XII

        PLAINTIFFS' CLASS ALLEGATIONS SHOULD
        BE STRICKEN PURSUANT TO RULE 12(F),
        FED. R. CIV. P. ...................................................................................... 32

CONCLUSION.......................................................................................................... 35

**<u>TABLE OF AUTHORITIES</u>**

<u>Cases</u>                                                                                    <u>Pages</u>

Almareh v. Mayorkas,
    20 Civ. 11024 (VEC), 2021 U.S. Dist. LEXIS 203546
    (S.D.N.Y. Oct. 20, 2021) .........................................................................22

An v. City of New York,
    16 Civ. 5381 (LGS), 2017 U.S. Dist. LEXIS 84364
    (S.D.N.Y. June 1, 2017)........................................................................25, 26

An v. City of New York,
    230 F. Supp. 3d 224 (S.D.N.Y. 2017)....................................................19, 23

Aquino v. City of New York,
    16 Civ. 1577 (GHW), 2017 U.S. Dist. LEXIS 10436
    (S.D.N.Y. Jan. 25, 2017)...................................................................... 16-17

Ashcroft v. Iqbal,
    556 U.S. 662 (2008).........................................................4, 5, 12, 13, 32

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007)..............................................................................4, 5

Borgese v. Baby Brezza Enters. LLC,
    20 Civ. 1180 (VM), 2021 U.S. Dist. LEXIS 30216
    (S.D.N.Y. Feb. 18, 2021) .........................................................................33

Boyd v. City of New York,
    336 F.3d 72 (2d Cir. 2003)......................................................................28

Broder v. Cablevision Sys. Corp.,
    418 F.3d 187 (2d Cir. 2005).......................................................................6

Bryant v. City of New York,
    404 F.3d 128 (2d Cir. 2005)................................................................... 8-8

Buari v. City of New York,
    530 F. Supp. 3d 356 (S.D.N.Y. 2021)......................................................18

Calderon v. City of New York,
    138 F. Supp. 3d 593 (S.D.N.Y. 2015).....................................................19

Camacho v. City of New York, et al.,
    19 Civ. 11096 (DLC), 2020 U.S. Dist. LEXIS 125801
    (S.D.N.Y. July 16, 2020) .........................................................................32

**Cases**                                                                                     **Pages**

Carter v. HealthPort Techs., LLC,
    822 F.3d 47 (2d Cir. 2016)..................................................................................22

Chambers v. Time Warner, Inc.,
    282 F.3d 147 (2d Cir. 2002)..................................................................................6

Chance v. Armstrong,
    143 F.3d 698 (2d Cir. 1998)................................................................................12

City of Canton v. Harris,
    489 U.S. 378 (1989)............................................................................................17

City of Los Angeles v. Lyons,
    461 U.S. 95 (1983)....................................................................................23, 24, 25

Collins v. City of New York, et al.,
    923 F. Supp. 2d 462 (E.D.N.Y. 2013) ...........................................................18, 19

Consol. Rail Corp. v. Town of Hyde Park,
    47 F.3d 473 (2d Cir. 1995)..................................................................................33

Corley v. Vance,
    365 F.3d 407 (S.D.N.Y. 2019)..............................................................................6

Cortland St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.,
    790 F.3d 411 (2d Cir. 2015)................................................................................23

Darnell v. Pieniero,
    849 F.3d 17 (2d Cir. 2017)..................................................................................12

Davis v. Shah,
    821 F.3d 231 (2d Cir. 2016)................................................................................15

DeLuca v. AccessIT Group, Inc.,
    695 F. Supp. 2d 54 (S.D.N.Y. 2010)......................................................................6

Demaitre v. City of New York,
    18 Civ. 12403 (PGG), 2020 U.S. Dist. LEXIS 189206
    (S.D.N.Y. Oct. 11, 2020) ....................................................................................21

Denny v. Deutsche Bank AG,
    443 F.3d 253 (2d Cir. 2006)..........................................................................22, 26

District of Columbia v. Wesby,
    138 S. Ct. 577 (2018)..........................................................................................10

**Cases**                                                                      **Pages**

Farid v. Ellen,
593 F.3d 233 (2d Cir. 2010)................................................................12

Feliciano v. Anderson,
15 Civ. 4106 (LTS), 2017 U.S. Dist. LEXIS 47893
(S.D.N.Y. Mar. 30, 2017) ..................................................................12

Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.,
528 U.S. 167 (2000).........................................................................23

Garcia v. City of New York,
09 Civ. 4686 (CM), 2010 U.S. Dist. LEXIS 73638
(S.D.N.Y. July 14, 2010) ..................................................................1

Garcia v. Doe,
779 F.3d 84 (2d Cir. 2014)...........................................................7, 10

Garcia v. Execu/Search Grp., LLC,
17 Civ. 9401 (WHP), 2019 U.S. Dist. LEXIS 68904
(S.D.N.Y. Feb. 19, 2019)..................................................................32

Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn,
280 F.3d 98 (2d Cir. 2001)................................................................15

Gaston v. Ruiz,
17 Civ. 1252 (NGG), 2018 U.S. Dist. LEXIS 112695
(E.D.N.Y. July 6, 2018) ...............................................................17, 18

Gen. Tel. Co. v. Falcon,
457 U.S. 147 (1982).........................................................................33

Harty v. Simon Property Group, L.P.,
428 F. App'x 69 (2d Cir. 2011) .........................................................24

Haus v. City of New York,
03 Civ. 4915 (RWS)(MHD), 2011 U.S. Dist. LEXIS 155735
(S.D.N.Y. Aug. 31, 2011) .................................................................34

Hodge v. Vill. of Southampton,
838 F. Supp. 2d 67 (E.D.N.Y. 2012) .............................................31-32

Hollins v. City of New York,
10 Civ. 1650 (LGS), 2014 U.S. Dist. LEXIS 183076
(S.D.N.Y. Mar. 3, 2014) ...................................................................29

**Cases**                                                                      **Pages**

Holmes v. City of New York,
   17 Civ. 3874 (WHP), 2018 U.S. Dist. LEXIS 150257
   (S.D.N.Y. Sept. 4, 2018) ....................................................................................11

Horvath v. Daniel,
   423 F. Supp. 2d 421 (S.D.N.Y. 2006) ..............................................................28

Iqbal v. Hasty,
   490 F.3d 143 (2d Cir. 2007) ................................................................................5

Isaac v. City of New York, et al.,
   17 Civ. 1021 (PGG), 2018 U.S. Dist. LEXIS 41653
   (S.D.N.Y. Mar. 13, 2018) ............................................................................11, 30

John v. Whole Foods Mkt. Grp., Inc.,
   858 F.3d 732 (2d Cir. 2017) ..............................................................................22

King v. Shinder,
   16 Civ. 6315 (PMH), 2020 U.S. Dist. LEXIS 147700
   (S.D.N.Y. Aug. 17, 2020) ..................................................................................12

Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York,
   464 F.3d 255 (2d Cir. 2006) ..............................................................................27

Kolari v. N.Y. Presbyterian Hosp.,
   455 F.3d 118 (2d Cir. 2006) ..............................................................................27

Koulkina v. City of New York,
   559 F. Supp. 2d 300 (S.D.N.Y. 2008) ..........................................................30, 32

Kramer v. Time Warner, Inc.,
   937 F.2d 767 (2d Cir. 1991) ...........................................................................6, 20

Kravtchouk v. City of New York, et. al.,
   16 Civ. 4787 (RRM), 2019 U.S. Dist. LEXIS 173982
   (E.D.N.Y. Sept. 30, 2019) ...............................................................................5-6

Lincoln Cercpac v. Health and Hospitals Corp.,
   920 F. Supp. 488 (S.D.N.Y. 1996) ....................................................................15

MacIssac v. Town of Poughkeepsie,
   770 F. Supp. 2d 587 (S.D.N.Y. 2011) ..........................................................24, 25

Mahone v. City of New York,
   13 Civ. 8014 (PAE), 2014 U.S. Dist. LEXIS 50754
   (S.D.N.Y. Apr. 11, 2014) ...................................................................................30

**Cases**                                                                **Pages**

Marcavage v. City of New York,
    689 F.3d 98 (2d Cir. 2012)...........................................................................24

McNair v. Harlem Hosp. Med. Dir.,
    19 Civ. 203 (CM), 2019 U.S. Dist. LEXIS 84609
    (S.D.N.Y. May 17, 2019)...........................................................................16

McNair v. Ponte,
    16 Civ. 1722 (LAP), 2019 U.S. Dist. LEXIS 54287
    (S.D.N.Y. Mar. 29, 2019) ..........................................................................11

Mercado v. City of New York,
    08 Civ. 2855 (BSJ)(HP), 2011 U.S. Dist. LEXIS 140430
    (S.D.N.Y. Dec. 5, 2011).........................................................................17-18

Monell v. Dep't of Social Services,
    436 U.S. 658 (1978).............................................................17, 18, 22, 25, 26

Morris v. City of New York, et al.,
    20 Civ. 9314 (GBD), 2021 U.S. Dist. LEXIS 186917
    (S.D.N.Y. Sept. 29, 2021)......................................................................12, 18

Morrison v. City of New York,
    14 Civ. 4508 (MKB), 2019 U.S. Dist. LEXIS 4839
    (E.D.N.Y. Jan. 10, 2019) ........................................................................7, 29

Morrison v. Nat'l Austl. Bank,
    547 F.3d 167 (2d Cir. 2008).......................................................................22

Mosca v. City of New York, et al.,
    17 Civ. 4327 (SJF)(SIL), 2018 U.S. Dist. LEXIS 216885
    (E.D.N.Y. Dec. 26, 2018),
    adopted in part by,
    Mosca v. City of New York, et al.,
    17 Civ. 4327 (SJF)(SIL), 2019 U.S. Dist. LEXIS 30395
    (E.D.N.Y. Feb. 25, 2019).............................................................................18

Needleman v. McFadden,
    197 A.D.3d 1070 (1st Dep't 2021) .............................................................30

O'Shea v. Littleton,
    414 U.S. 488 (1974)..............................................................................23, 24

Okin v. Vill. Of Cornwall-On-Hudson Police Dep't,
    577 F.3d 415 (2d Cir. 2009).......................................................................10

**Cases**                                                                 **Pages**

Oklahoma City v. Tuttle,
    471 U.S. 808 (1985)......................................................................17

