21 Civ. 8149 (ALC)(SLC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK


PAUL PHILLIPS, et. al.,

Plaintiffs,

-against-

THE CITY OF NEW YORK, et al.,

Defendants.


**DEFENDANTS' MEMORANDUM OF LAW IN
FURTHER SUPPORT OF MOTIONS TO DISMISS
COMPLAINT AND TO STRIKE CLASS
ALLEGATIONS**


***MURIEL GOODE-TRUFANT***
*Corporation Counsel of the City of New York*
*Attorney for Defendants City of New York, Michael
Prilook, Gabriel Montalvo, Edward Horton, Krystalbella
Murnane-Victorelli, Dr. David Rosenberg, Dr. Aung Oo,
Dr. Jasdeep Mangat, Terry Gravesande, Mireille Zamy,
Terra Hailand, Christoper Johnson, Renan Beauchard
and Roman Maslovskiy*


*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Mark D. Zuckerman*
*Tel:  (212) 356-3519*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT

      POINT I

            PHILLIPS'S FALSE ARREST CLAIM SHOULD
            BE DISMISSED ........................................................................... 1

      POINT II

            PLAINTIFFS' EXCESSIVE DETENTION
            CLAIMS SHOULD BE DISMISSED ......................................... 3

      POINT III

            PLAINTIFFS' DELIBERATE INDIFFERENCE
            TO MEDICAL NEEDS CLAIMS SHOULD BE
            DISMISSED ................................................................................ 8

      POINT IV

            PLAINTIFFS' ADA CLAIMS FAIL ........................................ 11

      POINT V

            PLAINTIFFS' MUNICIPAL LIABILITY CLAIMS
            FAIL ........................................................................................... 13

      POINT VI

            THE COURT SHOULD DECLINE
            SUPPLEMENTAL JURISDICTION OVER
            PLAINTIFFS' STATE LAW CLAIMS ................................... 16

**Page**

POINT VII

    PHILLIPS'S    MEDICAL    MALPRACTICE
    CLAIMS SHOULD BE DISMISSED ....................................................... 16

POINT VIII

    PLAINTIFFS' CLASS ALLEGATIONS SHOULD
    BE STRICKEN ........................................................................................ 19

CONCLUSION ................................................................................................... 20

**<u>TABLE OF AUTHORITIES</u>**

<u>**Cases**</u>                                                                                           <u>**Pages**</u>

<u>Atadzhanov v. City of New York</u>,
  21 Civ. 5098 (LJL), 2022 U.S. Dist. LEXIS 169083
  (S.D.N.Y. Sept. 19, 2022)...................................................................................10, 11

<u>Borgese v. Baby Brezza Enters., LLC</u>,
  20 Civ. 1180 (VM), 2021 U.S. Dist. LEXIS 30216
  (S.D.N.Y. Feb. 18, 2021).............................................................................20

<u>Bryant v. City of New York</u>,
  404 F.3d 128 (2d Cir. 2005)..........................................................................5

<u>Buari v. City of New York</u>,
  530 F. Supp. 3d 356 (S.D.N.Y. 2021)............................................................13

<u>Chance v. Armstrong</u>,
  143 F.3d 698 (2d Cir. 1998)..........................................................................9

<u>Charles v. Orange County</u>,
  925 F.3d 73 (2d Cir. 2019)............................................................................9

<u>Collins v. City of New York, et al.</u>,
  923 F. Supp. 2d 462 (E.D.N.Y. 2013) ..........................................................14

<u>Costin v. Glens Falls Hosp.</u>,
  103 F.4th 946 (2d Cir. 2024) .......................................................................12

<u>Darnell v. Pineiro</u>,
  849 F.3d 17 (2d Cir. 2017)...........................................................................11

<u>Dawkins v. Copeland</u>,
  17 Civ. 9926 (ER), 2019 U.S. Dist. LEXIS 55919
  (S.D.N.Y. Mar. 31, 2019) ...........................................................................17

<u>Devenpeck v. Alford</u>,
  543 U.S. 146 (2004)......................................................................................3

<u>Felix v. City of New York</u>,
  344 F. Supp. 3d 644 (S.D.N.Y. 2018)...........................................................11

<u>Greene, et. al. v. City of New York, et al.</u>,
  725 F. Supp. 3d 400 (S.D.N.Y. 2024)...........................................................11

**Cases**                                                                                                      **Pages**

Haus v. City of New York,
    03 Civ. 4915 (RWS)(MHD), 2011 U.S. Dist. LEXIS 155735
    (S.D.N.Y. Aug. 31, 2011) ...........................................................................................20

Hodge v. Village of Southampton,
    838 F. Supp. 2d 67 (E.D.N.Y. 2012) ..............................................................17, 18

Jaegly v. Couch,
    439 F.3d 149 (2d Cir. 2006)...............................................................................3

King v. Shinder,
    16 Civ. 6315 (PMH), 2020 U.S. Dist. LEXIS 147700
    (S.D.N.Y. Aug. 17, 2020) ................................................................................9

Koulkina v. City of New York,
    559 F. Supp. 2d 300 (S.D.N.Y. 2008)...........................................................17, 19

Mahone v. City of New York,
    13 Civ. 8014 (PAE), 2014 U.S. Dist. LEXIS 50754
    (S.D.N.Y. Apr. 11, 2014) ................................................................................16

Mara v. Rilling,
    921 F.3d 48 (2d Cir. 2019)................................................................................3

Marom v. Esposito,
    15 Civ. 2017 (PKC), 2017 U.S. Dist. LEXIS 60969
    (S.D.N.Y. Apr. 21, 2017)..................................................................................6

McNair v. Harlem Hosp. Med. Dir.,
    19 Civ. 203 (CM), 2019 U.S. Dist. LEXIS 84609
    (S.D.N.Y. May 17, 2019)................................................................................11

Morris v. City of New York, et. al.,
    20 Civ. 9314 (GBD), 2021 U.S. Dist. LEXIS 186917
    (S.D.N.Y. Sept. 29, 2021) ................................................................................8

Morrison v. City of New York, et. al.,
    14 Civ. 4508 (MKB), 2019 U.S. Dist. LEXIS 4839
    (E.D.N.Y. Jan. 10, 2019) .............................................................................2, 3

