

December 23, 2025

Hon. Sarah L. Cave, U.S.M.J.
United States District Court, Southern District of New York
500 Pearl Street
New York, NY 10007-1312

By Electronic Filing.

      Re:     Phillips v. City of New York, 21-cv-8149 (ALC)(SLC)

Dear Judge Cave:

      My firm, with co-counsel, represents Plaintiffs and the putative class in the case above. I write, jointly with counsel for Defendants, as directed by the Court in ECF No. 218 to report on the status of class discovery. As set out below, the parties appear to have fundamentally different views of the status of the case.

      Defendants have proposed May 15, 2026, and Plaintiffs' position is that if Defendants were agreeing to begin class discovery in earnest, that date would work, but that is not Defendants' proposal — and Defendants' proposal would only work if they were not seeking to stay all class discovery indefinitely.

      Each party's position is below.

### Plaintiff's Position:

      Judge Carter denied — essentially in full[1] — Defendants' motion to dismiss and to strike class allegations. Discovery has been stayed for just about 3 years. *See* ECF No. 47. And during those three years, Plaintiffs have not been able to pursue their claims.

      Plaintiffs served class discovery-specific requests on November 18, 2025. A copy of those is attached as **Exhibit 1**. Defendants have not answered those yet. Plaintiff also served a previous round of class and Doe discovery requests, attached (at Defendants' request) as **Exhibit 2**.

      To quote Defendants' own words, "[Defendants'] have done anything and everything to attempt to avoid responding to [Plaintiff's] meritorious and substantive" case (*for example,* ECF No. 66 at 3), and "[Defendants]' obvious stalling tactics must come to an end." ECF No. 56 at 1.

      Defendants apparently seek to have the Court render advisory opinions about the hypothetical scope of discovery. To be sure, informal class discovery is useful in many cases and has its place. But apparently it will be of no use here. The proper form for what Defendants agree are "discovery

---

[1] Judge Carter only dismissed one narrow part of one claim.



dispute[s]" and issues that are "disputed" is to serve requests, responses, meet and confer, and make a motion. So that is the next step.

**Brief Context and Background.**

As things stand, Plaintiffs proposed — as they have throughout this case, accommodating Defendants — to focus initially on class discovery.[2] Then, the "City … proposed to first produce the 'lists' regarding individuals held on warrants at Rikers Island as referenced in the Third Amended Complaint by December 15, 2025 (with the identities of detainees redacted) in the hope that class discovery thereafter can focus on what is necessary for the parties to proceed on plaintiffs' class certification motion." ECF No. 216. The City produced those lists,[3] which contain the names of something like 3,000 people — and that is only covering a period from January 2021 to August 2022.

The lists themselves were a practice started in response to the *exact* problem identified in the Complaint. As already shown on the docket, the lists are of people "that are arrested on outstanding bench warrants and are not brought before the court in a timely manner." ECF No. 199-1 at 6. And the Mayor's Office of Criminal Justice began generating them, because specifically for the purpose of "identify[ing] those individuals who were lodged solely on the basis of an outstanding criminal or supreme court warrant." *Id.* at 1.

If the lists are *so* overinclusive as to be useless for determining members of the class, it is not clear what the City's purpose was when the "City … proposed to first produce the 'lists' … in the hope that class discovery thereafter can focus on what is necessary for the parties to proceed on plaintiffs' class certification motion." ECF No. 216.

**The Court Should Simply Allow Plaintiffs to Pursue Discovery With the Motion to Dismiss Denied.**

At this stage, there is no basis for holding off further on actual class discovery. Informal attempts to simplify things have failed, and as shown by the existence of this letter, completely broken down. So, the Federal Rules should govern. For the past three years, Defendants received an extended

---

[2] Plaintiff also served a set of John Doe and class discovery requests three years ago, on January 18, 2023. No response has been served to those either.

