**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Phillips, et al.

*Plaintiffs,*

v.

The City of New York, et al.,

*Defendants*

**21-cv-8149 (ALC) (SLC)**

## PLAINTIFFS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

**COHEN&GREEN P.L.L.C.**
J. Remy Green
Leena Widdi
1639 Centre St., Suite 216
Ridgewood, New York 11385
t : (929) 888-9480

**GIDEON ORION OLIVER**
277 Broadway, Suite 1501
New York, NY 10007
t: 718-783-3682

**KAISHIAN & MORTAZAVI LLC**
Maryanne K. Kaishian
55 Washington St., Suite 728
Brooklyn, NY 11201

June 24, 2026

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................................ii

TABLE OF AUTHORITIES .........................................................................................................iii

PRELIMINARY STATEMENT ......................................................................................................1

THE PROPOSED CLASS DEFINITIONS ....................................................................................1

FACTUAL STATEMENT ................................................................................................................3

      A.      Mr. Phillips's 4-day detention on a zombie bench warrant from the 1980's. ...........4

      B.      Mr. Wright's 17-day detention on a bench warrant. .....................................................4

      C.      The City's written and unwritten policies. ...................................................................5

      D.      The City's 30(b)(6) testimony confirms the elements of a class. ...............................5

STANDARDS OF REVIEW............................................................................................................6

ARGUMENT ...................................................................................................................................7

    I.    The Class Satsifies the Requirement of FRCP 23(a)...............................................8

      A.      The Class is so numerous that joinder of all members is impracticable...................8

      B.      Questions of law or fact are common to the Class. ....................................................9

      C.      Plaintiffs' claims are representative of class members' claims. ...............................11

      D.      The named Plaintiffs and counsel will fairly and adequately represent the Classes. ....................................................................................................................................12

      E.      The Classes are ascertainable. .......................................................................................14

    II.    Plaintiffs Satisfy the Requirements of FRCP 23(b)(2) ..........................................16

    III.    Plaintiffs Also Satisfy the Requirements of Rule 23(b)(3)....................................18

      A.      Common legal and factual issues predominate. .........................................................18

      B.      A Class action is superior to other methods for the fair and efficient adjudication of Plaintiff's claims ......................................................................................................23

CONCLUSION...............................................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods. v. Windsor,*
521 U.S. 591 (1997)................................................................................................ 24

*Amgen Inc. v. Conn. Ret. Plans and Trust Fund,*
568 U.S. 455 (2013)..................................................................................................6

*Augustin v. Jablonsky (In re Nassau County Strip Search Cases),*
461 F.3d 219 (2d Cir. 2006)..............................................................................21, 24

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,*
222 F.3d 52 (2d Cir. 2000)...................................................................................... 12

*Barnes v District of Columbia,*
242 FRD 113 (DDC 2007).........................................................................................7

*Brash v Richards,*
195 AD3d 582 (2d Dept 2021) ................................................................................2

*Brown v. Kelly,*
609 F.3d 467 (2d Cir. 2010)........................................................................6, 18, 19

*Brown v Kelly,*
244 FRD 222 (S.D.N.Y. 2007)..................................................................................7

*Burley v. City of NY,*
 2005 U.S. Dist. LEXIS 4439 (S.D.N.Y. Mar. 23, 2005)....................................... *24*

*Bynum v District of Columbia,*
217 FRD 43 (DDC 2003) ...............................................................................2, 6, 15

*Caridad v. Metro-North Commuter R.R.,*
191 F.3d 283 (2d Cir. 1999)................................................................................... 11

*Catholic Health Care W. v US Foodserv. (In re US FoodServ. Pricing Litig.),*
729 F.3d 108 (2d Cir. 2013)................................................................................23, 24

*Consolidated Rail Corp. v. Town of Hyde Park,*
47 F.3d 473 (2d Cir. 1995)........................................................................................8

*Cromer Fin. Ltd. V. Berger,*
205 F.R.D. 113 (S.D.N.Y. 2001).............................................................................. 11

*Davis v. City of N.Y.,*
296 F.R.D. 158 (S.D.N.Y. 2013).........................................................................17, 20

*DeMarco v. Nat'l Collector's Mint, Inc.*,
  229 F.R.D. 73................................................................................................................ 17

*Edrei v. Maguire*,
  892 F.3d 525 (2d Cir. 2018) ...................................................................................... 14

*Floyd v. City of New York*,
  283 F.R.D. 153 (S.D.N.Y. 2012) ............................................................................ 9, 21

*Garrido v. Money Store*,
  649 Fed. Appx. 103 ........................................................................................................6

*Gulino*,
  907 F Supp 2d.............................................................................................................. 16

*Hnot v. Willis Group Holdings Ltd.*,
  228 F.R.D. 476 (S.D.N.Y. 2005) .............................................................................. 15

*Humphrey v LeBlanc*,
  2025 U.S. Dist. LEXIS 185604 (MD La Sep. 22, 2025)..............................................7

*In re AXA Equitable Life Ins. Co. COI Litig.*,
  2020 U.S. Dist. LEXIS 145948 (S.D.N.Y. 2020) ...................................................... 23

*In re Deepwater Horizon*,
  739 F.3d 790 (5th Cir. 2014)...................................................................................... 22

*In re Kind LLC "Healthy & All Nat." Litig.*, 337 F.R.D. 581 (S.D.N.Y. 2021)...........................................6

*In re Keurig Green Mt. Singleserve Coffee Antitrust Litig.*,
  2025 U.S. Dist. LEXIS 228712 (S.D.N.Y. Nov. 20, 2025) ...................................... 19

*In re NASDAQ Market-Makers Antitrust Litig.*,
  169 F.R.D. 493 (S.D.N.Y. 1996) .............................................................................. 25

*In re Nassau County Strip Search Cases*,
  461 F.2d............................................................................................................ 25

*In re NYSE Specialists Sec. Litig.*,
  260 F.R.D. 55 (S.D.N.Y. 2009) ................................................................................ 12

*Jones v Murphy*,
  256 FRD 519 (D Md 2009) ..........................................................................................7

*Krueger v. New York Tel. Co.*,
  163 F.R.D. 433 (S.D.N.Y. 1995)............................................................................... 11

*Kuck v. Berkey Photo, Inc.*,
  81 F.R.D. 736 (S.D.N.Y. 1979) ................................................................................ 13

*Long v. HSBC USA Inc.*,
  2015 U.S. Dist. LEXIS 122655 (SDNY Sept. 11, 2015) ...................................................................6

*MacNamara v. City of NY*,
  275 FRD 125 (S.D.N.Y. 2011) ................................................................................. 25

*Matter of Roach v Cornell Univ.*,
  207 AD3d 931 (3d Dept 2022) ...........................................................................................2

*McBean v. City of New York*,
  228 F.R.D. 487 (S.D.N.Y. 2005) ............................................................................. 15

*N.J. Carpenters Health Fund v. Res. Cap., LLC*,
  272 F.R.D. 160 (S.D.N.Y. 2011) ............................................................................. 12

*Onadia v City of NY*,
  56 Misc 3d 309 (Sup Ct, Bronx County 2017) ...............................................................7