Palacios v. City of New York,
    15 Civ. 386 (PAE), 2017 U.S. Dist. LEXIS 146574
    (S.D.N.Y. Sept. 11, 2017)..........................................................29

Parkinson v. Goord,
    116 F. Supp. 2d 390 (W.D.N.Y. 2000).....................................15

Pearson v. Callahan,
    555 U.S. 223 (2009)..................................................................10

Pembaur v. City of Cincinnati,
    475 U.S. 469 (1986)..................................................................17

Pennsylvania Dep't of Corrections v. Yeskey,
    524 U.S. 206 (1998)..................................................................15

People v. Maxian,
    77 N.Y.2d 422 (1991)..................................................................8

People v. Small,
    26 N.Y.3d 253 (2015)..................................................................8

Peterec v. City of New York,
    14 Civ. 309 (RJS), 2015 U.S. Dist. LEXIS 28504
    (S.D.N.Y. Mar. 6, 2015) ...........................................................18

Phillips v. City of New York, et. al.,
    21 Civ. 8149 (ALC), 2024 U.S. Dist. LEXIS 174656
    (S.D.N.Y. Sept. 26, 2024)............................................................6

Plair v. City of New York,
    789 F. Supp. 2d 459 (S.D.N.Y. 2011).....................................21

Powell v. Nat'l Bd. of Med. Exam'rs,
    364 F.3d 79 (2d Cir. 2004)........................................................15

Reich v. City of New York,
    19 Civ. 6491 (EK), 2021 U.S. Dist. LEXIS 137948
    (E.D.N.Y. July 23, 2021) ..........................................................21

Reichle v. Howards,
    566 U.S. 658 (2012)..................................................................10

**Cases**                                                                          **Pages**

Rich v. New York,
   21 Civ. 3835 (AT), 2022 U.S. Dist. LEXIS 60779
   (S.D.N.Y. Mar. 31, 2022) ...................................................................30

Riverside v. McLaughlin,
   500 U.S. 56 (1991)...........................................................................7

Rodriguez v. City of New York,
   16 Civ. 1649 (AMD)(RLM), 2022 U.S. Dist. LEXIS 104160
   (E.D.N.Y. June 7, 2022) ...............................................................18, 19

Ross v. Bank of Am., N.A. (USA),
   524 F.3d 217 (2d Cir. 2008)..............................................................23

Rounseville v. Zahl,
   13 F.3d 625 (2d Cir. 1994)...............................................................27

Russo v. City of Bridgport,
   479 F.3d 196 (2d Cir. 2007)...............................................................7

Salahuddin v. Goord,
   467 F.3d 263 (2d Cir. 2006)..............................................................12

Saucier v. Katz,
   533 U.S. 194 (2001).........................................................................10

Seabrook v. Jacobson,
   153 F.3d 70 (2d Cir. 1998)...............................................................26

Sha v. Memorial Sloan-Kettering Cancer Ctr.,
   99 Civ. 3233 (AKH), 2000 U.S. Dist. LEXIS 17297
   (S.D.N.Y. Nov. 30, 2000) ................................................................15

Shain v. Ellison,
   356 F.3d 211 (2d Cir. 2004)........................................................23, 24, 25

Shaw v. Hornblower Cruises & Events, LCC,
   21 Civ. 10408 (VM), 2022 U.S. Dist. LEXIS 202703
   (S.D.N.Y. Nov. 7, 2022) ...............................................................32, 33

Soberanis v. City of New York,
   244 F. Supp. 3d 395 (S.D.N.Y. 2017)......................................................8

Stewart v. City of New York,
   15 Civ. 4335 (RA), 2018 U.S. Dist. LEXIS 56169
   (S.D.N.Y. Mar. 31, 2018) ................................................................12

**Cases**                                                                                    **Pages**

Talarico v. Port Auth. of N.Y. and N.J.,
 367 F. Supp. 3d 161 (S.D.N.Y. 2019)....................................................................33

Tangreti v. Bachmann,
 983 F.3d 609 (2d Cir. 2020)................................................................................12

Tasini v. New York Times Corp., Inc.,
 184 F. Supp. 2d 350 (S.D.N.Y. 2002)............................................................ 22-23

Tieman v. City of Newburgh,
 13 Civ. 4178 (KMK), 2015 U.S. Dist. LEXIS 38703
 (S.D.N.Y. Mar. 26, 2015) ..............................................................................18, 19

United States v. Vazquez,
 145 F.3d 74 (2d Cir. 1998)..................................................................................22

Vippolis v. Vill. of Haverstraw,
 768 F.2d 40 (2d Cir. 1985)..................................................................................17

W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP,
 549 F.3d 100 (2d Cir. 2008)................................................................................22

Walker v. City of New York,
 12 Civ. 5902 (PAC), 2014 U.S. Dist. LEXIS 42272
 (S.D.N.Y. Mar. 18, 2014) ...................................................................................19

Walker v. City of New York,
 14 Civ. 808 (ER), 2015 U.S. Dist. LEXIS 91410
 (S.D.N.Y. July 14, 2015) ....................................................................................19

Walker v. Schult,
 717 F.3d 119 (2d Cir. 2013).................................................................................11

Warth v. Seldin,
 422 U.S. 490 (1975)............................................................................................22

Watson v. City of New York,
 92 F.3d 31 (2d Cir. 1996)................................................................................8, 29

Weyant v. Okst,
 101 F.3d 845 (2d Cir. 1996)..................................................................................7

White v. City of New York,
 16 Civ. 6183 (LGS), 2017 U.S. Dist. LEXIS 131614
 (S.D.N.Y. Aug. 17, 2017) ...................................................................................11

**Cases**                                                                                   **Pages**

Williams v. City of New York,
    34 F. Supp. 3d 292 (S.D.N.Y. 2014)............................................22, 24, 25

**Statutes**

9 N.Y.C.R.R. § 8.202.7................................................................30

28 U.S.C. § 1367(3)...................................................................27

28 U.S.C. § 1367(a)...................................................................26

28 U.S.C. § 1367(c)...................................................................26

42 U.S.C. § 1983............................................................11, 12, 16, 17, 29

42 U.S.C. § 12131(2).................................................................14

C.P.L. § 120.90.......................................................................8

C.P.L. § 140.20....................................................................8, 29

C.P.L. § 530.70...................................................................8, 9, 29

Fed. R. Civ. P. 8.....................................................................5

Fed. R. Civ. P. 8(a)(2)...............................................................5

Fed. R. Civ. P. 12(b)(1).........................................................1, 22, 23

Fed. R. Civ. P. 12(b)(6)............................................................1, 4

Fed. R. Civ. P. 12(f)..............................................................2, 32

Fed. R. Civ. P. 23..............................................................2, 34, 35

Fed. R. Civ. P. 23(a)(1).............................................................33

Fed. R. Civ. P. 23(a)(2).............................................................34

Fed. R. Civ. P. 23(a)(3).............................................................34

Fed. R. Civ. P. 23(b)(3).............................................................34

Fed. R. Evid. 201.....................................................................6

Gen. Muni. L. § 50-e.................................................................28

**Other Authorities**

Exec. Order § 202 ...................................................................................................................30

Exec. Order § 202.8 ................................................................................................................30

Patrol Guide § 208-42 ............................................................................................................21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------- x

PAUL PHILLIPS, et al.,

                                        Plaintiffs,

                    -against-

THE CITY OF NEW YORK, et al.,

                                      Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTIONS TO DISMISS COMPLAINT AND TO STRIKE CLASS ALLEGATIONS**

**21 CV 8149 (ALC)(SLC)**

---------------------------------------------------------------------x

## PRELIMINARY STATEMENT

Defendants City of New York (the "City"), Michael Prilook, Gabriel Montalvo, Edward Horton, Krystalbella Murnane-Victorelli, Dr. David Rosenberg, Dr. Aung OO, Dr. Jasdeep Mangat, Terry Gravesande, Mireille Zamy, Terra Hailand, Chirstopher Johnson, Renan Beauchard and Roman Maslovskiy, hereby respectfully submit their Memorandum of Law in support of their motion to dismiss plaintiffs' corrected third amended complaint (Docket 128) (the "Complaint") in its entirety pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P.,[1] and to strike plaintiffs'

---

[1] Although the Complaint still continues to allege claims against various John and Jane Does, after the City filed its motion to dismiss plaintiffs' Second Amended Complaint at Docket 62, plaintiffs were provided the opportunity to amend their complaint for a third time and for the specific purpose of naming the remaining John and Jane Does against whom they wished to maintain claims, based on the pre-amendment discovery that plaintiffs sought and which was allowed by Magistrate Judge Cave. (See e.g. Docket 67, 79, 90, 99 and 116). The City's motion to dismiss at Docket 62 was even dismissed without prejudice to allow this process to take place. (See Docket 116). Inexplicably, the Complaint still contains dozens of unidentified John and Jane Does. Having failed to identify any of the remaining John and Jane Does in the Complaint, such claims against these defendants should now be dismissed with prejudice. In any event, plaintiffs have failed to plausibly allege claims against the John and Jane Does as well. See Garcia v. City of New York, 09 Civ. 4686 (CM), 2010 U.S. Dist. LEXIS 73638, at *2 (S.D.N.Y. July 14, 2010) (dismissing claims against John and Jane Doe defendants).

class allegations pursuant to Rule 12(f), Fed. R. Civ. P. For the following reasons, defendants' motions should be granted in their entirety and the Complaint dismissed with prejudice. Simply, although the thrust of the Complaint is that the City has an unconstitutional practice of arresting individuals on warrants and bringing them directly to DOC custody without seeing a judge, three of the four named plaintiffs in this case were indisputably arrested on unrelated charges and brought directly to court by the NYPD to see a judge (even though plaintiffs contend that they each had outstanding warrants at the time of their arrests). Further, it is certainly not *per se* unlawful for the NYPD to bring individuals arrested on warrants to DOC custody. Additionally, courts have not applied New York's 24 hour arrest to arraignment rule for **warrantless** arrests to **arrests based on warrants**. Further, Wright and Phillips's claims for deliberate indifference to medical needs fail and Phillips's medical malpractice claims are barred by the statute of limitations, among other deficiencies. Additionally, as all of plaintiffs' allegations are based on past events, any request for injunctive relief is improper. Finally, class treatment is clearly improper as well and plaintiffs' class claims are an abuse of Rule 23, Fed. R. Civ, P. The Complaint is meritless and plaintiffs' attempt to expand this litigation exponentially into a class action should easily be rejected by the Court.