Nieves v. City of New York,
    22 Civ. 10204 (MKV), 2024 U.S. Dist. LEXIS 59377
    (S.D.N.Y. Mar. 29, 2024) ............................................................................2, 3

Oklahoma City v. Tuttle,
    471 U.S. 808 (1985)......................................................................................14

**<u>Cases</u>**                                                                                   **<u>Pages</u>**

<u>Palacios v. City of New York,</u>
     15 Civ. 386 (PAE), 2017 U.S. Dist. LEXIS 146574
     (S.D.N.Y. Sept. 11, 2017)...............................................................................2

<u>People v. Maxian,</u>
     77 N.Y.2d 422 (1991) ...................................................................................4

<u>People v. Small,</u>
     26 N.Y.3d 253 (2015) ...................................................................................4

<u>Powell v. Nat'l Bd. of Med. Exam'rs,</u>
     364 F.3d 79 (2d Cir. 2004)...........................................................................11

<u>Riverside v. McLaughlin,</u>
     500 U.S. 56 (1991).....................................................................................5, 8

<u>Rodriguez v. City of New York,</u>
     16 Civ. 1649 (AMD)(RLM), 2022 U.S. Dist. LEXIS 104160
     (E.D.N.Y. June 7, 2022) .............................................................................13

<u>Saucier v. Katz,</u>
     533 U.S. 194 (2001)......................................................................................8

<u>Sforza v. City of New York,</u>
     07 Civ. 6122 (DLC), 2009 U.S. Dist. LEXIS 27358
     (S.D.N.Y. Mar. 31, 2009) .............................................................................5

<u>Soberanis v. City of New York,</u>
     244 F. Supp. 3d 395 (S.D.N.Y. 2017).........................................................4

<u>Tangreti v. Bachmann,</u>
     983 F.3d 609 (2d Cir. 2020).......................................................................5, 9

<u>Thorpe v. Delta Airlines, Inc.,</u>
     24 Civ. 1089 (HG), 2024 U.S. Dist. LEXIS 221637
     (S.D.N.Y. Dec. 6, 2024)..............................................................................18

<u>Tieman v. City of Newburgh,</u>
     13 Civ. 4178 (KMK), 2015 U.S. Dist. LEXIS 38703
     (S.D.N.Y. Mar. 26, 2015) ...........................................................................14

**Cases**                                                                          **Pages**

Watson v. City of New York,
    92 F.3d 31 (2d Cir. 1996)....................................................................................4

**Statutes**

Crim. P. Law § 120.90...........................................................................................4

Crim. P. Law § 140.20...........................................................................................4

Crim. P. Law § 530.70....................................................................................4, 5, 6

Fed. R. Civ. P. 12(b)(1).........................................................................................1

Fed. R. Civ. P. 12(b)(6).........................................................................................1

Fed. R. Civ. P. 12(d)............................................................................................19

Fed. R. Civ. P. 12(f).............................................................................................1

Fed. R. Civ. P. 15(c)(1)(C)...................................................................................18

Fed. R. Civ. P. 23...............................................................................................20

Fed. R. Civ. P. 23(a)(2)........................................................................................20

Fed. R. Civ. P. 23(a)(3)........................................................................................20

Fed. R. Civ. P. 23(b)(3)........................................................................................20

## PRELIMINARY STATEMENT

Defendants City of New York (the "City"), Michael Prilook, Gabriel Montalvo, Edward Horton, Krystalbella Murnane-Victorelli, Dr. David Rosenberg, Dr. Aung OO, Dr. Jasdeep Mangat, Terry Gravesande, Mireille Zamy, Terra Hailand, Chirstopher Johnson, Renan Beauchard and Roman Maslovskiy, hereby respectfully submit their Memorandum of Law in further support of their motion to dismiss plaintiffs' corrected third amended complaint (Docket 128) (the "Complaint") in its entirety pursuant to Rules 12(b)(1)[1] and 12(b)(6), Fed. R. Civ. P., and to strike plaintiffs' class allegations pursuant to Rule 12(f), Fed. R. Civ. P. For the following reasons, as well as those set forth in their opening brief[2], defendants' motions should be granted in their entirety and the Complaint dismissed with prejudice[3].

## ARGUMENT

### POINT I

### PHILLIPS'S FALSE ARREST CLAIM SHOULD BE DISMISSED

In their opening brief, defendants argued that there was probable cause (and/or arguable

---

[1] Plaintiffs assert that they no longer seek injunctive relief, whether as a proposed class or individually. Thus, defendants' motion to dismiss plaintiffs' injunctive relief claims should be dismissed for the reasons asserted in defendants' opening brief and/or the Court should dismiss plaintiffs' injunctive claims as moot.

[2] To the extent not addressed herein, defendants rely on the arguments made in their opening brief.

[3] The Court should not accept plaintiffs' apparent attempt to maintain claims against the fictitious defendants remaining in the Complaint. Plaintiffs have had more than an ample opportunity to identify the fictitious defendants. Plaintiffs have already amended their complaint three times. Magistrate Judge Cave even set up a procedure for plaintiffs to identify the fictitious DOC defendants upon plaintiffs' request, and the parties came to court to conduct the identification procedures which Magistrate Judge Cave allowed.  See Docket 99. This Court also specifically allowed plaintiffs to identify the Does they wished to proceed against at a conference prior to the filing of the Complaint, and plaintiffs raised no objection that they wished to identify and proceed against other Does.  See Docket 116.  It was defendants' understanding that plaintiffs were proceeding only against the named defendants in the Complaint upon its filing.

probable cause such that qualified immunity should be afforded to the defendant Prilook) for Phillips's arrest based on his admission in the Complaint of the existence of the subject warrant in the NYPD's database at the time of his arrest, which establishes probable cause. (See Complaint, ¶212) ("the warrant [Docket 188-1]…became live in the NYPD's system."); Morrison v. City of New York, et. al., 14 Civ. 4508 (MKB), 2019 U.S. Dist. LEXIS 4839, at *12-16 (E.D.N.Y. Jan. 10, 2019) (indication of a warrant in an NYPD database gives rise to probable cause to arrest); Palacios v. City of New York, 15 Civ. 386 (PAE), 2017 U.S. Dist. LEXIS 146574 (S.D.N.Y. Sept. 11, 2017) ("[T]he ADW system's report of a live warrant for Palacios's arrest based on the 2011 incident would independently have justified that arrest as lawful.").