[3] Below, Defendants seem to complain that Plaintiffs objected that the lists were initially produced in illegible form. Obviously, printing and rescanning natively digital documents and making them illegible is not a good faith method of production, and Courts routinely direct parties to correct such productions. *See, e.g., Abbott Labs. v H&H Wholesale Servs.*, 2018 US Dist LEXIS 240810, at *7 (EDNY Mar. 9, 2018) ("Abbott raised several issues regarding H&H's production, including that H&H produced the aforementioned documents by printing them in hard copy, scanning them all together, and producing them as a single, 1941-page PDF file.. On March 24, 2017, the Court held a conference and ordered H&H to produce an electronic copy of the 2014 emails") (citations omitted); *Am. Spirit & Cheer Essentials v Varsity Brands, LLC*, 2022 US Dist LEXIS 52038, at *7 (WD Tenn Mar. 23, 2022) (ordering corrected, proper ESI production where "most pages consist of multiple printed and scanned emails, and around one-third are completely illegible").

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com



stay, because they assured the Court that it was "the undeniable truth that at least two of the named plaintiffs, Rosario and Thompson, have brought frivolous claims" (ECF No. 56 at 2), and that the class was not plausible.  Defendants were, as the Court found, wrong on all counts.

Defendants now say that the lists they insisted on producing as a first step in class discovery must contain something like less than 1% class members.[4]  Rather than admitting a set of Requests for Admission ("RFAs") — attached as **Exhibit 3** — that merely seek to confirm that at least 40 out of the 3,000+ people in the lists meet the class definition, Defendants proposed forestalling class discovery even further, so they can "attempt to put together a list of individuals who fit this definition."  Plaintiffs served these specifically because of Defendants' claim, in writing, that the lists were dramatically overinclusive.

Next, Defendants claim below that Plaintiffs somehow admitted the class proposed did not include people taken to court, but held on a warrant they did not see a judge on is disingenuous.[5]  The parties litigated exactly this on the motion to dismiss, and Defendants lost:

> As alleged in the TAC, Plaintiffs seek to certify a Class consisting of "[a]ll persons" that "have been jailed by the NYPD and/or DOC" specifically "[b]ased on the existence of a warrant bearing their name"; and who "NYPD and/or DOC did not bring to court prior to incarceration," or more precisely, who did not get brought to court ***on the warrant*** before incarceration. [footnote]
>
> [footnote]:  Defendants seem focused on this issue — but nothing in a complaint's proposed definition is binding. ¶ 424(d) was, perhaps, inartfully drafted in that it baked in an implied

---

[4] During a meet and confer, Defendants said part of this view is their position that the proposed class definition necessarily (in their view) excludes anyone who was brought to court on ***any*** issue, even if that trip to Court did not involve addressing the warrant, and DOC continued to hold the person solely based on the warrant that required immediate delivery to Court.

But as noted above and in the opposition to the motion to strike class allegations, if the proposed class definition in the complaint would produce some ambiguity if certified, Plaintiffs can fix the issue by seeking to certify a clearer definition.  *Accord, e.g.,* ECF No. 200 at 16.  To that end, Plaintiffs asked if Defendants would answer the RFAs mentioned above with that clarification (e.g., that the class covered "individuals who were lodged solely on the basis of an outstanding criminal or supreme court warrant" (regardless of whether they saw a judge on a *different* issue than the warrant) (ECF No. 199-1 at 2 at 1), and Defendants said they would refuse to answer such RFAs too.

[5] It is true that I mistakenly thought I remembered that the written, proposed class was specific in saying someone had to brought to court "on the warrant," and was surprised during the meeting that that language was not included.  What I believe I was actually remembering was drafting the opposition with the "on the warrant" language, rather than the TAC itself.

But that does not mean the proposed class definition, on its own, admits of Defendants' absurd construction — and all I said during the meet and confer was that if Defendants insisted on reading the definition in this absurd way, it was not exactly hard to fix.  *See also,* n. 4, above.