*People ex rel. Maxian v Brown*,
  77 NY2d 422 (1991) ........................................................................... 7, 9, 10, 20, 22

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ................................................................................................ 24

*Public Emps.' Ret. Sys. v. Merrill Lynch & Co., Inc.*,
  277 F.R.D. 97 (S.D.N.Y. 2011) .................................................................23, 24, 25

*Reynolds v. Giuliani*,
  118 F. Supp. 2d 352 (S.D.N.Y. 2000) ..................................................................... 13

*Roach v T.L. Cannon Corp.*,
  778 F3d 401 (2d Cir. 2015) .................................................................................... 22

*Robidoux v Celani*,
  987 F2d 931 (2d Cir. 1993) .....................................................................6, 8, 11, 25

*Robinson v Metro-North Commuter R.R.*,
  267 F3d 147 ............................................................................................................ 25

*Ruzhinskaya v Healthport Tech., LLC*,
  311 FRD 87 (S.D.N.Y. 2015) .....................................................................................7

*Simon v City of NY*,
  893 F3d 83 (2d Cir. 2018) ................................................................................. 10, 20

*Spagnola v. Chubb Corp.*,
  264 F.R.D. 76 (S.D.N.Y. 2010) ............................................................................... 12

*Stinson v. City of N.Y.*,
   282 F.R.D. 360 (S.D.N.Y. 2012) ........................................................................................ 15

*Sykes v Mel S. Harris & Assoc. LLC*,
   780 F3d 70, 81 (2d Cir. 2015) .................................................................................. 17, 18, 24

*Torres v MMS Group LLC*,
   2025 U.S. Dist. LEXIS 14293 (S.D.N.Y. Jan. 27, 2025) ................................................. 6, 16

*Tsereteli v. Residential*,
   283 FRD 199 (S.D.N.Y. 2012) ......................................................................................... 24

*United States v City of NY*,
   276 FRD 22 (EDNY 2011) .............................................................................................. 25

*U.S. Fid. & Guar. Co. v. Madison Fin. Corp.*,
   2002 U.S. Dist. LEXIS 23374 (S.D.N.Y. Dec. 4, 2002) ...................................................... 8

*Valelly v Merrill Lynch, Pierce, Fenner & Smith Inc.*,
   2026 U.S. Dist. LEXIS 39780 (S.D.N.Y. 2026) ........................................... 12, 19, 24, 25

*Vincent v Money Store*,
   304 FRD 446 (S.D.N.Y. 2015) .......................................................................................... 7

*Waggoner v. Barclays PLC*,
   875 F.3d 79 (2d Cir. 2017) ............................................................................................... 6

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ..................................................................................................... 9, 16

*Williams v. Kucoin*,
   2021 U.S. Dist. LEXIS 204334 (S.D.N.Y. Oct. 21, 2021) ................................................... 6

*Yang v. Kosinski*,
   960 F.3d 119 (2d Cir. 2020) ............................................................................................ 14

**Statutes and Rules**

NY CPL § 530.70 ........................................................................................................... 17, 20

Fed. R. Civ. P. 23 ............................................................................................................... 16

Fed. R. Civ. P. 23(a) ............................................................................................................. 8

Fed. R. Civ. P. 23(a)(4) ...................................................................................................... 12

Fed. R. Civ. P. 23(b)(2) ......................................................................................... 16, 17, 18, 23

Fed. R. Civ. P. 23(a)(2) .................................................................................................................9

Fed. R. Civ. P. 23(a)(3) ............................................................................................................... 11

Fed. R. Civ. P. 23(b)(3).................................................................................16, 17, 18, 23, 25

Fed. R. Civ. P. 23(g)(1)............................................................................................................. 14

## PRELIMINARY STATEMENT

As the Court already found on the motion to dismiss, Plaintiffs have stated claims concerning the City's apparent practice of bringing people with an open warrant directly to jail, instead of to court when courts are open, and utterly failing to make efforts to bring that person to court in any timely way. The City, in class discovery, has readily admitted there are hundreds of class members. And the City did not even challenge, during depositions in part for that purpose, Plaintiffs Paul Phillips's and Khaori Wright's fitness to represent that class.

This case presents a textbook illustration of the value of the class mechanism. Each of the *at least* hundreds of members of the class has an identical legal claim that can be resolved on papers: The time they were held in jail is readily determined, the justification is — per the City itself — determinable from a spreadsheet, and a simple review of the warrant itself purporting to justify detention compared with the time the person spent in custody can be compared to a presumptively reasonable period. And particularly for those jailed for days or weeks, liability would be simple: Even if it were an "[]necessary delay" to bring those people to jail instead of court on the day they were arrested, the failure to bring them to court for multiple days thereafter is cannot be anything *but* "unnecessary delay."

The proposed class easily meets each element for certification. The Court should certify the Class.

## THE PROPOSED CLASS DEFINITIONS

Plaintiffs seek to represent a class (the "Class"), defined as follows — except that its temporal limitation is set out below in two Subclasses:

    a.   All persons;

    b.   Who have been jailed by the City;

    c.   Whose continued detention is premised solely on the existence of a warrant bearing their name;

    d.   Where that warrant contains language requiring production to a court "without unnecessary delay";

    e.   Who NYPD, DOC, or another City actor (1) did not bring to court for an appearance on the warrant before detention on the warrant, or (2) otherwise failed to produce that person to court for an appearance on the warrant "without unnecessary delay"[1] after detention; and

    f.   Who fit into one or both Subclasses described below.

To account for different statutes of limitations for different claims, Plaintiffs also seek to represent two subclasses:

> The **State Law Subclass:** all members of the Class whose incarceration is ongoing, or ended within the year and 90 days — plus any tolling time provided by Executive Order No. 202.8 and its various extensions[2] — prior to the filing of the motion for leave to file the First Amended Class Action Complaint.

> The **§ 1983 Subclass:** all members of the Class whose incarceration is ongoing, or ended within the three years — plus any tolling time provided by Executive Order No. 202.8 and its various extensions[3] — prior to the filing of the motion for leave to file the First Amended Class Action Complaint.

Plaintiffs add that, given the limitations on the discovery the City has been willing to produce, there is no current analytical difference between the subclasses: The limited class data produced all fall within the State Law Subclass period. Accordingly, this memorandum does not discuss the Subclasses separately except to note that as far as relevant claims, the Class as proposed will include two kinds of claims (corresponding to the two Subclasses) against the City: (1) Fourth Amendment claims under § 1983 through *Monell*; and (2) various state-law claims against the City through *respondeat*

---

[1] "For the purposes of defining the class, *some time period* comprising overdetention must be indicated, but doing so does not infringe upon the factfinder's duty to determine *what time period,* if any, is unconstitutional" or unlawful. *Bynum v District of Columbia*, 217 F.R.D. 43, 50 (DDC 2003) (emphasis in original).

[2] Courts have consistently construed the executive order as a toll (rather than merely a suspension) of all statute statutes of limitations. *See, e.g., Brash v Richards*, 195 AD3d 582, 585 (2d Dept 2021); *Matter of Roach v Cornell Univ.*, 207 AD3d 931, 933 (3d Dept 2022).