## **FACTUAL STATEMENT**

### A.    **Paul Phillips**

On July 3, 2020, the nationally celebrated Independence Day of 2020, plaintiff Paul Phillips was stopped by a New York State ("NYS") Trooper in Guilderland, New York, in connection with an alleged traffic infraction. (Complaint, ¶105) The NYS Trooper told Phillips that he had an open warrant from New York Criminal Court dating back to 1989. (Complaint, ¶107 and Ex. A to Declaration of Mark D. Zuckerman, dated October 11, 2024 (hereinafter "Zuckerman Decl.")) The NYS Trooper then arrested Phillips and transported him to the NYS Trooper

Barracks. (Complaint, ¶¶110-111) NYS Troopers then transported Phillips to Poughkeepsie, New York, and Phillips was thereafter transported to the NYPD's Bronx Warrant Division. (Complaint, ¶115) Phillips was transported to Riker's Island by the defendant Prilook as the warrant was "live" in the "NYPD's system." (Complaint, ¶¶ 124, 212) NYPD paperwork shows that Phillips was transported to Rikers Island at 5:10 p.m. on July 3, 2020 (during the COVID-19 emergency). (Ex. B to Zuckerman Decl.) Phillips was released from custody on July 7, 2020 without seeing a judge. (See Complaint, ¶123).

**B.    Khaori Wright**

"In May 2020" [in fact, March 18, 2020, during the height of the COVID-19 emergency as well], plaintiff Khaori Wright was a passenger in a vehicle that was stopped by the NYPD.  (See Complaint, ¶220 and Ex. C to Zuckerman Decl.) Upon the car stop, Wright was arrested for criminal possession of a controlled substance and marihuana. (Ex. C to Zuckerman Decl.) Upon his arrest for criminal possession of a controlled substance and marihuana, Wright was brought directly by the NYPD to Brooklyn Central Booking for arraignment. (See Complaint, ¶157 and Exs. C and D to Zuckerman Decl.) The Kings County DA's Office subsequently declined to prosecute Wright arising from the narcotics and marihuana charges. (Exhibit D to Zuckerman Decl.)

According to Wright, upon his arrest, the NYPD database also "indicated a warrant associated with his name…." (Complaint, ¶221)  That warrant was an arrest warrant from Superior Court. (Ex. E to Zuckerman Decl.) NYPD records indicate that on March 19, 2020, Wright requested to be taken to Brookdale Hospital. (Exhibit D to Zuckerman Decl.). Wright was thereafter remanded to DOC custody on March 20, 2020.  (Ex. F to Zuckerman Decl.)

**C.    Randy Rosario**

Randy Rosario surrendered at the NYPD's 114th Pct. on November 11, 2020 and was arrested. (See Complaint, ¶293 and Ex. G to Zuckerman Decl.) Rosario had previously been indicted for tampering with a gun, which was arrest evidence in connection with a homicide, and an arrest warrant had issued in connection with the charges against Rosario. (Exs. G and H to Zuckerman Decl.) Rosario's surrender and arrest on November 11, 2020 was in connection with the foregoing tampering of evidence charge. (Ex. G to Zuckerman Decl.) Rosario was brought directly to Queens County Supreme Court by the NYPD upon his arrest of November 11, 2020 to see a judge. (Ex. I to Zuckerman Decl.)  After being brought to court, Rosario was then remanded to DOC custody.  (Ex. J to Zuckerman Decl.)

**D.    Kylasia Thompson**

Plaintiff Kylasyia Thompson was arrested on November 21, 2019 for grand larceny and theft. (See Complaint, ¶308 and Ex. K to Zuckerman Decl.)  She was arrested at a residence where she was staying with a friend by detectives from the NYPD Warrants Squad. (Ex. L to Zuckerman Decl.) She was then brought directly by the NYPD to Manhattan Central Booking for arraignment and to see a judge on the grand larceny and theft charges that she had been arrested for. (Ex. M to Zuckerman Decl.) Thompson also had open bench warrants at the time of her underlying arrest, at least one of which was from Superior Court. (Exs. M and N to Zuckerman Decl.) After her arraignment, Thompson was remanded to DOC custody. (Ex. O to Zuckerman Decl.)

## LEGAL STANDARD FOR RULE 12(b)(6) MOTION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (quoting Twombly,

550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id.

Two working principles determine whether a complaint may survive a motion to dismiss. Ashcroft, 556 U.S. at 678-679. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id. (citing Twombly, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (quoting Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – "that the pleader is entitled to relief.'" Id. (citing Fed. Rule Civ. Proc. 8(a)(2)).

"The Court's review of defendants' motion to dismiss is limited to the facts alleged in the complaint, documents attached to the complaint or incorporated by reference in the complaint, documents integral to the complaint, and matters of which the Court may take judicial notice." Kravtchouk v. City of New York, et. al., 16 Civ. 4787 (RRM), 2019 U.S. Dist. LEXIS 173982, at

*8 (E.D.N.Y. Sept. 30, 2019); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("a court may consider 'matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit'"). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document integral to the complaint." Chambers, 282 F.3d at 152-53. "To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents…[and] [t]o be integral to a complaint, the plaintiff must have 1) actual notice of the extraneous information and 2) relied upon the documents in framing the complaint." DeLuca v. AccessIT Group, Inc., 695 F. Supp.2d 54, 60 (S.D.N.Y. 2010) (quoting Chambers at 153). "Insofar as the complaint relies on the terms" of a document either annexed or deemed incorporated by reference, the court "need not accept its description," but may look to the document itself.  See Broder v. Cablevision Sys. Corp., 418 F.3d 187, 196 (2d Cir. 2005). "In considering a motion to dismiss, the Court may [also] consider matters of which judicial notice may be taken under Fed. R. Evid. 201, including public records such as Plaintiff's arrest reports, indictments, and criminal disposition data." Corley v. Vance, 365 F.3d 407, 432 (S.D.N.Y. 2019) (citing Kramer, at 773-75)[2].

## ARGUMENT

### POINT I

### THE PLAINTIFF PHILLIPS'S FEDERAL FALSE ARREST CLAIM SHOULD BE DISMISSED

---

[2] The Court previously denied plaintiffs' motion to strike the exhibits that defendants have submitted in support of their motion to dismiss. Phillips v. City of New York, et. al., 21 Civ. 8149 (ALC), 2024 U.S. Dist. LEXIS 174656 (S.D.N.Y. Sept. 26, 2024).

Only the plaintiff Phillips has brought a false arrest claim, and although Phillips purports to bring claims against all individual defendants, the only facts that Phillips alleges are as to Prilook[3], the officer who transported Phillips to Rikers Island upon his arrest by NYS Troopers. There can be no dispute that probable cause is a complete defense to an action for false arrest. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). Phillips concedes that there was an indication of a live warrant in the NYPD database accessed by Prilook, an NYPD detective (Complaint, ¶212). As such, the warrant establishes probable cause for Phillips's arrest. See Morrison v. City of New York, 14 Civ. 4508 (MKB), 2019 U.S. Dist. LEXIS 4839, at *12-16 (E.D.N.Y. Jan. 10, 2019) (indication of a warrant in an NYPD database gives rise to probable cause to arrest). Since Phillips did not plead the lack of an indication of a live warrant a NYPD database, nor could he, Phillips's false arrest claim against Prilook fails on the basis of probable cause for his arrest and/or qualified immunity for Prilook based on objective reasonableness. See Garcia v. Doe, 779 F.3d 84, 92 (2d Cir. 2014) (quoting Russo v. City of Bridgeport, 479 F.3d 196, 211 (2d Cir. 2007))(qualified immunity afforded where officer's actions were objectively reasonable).

## POINT II

### PLAINTIFFS' FEDERAL EXCESSIVE DETENTION CLAIMS SHOULD BE DISMISSED

Plaintiffs' federal excessive detention claims, brought against all individual defendants, fail for a number of reasons. First, plaintiffs' federal excessive detention claims are premised on violations of the federal presumptive 48 hour rule set forth in Riverside v. McLaughlin, 500 U.S. 56 (1991). However, the Second Circuit has stated that such rule is limited to the "context of pretrial detention, [where] the Supreme Court has held that, when there has been a **warrantless**

---

[3] Phillips has therefore not plausibly alleged false arrest against any other individual defendant.

arrest, the Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention." <u>Bryant v. City of New York</u>, 404 F.3d 128, 136 (2d Cir. 2005) (emphasis added). Here, plaintiffs have premised their claims on detentions based upon warrants. As such, the doctrine they cite to as the basis for their claims does not apply.

Second, to the extent that plaintiffs' federal excessive detention claims are based on "'a state rule of criminal procedure,' the claims 'do[] not create a liberty interest that is entitled to protection under the federal Constitution.'" <u>Soberanis v. City of New York</u>, 244 F. Supp.3d 395, 401 (S.D.N.Y. 2017) (M.J. Gorenstein) (quoting <u>Watson v. City of New York</u>, 92 F.3d 31, 37-38 (2d Cir. 1996)). Thus, to the extent that plaintiffs base their federal excessive detention claims upon alleged violations of New York State C.P.L. §§ 530.70 and 140.20 by the City, such federal claims are not actionable, and plaintiffs cannot point to any authority that it is per se unconstitutional for the NYPD to bring individuals arrested on warrants to DOC custody.

Third, in any event, plaintiffs' argument is that New York's 24 hour arrest to arraignment rule for warrantless arrests as set forth in <u>People v. Maxian</u>, 77 N.Y.2d 422 (1991), a decision based on C.P.L. §140.20 only, applies to arrests based on warrants as well. It does not. The New York Court of Appeals in <u>Maxian</u> limited its holding regarding the 24 hour rule to arrests without warrants. <u>Id.</u>, at 424. No court has ever applied New York's arrest to arraignment 24 hour rule to arrests based on warrants. In fact, C.P.L. § 530.70 references C.P.L. § 120.90 on the return of warrants, to which the New York Court of Appeals has stated, "'no specific time span is universally considered unreasonable or per se unconstitutional' in bringing a defendant before the local criminal court." <u>People v. Small</u>, 26 N.Y.3d 253, 258 (2015) (internal quotation omitted). For this reason as well, plaintiffs' federal excessive detention claims fail, although even if the Court adopts

plaintiffs' argument, Rosario and Thompson were arraigned within 24 hours of their arrests in any event.[4] (Exhibits I and M to Zuckerman Decl.)