In response, Phillips makes two arguments. First, Phillips argues for the first time that the bench warrant (Docket 188-1) was "facially invalid" (Docket 200, p. 30), though such an allegation is not even made in the Complaint. Regardless of whether the Court now considers this contention, Phillips makes no plausible argument as to how the warrant is "facially invalid," nor was it. "[F]acial invalidity 'mean[s] that a reasonable police officer can look at the face of the warrant and see that it cannot be enforceable—like a warrant signed by Judge Santa Claus, or issued out of the Supreme Court of Heaven.'" Nieves v. City of New York, 22 Civ. 10204 (MKV),  2024 U.S. Dist. LEXIS 59377, at *10 (S.D.N.Y. Mar. 29, 2024) (internal citation omitted). Phillips makes no argument remotely meeting this standard for "facial invalidity." Phillips's "facial invalidity" argument thus fails.

Second, Phillips argues that because he has pled that the defendant "Prilook told Phillips in substance" that there had been a "mistake," see Complaint, ¶118, that this somehow defeats defendants' motion.  It does not.  Phillips admits that this allegation was "subjective[]" on the part of Prilook. (Docket 200, p. 18). However, "the probable cause inquiry is objective rather than

subjective." <u>Jaegly v. Couch</u>, 439 F.3d 149, 154 (2d Cir. 2006) (citing <u>Devenpeck v. Alford</u>, 543 U.S. 146, 152-153 (2004)). And Phillips concedes in the Complaint that police have no role in resolving issues relating to the validity of a warrant. <u>See</u> Complaint, ¶70 ("the police have no role in or ability to resolve" issues involving the warrant). Nor does Phillips plead that Prilook knew or had reason to know that the warrant had been "vacated." <u>See</u> <u>Morrison</u>, <u>supra</u>, at *15. Thus, Phillips's allegation in this regard does not defeat defendants' motion. Phillips's admission of a "live" warrant in the NYPD's database objectively provided probable cause for his arrest, which is indisputably a full defense to a false arrest claim.

Simply, Phillips has pled no facts sufficient to overcome the presumption that his arrest, indisputably pursuant to a warrant that was "live" in the NYPD's database, is supported by probable cause. <u>See</u> <u>Mara v. Rilling</u>, 921 F.3d 48, 73 (2d Cir. 2019) (an arrest pursuant to a warrant is presumed to be supported by probable cause); <u>see</u> <u>Nieves</u>, <u>supra</u>, at *5-11 (dismissing false arrest claim based on existence of warrant). At a minimum, there was "arguable probable cause" for Phillips's arrest based on what plaintiff concedes was a "live" warrant in the NYPD's database based on the above referenced authorities. Phillips's false arrest claim should therefore be dismissed based upon the existence of probable cause or "arguable probable cause" such that qualified immunity should be afforded Prilook.

## POINT II

### PLAINTIFFS' EXCESSIVE DETENTION CLAIMS SHOULD BE DISMISSED

In response to the numerous meritorious arguments made in defendants' opening brief, plaintiffs make a number of arguments as to why their federal excessive detention claims should not be dismissed. At the outset, it is critical to point out that the entirety of the contentions that plaintiffs make as to alleged excessive detentions in the Complaint is based solely on their novel

interpretations of C.P.L. §530.70. Plaintiffs argue that New York's 24 hour arrest to arraignment rule as set forth in People v. Maxian, 77 N.Y.2d 422 (1991) for warrantless arrests, a decision based on C.P.L. §140.20 only, applies to arrests based on bench warrants pursuant to C.P.L. §530.70 as well. No court has ever so held and plaintiffs have provided no such authority in their response to defendants' motion.  To the contrary, the New York Court of Appeals in People v. Small, 26 N.Y.3d 253, 258 (2015) has stated, that "'no specific time span is universally considered unreasonable or per se unconstitutional' in bringing a defendant before the local criminal court," as to arrests made pursuant to C.P.L. §120.90, which is specifically referenced in C.P.L. §530.70, on the return of such warrants. Defendants cited People v. Small, supra, for this proposition in their opening brief, and plaintiffs do not even address it in response to defendants' motion. There is simply no such "24 hour rule" under New York Criminal Procedure Law as to arrests made upon execution of bench warrants that has been held by any court.

Even if there is such a rule, which there is not, plaintiffs do not take issue with the law cited by defendants that to the extent that plaintiffs' federal excessive detention claims are based on "'a state rule of criminal procedure,' such claims 'do[] not create a liberty interest that is entitled to protection under the federal Constitution.'" Soberanis v. City of New York, 244 F. Supp.3d 395, 401 (S.D.N.Y. 2017) (M.J. Gorenstein) (quoting Watson v. City of New York, 92 F.3d 31, 37-38 (2d Cir. 1996)). Thus, to the extent that plaintiffs base their federal excessive detention claims upon alleged violations of New York State C.P.L. §§530.70 and 140.20 by defendants, such federal claims are not actionable, as plaintiffs seem to now concede.  (Docket 200, p. 22).

Plaintiffs for the first time argue that since they contend that defendants violated the terms of the respective warrants, that they have stated claims for federal excessive detention. This argument fails for a number of reasons.  Initially, this claim was not made in the Complaint and

4

defendants did not have fair notice of it. See Sforza v. City of New York, 07 Civ. 6122 (DLC), 2009 U.S. Dist. LEXIS 27358, at *57 (S.D.N.Y. Mar. 31, 2009). However, even if the Court considers plaintiffs' new argument, it still fails. Plaintiffs contend, without reference to any authority whatsoever, that the "you [a police officer] must without unnecessary delay bring the defendant before this court" language in each of the warrants [Dockets 188-1, 5, 8 and 14] somehow imposes the 48 hour arrest to arraignment requirement for warrantless arrests to arrests based upon warrants. It does not. The Second Circuit has stated that the "48 hour rule" [as set forth in Riverside v. McLaughlin, 500 U.S. 56 (1991)] is limited to the "context of pretrial detention, [where] the Supreme Court has held that, when there has been a **warrantless** arrest, the Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention." Bryant v. City of New York, 404 F.3d 128, 136 (2d Cir. 2005) (emphasis added). Plaintiffs have cited no authority whatsoever for the proposition that the same 48 hour rule applies to arrests made upon the execution of bench warrants, much less that the cited to language in these warrants imposes such a requirement.