Page 3 of 7

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



> connection to ¶ 424(c): That the visit to court would involve actually addressing the warrant. Given Wright's presence as a proposed class representative, Plaintiffs assumed the connection was clear, but are clarifying here given the confusion."

ECF No. 200 at 16 (emphasis in original).

Given that the motion papers literally addressed this issue, and the Court appears to have sided with Plaintiffs, Defendants' play-acted confusion is not persuasive. Nor is it colorable to say "plaintiffs are attempting to change their underlying claim in this case": The claim is about Defendants' policy of not (as the TAC says repeatedly) "producing someone to court on a warrant," for the purpose of resolving that warrant. TAC ¶ 100. *Accord, e.g., id.* ¶¶ 13-18 ("A bench warrant may only be resolved, i.e. vacated or expunged, through either a person's appearance before a judge or following a judge's determination that the warrant is invalid…"); 67-71; 80-81. There is no colorable reading of the complaint that permits a reading of "persons … jailed by [Defendants] … [b]ased on the existence of a warrant … [who Defendants] did not bring to court prior to incarceration" that somehow excludes from the claims people who happen to have been brought to court, *but not to address the warrant.* TAC ¶ 424. And again, it's not a surprise *now* that this is the claim: Defendants had the full text at ECF No. 200 at 16, above, for about a year now — not to mention similar discussion in the various briefing on the motion to strike Defendants' exhibits. *See, e.g.,* ECF No. 163-1 at 2 ("As it stands, no document shows that any Plaintiff saw a judge *on their warrant*") (emphasis added); ECF No. 78 ("Each Plaintiff was brought to jail *without a judge analyzing their warrant*, and each at a time court parts were ready and able to adjudicate the warrants") (emphasis added).

And all of this is silly because *of course* implied with the language defining class members as people Defendants "did not bring to court prior to incarceration" to resolve a warrant is the notion that the trip to Court *involved addressing the warrant*. To suggest a trip to court on a different issue followed by incarceration on the warrant without seeing a judge about it somehow abrogates the claims here is absurd. And indeed, on the motion they lost, Defendants highlighted that the description above — someone brought to court on one issue, but then jailed on a warrant without seeing the judge about the warrant — is exactly what happened to at least one Plaintiff and proposed class representative. Judge Carter said that specific plaintiff had claims and could proceed as a proposed class representative.

Even now, Defendants *could* simply answer the RFAs — or clarified RFAs simply saying "the proposed class contains at least 40 people" — if they want to simplify things.[6] Otherwise, because the Court has found the class claims well-pled (since Defendants sought specifically to strike them and had that motion denied), Plaintiffs have shown an entitlement to discovery. *Cf. Xuedan Wang v Hearst Corp.*, 2012 US Dist LEXIS 97043, at *7 (SDNY July 12, 2012) (motions to strike class allegations typically fail when made "before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification.").

---

[6] Plaintiffs also reserve the right to seek fees under Rule 33 for an unreasonable denial, in the (extraordinarily likely) event that far more than 40 people in the lists meet the class definition.

Page 4 of 7

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



It is not an answer for DOC to create new, and perhaps inevitably self-serving, documents. Indeed, the City frequently complains that it cannot be forced to *create* documents for litigation. It is not clear why it suddenly has made an about-face here, if not (to quote the City) as part of trying to "do[] anything and everything to attempt to avoid responding" to the merits of class discovery and certification. ECF No. 66 at 3. If Defendants do not want to simplify things as Plaintiffs have offered through the RFAs — and apparently they do not — the solution is to allow the ordinary class discovery process to unfold, not for DOC to create a method of discovery that it prefers over than the Federal Rules.