[3] Since Section 1983 claim statutes of limitations are calculated by looking to the state's then-applicable general tort statute, the statute of limitations that is borrowed includes the toll — and therefore the set of persons with non-stale claims covers three years before the filing of the relevant motion, plus the 228 days between March 20, 2020 and November 3, 2020.

*superior.*[4]

## FACTUAL STATEMENT

A bench warrant is an order issued by a judge directing officers to "without unnecessary delay bring the defendant before the court in which it is returnable… or before an alternate local criminal court." *See* CPL § 530.70(2). When that person is brought before the court, the warrant is deemed executed and vacated. At that appearance, however, the court may decide to revisit its securing order (per CPL § 510.10) on the underlying matter and order that individual's pre-trial detention. Absent a modification of the securing order authorizing detention, however, *the defendant must be released.*

For at least some time, the City's approach when arresting individuals on an outstanding bench warrant[5]—rather than bringing them to court on that warrant "without unnecessary delay," as mandated by the language of the warrant and by CPL § 530.70(2)—was to bring those individuals to Rikers Island or another jail (hereinafter "City jails"), where they languished for days or weeks before seeing a judge. This happened especially, but not exclusively, when those arrests occurred on weekends, after 5:00 p.m., or on holidays.[6] Those individuals, like Plaintiffs Paul Phillips and Khaori Wright, were then held at City Jails indefinitely. They were disappeared into a system that had no mechanisms to ensure their return to court on any given timeline.

---

[4] Though contemplated in the Complaint, Plaintiffs are not seeking to certify a class for any claims related to medical malpractice, deliberate indifference, or violations of the ADA. Plaintiffs are also not seeking to certify a class for false arrest claims.

[5] Plaintiff does not concede that these warrants are legitimate—as shown by the experience of Plaintiff Phillips.

[6] To be clear, members of the class include individuals who did not appear before a judge on a bench warrant, but are nonetheless taken to City Jails on the basis of that bench warrant. In the unlikely event where an individual is taken before a judge on a separate matter after arrest, but the warrant is not addressed (i.e., not executed and vacated) but the individual is nonetheless held on that warrant, the fact of their appearance before a judge on a wholly separate matter is irrelevant. As noted below, there is no authority holding that a complaint somehow limits what the Court can certify. Nor is there any authority for the proposition that a Court, in *denying* a motion, somehow limits the opposing party's rights.

But someone taken from an arraignment on a different charge to jail on an unrelated warrant would also be a member of City's hyper-literal reading of the complaint's definition anyway: If someone is brought to a judge for an arraignment and then is *not* held on bail or something similar, at that moment they are free. If City employees *then* bring the person to jail *without* going to court, the person has thus been arrested and taken to jail without being *brought* to Court. Plus, any attempt to say common sense requires that the term "*bring* to court" (ECF No. 128 ¶ 424(d) (emphasis added)) *should* include people who are arrested *in* court runs into the problem that exercise of similar common sense would means merely physically bringing someone to any court building without addressing the warrant is clearly not what is meant by ¶ 424(d).

### A.  Mr. Phillips's 4-day detention on a zombie bench warrant from the 1980's.

Mr. Phillips was arrested in the morning on Friday, July 3, 2020, on a "zombie" bench warrant from the 1980's that had been vacated decades earlier.  Phillips Dec. ¶¶ 4-6.[7]  He could have been brought to then-open court parts that Friday, but was not.  *Id.*  He was then held without seeing a judge for all of July 3, July 4, July 5, and until the late evening on July 6.  *Id.* ¶¶ 7-9.  He could have been brought to a court part any time in that span, but was not.  *Id.*  And as set out in the complaint and Mr. Phillips' testimony, because of the horrific, ongoing state of Rikers Island (that has resulted in the need to appoint a Federal receiver to address the City's contempt of court), the City's conduct had serious consequences.

### B.  Mr. Wright's 17-day detention on a bench warrant.

Plaintiff Wright was arrested on March 18, 2020. Although the District Attorney's Office declined to prosecute the charge for which he was originally arrested, Wright was held on a bench warrant. Officers brought Wright to a hospital, then back to court at 11:54 a.m. on Friday, March 20. ECF No. 188-6.  But rather than being brought to a judge for execution of the outstanding bench warrant, only five minutes later, Wright was transferred to Rikers on the unexecuted warrant.  ECF 188-6.

And then, for seventeen days, no one produced Wright to Court on the warrant — despite many business days passing between March 20 and April 3, 2020.  ECF No. 188-6; Wright Dec. ¶¶ 3-5. After seventeen days, Wright was released on April 4, 2020, without ever appearing before a judge. And then, because of the City's failure to comply with the terms of the warrant and CPL §530.70(2), over a year and a half later, on November 22, 2021, Mr. Wright was arrested again on that same (still unexecuted) warrant. *See* Wright Dec. ¶14; Green Ex. 3 at 8; *See also* ECF 188-5. On that date, he was finally taken before a judge and the warrant was executed and vacated. *See* Green Ex. 3 at 8.

---

[7] Mr. Phillips also testified to these facts at his 50-h hearing and his deposition.

## C. The City's written and unwritten policies.

As the Court has found plausibly alleged, "the City and the New York Police Department (NYPD) have a policy of bringing individuals directly to City jails when they discover that the individual has an outstanding warrant in their name, rather than taking them to court in the first instance. Under this policy, if the warrant is invalid, arrested individuals are allegedly not immediately released; if the warrant is valid, a future court date is not set for them." ECF No. 211. And this "policy violates statutory law, which requires that an arrested individual appear before a judge without unnecessary delay and further violates the constitutional rights of those who are incarcerated extrajudicially and indefinitely based on the appearance of an existing warrant." *Id.*

## D. The City's 30(b)(6) testimony confirms the elements of a class.

In the course of litigation, ████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████. *See* Green Ex. 1;

Green Ex. 2 ("30(b)(6) Tr.") at 169:14-16; 154:3-12. The City testified, ███████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████

---

[8] ████████████████████████████████████████████████

## STANDARDS OF REVIEW

The Second Circuit has "demonstrated a general preference . . . for granting rather than denying class certification." *Williams v. Kucoin*, 2021 U.S. Dist. LEXIS 204334 at *10 (S.D.N.Y. Oct. 21, 2021).[9] Rule 23's requirements should be liberally construed. *Brown v. Kelly*, 609 F.3d 467, 485 (2d Cir. 2010) ("[W]e are noticeably less deferential when the district court has denied class status than when it has certified a class."); *see also Williams,* 2021 U.S. Dist. LEXIS 204334 at 10. The Court assesses not whether Plaintiffs "will prevail on the merits, but rather whether the requirements of Rule 23 are met." *In re Kind LLC "Healthy & All Nat." Litig.*, 337 F.R.D. 581, 593 (S.D.N.Y. 2021) (cleaned up). The Court takes all allegations in the complaint as true. *Waggoner v. Barclays PLC*, 875 F.3d 79, 85 n.5 (2d Cir. 2017). Each requirement of Rule 23 certification must be established by a preponderance of the evidence. *Garrido v. Money Store,* 649 Fed. Appx. 103, 105; *Brown*, 609 F. 3d at 476. And a class exists when "an individual would be able to determine, simply by reading the definition, whether he or she is a member of the proposed class." *Bynum v District of Columbia*, 217 F.R.D. 43, 46 (DDC 2003).