Fourth, Wright, Rosario and Thompson were all brought to court by NYPD officers (and not to DOC custody) directly upon their arrests (even though these three plaintiffs each claim they had outstanding warrants at the time of their arrests) and Rosario and Thompson were each arraigned within 48 hours after their arrests according to NYPD paperwork.[5] (Exhibits I and M to Zuckerman Decl.) Courts then determined what happened to Wright, Thompson and Rosario thereafter. Plaintiffs have failed to in any way allege that any NYPD officer brought any plaintiff to DOC custody when a court was available to hear returns on any of their warrants.[6] Simply alleging that a court may have been technically open says nothing about whether there was actually a court part ready and available to hear a return on any warrants at the relevant times. In fact, C.P.L. §530.70 expressly authorizes police officers bringing a defendant arrested on a "superior court" warrant to a correctional facility, where a court is not "available" (the Wright and Thompson open warrants were issued by a Superior Court, see Exs. E and N to Zuckerman Decl.). No facts have been plausibly alleged against any individual defendant that he/she knew any plaintiff was

---

[4] As seen, the Kings County District Attorney declined to prosecute the underlying arrest charges against Wright upon Wright being brought directly to court by NYPD officers. (See Ex. D to Zuckerman Decl.) The declination of prosecution of the underlying arrest charges against Wright occurred at 11:18 p.m. on March 19, 2020, well within 24 hours after his arrest. (Ex. D to Zuckerman Decl.)

[5] Again, the underlying arrest charges against Wright were declined to prosecute by the prosecutor within 48 hours of his arrest upon his being brought directly to court by NYPD officers as well.

[6] Phillips was transported to DOC custody after 5 p.m. on a national holiday at the height of the COVID-19 emergency. (Ex. B to Zuckerman Decl.) There is no indication that any court part was available to hear a return on his warrant at that time.

being excessively detained or caused it. Plaintiffs' claims are thus without merit for these reasons as well against any individual defendant.

Fifth, Prilook, Montalvo and any other similarly situated defendant[7] are entitled to qualified immunity even if the Court finds such that the excessive detention rights that plaintiffs claim actually exist. The Supreme Court and the Second Circuit have recognized that police officers are entitled to qualified immunity unless "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) (citing Reichle v. Howards, 566 U. S. 658, 664 (2012)). The United States Supreme Court has ruled that in making qualified immunity determinations, the District Court is no longer bound to determine the existence of a constitutional right first before considering whether the right was clearly established at the time of the governmental official's conduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009). Courts "generally 'look to Supreme Court and Second Circuit precedent existing at the time of the alleged violation to determine whether the conduct violated a clearly established right…'" Garcia, supra, 779 F.3d at 92 (quoting Okin v. Vill. Of Cornwall-On-Hudson Police Dep't., 577 F.3d 415, 433 (2d Cir. 2009)). The right that plaintiffs claim was certainly not clearly established at the time of any plaintiff's detention, and certainly not in the "particularized…sense," see Saucier v. Katz, 533 U.S. 194, 200 (2001), thus, qualified immunity should be afforded to Prilook and Montalvo[8] and any other individual defendant on these claims.

---

[7] As seen, the Complaint does not allege that any individual defendant, including Prilook or Montalvo, knew of any plaintiff being excessively detained or caused it. Prilook merely transported Phillips, upon his arrest, to Rikers Island at 5:10 p.m. on the celebrated national holiday of Independence Day and had no further involvement with Phillips thereafter.

[8] Phillips's federal excessive detention claim fails against Montalvo for a different reason. Plaintiff has not plausibly alleged such claim against him as Phillips has alleged no facts that Montalvo, as

## POINT III

### PHILLIPS AND WRIGHT'S DELIBERATE INDIFFERENCE TO MEDICAL NEEDS CLAIMS SHOULD BE DISMISSED

To state a claim for deliberate indifference to medical needs under 42 U.S.C. § 1983, a plaintiff must satisfy a two-prong test. "The first prong is objective: 'the alleged deprivation of adequate medical care must be sufficiently serious.'" McNair v. Ponte, 16 Civ. 1722 (LAP), 2019 U.S. Dist. LEXIS 54287, at *35 (S.D.N.Y. Mar. 29, 2019) (quoting White v. City of New York, 16 Civ. 6183 (LGS), 2017 U.S. Dist. LEXIS 131614, at *7 (S.D.N.Y. Aug. 17, 2017)). To satisfy the first prong, "'the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health.'" Id. (quoting Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013)). "To create such risk, a condition must be one 'of urgency, one that may produce death, degeneration, or extreme pain, exists.'" Id. (quoting Holmes v. City of New York, 17 Civ. 3874 (WHP), 2018 U.S. Dist. LEXIS 150257, at *18 (S.D.N.Y. Sept. 4, 2018)). "A claim of unconstitutional delay or interruption in treatment is only cognizable if it 'reflects deliberate indifference to a serious risk of health or safety, to a life-threatening or fast-degenerating condition, or to some other condition of extreme pain that might be alleviated through reasonably prompt treatment.'" Isaac v. City of New York, et. al., 17 Civ. 1021 (PGG), 2018 U.S. Dist. LEXIS 41653, at *8 (S.D.N.Y. Mar. 13, 2018) (internal quotation omitted).

"The second prong is subjective and requires a court to consider the defendant's mental state. Under this prong, 'a defendant possesses the requisite mens rea when he acts or fails to act under circumstances in which he knew, or should have known, that a substantial risk of serious

---

a line correction officer, Montalvo had any responsibility for determining court appearances for inmates during his duties at DOC.

harm to the pretrial detainee would result.'" Id., at 36 (quoting Feliciano v. Anderson, 15 Civ. 4106 (LTS), 2017 U.S. Dist. LEXIS 47893, at *24-25 (S.D.N.Y. Mar. 30, 2017)) (applying Darnell v. Pieniero, 849 F.3d 17, 29 (2d Cir. 2017) to a deliberate indifference to medical needs claim). "A defendant's 'actions [must be] more than merely negligent.'" Id. (quoting Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006)). "To survive a motion to dismiss on [the] theory [of deliberate indifference to medical needs, [the plaintiff] must… plausibly allege that [the] [i]ndividual [d]efendants intentionally or recklessly delayed his access to care when they knew or should have known that the delay posed an excessive risk to his health or safety." Stewart v. City of New York, 15 Civ. 4335 (RA), 2018 U.S. Dist. LEXIS 56169, at *18 (S.D.N.Y. Mar. 31, 2018). "'[T]he fact that a prisoner might prefer a different treatment does not give rise to [a Fourteenth Amendment] violation.'" King v. Shinder, 16 Civ. 6315 (PMH), 2020 U.S. Dist. LEXIS 147700, at *25 (S.D.N.Y. Aug. 17, 2020)(quoting Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998)).

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010) (citations omitted). "'[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" Tangreti v. Bachmann, 983 F.3d 609, 616 (2d Cir. 2020) (quoting Iqbal, 556 U.S. at 676). Claims for deliberate indifference to medical needs are subject to dismissal where a plaintiff "lumps" the individual defendants in a group pleading such that it is difficult to determine which individual defendant was personally involved. Morris v. City of New York, et. al., 20 Civ. 9314 (GBD), 2021 U.S. Dist. LEXIS 186917, at *13 (S.D.N.Y. Sept. 29, 2021). Deliberate indifference to medical needs claims against John Doe defendants may be dismissed where facts supporting deliberate indifference to medical needs claim against each of them not adequately alleged. Id., at *17.

Only the plaintiffs Phillips and Wright bring deliberate indifference to medical needs claims. As to Phillips, he claims that he was denied access to needed medications for Bipolar Disorder, Opoid addiction and PTSD. (Complaint, ¶144). Phillips has brought deliberate indifference to medical needs claims against all of the individual defendants (seemingly other than Horton who allegedly only interacted with Wright). The medical professionals who Phillips has indiscriminately sued are physicians, physician assistants, patient care assistants, psychologists, psychiatrists, internists, social workers and therapists who are improperly lumped into a group pleading. The allegations against them are completely conclusory and fail under Iqbal. Phillips fails to allege the required elements of deliberate indifference to medical needs claims against any individual defendant. Phillips's desperate and conclusory allegations that Drs. Oo, Mangat and Rosenberg had the "final medical decision" as to Phillips's medications (Complaint, ¶¶198-199) are insufficient.

Further, Phillips's allegation as to not being treated for PTSD is devoid of any factual development whatsoever. As to his treatment for Opoid withdrawal and bipolar conditions, it is undisputed that plaintiff was incarcerated for a total of only four days. The Complaint reflects that he was treated for both conditions while at Rikers Island. The medication programs that Phillips takes issue with were for a four day period only. There is no allegation in the Complaint that Zubsolv is an improper drug for Opoid addiction or generally for individuals taking Suboxone, and in fact, the Complaint contends that Zubsolv is the "most commonly used medication" and in fact is the same medication as Suboxone. (Complaint, ¶161) The Complaint is devoid of any allegation that a medical professional advised the medical defendants of any reason not to prescribe Zubsolv. The Complaint also does not allege that Phillips actually suffered any serious consequences as a result of his treatment, much less that any medical defendant acted with the required mens rea to cause him serious medical harm as would be required. There certainly was no intentionality or recklessness by any medical defendant. In fact, even Phillips's unidentified doctor's note from 2021, 9 months after treatment, only

reflects conclusory and generalized "withdrawal" (without a description of severity) and "increased anxiety, nightmares and emotional liability." (Complaint, ¶169). No allegations are made that Phillips's bipolar conditioned worsened in any serious way, much less that the doctors treating him knew that it would. Phillips's allegations are completely insufficient and his mere disagreement with the courses of treatment he received while incarcerated is not actionable.

Likewise, Phillips's allegations against Prilook and Montalvo are insufficient as well. Prilook merely transported Phillips to Rikers Island. He is not responsible for the medical care that Phillips received while subsequently incarcerated. (Complaint, ¶124) Montalvo, a line correction officer, according to Phillips's own allegations, told Phillips that his medical condition would be addressed at the clinic (Complaint, ¶155), which it was. There is nothing Constitutionally improper about Montalvo's conduct either.