Even should the Court apply the federal 48 hour arrest to arraignment rule for warrantless arrests to arrests based upon bench warrants by police officers[4], plaintiffs' claims still fail[5]. "'[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" Tangreti v. Bachmann, 983 F.3d 609, 616 (2d Cir. 2020). None of the plaintiffs were held for more than 48 hours by their arresting police officers before being brought to court to see a judge on a bench warrant. In fact, as argued in defendants' opening

---

[4] The warrants at issue here are only addressed to "police officers." (Dockets 188-1, 5, 8 and 14).

[5] By its own terms, C.P.L. §530.70 only applies to an "executing police officer or court officer." To the extent that plaintiffs purport to bring claims based thereon against individuals that go beyond these individuals based on this C.P.L. provision, such claims fail for this reason as well.

brief, the plaintiffs Wright, Rosario and Thompson were brought directly to court upon their arrests by their arresting officers, and not directly to DOC custody. Courts then determined what happened to Wright, Thompson and Rosario thereafter (which is really what these plaintiffs are complaining of), including the resolution of open warrants raised after Wright and Thompson were arrested on completely unrelated charges. Plaintiffs have failed to in any way allege that any NYPD officer brought any plaintiff to DOC custody when a court was available to hear returns on bench warrants, including Phillips, much less that any police officer held any plaintiff for in excess of 48 hours.

"OLPA Reports are digitally accessible documents that reflect the arrest processing steps an NYPD officer makes, and including such information as custody time, arraignment time, arraignment status, and lodging status/history." Marom v. Esposito, 15 Civ. 2017 (PKC), 2017 U.S. Dist. LEXIS 60969, at *4 (S.D.N.Y. Apr. 21, 2017). The plaintiff Wright was arrested on controlled substance charges by NYPD officers, and not on a bench warrant. (Docket 188-3) Indisputably, his arresting officer brought him directly to court, and not to DOC custody, as reflected by the OLPA report at Docket 188-4, which states that the charges were declined to prosecute (within 24 hours of his arrest) and that he was lodged at "Kings Main Male Holding." And the warrant that is reflected on Wright's OLPA report is an arrest warrant from Superior Court[6] (Docket 188-5) that makes C.P.L. §530.70 inapplicable by virtue of the fact that that C.P.L. provision only applies to bench warrants, which is what plaintiffs purport to be complaining about by virtue of this lawsuit in the first place. Wright has not plausibly alleged that any NYPD officer exercised unnecessary delay upon the execution of a bench warrant.

Randy Rosario was arrested pursuant to an arrest warrant (Docket 188-8), which as seen,

---

[6] Plaintiffs concede that in the case of a Superior Court bench warrant, C.P.L. § 530.70 does allow the arrestee to be brought to a correctional facility when a returning court is not available.

is not even the subject of C.P.L. §530.70 of which plaintiffs complain, since that C.P.L section applies to bench warrants only. He too was taken directly to court, and not DOC custody, as reflected on his OLPA report by the fact that he was arraigned at 4:41 p.m. on November 11, 2020, within 24 hours of his subject arrest. (Docket 188-9) He was not brought to DOC custody until November 12, 2020 at 6:30 p.m. according to his DOC "movement history."  (Docket 188-10). Rosario has not plausibly alleged that any NYPD officer exercised unnecessary delay upon the execution of a bench warrant.

Kylasia Thompson was arrested on grand larceny charges, and not based upon a bench warrant. (Docket 188-11). She was brought directly to court, and not directly to DOC custody, and she was arraigned on the grand larceny charges at 12:39 a.m. on November 22, 2019 (within 24 hours of her arrest).  (Docket 188-13). Thompson has not plausibly alleged that any NYPD officer exercised unnecessary delay upon the execution of a bench warrant.

Phillips was the only plaintiff actually arrested upon the execution of a bench warrant, which as seen is the premise upon which this lawsuit was originally brought. (See Docket 1). He was arrested on July 3, 2020, indisputably the celebrated national Independence Day holiday at the height of the COVID-19 pandemic, and the command log for his arrest indicates that he was brought to Rikers Island at 5:10 p.m. that day (not 3:53 p.m., as Phillips contends, which in fact was the arrest time, and not the time that Phillips was transported to Rikers Island) by Prilook (Docket 188-1). Prilook did not hold Phillips "for more than 48 hours before bringing [him] to court to resolve the warrant[]" either, nor there any facts alleged in the Complaint that Prilook was involved in holding Phillips for four days at Rikers Island before Phillips's release. There is no plausible allegation of "unnecessary delay" against Prilook either and Phillips does not plausibly allege that there was any court part open at the time of his arrest to resolve the warrant. Plaintiffs'

arguments based on their novel interpretations of the language in the respective warrants all fail as no police officer defendant held any plaintiff for 48 hours before they were brought to court on a bench warrant[7].

The individual defendants are also entitled to qualified immunity as to plaintiffs' excessive detention claims. The right that plaintiffs claim, namely that the terms of the subject warrants impose the 48 hour rule of Riverside, supra, was certainly not clearly established at the time of any of plaintiffs' detentions, and certainly not in the "particularized…sense," see Saucier v. Katz, 533 U.S. 194, 200 (2001), thus, qualified immunity should be afforded to Prilook and Montalvo and any other individual defendant on these claims, even in the event the Court adopts plaintiffs' unsupported constitutional arguments.