Nor is there any reason for Plaintiffs to trust a document DOC makes for this litigation at face value. As Judge McMahon put it, particularly in the context of discovery, "there is no agency that … has been a more troublesome litigant in terms of, and you will excuse my language, 'F— you, judge, I'll do what I want'" than DOC in her more than two decades on bench. Graham Rayman, *Federal judge f-bombs Correction Department, NYC officials for withholding information in Rikers Island case*, NY DAILY NEWS (Feb. 3, 2023). And DOC has been found to have failed to comply with the information disclosure requirements in the *Nunez* Monitorship (and now Receivership).

In short, there are really only two possible outcomes from the City's proposal: Either (1) the City finds more than 40 people and says so, which would have the same effect as answering the RFAs in the affirmative; or (2) the City says there are less than 40 people, and Plaintiffs are entitled to class discovery (rather than having to accept the City's unsupported say-so).

The Federal Rules provide the parameters for class discovery, like any other kind. Plaintiffs have extensively attempted to make things easier for Defendants, but Defendants refuse to take "yes" for an answer. Defendants, accordingly, should simply answer the class discovery requests. If Defendants have some objections, like every other party, they can make them. This case should not languish for more years still while the City refuses to participate in discovery.

**Defendants' Position:**

The City is not refusing to participate in class certification discovery. To the contrary, we are doing everything reasonably possible to move this process along. Plaintiffs' principal inquiry in the discovery requests that they have propounded is the number of individuals who meet the criteria set forth in ¶424 of the corrected Third Amended Complaint and defendants are attempting to answer that inquiry. We are not seeking a stay of class certification discovery and are actively working to respond to plaintiffs' inquiry. The problem at this time is that there is a fundamental disagreement among the parties as to what the parameters of the class actually are. In Judge Carter's decision on defendants' motion to dismiss, His Honor set forth the claim in plaintiffs' corrected Third Amended Complaint that he found met their burden to defeat defendants' motion: "Plaintiffs allege that the City and the New York Police Department (NYPD) have a policy of bringing individuals directly to Rikers Island and City jails when they discover that the individual has an outstanding warrant in their name, rather than taking them to court in the first instance." Docket 211. As seen above, plaintiffs are attempting to change their underlying claim in this case.

COHEN&GREEN                                                                                                                Page 5 of 7

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



Judge Carter's decision is consistent with plaintiffs' "class definition" which is set forth in ¶424 of the corrected Third Amended Complaint. In response to plaintiffs' discovery demands (Exs. 1, 2 and 3 annexed hereto), DOC is responding to plaintiffs' request by attempting a computerized search by its IT Department to determine who meets the criteria set forth in ¶424 of the corrected Third Amended Complaint. It is by far the most efficient way to make such a determination. It is not a "made of litigation approach" and it is how we propose to respond to plaintiffs' principal request. This process is already underway.

We proposed this approach to plaintiffs' counsel and pointed them to ¶424 of the corrected Third Amended Complaint for the definition that they pled, and litigated upon the City's motions to dismiss and motions to strike plaintiffs' class allegations. After initially denying in yesterday's "meet and confer" that their claim was really limited to individuals "who NYPD and/or DOC did not bring to court prior to incarceration," Mx. Green looked at ¶424 of the corrected Third Amended Complaint and said, essentially, "whoa, that provision of the Complaint does say what you say it says (and not what we contend the class is), but we can simply change it." This is despite plaintiffs' RFAs (Ex. 1 hereto) continuing to demand admissions by the City based on the exact definition set forth in ¶424 of the corrected Third Amended Complaint that Mx. Green unambiguously admitted in yesterday's "meet and confer" was interpreted correctly by defendants, but that plaintiffs were attempting to backtrack from.

Plaintiffs would now, if they had their way, having seen the "lists" that were prepared by DOC Capt. Rigault, change their claim to include anyone remanded by a court on a warrant, whether they had been brought to court to see a judge, or not. That is not what is alleged in the corrected Third Amended Complaint and was litigated upon defendants' motions. Courts, and not NYPD or DOC officers, make decisions to remand individuals on warrants and, upon information and belief, many of the individuals on the lists were brought to court on unrelated charges, had bail set and there were outstanding warrants at the time they appeared in court. That is hardly the scenario that plaintiffs have pled in this case and that was litigated upon defendants' motions. Capt. Rigault's "lists" were simply of individuals who were to see a judge on a warrant. Plaintiffs should not be allowed to fundamentally change their claims at this juncture to defendants' prejudice.