"Doubts concerning the propriety of class certification should be resolved in favor of class certification." *Long v. HSBC USA Inc.*, 2015 U.S. Dist. LEXIS 122655 at *15 (S.D.N.Y. Sept. 11, 2015). Further, "[m]erits questions may be considered [only] to the extent . . . that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Torres v MMS Group LLC*, 2025 U.S. Dist. LEXIS 14293 at *8 (S.D.N.Y. Jan. 27, 2025), *citing Amgen Inc. v. Conn. Ret. Plans and Trust Fund*, 568 U.S. 455, 466 (2013).

Importantly, [10] it is well established that "[a] court is not bound by the class definition proposed in the complaint." *Robidoux v Celani*, 987 F.2d 931, 937 (2d Cir. 1993). "The Court has authority *sua*

---

[9] All quotations in this memorandum, unless specifically noted, have internal citations removed, quotation marks omitted, and alterations adopted.

[10] The proposed definition is not meaningfully different from the definition proposed in the operative Complaint. *See* TAC ¶¶ 424. As addressed in Plaintiffs' Opposition to Defendants Motion to Dismiss and to Strike Class Allegations, the definition in the Complaint was "perhaps, inartfully drafted in that it baked in an implied connection" between the fact of

*sponte* to modify a proposed class definition." *Ruzhinskaya v Healthport Tech., LLC*, 311 F.R.D. 87, 108 (S.D.N.Y. 2015) (collecting cases); *cf. also, Vincent v Money Store*, 304 F.R.D. 446, 453 (S.D.N.Y. 2015).

## ARGUMENT

The Class here fits a well-trod, easy mold.  This case is about whether the City held large numbers of people (the City concedes there are at least more than 300; there may be far more (Green Dec. ¶¶ 25-30)) unlawfully, pursuant to state law and the terms of their warrants.  Classes litigating claims that boil down to some kind of "overdetention" are routinely certified by Federal courts across the country because their fact patterns are almost uniquely suited to the class device — in fact, "[t]here have been a number of class actions dealing with essentially the same overdetention … issues."[11]  *See, e.g., Barnes v District of Columbia*, 242 F.R.D. 113, 120 (DDC 2007) (collecting cases); *Jones v Murphy*, 256 F.R.D. 519, 523-24 (D Md 2009) ("court will certify an overdetention class"); *Humphrey v LeBlanc*, 2025 U.S. Dist. LEXIS 185604 at *167-173; *173-188 (MD La Sep. 22, 2025). So too for New York's state courts. *See, e.g., Onadia v City of NY*, 56 Misc 3d 309, 323 (Sup Ct, Bronx County 2017).  Likewise, global issues with bench warrants often warrant class treatment.  *See, e.g., Brown v Kelly*, 244 F.R.D. 222, 243 (S.D.N.Y. 2007).  And though it did not explicitly use a class mechanism, one New York state court crafted a bespoke pseudo-class writ procedure to resolve mass claims about the identical "without unnecessary delay" language found in CPL § 140.20 to the language in the warrants here. *People ex rel. Maxian v Brown*, 77 N.Y.2d 422, 425 (1991) (affirming procedure where writs for "9,000 such arrestees" were "consolidated … into one proceeding").  The Class should be certified.

---

an individual's detention on a warrant and their appearance in court *on that warrant*. *See* ECF No. 200, n. 18.  In any event, this motion seeks to certify the class using a definition that eliminates any possibility of confusion.

[11] To be clear, *Barnes* here is specifically referring to classes certified for overdetention claims under the Federal Constitution pre-arraignment, rather than on bench warrants.  But the only thing that difference might alter is the legal **answer** to relevant questions — not whether the class device is a well-suited mode of getting to such answers.

## I.    The Class Satsifies the Requirement of FRCP 23(a)

Rule 23(a) provides for certification where (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy of representation"). The proposed Class satisfies each of the requirements and should therefore be certified.

### A.    The Class is so numerous that joinder of all members is impracticable

The proposed Class easily meets the numerosity requirement. For this factor, Plaintiffs must show that joinder is "impracticable" but need not at this stage present "evidence of exact class size or identity of class members to satisfy the numerosity requirement." *Robidoux*, 987 F.2d at 935. "Numerosity is presumed at a level of 40 members." *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). But "[t]here is no magic minimum number that establishes numerosity, and courts have certified classes with as few as 14 members." *U.S. Fid. & Guar. Co. v. Madison Fin. Corp.*, 2002 U.S. Dist. LEXIS 23374 at *18 (S.D.N.Y. Dec. 4, 2002).

Given the testimony and Lists provided by the City, the presumptive bar at 40 is easily cleared.



," *See, e.g.,* 30(b)(6) Tr. at 148:2-13; 169:17-25; 170:17. In fact, as the City conceded,

" *Id.* According to the Lists and deposition testimony,

---

[12] The lists do not cover individuals detained on warrants from Staten Island.

██████████████████████████████████[13] there are at least 334 class members held between

January 2021 and August 2021.[14]

Considering the period for which Plaintiffs seek to certify the Class, the true number of class

members is likely much larger, ████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████ *See* 30(b)(6) Tr. at 33:12-25; 34:1-7. Thus, there is no dispute that joinder is impracticable

and the Class meets the numerosity requirement.

### B.  Questions of law or fact are common to the Class.

The commonality requirement of Rule 23(a)(2) is met if the plaintiffs' grievances share even

"a single common question" of law or fact. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). As

is pled and presumed true, the Named Plaintiffs and all class members were harmed by the City's

policy—both written and informal—of bringing someone directly to a City Jail on a warrant before

bring them to court on that warrant, in violation of, among other things, New York State law, under

CPL § 530.70(2), and the Fourth Amendment. *See Floyd v. City of New York*, 283 F.R.D. 153, 174-75

(S.D.N.Y. 2012) ("claims that "Fourth and Fourteenth Amendment rights are violated as a result of

NYPD's policies and practices" "raise 'central and core questions of fact and law that, when answered,

will resolve all class members' *Monell* claims'").

The commonality requirement is amply met for the Class. The core of all Plaintiffs' claims is

that in New York City, taking someone arrested on a bench warrant directly to jail without producing

them before a judge on that warrant constitutes "unnecessary delay," given the mandates of CPL §

530.70(2) and the realities of the New York City court system, as established in *Maxian.* 164 AD2d at

---

[13] These numbers are maximally generous to the City, and exclude any entries for which the City provided inconsistent or uncertain testimony and entries which may have been duplicates. Green Dec. ¶¶ 11-20. Those ambiguities, as discussed in Section I-E below, are not actually obstacles to ascertainability: ████████████████████████████
██████████████████████████████████████████████████████████████████████

[14] This includes 130 people in New York County (Green Dec. ¶ 21), 84 in the Bronx (*id.* ¶ 22), 60 in Brooklyn Brooklyn (*id.* ¶ 23); and 60 in Queens. (*id.* ¶ 24).