As to Wright, he claims in a conclusory manner that he was "starved" while he was incarcerated at Rikers Island because his jaw was "wired shut." (Complaint, ¶¶234-236) Wright's allegation is that on one occasion he "flag[ged] down" the defendant Capt. Horton somewhere in VCBC one day while incarcerated and "begged" for food, and that Capt. Horton was not responsive. (Complaint, ¶¶245-247). This encounter hardly meets the demanding test for deliberate indifference to medical needs. Wright has made no well pled allegations that a "serious" medical condition existed that Horton was aware of and that Horton acted with an improper <u>mens rea</u>. This claim should be easily dismissed as well.

**POINT IV**

**THE ADA CLAIMS OF PHILLIPS AND WRIGHT SHOULD BE DISMISSED**

The Complaint alleges that Wright and Phillips suffered from a disability as defined by Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12131(2), but plaintiffs fail

to allege claims upon which relief can be granted under the ADA, as neither Phillips nor Wright has stated a viable ADA claim against either the City or individual defendants. Title II of the ADA provides in relevant part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." Lincoln Cercpac v. Health and Hospitals Corp., 920 F. Supp. 488, 497 (S.D.N.Y. 1996); see also Davis v. Shah, 821 F.3d 231, 259 (2d Cir. 2016)) ("To establish a violation of Title II, plaintiff must show that: (1) he or she is a qualified individual with a disability, (2) he or she is being excluded from participation in or being denied the benefits of some service, program or activity by reason of his or her disability, and (3) the entity which provides the service, program or activity is a public entity.") (citations and internal quotation marks omitted)). Further, a plaintiff seeking monetary damages to remedy an alleged Title II violation must show "not only that there was a violation, but that such violation was motivated by either discriminatory animus or ill will stemming from plaintiff's disability." Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 89 (2d Cir. 2004).

While the Supreme Court has held that Title II extends to prisons, see Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206 (1998), the ADA does not provide for liability against individual defendants in either their individual or official capacities. Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn, 280 F.3d 98, 107 (2d Cir.2001); Sha v. Memorial Sloan-Kettering Cancer Ctr., 99 Civ. 3233 (AKH), 2000 U.S. Dist. LEXIS 17297 (S.D.N.Y. Nov. 30, 2000); Parkinson v. Goord, 116 F. Supp. 2d 390, 399 (W.D.N.Y. 2000) (collecting cases). As such, plaintiff's ADA claims should be dismissed as against all individual defendants.

Phillips's' ADA claim also fails for a number of reasons. First, he was not excluded from any covered ADA program, i.e., treatment for Opoid addiction. (See Complaint, ¶524) As Phillips's allegations concede, he was provided treatment for Opoid addiction while incarcerated.

Rather, Phillips merely complains that he was not provided a certain brand of medication, Suboxone, as opposed to the Zubsolv, which he concedes was the same medication. (See Complaint, ¶161). Any disability of which Phillips complains was reasonably accommodated. Second, Phillips has not plausibly alleged discriminatory animus or ill will as a result of his alleged disability nor could he. He was treated for Opoid addiction while incarcerated and it has not been plausibly alleged that he was singled out in any way based on his disability. See McNair v. Harlem Hosp. Med. Dir., 19 Civ. 203 (CM), 2019 U.S. Dist. LEXIS 84609, at *9 (S.D.N.Y. May 17, 2019) (dismissing ADA claim where plaintiff failed to allege that defendants failed to accommodate disability or denied him services because of that disability).

With respect to Wright, the Complaint is silent as to any alleged discrimination either. He was provided food, but complains he could not ingest anything but a liquid form of foods. However, Wright does not allege that there were no such forms of food available for inmates on Rikers Island or that he even formally asked Rikers Island medical personnel for such foods. Wright also does not allege with medical support that such preferred food was medically necessary, and not available, or that there was some formal decision not to provide him such food. Further, Wright's allegations are completely devoid of plausible allegations of discriminatory animus or ill will based on his alleged disability. As such, his allegations are completely conclusory and his ADA claim also fails. See McNair v. Harlem Hosp. Med. Dir., supra.

## POINT V

### PLAINTIFFS' MUNICIPAL LIABILITY CLAIMS SHOULD BE DISMISSED

"In order to hold the City of New York liable under 42 U.S.C. § 1983 for an alleged constitutional violation, plaintiff must plead: (1) an official policy or custom that (2) cause[d] [plaintiff] to be subjected to (3) a denial of a constitutional right." Aquino v. City of New York,

16 Civ. 1577 (GHW), 2017 U.S. Dist. LEXIS 10436, at *8 (S.D.N.Y. Jan. 25, 2017).  A municipality may not be held liable under § 1983 on the basis of *respondeat superior*. Monell v. Dep't of Social Services, 436 U.S. 658, 694-95 (1978). To hold a municipality liable as a "person" within the meaning of § 1983, a plaintiff must establish that the municipality itself was somehow at fault. Oklahoma City v. Tuttle, 471 U.S. 808, 810 (1985).

Plaintiff can satisfy the "policy or custom" prong required for municipal liability by alleging "the existence of (1) a formal policy, see Monell, supra, 436 U.S. at 690; (2) actions taken or decisions made by final municipal policymakers that caused the violation of [plaintiff's] rights, see Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986) (plurality opinion); (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policymakers, see Monell, 436 U.S. at 690-91; or (4) a failure to properly train or supervise municipal employees that amounts to "deliberate indifference to the rights of those with whom municipal employees will come into contact." See City of Canton v. Harris, 489 U.S. 378, 388 (1989). It is well established that a single isolated incident alleged in a complaint, especially where the alleged incident involves only officials below the policymaking level, will not suffice to establish a municipal policy or custom. Oklahoma City v. Tuttle, supra, at 824.

"A plaintiff bringing a Monell claim also must establish a causal connection between the municipality's official policy and the underlying constitutional violation." Gaston v. Ruiz, 17 Civ. 1252 (NGG), 2018 U.S. Dist. LEXIS 112695, at *15-16 (E.D.N.Y. July 6, 2018) (citing City of Canton, supra, at 385).  In fact, "the plaintiff must establish a causal connection – an affirmative link – between the policy and the deprivation of his constitutional rights." Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985) (internal quotation marks and citation omitted).  "To establish Monell liability, the causal link must be strong; that is, the policy must be the 'moving force' behind a constitutional violation." Mercado v. City of N.Y., 08 Civ. 2855 (BSJ)(HP), 2011

U.S. Dist. LEXIS 140430, at *23 (S.D.N.Y. Dec. 5, 2011) (quoting <u>Monell</u>, 436 U.S. at 694); <u>see also</u> <u>Morris</u>, <u>supra</u>, at *19-22 ("Plaintiff's <u>Monell</u> claim fails because the [complaint] does not sufficiently allege the existence of a policy, custom or practice that was the driving force of any violation of Plaintiff's constitutional rights.").

A plaintiff may plead the existence of *de facto* customs or policies "by citing to complaints in other cases that contain similar allegations." <u>Gaston v. Ruiz</u>, <u>supra</u>, at *17. "Such complaints must involve factually similar misconduct, be contemporaneous to the misconduct at issue in the plaintiff's case, and result in an adjudication of liability." <u>Rodriguez v. City of New York</u>, 16 Civ. 1649 (AMD)(RLM), 2022 U.S. Dist. LEXIS 104160, at *27 n.9 (E.D.N.Y. June 7, 2022) (quoting <u>Buari v. City of New York</u>, 530 F. Supp.3d 356, 398 (S.D.N.Y. 2021)). "References to unconnected, irrelevant litigation are patently inadequate to allege a policy or custom of the City, let alone allege that that policy or custom is the one that gave rise to Plaintiff's alleged violation." <u>Peterec v. City of New York</u>, 14 Civ. 309 (RJS), 2015 U.S. Dist. LEXIS 28504, at *18-19 (S.D.N.Y. Mar. 6, 2015).

Courts have consistently stated that evidence of other incidents that post-date the subject act of misconduct cannot be used to prove municipal liability. <u>See</u> <u>Mosca v. City of New York, et. al.</u>, 17 Civ. 4327 (SJF)(SIL), 2018 U.S. Dist. LEXIS 216885, at *17 (E.D.N.Y. Dec. 26, 2018) (M.J. Locke) (newspaper article published two years after subject incident insufficient to support municipal liability claim), <u>adopted</u> <u>in</u> <u>part</u> <u>by</u>, <u>Mosca v. City of New York, et. al.</u>, 17 Civ. 4327 (SJF)(SIL), 2019 U.S. Dist. LEXIS 30395 (E.D.N.Y. Feb. 25, 2019); <u>Tieman v. City of Newburgh</u>, 13 Civ. 4178 (KMK), 2015 U.S. Dist. LEXIS 38703, at *48-49 (S.D.N.Y. Mar. 26, 2015) (citing <u>Collins v. City of New York, et. al.</u>, 923 F. Supp.2d 462, 479 (E.D.N.Y. 2013)) ("a 'litany of other police-misconduct cases' discussed in plaintiff's complaint 'were insufficient to make a plausible case for <u>Monell</u> liability,' because they…post-dated the alleged misconduct in the case at

hand…"); see An v. City of New York, 230 F. Supp.3d 224, 230 (S.D.N.Y. 2017) (finding no widespread custom "at the time of plaintiff's arrest").

Even a handful of purportedly "similar incident[s]" for which there were no adjudications would be insufficient to plausibly allege such a pervasive "custom or practice" theory. See An, supra, at 229-30 (S.D.N.Y. 2017) (six lawsuits and one newspaper article over four year period insufficient to allege municipal liability where there were no adjudications against defendant); Calderon v. City of New York, 138 F. Supp.3d 593, 612-613 (S.D.N.Y. 2015) (16 lawsuits over 12 year period where there were no adjudications against defendant did not suggest a pervasive practice); Tieman, supra, at *50 (13 lawsuits against defendant over four year period without finding of adjudication against defendant insufficient); Rodriguez, supra, at *27 n.9 (three purportedly similar cases predating criminal conviction inadequate to allege municipal custom or practice); Collins v. City of New York, 923 F. Supp.2d 462, 479 (E.D.N.Y. 2013) (dismissing municipal liability claims where litany of other police misconduct cases were dissimilar and had not resulted in liability against the municipality); Walker v. City of New York, 12 Civ. 5902 (PAC), 2014 U.S. Dist. LEXIS 42272, at *6 (S.D.N.Y. Mar. 18, 2014) (10 purportedly similar complaints over a period of a decade insufficient to plausibly allege municipal liability).