## POINT III

### PLAINTIFFS' DELIBERATE INDIFFERENCE TO MEDICAL NEEDS CLAIMS SHOULD BE DISMISSED

In their opening brief, defendants made a number of arguments as to why the Phillips's deliberate indifference to medical needs claims should be dismissed. Phillips complains that he was denied needed medications for Opiod addiction, Bipolar Disorder and PTSD. (See Complaint, ¶144) Defendants first argued that the medical professionals who Phillips has indiscriminately sued are physicians, physician assistants, patient care assistants, psychologists, psychiatrists, internists, social workers and therapists who are improperly lumped into a group pleading. See Morris v. City of New York, et. al., 20 Civ. 9314 (GBD), 2021 U.S. Dist. LEXIS 186917, at *13 (S.D.N.Y. Sept. 29,

---

[7] Phillips's excessive detention claims against C.O. Montalvo fail for a different reason. Plaintiff has not plausibly alleged such claim against him as Phillips has alleged no facts that Montalvo, as a line correction officer, Montalvo had any responsibility for determining court appearances for inmates during his duties at DOC, and in response to defendants' motion, Phillips makes no such argument. As seen, C.P.L. §530.70 does not even apply to him as a correction officer.

2021) (claims for deliberate indifference to medical needs are subject to dismissal where a plaintiff "lumps" the individual defendants in a group pleading such that it is difficult to determine which individual defendant committed the misconduct alleged). In response, Phillips does not even address this issue. As seen, a "'plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" <u>Tangreti</u>, <u>supra</u> (internal citation omitted). A deliberate indifference to medical needs claim must be brought individually against each defendant. Phillips has not done so because he is unable to meet this standard and he does not even argue that he has. For this reason alone, Phillips's claims should be dismissed.

Second, Phillips conflates a deliberate indifference to medical needs claim with his time barred medical malpractice claims. "A plaintiff must show 'something more than mere negligence' to establish deliberate indifference in the Fourteenth Amendment context." <u>Charles v. Orange County</u>, 925 F.3d 73, 87 (2d Cir. 2019) (internal quotation omitted). "Thus, 'mere medical malpractice is not tantamount to deliberate indifference, but it may rise to the level of deliberate indifference when it involves culpable recklessness, i.e., an act or a failure to act . . . that evinces a conscious disregard of a substantial risk of serious harm.'" <u>Id.</u> (internal quotation omitted). Here, plaintiff does not and cannot allege that he was not treated for Opioid addiction and bipolar disorder by the medical professionals[8]. To the contrary, he disagrees with the courses of treatment, more particularly the medications he was provided and when. "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim." <u>Chance v. Armstrong</u>, 143 F.3d 698, 703 (2d Cir. 1998). "'[T]he fact that a prisoner might prefer a different treatment does not give rise to [a Fourteenth Amendment] violation.'" <u>King v. Shinder</u>, 16 Civ.

---

[8] Phillips does not address defendants' arguments as to his PTSD claim in response to defendants' motion.

6315 (PMH), 2020 U.S. Dist. LEXIS 147700, at *25 (S.D.N.Y. Aug. 17, 2020) (quoting <u>Chance</u>). Phillips's allegations completely fail to meet the *mens rea* requirement for such claim against each individually named defendant, as his allegations at most amount to a disagreement over a treatment course, <u>i.e.</u>, which medication should have been administered and when. Phillips's claim should be dismissed for these reasons as well.

Phillips does not address defendants' arguments that his allegations against Prilook and Montalvo are insufficient as well. Prilook merely transported Phillips to Rikers Island. He is not responsible for the medical care that Phillips received while subsequently incarcerated. (Complaint, ¶124)  Montalvo, a line correction officer, according to Phillips's own allegations, told Phillips that his medical condition would be addressed at the clinic (Complaint, ¶155), which it was. These claims fail.

With respect to Wright, he complains that he was not provided a liquid diet that he claims was necessary due to his jaw being wired shut. In response to defendants' arguments for dismissal, Wright does not provide any authority from this Circuit supporting a deliberate indifference to medical needs claim based on this alleged deprivation.  Recognizing that, Wright now contends that he is proceeding on a Fourteenth Amendment conditions of confinement claim that was never pled (despite plaintiffs having already amended their complaint three times). Having not pled a conditions of confinement claim, and since a deliberate indifference to medical needs claim does not lie for the claimed deprivation, Wright's claim should be dismissed for this reason alone.

Should the Court consider Wright's unpled conditions of confinement argument, Wright appears to principally rely on <u>Atadzhanov v. City of New York</u>, 21 Civ. 5098 (LJL), 2022 U.S. Dist. LEXIS 169083 (S.D.N.Y. Sept. 19, 2022). This case is easily distinguishable from Wright's allegations against Horton, which is the only defendant named by Wright with respect to this claim. As set forth in defendants' opening brief, Wright's allegation is that on one chance encounter he "flag[ged] down"

10

Horton somewhere in VCBC one day while incarcerated and "begged" for food, and that Horton was not responsive. (Complaint, ¶¶245-247). This is a far cry from what was alleged in <u>Atadzhanov</u>, wherein it was alleged that the defendant officers who were responsible for meal shifts in that case were aware of rapid weight loss by the plaintiff, <u>id.</u>, at *25-26, that plaintiff had filed 14 grievances that the correction officers were aware of, <u>id.</u>, at *25-26, and that there were multiple interactions between plaintiff and the officers on the food issue he raised. <u>See Id.</u>, at *26-27. There is not even an allegation in this case that Horton had any responsibility for meal shifts involving plaintiff, much less his diet. Wright has therefore not met the stringent deliberate indifference standard for such claim. <u>See</u> <u>Darnell v. Pineiro</u>, 849 F.3d 17, 29 (2d Cir. 2017).  His claim should therefore be dismissed.