We suggested to plaintiffs that they review these "lists" because they were so extensively discussed in their corrected Third Amended Complaint and in their discovery demands. The "lists" are overinclusive of plaintiff's class definition in ¶424 of the corrected Third Amended Complaint because at a minimum, most of the individuals on the "lists" do not meet plaintiffs' stated criteria therein. But they are underinclusive as well from the standpoint that the plaintiffs' class definition (including statute of limitations considerations) goes back to October 24, 2019 and runs to the present (as well as the fact that the "lists" were not designed to capture plaintiffs' class definition in ¶424 of the corrected Third Amended Complaint). Capt. Rigault's "lists" are from, generally, the 2021-mid-2022 time period only. Even if DOC were to have to attempt to respond to plaintiffs' RFAs (and we don't believe that Rule 36 requires a party to have to undertake such an analysis to have respond to an RFA), the most efficient way to do so would be for DOC to undertake the computerized analysis that it is attempting to undertake in response to plaintiffs' discovery demands. And DOC is attempting to avoid any obviously duplicate and unnecessary process by which it

COHEN&GREEN                                                                                    Page 6 of 7

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



conducts such an analysis for Capt. Rigault's "lists" **and** plaintiffs' other discovery demands where they want to know the entire class as defined in ¶424 of the Amended Complaint.

We would also point out that plaintiffs did not comply with the discovery process set forth in the parties' joint letter at Docket 216. We produced Capt. Rigault's "lists" that plaintiffs were demanding as we said we would. Twenty minutes thereafter, Mx. Green emailed me the RFAs (even though Mx. Green claimed the "lists" that I emailed them weren't completely legible so I had to prepare them all over again). That wasn't supposed to happen. The parties were supposed to confer on next steps. Mx. Green violated the agreement that was made as to next steps.

So, in short, this is where we are from defendants' standpoint. The "lists" have been produced in response to plaintiffs' discovery demands. DOC is attempting to determine the putative class members as defined in ¶424 of the corrected Third Amended Complaint pursuant to plaintiffs' discovery demands. The RFAs are disputed as to whether the City must respond to them. Plaintiffs have dredged up discovery demands from prior to Judge Carter's MTD decision, and most of the requests do not bear on the class certification issue. As the due date for the RFAs is January 14, 2026, and the due date for responses for any remaining responses to the discovery requests annexed hereto as Exs. 2 and 3 are not clear because of the parties joint letter at Docket 216 outlining how class certification discovery should proceed, defendants ask the Court to stay these responses (so we do not have to submit another letter outlining a discovery dispute in accordance with the Court's Individual Rules of Practice), pending the next court conference of January 14, 2026, at which time all of the above can be discussed. Given the breadth of this joint submission, defendants respectfully submit that this letter serve as a basis for a discussion of these discovery issues at the next scheduled court conference of January 14, 2026, rather than what would be a duplicative submission in accordance with the Court's Individual Rules of Practice with respect to the presentation of discovery disputes to the Court, if the Court adopts the position that plaintiffs seem to be taking, that this letter is insufficient for that purpose.

As ever, the parties thank the Court for its time and attention.

Respectfully submitted,

/s/
_____

J. Remy Green
*Honorific/Pronouns: Mx., they/their/them*
**COHEN&GREEN P.L.L.C.**
*Attorneys for Plaintiffs*
1639 Centre St., Suite 216
Ridgewood, New York 11385

cc:
All relevant parties by electronic filing.

Page 7 of 7

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t: (929) 888.9480 · f: (929) 888.9457 · FemmeLaw.com