63; *See also* Green Dec. Ex. 5 ("OCA Directive 57"). Since the warrants themselves incorporate without unnecessary delay language, that practice violates the Fourth Amendment. *Simon v City of NY*, 893 F.3d 83, 95 (2d Cir. 2018). And eventually producing them before a judge more than 24 hours after arrest constitutes further "unnecessary delay." Class members' claims all present common questions of law and fact including:

- What delay, in the bench warrant context, is presumptively unnecessary;

- Whether the City's written policies, promulgated through the Patrol Guide § 208-42 and DOC Operations Order, which direct officers to bring people directly to City Jails any time they are arrested after 5:00 p.m. on a weekday, or at all times on weekend, are a *per se* violation of CPL § 530.70(2).

- Whether the City has, or had, a municipal policy or practice of bringing individuals arrested on a bench warrant to City Jails without being produced before a judge on the warrant, even on weekdays and before 5:00 p.m.

- Whether an "unnecessary delay" in producing an individual before a judge on a bench warrant constitutes a violation of the Fourth Amendment, per *Simon*.

- Whether *Maxian's* logic extends to bench warrants;

- Whether the *Maxian* period is *shorter* for bench warrants, given that there is less administrative work involved;

- Whether Defendants' false arrests and illegal imprisonments of Plaintiffs were the result of a municipal policy or practice;

- Whether *McLaughlin*'s logic extends to bench warrants; and

- Whether the *McLaughlin* period is *shorter* for bench warrants, given that there is less administrative work involved;

Defendants' telegraphed defenses so far also present common questions:

- Whether courts were closed at certain points, even though courts are all but always open in the City of New York;

- Whether, contrary to long-standing OCA Directive (Green Ex. 5), criminal court judges sitting overnight shifts are ***not*** acting Supreme Court justices[15]; and

---

[15] That is, the OCA directive essentially says any judge sitting overnight is acting as the judge for all parts.

- Whether the COVID-19 pandemic somehow meant the City had no Constitutional obligation to comply with the terms of bench warrants;

Each of these questions, when answered, will resolve the claims of every class member—rendering the commonality requirement easily satisfied.

### C. Plaintiffs' claims are representative of class members' claims.

The typicality requirement of Rule 23(a)(3) requires that "the claims of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  Typicality exists "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux*, 987 F.2d at 935. "As with commonality, typicality is not defeated by 'minor variations in the fact patterns underlying individual claims,' as long as the wrong is alleged to have occurred in the same general fashion." *Id.* at 936-37. *See also Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999) (typicality does not require "that the factual background of each named plaintiff's claim be identical to that of all class members; rather it requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class") (citing *Krueger v. New York Tel. Co.*, 163 F.R.D. 433, 442 (S.D.N.Y. 1995).

Critically, typicality is determined by the *nature* of the claims of the class representative, not by specific facts from which those claims arose. *See Cromer Fin. Ltd. V. Berger*, 205 F.R.D. 113, 122 (S.D.N.Y. 2001).  Here, Plaintiffs' claims are typical of the class. Members, like the named representatives, were unlawfully taken to jail instead of court, in violation of the warrants upon which they were purportedly detained. Each class member was subjected to "unnecessary delays"—whether in being taken to jail in the first instance or being held far longer than any reasonable processing time—before being produced before a court on the warrant. And regardless of the nature of each class member's bench warrant (e.g., whether it was valid or whether it was from a local or superior court) or whether there was some other reason for the City's failure to produce them from a City Jail

11

on any given day, the *legal* framework for the claim remains the same.  As Courts in this district have made clear, "The rule barring certification of plaintiffs subject to unique defenses . . . is generally applied only where a full defense is available against an individual plaintiff's action." *Valelly v Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2026 US Dist LEXIS 39780 at *10 (SDNY 2026) (citing *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 93-94 (S.D.N.Y. 2010). Because every member of the Class's claims involve the same legal arguments as Plaintiffs' — and Defendants will assert the same defenses in the same ways — the typicality requirement is satisfied.

> **D.  The named Plaintiffs and counsel will fairly and adequately represent the Classes.**

Plaintiffs also meet the requirement that they will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[A]dequacy of representation entails inquiry as to whether: 1) plaintiff[s'] interests are antagonistic to the interest[s] of other members of the class and 2) plaintiff[s'] attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). In determining whether named plaintiffs satisfy the adequacy requirement, courts have also considered such factors as the class representatives' credibility on matters critical to the lawsuit and whether they have a "general knowledge" of the issues in the case. *See N.J. Carpenters Health Fund v. Res. Cap., LLC*, 272 F.R.D. 160, 167 (S.D.N.Y. 2011) ("In this circuit . . . general knowledge is sufficient to show adequacy."). But this does not mean that named plaintiffs are expected to "possess expert knowledge of the details of the case." *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 65 (S.D.N.Y. 2009).

Mr. Wright and Mr. Phillips are credible and knowledgeable about the case and the claims being made on behalf of the class, and willing to serve as class representatives in this lawsuit. *See* Phillips Dec. ¶¶ 9-10; Wright Dec. ¶¶ 6-7. As shown by the discovery the Plaintiffs have provided of their personal and mental health records, and their extensive depositions about their experiences, they

12

are prepared to devote sufficient time to the case and are committed to seeing it through to its conclusion. [16]

The proposed class representatives, moreover, have no conflict with any class members and will fairly and adequately protect the interests of the classes. *See Reynolds v. Giuliani*, 118 F. Supp. 2d 352, 390 (S.D.N.Y. 2000) ("'[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.'" (quoting *Kuck v. Berkey Photo, Inc.*, 81 F.R.D. 736, 740 (S.D.N.Y. 1979)). They are each committed to furthering the interests of the class over their own individual interests. *See, e.g.,* Phillips Dec. ¶¶ 11-13; 21-22 ("I understand that if the Court allows me to be a class representative in this matter, I will have a very important responsibility. I know that I would be obligated to pursue the best outcomes for everyone in the class, and to prioritize the interests of the class over my own individual interests. I am prepared to do that and would be honored to be a class representative; Even though continuing to talk and think about what happened to me is difficult, it is really important to me to get justice for myself, and to get justice for others who faced similar misconduct"); Wright Dec. ¶¶ 7-12; 15-16 ("I know that being a class representative means I have to think about what outcome would be best for everyone in the class, not just me. I am prepared to do that."). Indeed, Defendants did not even challenge this at Plaintiffs' depositions.

Plaintiffs are adequate representatives because they were and are subjected to the same allegedly unconstitutional actions by Defendants as the class members and suffered the same injuries that the action seeks to remedy. *See Reynolds* 118 F. Supp. 2d at 390. The legal theories under which the Named Plaintiffs seek relief are the same or similar to those on which all members of the classes

---

[16] Defense counsel did not ask any questions about adequacy at depositions when they were *explicitly* for the purpose of testing adequacy. Accordingly, this element cannot be contested seriously.

will rely, and the harms suffered by the Named Plaintiffs are typical of the harms suffered by the class members.