Judge Edgardo Ramos' decision in Walker v. City of New York, 14 Civ. 808 (ER), 2015 U.S. Dist. LEXIS 91410 (S.D.N.Y. July 14, 2015), is instructive. In that case, plaintiff attempted to support his municipal liability theory by listing 36 other civil complaints over a 13 year period. Id., at *19. Plaintiff's municipal liability claims based on an alleged "custom or usage," however, were dismissed upon defendant's motion to dismiss. Judge Ramos reasoned, in part, that there were no findings or adjudication of liability in any of those cases against the City or the individual officer defendants. Id, at *19-24. "Indeed, although it is routine for courts to take judicial notice of court documents, they do so 'not for the truth of the matters asserted in the other litigation, but

rather to establish the fact of such litigation and related filings.'" Id. at *24-25 (quoting Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir. 1991)).

Plaintiffs' municipal liability claims should be dismissed for a number of reasons. First, plaintiffs' principal municipal liability theory seems to be that the NYPD has an unconstitutional custom or practice of arresting individuals on warrants and bringing them directly to DOC custody and not to court.  (Complaint, ¶¶ 1, 7, 15, 87(d), 331, 339 and 424(d)) Plaintiffs' allegation of an unconstitutional custom or practice in this regard is based solely on their own incidents and the Complaint's references to purported incidents identified in a Legal Aid Society letter (Complaint, ¶364(a)-(e)) that they have annexed to the Complaint. None of these incidents, however, is alleged to have resulted in liability to the City. In any event, as seen, Wright, Rosario and Thompson were all brought directly to Court by the NYPD upon these plaintiffs' arrests (and even though plaintiffs contend that they each had outstanding warrants at the time of their arrests).  In fact, as seen, Wright, Rosario and Thompson were not even arrested on old warrants, but rather based on unrelated charges. As to the five incidents plaintiffs describe from the Legal Aid Society letter, plaintiffs do not allege who was allegedly wrongfully arrested, when the arrests took place nor even that such individuals were taken by NYPD officers upon any such arrests for warrants directly to DOC custody without seeing a judge.  (See Complaint, ¶364(a)-(e)) Plaintiffs' allegations are completely insufficient under the foregoing authorities to plausibly allege an unconstitutional and pervasive municipal custom or practice that City policymakers acquiesced to. As such, plaintiffs' custom or practice theory fails.

Second, plaintiffs seem to be alleging that one or more City policymakers caused their injuries by ignoring the issue that the Legal Aid Society raised. (See Complaint, ¶¶354-386) However, the Legal Aid Society Letter indisputably was not sent to the City until December 11, 2020 (Complaint, ¶354), **after all of the subject incidents involving plaintiffs.** Thus, there are

no allegations in the Complaint involving any City policymaker that could give rise to the conclusion that City policymakers caused plaintiffs' purported injuries. As such, under the foregoing authorities, this theory of liability clearly fails as well.

Third, the NYPD does have a patrol guide provision, Patrol Guide Sec. 208-42 (Ex. P to Zuckerman Decl. and that is incorporated by reference in the Complaint at ¶¶340-341) and DOC has issued an Operations Order (Ex. Q to Zuckerman Decl.) that address the issues raised in the Complaint. Plaintiffs cannot point to any provision in either NYPD Patrol Guide Section 208-42 or the DOC Operations Order that is unconstitutional, or that even violates State law. As such, for this reason, plaintiffs fail to plausibly allege an unconstitutional formal policy.

Fourth, although plaintiffs also allege a municipal failure to train or supervise, these allegations (Complaint, ¶494(d)) are entirely and improperly boilerplate. Reich v. City of New York, 19 Civ. 6491 (EK)(RER), 2021 U.S. Dist. LEXIS 137948, at *21-24 (E.D.N.Y. July 23, 2021) (M.J. Reyes); Plair v. City of New York, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011) (collecting cases). Moreover, wholly conclusory allegations of municipal liability are routinely dismissed by district courts in this Circuit. Demaitre v. City of New York, 18 Civ. 12403 (PGG), 2020 U.S. Dist. LEXIS 189206, at *19-20 (S.D.N.Y. Oct. 11, 2020). As such, any failure to train or supervise theory fails as well.

Fifth, plaintiffs seem to be alleging municipal liability based on an alleged custom or practice of DOC employees' being deliberatively indifferent to the medical needs of inmates. Other than the unproven allegations of Phillips and Wright in this regard, no other purportedly similar incidents are alleged in the Complaint, nor is there any other basis for such claim either. This claim should therefore be easily dismissed as well.

Sixth, plaintiffs have not plausibly alleged that any municipal custom, practice or policy was the "moving force" behind the underlying incidents pursuant to the foregoing authorities.

Finally, since plaintiffs have failed to plausibly allege <u>Monell</u> liability of any kind and their class allegations are completely dependent upon <u>Monell</u> liability of the City, plaintiffs' class allegations fail as well.

## POINT VI

## PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF

**A.    Legal Standard Upon Motion to Dismiss Pursuant to Rule 12(b)(1), Fed. R. Civ. P.**

"The task of the district court is to determine whether the [complaint] 'allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.'" <u>John v. Whole Foods Mkt. Grp., Inc.</u>, 858 F.3d 732, 736 (2d Cir. 2017) (quoting <u>Carter v. HealthPort Techs., LLC</u>, 822 F.3d 47, 56 (2d Cir. 2016)) (internal citations omitted). Plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." <u>Warth v. Seldin</u>, 422 U.S. 490, 502 (1975).  At least one plaintiff must have standing for a class action to be maintained. <u>Denny v. Deutsche Bank AG</u>, 443 F.3d 253, 264-265 (2d Cir. 2006). The Court "accept[s] as true all material allegations of the complaint…and construe[s] the complaint in favor of the complaining party." <u>W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP</u>, 549 F.3d 100, 106 (2d Cir. 2008) (quoting <u>United States v. Vazquez</u>, 145 F.3d 74, 81 (2d Cir. 1998)). However, "[a] court considering a Rule 12(b)(1) motion may [also] consider evidence outside of the pleadings to determine whether subject-matter jurisdiction exists." <u>Almareh v. Mayorkas</u>, 20 Civ. 11024 (VEC), 2021 U.S. Dist. LEXIS 203546, at *4 (S.D.N.Y. Oct. 20, 2021) (citing <u>Morrison v. Nat'l Austl. Bank</u>, 547 F.3d 167, 170 (2d Cir. 2008)).

**B.    Legal Standard For Standing to Seek Injunctive Relief**

"An objection to standing is properly made on a Rule 12(b)(1) motion." <u>Williams v. City of New York</u>, 34 F. Supp.3d 292, 294 (S.D.N.Y. 2014) (quoting <u>Tasini v. New York Times Corp.</u>,

Inc., 184 F. Supp. 2d 350, 354 (S.D.N.Y. 2002)). "Standing is 'the threshold question in every federal case, determining the power of the court to entertain the suit.'" Ross v. Bank of Am., N.A. (USA), 524 F.3d 217, 222 (2d Cir. 2008).

"Standing for an equitable claim must appear on the face of the complaint in order to survive a motion to dismiss." O'Shea v. Littleton, 414 U.S. 488 (1974). "'A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it, such as when . . . the plaintiff lacks constitutional standing to bring the action.'" An, supra, at 230 (quoting Cortland St. Recovery Corp. v. Hellas Telecomms., S.A.R.L., 790 F.3d 411, 416-17 (2d Cir. 2015)). "'The plaintiff bears the burden of alleging facts that affirmatively and plausibly suggest that [he or she] has standing to sue.'" Id. "When seeking injunctive relief against a municipality, a plaintiff has standing only if he can 'carry the burden of establishing that 'he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.''" An, supra, at 228 (quoting Shain v. Ellison, 356 F.3d 211, 215 (2d Cir. 2004)) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 101-102 (1983)).

To establish standing, a plaintiff must show that "(1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envt'l. Serv's. (TOC), Inc., 528 U.S. 167, 180-181 (2000). An "abstract injury is not enough." Shain, 356 F.3d at 215.

Under the leading case of City of Los Angeles v. Lyons, supra, "a plaintiff seeking injunctive relief must demonstrate both a likelihood of future harm and the existence of an official policy or its equivalent." Shain, 356 F.3d at 216. "[A] plaintiff seeking injunctive relief cannot rely

only on past injury to satisfy the injury requirement but must show a likelihood of future harm."
Harty v. Simon Property Group, L.P., 428 Fed. App'x. 69, 71 (2d Cir. 2011) (summary order)
(citing Lyons at 105). In fact, a plaintiff must show "a sufficient likelihood that he [or she] will
again be wronged in a similar way." Marcavage v. The City of New York, 689 F.3d 98, 103 (2d
Cir. 2012) (quoting Lyons at 111). One past incident involving a particular plaintiff and the police
has been found to be insufficient to confer standing. City of Los Angeles v. Lyons, supra.

"Past exposure to illegal conduct does not in itself show a present case or controversy
regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."
O'Shea, supra, 414 U.S. at 495-96. The seminal case in this regard, Lyons, supra, "occupies much
of the territory" related to a citizen's standing to seek an injunction against law enforcement
practices surrounding arrests. Williams, supra, 34 F. Supp.3d at 296 (citing Shain, supra, 356 F.3d
at 215). In Lyons, the plaintiff alleged that he feared again being subjected to an illegal chokehold,
and given the extensive use of chokeholds by the Los Angeles police, that he should be afforded
standing to seek injunctive relief. However, the United States Supreme Court held that the risk that
plaintiff himself would come into contact with the police and be subjected to a subsequent unlawful
chokehold was speculative in nature and insufficient to confer equitable standing. Id., at 109; see
also MacIssac v. Town of Poughkeepsie, 770 F. Supp. 2d 587, 601 (S.D.N.Y. 2011) (plaintiff's
claim that he would be stopped, arrested and subjected to a taser gun again was speculative, and
injunctive relief therefore denied).