**POINT IV**

**<u>PLAINTIFFS' ADA CLAIMS FAIL</u>**

"To plead a violation of Title II of the ADA, a plaintiff must allege that '[h]e is a qualified individual with a disability; 2) that [h]e was excluded from a participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and 3) that such exclusion or discrimination was due to [his] disability.  <u>Greene, et. al. v. City of New York, et. al.</u>, 725 F. Supp.3d 400, 424 (S.D.N.Y. 2024) (quoting <u>Felix v. City of New York,</u> 344 F. Supp.3d 644, 663 (S.D.N.Y. 2018)). A plaintiff seeking monetary damages to remedy an alleged Title II violation must show "not only that there was a violation, but that such violation was motivated by either discriminatory animus or ill will stemming from plaintiff's disability." <u>Powell v. Nat'l Bd. of Med. Exam'rs</u>, 364 F.3d 79, 89 (2d Cir. 2004); <u>see</u> <u>McNair v. Harlem Hosp. Med. Dir.</u>, 19 Civ. 203 (CM), 2019 U.S. Dist. LEXIS 84609, at *9 (S.D.N.Y. May 17, 2019) (dismissing ADA claim where plaintiff failed to allege that defendants failed to accommodate a disability or denied him services because of that disability).

In response to defendants' motion to dismiss,[9] Phillips contends that because he has alleged he was not provided proper medications for Opoid addiction and Bipolar Disorder, he has sufficiently alleged an ADA claim. Phillips is wrong. "Since disability is so often associated with a medical condition, the distinction between the positive (or benign) and pejorative forms of discrimination is critical to prevent the federal statutes from displacing the state law causes of action for malpractice. Costin v. Glens Falls Hosp., 103 F.4th 946, 954 (2d Cir. 2024). "The federal law of discrimination does not review the conduct of '[a] doctor who administers a medical treatment to a patient (or withholds it) because the doctor's medical training leads her to conclude that the treatment is medically appropriate (or inappropriate)[.]'" Id. (internal citation omitted) "If the treatment is merely deficient, imprudent, or harmful, the matter is one of medical malpractice." Id. "On the other hand, a doctor who inflicts or withholds a type of medical treatment for reasons having no relevance to medical appropriateness--reasons dictated by bias rather than medical knowledge--is practicing the pejorative form of discrimination." Id. (internal citation omitted) "[A] plaintiff pleads an actionable claim of discrimination in the medical treatment context under the ADA or the Rehabilitation Act if [he] alleges that the defendants made treatment decisions based on factors that are 'unrelated to, and thus improper to consideration of' the inquiry in question.'" Id. (internal citation omitted).

Where Phillips's ADA claim fails is that he has failed to plausibly allege that a City program (or the lack of a program) resulted in discrimination against him. All that he alleges is that the doctors who treated him at Rikers Island did not provide him the proper medications. The issues that Phillips has raised are really ones of (time barred) alleged malpractice by the doctors

---

[9] Plaintiffs do not refute defendants' contention that their ADA claims against the individual claims are not cognizable.

who treated him. But, the Complaint completely fails to allege disability discrimination as required to maintain an ADA claim against the City or that Phillips was treated based on factors that were unrelated to his medical needs. Pursuant to the foregoing authorities, therefore, Phillips's ADA claims fail.

Wright's ADA claims fail as well pursuant to the foregoing authorities. All that Wright has alleged is that he was not provided a liquid diet while he was incarcerated and that he needed it because his jaw was wired shut. However, Wright has not plausibly alleged that any failure by DOC to provide him with a liquid diet was the result of a DOC or City program due to disability discrimination. As such, Wright's ADA claim fails as well.

**POINT V**

**PLAINTIFFS' MUNICIPAL LIABILITY CLAIMS FAIL**

In defendants' opening brief, the City made a number of arguments as to why plaintiffs' municipal liability claims should be dismissed. First, defendants argued that plaintiffs had failed to plausibly allege an unofficial and unconstitutional custom or practice of the City by virtue of "similar complaints [that] involve factually similar misconduct, [are] contemporaneous to the misconduct at issue in the plaintiff's case, and result[ed] in an adjudication of liability." See Rodriguez v. City of New York, 16 Civ. 1649 (AMD)(RLM), 2022 U.S. Dist. LEXIS 104160, at *27 n.9 (E.D.N.Y. June 7, 2022) (quoting Buari v. City of New York, 530 F. Supp.3d 356, 398 (S.D.N.Y. 2021)). Defendants argued that even among the four plaintiffs in this case, only one of them, Phillips, meets the paradigm that they challenge, namely that the NYPD has an unconstitutional custom or practice of bringing individuals arrested on bench warrants directly to jail instead of court. As seen, Wright, Rosario and Thompson were not arrested on bench warrants, but rather on unrelated charges (there was even an **arrest** warrant for Rosario's arrest based on the

unrelated charges against him, and not a bench warrant). As seen, plaintiffs have not even plausibly

alleged any underlying unconstitutional violations caused by such alleged practices.

In response, plaintiffs argue that the "Legal Aid Society letter" referenced in the Complaint

at ¶¶354-386 supports the alleged unofficial custom or practice[10]. It does not for a number of

reasons. First, the letter was purportedly sent after all of the subject incidents involving plaintiffs.

See Tieman v. City of Newburgh, 13 Civ. 4178 (KMK), 2015 U.S. Dist. LEXIS 38703, at *48-49

(S.D.N.Y. Mar. 26, 2015) (citing Collins v. City of New York, et. al., 923 F. Supp.2d 462, 479

(E.D.N.Y. 2013)) ("a 'litany of other police-misconduct cases' discussed in plaintiff's complaint

'were insufficient to make a plausible case for Monell liability,' because they…post-dated the

alleged misconduct in the case at hand…"). Second, as to the five incidents plaintiffs describe from

the Legal Aid Society letter, plaintiffs do not allege who was allegedly wrongfully arrested, when

the arrests took place nor even that such individuals were taken by NYPD officers upon any such

arrests for bench warrants directly to DOC custody without seeing a judge.  (See Complaint,

¶364(a)-(e)). Third, none of these incidents is alleged to have resulted in liability to the City as

required either.  See Tieman, supra, at *50.

Plaintiffs also cite to a "daily 'list'" of individuals held on warrants created by the City.

(Docket 200, p. 51)  Even if this was actually the case, this allegation hardly supports the notion

that the City has an unofficial custom or practice as alleged by plaintiffs. In truth, plaintiffs are

relying solely on their own experiences, which is insufficient[11].  See Oklahoma City v. Tuttle, 471

U.S. 808, 824 (1985) (It is well established that a single isolated incident alleged in a complaint,

---

[10] And plaintiffs provide no support for their argument that their interpretation of an Assistant Corporation Counsel's purported statement to their counsel in settlement discussions is evidence of municipal liability. This contention reeks of desperation.