To determine whether class counsel are adequate, the court must consider "the work counsel has done in identifying or investigating potential claims in the action, . . . counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, . . . counsel's knowledge of the applicable law, and . . . the resources counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1). The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.*

Plaintiffs in this case are represented by J. Remy Green and Leena Mohmoud Widdi of the firm of Cohen & Green P.L.L.C. ("C&G"); Gideon Orion Oliver ("Oliver"); Jessica Massimi of Massimi Law PLLC; and Maryanne K. Kaishian of Kaishian & Mortazavi LLC. Collectively, Plaintiffs' counsel have the resources, expertise, and experience to prosecute this action, and know of no conflicts among members of the class or between the attorneys and members of the class. Indeed, given their expertise in litigating excessive detention and Fourth Amendment cases in this City over a long period of time, there is no group of counsel in this or other litigation who are more experienced or qualified to represent the classes herein. C&G attorneys have litigated a number of class action and systemic unlawful policy-based suits, and the other lawyers have similar experience.[17]

### E.  The Classes are ascertainable.

---

[17] *See, e.g., In re New York City Policing During Summer 2020 Demonstrations*, 20-cv-8924 (S.D.N.Y.) (consolidated docket) / *Sow v. City of NY,* 21-cv- 533 / *Rolon v. City of New York,* 21-cv-2548 (S.D.N.Y.) (preliminary certified damages class of approximately 1,300 individuals arrested during the summer 2020 protests, with a total settlement of above $13 Million; landmark injunctive settlement regarding NYPD protest policing tactics) (with Oliver); *Jones v. United States Postal Service*, 20-cv-6516 (S.D.N.Y.) (nationwide voting rights class action); *Edrei v. Bratton*, 16-cv-01652 (S.D.N.Y.), *aff'd sub. nom. Edrei v. Maguire*, 892 F.3d 525 (2d Cir. 2018) (landmark, precedential decision in challenge to NYPD's use of Long Range Acoustic Device ("LRAD") against Black Lives Matter protesters), *cert. denied Maguire v. Edrei*, 139 S. Ct. 2614 (2019) (with Oliver)); *Gallagher v. N.Y. State. Bd. of Elections*, 20-cv-5504 (S.D.N.Y.) (New York State voting rights class action). *See also Yang v. N.Y. State Bd. of Elections*, 20-cv-3325 (S.D.N.Y.), *aff'd sub. nom. Yang v. Kosinski*, 960 F.3d 119 (2d Cir. 2020). Oliver has over 18 years of experience litigating civil rights cases against the NYPD, including hundreds of cases challenging the City's policies, practices, and customs. Kaishian has practiced as a criminal defense attorney in New York City since 2016. She has represented thousands of New Yorkers facing criminal charges, including dozens of individuals with bench warrant matters such as those at issue here.

Finally, the Class is ascertainable. Ascertainability is a considered an implicit, but "fundamental" requirement of class certification. *Hnot v. Willis Group Holdings Ltd.*, 228 F.R.D. 476, 481 (S.D.N.Y. 2005). "The standard for ascertainability is not demanding ... It is designed to prevent the certification of a class whose membership is truly indeterminable." *Stinson v. City of N.Y.*, 282 F.R.D. 360, 373 (S.D.N.Y. 2012). The classes that Plaintiffs seek to certify "must be readily identifiable so that the court can determine who is in the class, and thus, who is bound by the ruling…A class is ascertainable when defined by objective criteria that are administratively feasible, without a subjective determination." *McBean v. City of New York*, 228 F.R.D. 487, 492 (S.D.N.Y. 2005).

Here, no subjective inquiry is required to ascertain the proposed class. In fact, the City itself testified ███████████████████████████████████████████████ ████████████ *See* 30(b)(6) Tr. at 118-119; *accord Bynum,* 217 FRD at 50 (approving a "strategy" for ascertaining class where "plaintiffs intend to compare records of inmates' scheduled release date and actual release date").  That is, ███████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████s. *Id.* at 75:16-25; 76: 1-20. 68: 19-25; 69: 1-7; 69:12-16. ████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████ *Id.* at 45:9-25; 46:1-18.  In short, there is no subjective inquiry: Whether someone was held solely on a warrant, and how long they were held, can be determined objectively. Indeed, much like the "computer expert" in *Bynum* who could "generate a list of overdetained class members" through some work (217 FRD at 49-50), Captain Rigault testified ██████████████████ ████████████████████████████████████████████ █████████████.

## II. Plaintiffs Satisfy the Requirements of FRCP 23(b)(2)

Under Rule 23(b)(2), a class action may be certified where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).[18] As the Supreme Court has held, "[t]he key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted--the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Dukes*, 564 US at 360.

Where, as here, Plaintiffs move for both declaratory and monetary relief, (b)(2) class certification may only be granted where the monetary relief is "incidental to the injunctive or declaratory relief." *Id.* (emphasis added) (finding backpay, which required individualized determinations of eligibility for each class member, was not incidental to the declaratory relief requested regarding claims of gender discrimination). Specifically, "[w]hile certification under Rule 23(b)(2) is appropriate where the plaintiffs seek an indivisible injunction benefitting all its members at once, it is inappropriate where each class member would be entitled to a *different* injunction or declaratory judgment against the defendant." [19] *Gulino v Bd. of Educ. of the City Sch. Dist. of NY,* 907 F Supp 2d 492, 505 (S.D.N.Y. 2012) (emphasis in original).

"Courts in this Circuit have found monetary damages to be 'incidental' where they can be 'computed by means of objective standards and not dependent in any significant way on the class members' intangible, subjective differences." *Torres*, 2025 US Dist LEXIS 14293 at *44 (citing *DeMarco v. Nat'l Collector's Mint, Inc.*, 229 F.R.D. 73 at 81); *see also Davis v. City of N.Y.,* 296 F.R.D. 158,

---

[18] Fed. R. Civ. P. 23 advisory committee's note to the 1966 amendment ("This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate. Declaratory relief 'corresponds' to injunctive relief when as a practical matter it affords injunctive relief or serves as a basis for later injunctive relief.").

[19] This is so because, as compared with Rule 23(b)(3), "Rule 23(b)(2) lacks the procedural safeguards necessary to ensure that all class members' due process rights are protected," and therefore under *Wal-Mart*, "cannot be used to certify class actions requiring individual determinations and awards of individualized relief." *Gulino,* 907 F Supp 2d, at 505.

16

165 (S.D.N.Y. 2013)*; cf Seekamp v. It's Huge, Inc.,* 2012 U.S. Dist. LEXIS 33295 (NDNY 2012) (although declaratory relief was not "separable and distinct" from the monetary relief sought, it would "entail complex individualized determinations" for each class member).