## C.      Plaintiffs Cannot Demonstrate a Likelihood of Future Harm

Plaintiffs fail the first prong of the foregoing Shain test as the Complaint does not plausibly
allege the likelihood of future harm as to any plaintiff. Rather, as seen above, each plaintiff relies
exclusively on the one past arrest that is pled in the Complaint.  Lyons stands for the proposition
that one past law enforcement interaction is insufficient to confer standing in arrest situations; see

also MacIssac, supra; Williams, supra. For this reason alone, plaintiffs do not have standing to seek injunctive relief.

Further, any argument by plaintiffs that they will be harmed in a similar way is completely "speculative," "hypothetical," "abstract" and "conjectural" in nature. Each plaintiff's allegations are devoid of any facts as to support any adequate suggestion of future harm. In reality, each plaintiff's allegation is based on an entirely "hypothetical" and "conjectural" set of assertions which are not even present in the Complaint, i.e., *if* a plaintiff has a hypothetical open warrant in the future, and *if* he or she is arrested on that warrant by the NYPD and *if* the NYPD brings the plaintiff directly to DOC custody without seeing a judge and *if* the court is available to hear the return of the warrant *if* the plaintiff is held for an unreasonable period of time by DOC, then that particular plaintiff may have a claim on which he or she may attempt to bring. This is precisely the speculation and conjecture that does not confer standing under established caselaw. See Shain, supra, at 216. As such, plaintiffs' standing argument fails for this reason as well.

**D.    Plaintiffs Have Not Plausibly Alleged "a Formal Policy or Its Equivalent" Necessary to Confer Standing**

There is a split among district courts in this Circuit as to whether a showing sufficient for Monell liability is also sufficient to demonstrate a "formal policy or its equivalent" necessary to confer standing to seek injunctive relief under Lyons. See An v. City of New York, 16 Civ. 5381 (LGS), 2017 U.S. Dist. LEXIS 84364, at *8 (S.D.N.Y. June 1, 2017) (collecting cases). The City respectfully submits that the Court should follow the cases which impose a more stringent requirement on plaintiffs in demonstrating a "formal policy or its equivalent" than merely plausibly alleging Monell liability.

This issue was squarely addressed in MacIssac v. Town of Poughkeepsie, supra. The MacIsaac court held that the "formal policy or its equivalent" requirement necessarily carries with

it a "much narrower definition of an 'official policy' [than Monell], but one to which the courts of the Second Circuit have adhered when determining whether a particular plaintiff may seek injunctive relief." Id., at 597. The Complaint fails to meet the narrower "official policy or its equivalent" requirement. The Complaint fails to point to any official policy of the City to regularly violate the rights of individuals arrested on warrants. Plaintiffs' own allegations are simply insufficient to confer standing in accordance with the foregoing authorities.

**E.    Even Applying the <u>Monell</u> Standard, Plaintiffs Fail to Plausibly Allege a "Formal Policy or its Equivalent"**

Even if the Court applies the same standard as is required to bring a claim for municipal liability in its determination of whether plaintiffs have pled a "formal policy or its equivalent," which a number of courts have, see An, supra, at *8, for the reasons set forth in Point V, supra, plaintiffs' claim for injunctive relief fails.

**F.    Plaintiffs' Class Allegations Seeking Injunctive Relief Should Be Dismissed**

Since no named plaintiff has standing to seek injunctive relief, no injunctive relief may be obtained on behalf of the purported class either. See Denny, supra.

**POINT VII**

**THE COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION OVER ANY STATE LAW CLAIMS**

"Under 28 U.S.C. § 1367(a), federal courts have jurisdiction to decide claims over which they would not otherwise have jurisdiction, if those claims are so related to claims over which they do have jurisdiction that the claims form part of the same case or controversy." Seabrook v. Jacobson, 153 F.3d 70, 71 (2d Cir. 1998). "Subsection (c) of § 1367 lists several circumstances in which the federal court may choose not to exercise that jurisdiction: (1) the state claim raises a novel or complex issue of state law; (2) the state claim substantially predominates over the claim over which the court has original jurisdiction; (3) the district court has dismissed all claims over

26

which it had original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." Id. "Other than the catch-all provision, the listed circumstances reflect concerns about the relationship between state and federal courts." Id. "Where a pendent state claim turns on novel or unresolved questions of state law, especially where those questions concern the state's interest in the administration of its government, principles of federalism and comity may dictate that these questions be left for decision by the state courts. This is particularly true if the federal claim on which the state claim hangs has been dismissed." Id., at 72 (citing Rounseville v. Zahl, 13 F.3d 625, 631 (2d Cir. 1994)).

The Court should decline to exercise supplemental jurisdiction over plaintiffs' state law claims considering the lack of any viable federal claims.[9] See 28 U.S.C. § 1367(3); Kolari v. N.Y. Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006). As the Second Circuit has articulated, "[i]t is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over the remaining state law claims." Klein & Co. Futures, Inc. v. Board of Trade of City of New York, 464 F.3d 255, 262 (2d Cir. 2006). In the "usual case" where all federal claims "are eliminated before trial" the balance of factors to be considered – judicial economy, convenience, fairness, and comity – "will point toward declining to exercise jurisdiction over the remaining state law claims." Kolari, supra. As seen, plaintiffs have failed to plausibly allege any federal claims. As such, the Court should decline to exercise supplemental jurisdiction over plaintiffs' state law claims for this reason alone.

---

[9] If the Court dismisses the deliberate indifference to medical needs claims of Phillips, the Court should decline supplemental jurisdiction over his medical malpractice claims. Phillips's medical malpractice claims are not "so related" to his other claims other than the deliberate indifference to medical needs claims brought by Phillips against the medical professionals.

However, even if certain of plaintiffs' federal claims survive, under the foregoing authorities, the Court should still decline jurisdiction over plaintiffs' state law claims. As seen, the heart of plaintiffs' state law claims is that it is a state law violation of New York Criminal Procedure Law for an individual arrested on a warrant to be brought by the NYPD directly to DOC custody (see Complaint, ¶433(b)) and that New York's "24 hour rule" for arrest to arraignment for warrantless arrests applies to arrests based on warrants, or the time for same should be even shorter. (See Complaint, ¶433(d) and (e)). Plaintiffs even propose a "state law class" seemingly based on these issues as well. (See Complaint, ¶459). To the extent that these claims have any legitimacy to them, these issues are novel, complex, unresolved, clearly concern the State's administration over warrants in the court system, and quite frankly "predominate" over the federal claims that plaintiffs have asserted. As such, this Court should decline supplemental jurisdiction over plaintiffs' state law claims for these reasons as well.

### POINT VIII

### PHILLIPS'S STATE LAW FALSE ARREST AND ASSAULT AND BATTERY CLAIMS SHOULD BE DISMISSED

Since a claim for false arrest is rooted in the Fourth and Fourteenth Amendments, it is substantially the same as a New York state law claim for false arrest. Boyd v. City of New York, 336 F.3d 72, 75 (2d Cir. 2003). Phillips' state law false arrest claim[10] should therefore be dismissed for the same reasons as his federal false arrest claim, as argued in Point I, supra. Further, since Phillips has not alleged excessive force, but premises his state law assault claim upon the lack of

---

[10] Only the plaintiff Phillips has pled compliance with New York's notice of claim requirement as set forth in General Municipal Law § 50-e. As such, only Phillips may proceed under any state law theory herein. See Horvath v. Daniel, 423 F. Supp.2d 421, 423 (S.D.N.Y. 2006).

probable cause for his arrest, his assault claim should be dismissed as well due to the probable cause for his arrest. See Morrison v. City of New York, supra, at *22-23.

## POINT IX

### PHILLIPS'S STATE LAW EXCESSIVE DETENTION CLAIM SHOULD FAIL

In addition to the reasons that the defendants set forth in Point II, supra, there is an additional reason why Phillips's state law claim for excessive detention fails: there is no private right of action as "the Second Circuit has recognized, [that] C.P.L § 140.20 does not create a private right of action allowing the subject of an excessive pre-arraignment detention to pursue a later damages action." Palacios v. City of New York, 15 Civ. 386 (PAE), 2017 U.S. Dist. LEXIS 146574, at *24 (S.D.N.Y. Sept. 11, 2017) (citing Watson, supra, at 36-37). To the extent that Phillips's state law excessive detention claim is based on C.P.L § 530.70, plaintiff lacks a private right of action for the alleged violation of that criminal procedure law section either.

## POINT X

### PHILLIPS'S STATE CONSTITUTIONAL CLAIMS SHOULD BE DISMISSED

Phillips's State Constitutional claims are subsumed by his other claims made herein. As such, these claims should be dismissed as well. See e.g. Hollins v. City of New York, 10 Civ. 1650 (LGS), 2014 U.S. Dist. LEXIS 183076 (S.D.N.Y. Mar. 3, 2014) (New York constitution provides no private right of action where Section 1983 provides a remedy). In any event, plaintiffs cannot point to any violations of the New York State Constitution by any defendant.

## POINT XI

### PHILLIPS'S MEDICAL MALPRACTICE CLAIMS SHOULD BE DISMISSED

"'Under New York law, the requisite elements of proof in a medical malpractice action are 1) a deviation or departure from accepted practice, and 2) evidence that such departure was a

proximate cause of the injury or damage.'" Isaac v. City of New York, et. al., supra, at *18 (internal quotation omitted). "Accordingly, in order to state a claim for medical malpractice, a plaintiff must specify the injuries he suffered and allege sufficient facts to demonstrate how his injuries were caused by a deviation from the standard of care." Id., at *19; see Koulkina v. City of New York, 559 F. Supp.2d 300, 329-330 (S.D.N.Y. 2008) (dismissing medical malpractice claim because "plaintiffs do not allege how [defendant's] alleged conduct deviated from accepted medical practice and caused them any harm.").

The one year and ninety day statute of limitations is applicable to Phillips's claims of medical malpractice against the City and the municipal medical professionals in this case, Murnane-Victorelli, Dr. Rosenberg, Dr. Oo, Dr. Mangat, Gravesande, Zamy, Hailand, Johnson, Beauchard and Maslovskiy. Mahone v. City of New York, 13 Civ. 8014 (PAE), 2014 U.S. Dist. LEXIS 50754, at *22 (S.D.N.Y. Apr. 11, 2014). Moreover, "[s]ervice of a notice of claim is a condition precedent to assertion of a tort claim against a municipal corporation." E.g. Needleman v. McFadden, 197 A.D.3d 1070 (1st Dep't 2021). "The notice of claim requirement applies as well to claims against municipal employees, like defendants here." Id.