[11] As to their latest unpled and novel allegation, that the City has a practice of exceeding the terms of warrants, the Complaint is silent as to any other individuals' experiences besides plaintiffs.

especially where the alleged incident involves only officials below the policymaking level, will not suffice to establish a municipal policy or custom.).

In defendants' opening brief, the City also argued that plaintiffs had failed to plausibly allege a formal unconstitutional policy of the City either. In response, plaintiffs cite to the NYPD patrol guide provision (Docket 188-16) and contend without any authority whatsoever that as to Supreme Court warrants, the direction to police officers that "when [they] cannot bring the defendant to Supreme Court for arraignment (after 1700 hours on weekdays and on weekends), the officer will deliver the defendant…to Department of Correction" is unconstitutional. Plaintiffs' argument should be rejected. As seen, plaintiffs have cited no authority whatsoever for the proposition that bringing an individual to DOC custody on a warrant is per se unconstitutional. But beyond that, the challenged provision does not even apply to any plaintiff. As seen, Wright, Rosario and Thompson were not arrested on bench warrants at all by their arresting officers. And by the terms of Phillips's warrant, Docket 188-1, his warrant was issued by a criminal court, and not a supreme court, as differentiated by the challenged patrol guide provision.

The City also moved to dismiss plaintiffs' municipal liability claim based upon the fact that the alleged failure to train theory was boilerplate[12]. Plaintiffs do not respond to this meritorious argument of the City. The City also argued that the Legal Aid Society letter (and any NYPD policymakers' reaction to it) could not have been the cause of plaintiffs' alleged injuries since it post-dated the dates of incidents herein. Plaintiffs do not respond to this meritorious argument.

Plaintiffs also do not respond to the City's contention that if their municipal liability

---

[12] With respect to plaintiffs' municipal liability claims based on deliberate indifference to medical needs, they contend that "this docket…is not the best place to find space to litigate the general conditions on Rikers." (Docket 200, p. 52) Regardless, the Complaint does not in any way plausibly connect whatever conditions plaintiffs are referring to with the medical treatment Phillips received and that is complained of herein. This claim should therefore be dismissed.

allegations fail, so doe their class allegations, since their class allegations are based on plaintiffs' municipal liability allegations against the City. Simply, if plaintiffs' municipal liability claims fail, so do their class allegations which are based entirely thereon.

### POINT VI

### THE COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS

In response to defendants' arguments made in their opening brief, plaintiffs contend that the parties are in agreement on the supplemental jurisdiction issue, since there is agreement that if plaintiffs' federal claims are dismissed, the Court should decline supplemental jurisdiction over plaintiffs' state law claims should that occur. While defendants appreciate plaintiffs' agreement on this issue, defendants' argument goes further than that: defendants argue that even if some of federal claims survive defendants' motion, the Court should still decline to hear plaintiffs' state law claims. See Docket 189, Point VII. Plaintiffs have not addressed defendants' meritorious argument in this regard. As argued by defendants in their opening brief, to the extent that plaintiffs' state law claims regarding warrants have any legitimacy to them, the issues are novel, complex, unresolved, clearly concern the State's administration over warrants in the court system, and quite frankly "predominate" over the federal claims that plaintiffs have asserted. As such, this Court should decline supplemental jurisdiction over plaintiffs' state law claims for these reasons as well, as such issues should be decided by state courts in the interest, at a minimum, of comity.

### POINT VII

### PHILLIPS'S MEDICAL MALPRACTICE CLAIMS SHOULD BE DISMISSED

In their opening brief, defendants made a series of arguments in support of dismissal of the Phillips's medical malpractice claims. First, defendants argued that New York's one year and

ninety day statute of limitations bar Phillips's medical malpractice claims. See Mahone v. City of New York, 13 Civ. 8014 (PAE), 2014 U.S. Dist. LEXIS 50754, at *22 (S.D.N.Y. Apr. 11, 2014). Second, defendants argued that New York's notice of claim requirements bar such claims. See Hodge v. Village of Southampton, 838 F. Supp.2d 67, 87 (E.D.N.Y. 2012) ("[t]he test of the notice [of claim's] sufficiency is whether it includes information sufficient to enable the city to investigate the claim."). Third, defendants argued that the Complaint fails to plausibly state "how [each defendant's] alleged conduct deviated from accepted medical practice and caused them any harm," as required.  See Koulkina v. City of New York, 559 F. Supp.2d 300, 329-330 (S.D.N.Y. 2008).

With respect to defendants' statute of limitations argument, without any authority whatsoever, Phillips seems to contend that the one year and ninety day statute of limitations does not apply to his medical malpractice claims against the individual defendants. Phillips is incorrect. "Claims for…malpractice against the New York City Health and Hospitals Corporation and its employees must be brought within one year and ninety days.[13]" Dawkins v. Copeland, 17 Civ. 9926 (ER), 2019 U.S. Dist. LEXIS 55919, at *27 (S.D.N.Y. Mar. 31, 2019). For this reason alone, all of Phillips's medical malpractice claims are time barred.

Phillips also argues baldly that the Court should apply the relation back doctrine to his medical malpractice claims. Phillips argues, essentially, that he is now merely relabeling his prior claims as medical malpractice claims. This is untrue. In Phillips's only complaint filed in the

---

[13] Neither in the Complaint or in response to defendants' motion does Phillips differentiate between HHC and PAGNY employees for statute of limitations purposes, and in fact pleads that PAGNY employees are "City employees" as well.  (Complaint, ¶¶38-47)  Regardless, as argued in defendants' opening brief, whether the Court applies the one year and ninety day or two and a half year statute of limitations as to PAGNY employees, Phillips did not meet either statute of limitations, nor does he argue to the contrary.