Here, Plaintiffs seek a declaratory judgment finding that taking individuals to a City Jail on an unexecuted warrant rather than to court — or holding them for more than 24 hours thereafter — necessarily (or at least presumptively) constitutes "unnecessary delay," and is therefore a violation of NY CPL § 530.70 and a violation of the terms of the warrant. That judgment would apply equally to every member of the class—that is: any individual arrested on a bench warrant and subjected to the unnecessary delay inherent in detention at a City Jail prior to production before a judge on the warrant would be entitled to declaratory relief. This requires no individualized judgments against Defendants. Rather, the claims rely on the factual contention, as pled, that criminal courts in the city are open "seven days per week, 365 days per year, including holidays," and that there is always a judge available before whom a warrant can be executed. TAC ¶ 73; 78. Thus, if this Court finds the City is not permitted to simply hold people indefinitely when it picks them up on a warrant (as it should), or at a minimum, that it should deliver them to court within a reasonable period (whether that period is 24 or 48 hours), the claims of all members of the Class are resolved *indivisibly* — and all that remains is the calculation of damages. And like in *Demarco*, monetary awards can be calculated simply by fixing a damage award per unlawful day in custody and multiplying that award by days in custody.[20]

Similarly, each class members' *Monell* claims rely on the theory that the City had a policy, practice, and custom of taking individuals directly to City Jails on the basis of an unexecuted warrant,

---

[20] Or, alternatively, this Court may certify two separate classes: a declaratory class under Rule 23(b)(2) and a damages class under 23(b)(3). *See, e.g., Sykes v Mel S. Harris & Assoc. LLC*, 780 F.3d 70, 87 (2d Cir. 2015) (affirming a district court's certification of separate classes under Rules 23(b)(2) and (b)(3); *Seekamp v It's Huge, Inc.,* 2012 U.S. Dist. LEXIS 33295, at *27-29 (NDNY 2012) (collecting cases).

rather than to court for execution of the warrant; and that the City had no system in place to ensure that, once these individuals are illegally brought to City Jails, they are back to court for an appearance before a judge as soon as possible. ███████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████.").  That is, ████████

████████████████████████████████████████████████████

██████████████████████████████████████ The Class should be certified under Rule 23(b)(2) because, as alleged, Defendants have acted and failed to act (through a policy, practice, and custom) in a manner that, if declared unlawful, would resolve the claims of every single class member, and because, despite the request for monetary relief, such relief is incidental to the declaratory judgment and requires no complex individualized determinations.

## III.  **Plaintiffs Also Satisfy the Requirements of Rule 23(b)(3)**

Plaintiffs seeking certification under Rule 23(b)(3) must also establish that predominance and superiority, that: "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3); *See also Sykes v Mel S. Harris & Assoc. LLC*, 780 F.3d 70, 81 (2d Cir. 2015). Here, both factors are adequately met.

### A.  **Common legal and factual issues predominate.**

"As a general matter, the Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Brown*, 609 F3d at 476.

If Plaintiffs establish that the "issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole" will "predominate over those issues that are subject to individualized proof," predominance is satisfied. *Id.* at 483. "An individual question is one where

18

members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized class-wide proof." *Valelly*, 2026 U.S. Dist. LEXIS 39780 at *13.

It is, of course, always true that some individual issues exist in a class action. But that presents no problem so long as the class-wide issues predominate. Indeed, the Second Circuit has emphasized individual liability issues need not be "*de minimus*" to certify a class; instead, predominance is "much broader." *Brown*, 609 F.3d at 485. Defenses may arise affecting class members differently, but this does not demonstrate "individual issues predominate over common ones," and thus does not prevent certification. *Id.*

The key is that individual issues do not predominate if class members are "aggrieved by a single policy of the defendants, and there is strong commonality of the violation and the harm." *Id.* at 484. Litigation like this one, over such a policy, "is precisely the type of situation for which the class action device is suited." *Id.* at 484. Put differently, when the litigation is about a policy, "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and" the policy tends to make those "particular issues … more substantial than the issues subject only to individualized proof." *In re Keurig Green Mt. Singleserve Coffee Antitrust Litig.*, 2025 U.S. Dist. LEXIS 228712 at *22 (S.D.N.Y. Nov. 20, 2025).

Applying that standard, the issues subject to generalized proof predominate here. For example, for the Fourth Amendment claim, the legal questions central to each class member include:

- Did the City have a policy of bringing people to jail on warrants (whether after hours or during the day)?

- Did the City have a policy of not acting to ensure people in jail on warrants would be brought to court in a timely way?

19

- Does the City's violation of the terms of identical warrant with "without unnecessary delay" language, under *Simon*, 893 F3d at 95, give rise to liability?

- Does *Maxian* (and the facts upon which it was decided) extend to bench warrants such that taking individuals to jail rather than to court on a bench warrant is necessarily "unnecessary," and a violation of CPL §530.70?

- Are all court parts open overnight in New York City generally? And are the judges sitting there sitting Supreme, as the relevant OCA Directive  (Green Ex. 5) says?

Each of these questions predominates and can be answered only with generalized proof.  Compare these to the only potential individual questions — things like, "what time was this person arrested?," "was this person being held on bail as well as a warrant?," and so on. ███████████

███████████████████████████████████████████

███████████████████████.[21]  *See, e.g.,* 30(b)(6) Tr. at 175-176.[22]

Likewise, a determination of whether the logic of *Maxian* applies to bench warrants requires assessing the policing work (or lack thereof) **generally** necessary to produce someone before a judge for execution of a warrant. Determining whether the City has a policy of not tracking the need to produce people held on warrants to court requires evidence **generally** about that practice.  Plus, compare that to the reality of hundreds (or more than a thousand) of class members litigating these general claims in hundreds of separate cases:  The City would need to produce and prepare 30(b)(6) witnesses on similar topics hundreds of times.  And meanwhile, the potential relevance of individual variance is almost non-existent compared to, say, a protest class action or the stop-and-frisk claims in

---

[21] ███████████████████████████████████████████

[22] ███████████████████████████████████████████

*Floyd* where there are individualized arguments about probable cause, reasonable suspicion, excessive force, and the like — and those sorts of classes have been rightly certified.

Or consider *Monell* liability. If this Court finds an underlying constitutional violation, determining whether that results from municipal "policy, practice, custom, or usage" will similarly depend on generalized proof. *Augustin v. Jablonsky (In re Nassau County Strip Search Cases)*, 461 F.3d 219, 229 (2d Cir. 2006) (finding predominance based on "two broad common liability issues: whether the blanket policy existed and whether defendants are liable for its implementation"); *accord Floyd*, 283 F.R.D. at 174-75. This proof will include the NYPD and DOC's policies on processing and tracking individuals arrested on bench ███████████████████ ████████ (*See* 30(b)(6) Tr. at 33: 12-25; 34: 1-7); internal communications between DOC, NYPD, The Mayor's Office of Criminal Justice, and the Legal Aid Society; testimony from officers and supervisors of the various departments responsible for arresting and processing individuals on a warrant[23]; Copies of grievances, written complaints, or records of oral or other complaints, made by people held by DOC, regarding the failure to produce someone to court on a bench warrant or other similar warrant without unnecessary delay; and spreadsheets of individuals held in City Jails on an executed warrant, generated through the IAS system.

There are simply no individual issues or factual discrepancies which even ***could*** predominate here. Even if, for example, City Defendants claim that some proposed class members were not brought to court because they refused transport, or because courts were actually not open, that may change the calculation of damages for that person, but it does not change the core claim: that taking them to jail in the first place was unnecessary and illegal—and that any delays after that detention flow therefrom. And if there genuinely is ***some*** period for which courts were not open as such, that too is

---

[23] ████████████████████████████████████████████
████████████████████████████████████████████████████

21

subject to *generalized*, not individualized proof. Plus, any issue that *does* call for individualized proof would not predominate for practical reasons. For example, ██████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████ .