Moreover, any toll due to the COVID-19 pandemic – even if it applied – does not save Phillips's time barred claims. The Governor tolled the state statutes of limitations in response to the COVID-19 pandemic. See Executive Order [Cuomo] No. 202 [9 N.Y.C.R.R. § 8.202.7]. "Executive Order 202.8 tolled applicable limitations periods from March 20, 2020 to November 3, 2020. The order amounted to a 'pause' in the limitations period—that is, during the duration of the toll, the clock to file [did] not run,' but '[o]nce the toll end[ed,] the clock resume[d] from where it was when the toll began, and the plaintiff ha[d] the rest of his limitations period to file his complaint.'" Rich v. New York, 21 Civ. 3835 (AT), 2022 U.S. Dist. LEXIS 60779, at *21 n.9 (S.D.N.Y. Mar. 31, 2022) (internal quotation omitted).

Phillips's medical malpractice claims should be dismissed for a number of reasons. First, Phillips's medical malpractice claims against the City and the aforementioned medical professionals are barred by the New York's one year and ninety day statute of limitations. Indisputably, the treatment rendered by the medical professional defendants ended no later than July 8, 2020. Phillips alleges that each of the medical professional defendants was a City employee at the time that treatment was rendered.[11] (Complaint, ¶¶38-47) Yet, Phillips's medical malpractice claim was not filed until September 8, 2023 and the medical professional defendants were not even named as defendants in this case until that date. On this basis alone, Phillips's medical malpractice claims should be dismissed.[12]

Second, the notice of claim filed by Phillips is also insufficient. The notice of claim does not assert any claim of medical malpractice whatsoever. (See Ex. R to Zuckerman Decl.) The notice of claim does not name any of the defendant medical professionals who are now defendants in this case. (See Ex. R to Zuckerman Decl.) It is even silent as to any medically related claim being made by Phillips other than for treatment of his bipolar condition. (See Ex. R to Zuckerman Decl.) No information whatsoever is provided in Phillips's notice of claim related to his belated claims regarding treatment for Opioid addiction or PTSD. On these bases alone, Phillips's medical malpractice claims fail. See Hodge v. Village of Southampton, 838 F. Supp.2d 67, 87 (E.D.N.Y.

---

[11] The defendants Murnane-Victorelli, Dr. Rosenberg, Johnson, Dr. Mangat and Maslovskiy were HHC employees at the time services were rendered. (Zuckerman Decl., ¶20) The defendants Dr. Oo, Gravesande, Hailand, Beauchard and Zamy were employed by PAGNY at the time services were rendered. (Zuckerman Decl., ¶21)

[12] Even application of the two and a half year statute of limitations, including the Governor's tolling of the statute of limitations during the COVID-19 pandemic, would render Phillips's medical malpractice claims untimely since, as seen, these claims were not filed until September 8, 2023.

2012) ("[t]he test of the notice [of claim's] sufficiency is whether it includes information sufficient to enable the city to investigate the claim.").[13]

Third, the Complaint fails to plausibly state "how [each defendant's] alleged conduct deviated from accepted medical practice and caused them any harm." See <u>Koulkina</u>, <u>supra</u>. As seen, the Complaint "lumps" 10 medical professionals with professions which vary from internal medicine doctor, psychiatrist, psychologist, social worker, therapist, patient care assistant and physician assistant, without specifying how each of them deviated from the standard of care **in their respective professions**. Phillips's malpractice allegations against each of them are thus improperly conclusory under <u>Iqbal</u> and should be dismissed for this reason as well.

**POINT XII**

**PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE STRICKEN PURSUANT TO RULE 12(F), FED. R. CIV. P.**

Plaintiffs' attempt to convert this lawsuit into a class action should be rejected and their class action allegations stricken. "Whether to grant or deny a motion to strike lies within the court's sound discretion." <u>Garcia v. Execu/Search Grp., LLC</u>, 17 Civ. 9401 (WHP), 2019 U.S. Dist. LEXIS 68904, at *3 (S.D.N.Y. Feb. 19, 2019). "If the 'complaint itself demonstrates that the requirements for maintaining a class action cannot be met,' the Court may strike the class allegations at any practicable time after the suit has been filed." <u>Shaw v. Hornblower Cruises & Events, LCC</u>, 21 Civ. 10408 (VM), 2022 U.S. Dist. LEXIS 202703, at *12 (S.D.N.Y. Nov. 7, 2022) (internal quotation omitted); <u>see also</u> <u>Camacho v. City of New York, et. al.</u>, 19 Civ. 11096 (DLC), 2020 U.S. Dist. LEXIS 125801, at *9-11 (S.D.N.Y. July 16, 2020) (striking class

---

[13] Phillips's malpractice allegations suffer from another deficiency: He does not specify which medical professional defendants even treated him for each of the three different medical conditions he complains of, which is in violation of <u>Iqbal</u>.

32

allegations before a motion for class certification was filed because it was "already clear" that the defects in the class allegations could not be cured); Borgese v. Baby Brezza Enters. LLC, 20 Civ. 1180 (VM), 2021 U.S. Dist. LEXIS 30216 (S.D.N.Y. Feb. 18, 2021) (striking class allegations where there were only conclusive allegations about other class members and the Court's skepticism about whether the claims in the case were suitable for class resolution on the merits). "[T]he plausibility standard will generally apply to such motions." Id., at *6 (citing Talarico v. Port Auth. of N.Y. and N.J., 367 F. Supp.3d 161, 173 (S.D.N.Y. 2019)) ("[A] motion to strike class claims at the pleading stage can succeed where the claims fail to state a plausible entitlement to relief on behalf of the putative class members."). "When the issues are 'plain enough from the pleadings,' they may be resolved without further discovery."[14] Shaw, supra, at *12 (citing Gen. Tel. Co. v. Falcon, 457 U.S. 147, 160 (1982)).

Plaintiffs' class allegations should be stricken for a number of reasons. First, plaintiffs' assertion that there are 40 class members, the presumptive number to meet the numerosity requirement of Rule 23(a)(1), Fed. R. Civ. P., Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995)), is speculative and the Complaint is completely conclusory as to the existence of other class members. In fact, the only individual who even arguably alleges that he was brought directly to DOC custody in lieu of court by NYPD officers, which is the cornerstone of plaintiffs' class allegations (see Complaint, ¶¶ 1, 7, 15, 87(d), 331, 339 and 424(d)), is the proposed class representative Phillips.  Plaintiffs have not plausibly pointed to a single class member for any of their proposed subclasses.  (See Complaint, ¶¶458-461)  For this reason alone, plaintiffs' class allegations should be stricken.

---

[14] Plaintiffs have had limited discovery with respect to the four named plaintiffs pursuant to Order by Magistrate Judge Cave at Docket 59. Complaint, arrest and OLPA reports, as well as DD5s, were produced to plaintiffs' counsel in advance of the City's prior motion to dismiss at Docket 62.

Second, it is clear that the requirements of commonality, typicality and predominance (Rules 23(a)(2) and (3) and 23(b)(3)) cannot be met in this case because issues related to the circumstances of any arrest, the nature of the warrants at issue, the circumstances of any detention, the times of arrests and court availability, are entirely individualized determinations that do not lend themselves to class treatment. See Haus v. City of New York, 03 Civ. 4915 (RWS)(MHD), 2011 U.S. Dist. LEXIS 155735, at *317 (S.D.N.Y. Aug. 31, 2011) (M.J. Dolinger) (neither commonality nor typicality will be satisfied if the court must engage in a "case-by-case evaluation of each encounter" in order to establish liability.).

In this regard, at a minimum, it is clear that there are numerous individualized determinations that dictate against class treatment due to plaintiffs' clear inability to meet Rule 23's requirements, i.e., What time of day was a person detained?; Was it a holiday?; Was there a court available to adjudicate a warrant?; What type of warrant was it?; What court was the warrant from?; What court could the individual be brought to?; Were there emergency factors such as COVID-19 at issue?; What were the charges at issue other than the warrant?; How long was the individual held for?; What occurred that caused any alleged delay?; Who was involved in the incident and from what agency? Plaintiffs' class allegations should clearly be stricken.

The same reasoning applies to plaintiffs' attempt to create a "deliberate indifference to medical needs subclass." (See Complaint, ¶461). The Complaint only raises such allegations of two individuals, both unsubstantiated, the plaintiffs Phillips and Wright. There are no allegations whatsoever about any other potential class members, much less 40 class members, which as seen is the presumptive number for maintenance of a class. Further, the requirements of commonality, typicality and predominance cannot be met either as determinations of indifference to medical needs are entirely individualized determinations. In fact, Phillips's claims arise principally as a result of medical treatment by non-DOC medical professionals and Wright's claims arise from an

issue he had with food and an encounter with DOC Capt. Horton. Such allegations are not appropriate for class treatment either.

Plaintiffs' attempt to convert this lawsuit into a class action is an abuse of Rule 23. Plaintiffs' counsel apparently proposes an improper "fishing expedition" under the guise of discovery in an attempt to meet the Rule 23 requirements. This is improper. Plaintiffs' class claims should therefore be stricken.

## **CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss should be granted in its entirety and the Complaint dismissed with prejudice, and plaintiffs' class allegations stricken.

Dated:      New York, New York
          October 10, 2024

                        MURIEL GOODE-TRUFANT
                        Acting Corporation Counsel of the
                         City of New York
                        Attorney for Defendants City of New York,
                        Michael Prilook, Edward Horton, Gabriel
                        Montalvo, Krystalbella Murnane-Victorelli, Dr.
                        David Rosenberg, Dr. Aung Oo, Dr. Jasdeep
                        Mangat, Terry Gravesande, Mireille Zamy, Terra
                        Hailand, Christopher Johnson, Renan Beauchard
                        and Roman Maslovskiy
                        100 Church Street, Room 3-133b
                        New York, New York 10007
                        (212) 356-3519

                  By:    /s/ Mark D. Zuckerman
                        MARK D. ZUCKERMAN
                        Senior Counsel