limitations period, he pled that he was proceeding against NYPD and DOC employed defendants only and it was these individuals who deprived him of his medications.  (See Complaint, Docket 1, ¶¶1,50).  So, Phillips was claiming the opposite. There is also no reference to Phillips proceeding against HHC or PAGNY medical professionals at all in his original or prior amended complaints, much less on a malpractice theory. Id. "In making this [relation-back] determination, 'the pertinent inquiry . . . is whether the original complaint gave the defendant fair notice of the newly alleged claims.'" Thorpe v. Delta Airlines, Inc., 24 Civ. 1089 (HG), 2024 U.S. Dist. LEXIS 221637, at *7 n.4 (S.D.N.Y. Dec. 6, 2024) (internal citation omitted). There was no fair notice provided to the City during the limitations period of a malpractice claim by Phillips.  Further, as to the individually named medical defendants, Phillips does not argue, nor could he, that they had any knowledge, or even notice, of Phillips's medical malpractice claims during the limitations period either, much less that a mistake had been made in identifying individual defendants.  See Rule 15(c)(1)(C), Fed. R. Civ. P. In fact, Phillips's original complaint and amendments stated that NYPD and DOC officers only had denied him medications.  Phillips's relation back theory fails[14].

      With respect to defendants' notice of claim arguments made in their opening brief, Phillips never addresses nor refutes the fact that his notice of claim does not assert any claim of medical malpractice whatsoever and that the notice of claim does not name any of the defendant medical professionals who are now defendants in this case. Phillips also does not refute that the notice of claim is even silent as to any medically related claim being made by Phillips other than for treatment of his bipolar condition. Phillips also does not refute defendants' argument that no information whatsoever is provided in his notice of claim related to his belated claims regarding

---

[14] Further, to the extent that the Court determines that the question of Phillips's "diligence" has any bearing on this analysis, Phillips makes no such requisite showing.

treatment for Opoid addiction or PTSD.  (See Docket 188-18).  Due to the deficiencies in his Notice of Claim, Phillips's medical malpractice claims fail. See Hodge v. Village of Southampton, 838 F. Supp.2d 67, 87 (E.D.N.Y. 2012) ("[t]he test of the notice [of claim's] sufficiency is whether it includes information sufficient to enable the city to investigate the claim.").

Phillips also does not squarely address defendants' argument that the Complaint fails to plausibly state "how [each defendant's] alleged conduct deviated from accepted medical practice and caused them any harm," as required.  See Koulkina, supra.  It simply does not.  For all of these reasons, Phillips's medical malpractice claims should be dismissed.

**POINT VIII**

**PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE STRICKEN**

Defendants largely rest on the arguments made in their opening brief as to this issue, but a few points are worth making here. First, plaintiffs do not dispute the legal principles set forth by defendants in support of their motion to strike plaintiffs' class allegations. Second, plaintiffs do not take issue with defendants' argument that if plaintiffs' municipal liability claims are dismissed, that their class allegations must fail as well.

Third, Exhibit 1 to the Green Declaration at Docket 199-1 should not be considered upon defendants' motion to strike. It is merely a document submitted by plaintiffs outside of the pleadings as contemplated by Rule 12(d), Fed. R. Civ. P.  Fourth, even if this exhibit is considered by the Court upon defendants' motion, it certainly does not say what plaintiffs say it does. While it refers to a list of individuals held at DOC on warrants, it hardly refers to as a list that contains class members in any shape or form. There is no indication that there are any lists of individuals arrested on bench warrants (which as seen is the only theory under which this case was originally brought), or individuals arrested on bench warrants by NYPD officers who were executing bench

19

warrants and brought the arrestee to DOC custody. As much as plaintiffs attempt to hide this fact, in all the reiterations of their complaints, only one individual is identified as having been arrested upon the execution of a bench warrant and brought to DOC custody, and that is the plaintiff Phillips. That is how this case started, and plaintiffs' attempts to wildly expand this litigation should be rejected. Rosario was arrested upon an arrest warrant for charges unrelated to any past bench warrant. Thompson was arrested for grand larceny. Wright was arrested on narcotics charges. Plaintiffs' allegations raising the possibility of other class members is completely "conclusive" and speculative,  see Borgese v. Baby Brezza Enters., LLC, 20 Civ. 1180 (VM), 2021 U.S. Dist. LEXIS 30216 (S.D.N.Y. Feb. 18, 2021), and their attempts to take discovery to attempt to exponentially expand this litigation is an abuse of Rule 23, Fed. R. Civ. P., and improper.

Fifth, the allegations relating to the named plaintiffs demonstrate and which are being litigated upon defendants' motion to dismiss demonstrate just how individualized the determinations are and how inappropriate they would be for class resolution under Rules 23(a)(2) and (3) and Rule 23(b)(3). The types of warrants are different (Rosario was arrested on an arrest warrant; the open warrant as to Wright was also an arrest warrant), Thompson and Wright were arrested on charges unrelated to any warrant, Phillips was arrested on a bench warrant from a criminal court and the warrants were issued by different types of courts, etc. Simply, these sort of claims do not lend themselves to class treatment and are fact specific. See Haus v. City of New York, 03 Civ. 4915 (RWS)(MHD), 2011 U.S. Dist. LEXIS 155735, at *317 (S.D.N.Y. Aug. 31, 2011) (M.J. Dolinger) (neither commonality nor typicality will be satisfied if the court must engage in a "case-by-case evaluation of each encounter" in order to establish liability.).

## **CONCLUSION**

For the reasons set forth herein, as well as in their opening brief, defendants' motions should be granted, and the Complaint dismissed with prejudice.

Dated:      New York, New York
              April 4, 2025

                                     MURIEL GOODE-TRUFANT
                                     Acting Corporation Counsel of the
                                       City of New York
                                     Attorney for Defendants City of New York,
                                     Michael Prilook, Edward Horton, Gabriel
                                     Montalvo, Krystalbella Murnane-Victorelli, Dr.
                                     David Rosenberg, Dr. Aung Oo, Dr. Jasdeep
                                     Mangat, Terry Gravesande, Mireille Zamy, Terra
                                     Hailand, Christopher Johnson, Renan Beauchard
                                     and Roman Maslovskiy
                                     100 Church Street, Room 3-133b
                                     New York, New York 10007
                                     (212) 356-3519

                      By:     /s/ Mark D. Zuckerman
                                     MARK D. ZUCKERMAN
                                     Senior Counsel