Put simply, there is nothing individual that *could* predominate in the relevant legal analysis. Zooming out, if the *Maxian* court was right that in New York City, court parts are essentially always available (a fact that was a core part of the logic of *Maxian*), taking an individual directly to jail rather than to court always constitutes an "unnecessary delay." And because the language of the warrant itself also mandates production before a court "without unnecessary delay," if this Court finds that logic of *Maxian* applies to bench warrants, then under *Simon*, taking an individual to City Jails is a violation of the Fourth Amendment. And if the City is right that "unnecessary delay" does *not* includes delays of days, weeks, and months, that too can be resolved on generalized evidence.

Finally, with respect to damages, every class member's damages are "attributable to the theory of liability on which the class action is premised," and Rule 23(b)(3) certification is therefore warranted. *Roach v T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015) (quoting *In re Deepwater Horizon*, 739 F.3d 790, 817 (5th Cir. 2014). So even if the Court finds that some individualized determinations are necessary (it should not), such a finding would not preclude certification. As the *Roach* court clarified, the question of damages in the context of the predominance assessment is relevant only insofar as individualized damages would "predominate over the common questions of liability." *Roach*, 778 F3d at 408. Here, even if there were any issues of individualized damages, they would be easily resolved and would not outweigh the issues susceptible to generalized proof: The common questions of liability, as discussed in sections II and III-A above. And as explained below, the Court could simply certify the class for liability only even so. Any discrepancies in facts relevant to a class member's damages calculations, therefore, would not preclude class certification under Rule 23(b)(3).

22

**B. A Class action is superior to other methods for the fair and efficient adjudication of Plaintiff's claims**

Certification under Rule 23(b)(3) also requires a determination that a "class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The Rule identifies four nonexclusive factors: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." *Id.* Here, these factors all weigh in favor of certifying the classes.

Any putative class member interested in individually controlling the prosecution of a separate action has had over five years to file an individual lawsuit. At this stage, those subjected to the City's policies in processing individuals arrested on a bench warrant can reasonably be assumed to have decided, for a variety of reasons, not to want to bring their own suit — or at least to wait to see if this one is resolved on a classwide basis. *See In re AXA Equitable Life Ins. Co. COI Litig.*, 2020 U.S. Dist. LEXIS 145948 at *26 (S.D.N.Y. 2020) (citing *Public Emps.' Ret. Sys. v. Merrill Lynch & Co., Inc.*, 277 F.R.D. 97, 120 (S.D.N.Y. 2011) (finding superiority where "there is no overwhelming interest by class members to proceed individually").

The Second Circuit has held that "substituting a single class action for numerous trials in a matter involving substantial common legal issues and factual issues susceptible to generalized proof will achieve significant economies of 'time, effort and expense, and promote uniformity of decision.'" *Catholic Health Care W. v US Foodserv. (In re US FoodServ. Pricing Litig.)*, 729 F.3d 108, 130 (2d Cir. 2013). Here, as shown above, there are common legal and factual questions that will rely on similar proof. Engaging in a discovery process on these generalized issues in multiple (potentially hundreds) of cases (and then trials) would be incredibly inefficient and a waste of the City's, Plaintiff's counsel's, and

23

Court's resources — particularly given, as Judge Cave described it, the City's habit of "crying wolf" about burden in discovery without an explanation.

Class certification is particularly desirable here given that the amount of damages for at least some class members would be small relative to the cost of bringing suit (though for those kept for months, perhaps less so). "Class actions can be superior precisely because they facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery." *Catholic Health Care,* 729 F.3d *at* 130 (citing *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997)); *see also Burley v. City of NY*, 2005 U.S. Dist. LEXIS 4439 at *26 (S.D.N.Y. Mar. 23, 2005); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). Though the damages here are serious and large, the costs of Federal litigation are notoriously enormous.

As for the extent and nature of other litigation concerning excessive detention after arrest on a bench warrant, Plaintiffs are aware of only a single case in Bronx Supreme Court: *Concepcion v. The City of New York et al.*, Index No. 818668/2022E. Given the large number of class members here, the fact that only one related independent action has been filed weighs in favor of class certification. *See Pub. Emples. Ret. Sys. of Miss.,* 277 F.R.D. 97 at 121. Class certification will therefore hold static the number of individual suits the Court is required to supervise and adjudicate. *See In re Nassau County Strip Search Cases*, 461 F.3d at 230 (noting benefit of allowing potential plaintiffs to join in class action which "already has progressed substantially"). Likewise, the desirability of concentrating the litigation in the present forum is apparent given that Defendants are located in this District and "it has proceeded here without issue" for approximately five years. *Valelly*, 2026 U.S. Dist. LEXIS 39780 *at* 24-25.; *accord Sykes*, 780 F.3d at 82 (considering this factor "when the defendant is located in the forum state."). Further, concentrating this litigation in a single forum "avoids the risk of inconsistent adjudication, and encourages the fair and efficient use of the judicial system." *Tsereteli v. Residential*, 283 F.R.D. 199, 218 (S.D.N.Y. 2012).

As far as more practical issues, even if management difficulties arise, they will "certainly [be] no greater than the management difficulties that would inevitably result from hundreds of separate trials." *MacNamara v. City of NY*, 275 F.R.D. 125, 148 (S.D.N.Y. 2011) (*citing In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 529 (S.D.N.Y. 1996)). And "[t]here are a number of management tools available ... to address any individualized damages issues." *In re Nassau County Strip Search Cases*, 461 F.2d at 231. Ultimately, "given the experience of Plaintiffs' counsel" and the fact that this matter is already at an advanced posture, this court should find that this factor favors certification. *See Valelly*, 2026 U.S. Dist. LEXIS 39780 at 24-25.

In addition to all the above, certifying the proposed classes as opposed to hundreds of potential individual actions "cannot help but result in a huge savings of judicial resources." *Pub. Emples. Retirement Sys. of Mississippi*, 277 F.R.D. 97 at 121 (citing *Robidoux*, 987 F.2d 931). And in this way, even if there were differing damages among the class, certifying a class for the liability phase and decertifying for the damages phase would still be the better path. *See, e.g., United States v City of NY*, 276 F.R.D. 22, 31 (EDNY 2011) (denying City's motion to reverse certification of a liability phase only class), *cf. Robinson v Metro-North Commuter R.R.*, 267 F.3d 147, 167, n 12 (2d Cir. 2001) (describing the availability of this tool as an open question, but seemingly suggesting it would likely be proper). Accordingly, this action satisfies the superiority requirement of Rule 23(b)(3), warranting certification of the proposed classes.

## CONCLUSION

For all the reasons discussed above, Plaintiffs' motion for class certification pursuant to Rule 23(b)(2) and Rule 23(b)(3) should be granted in its entirety.

Dated:    June 24, 2026
          Queens, New York

Respectfully submitted,

**COHEN&GREEN P.L.L.C.**

/s/
—————————————————
**BY:**     J. Remy Green

Leena Widdi
1639 Centre St., Suite 216
Ridgewood, New York 11385
t : (929) 888-9480
f:  (929) 888-9457
e:  remy@femmelaw.com

**GIDEON ORION OLIVER**
277 Broadway, Suite 1501
New York, NY 10007
t: 718-783-3682

**KAISHIAN & MORTAZAVI LLC**
Maryanne K. Kaishian
55 Washington St., Suite 728
Brooklyn, NY 11201