21 Civ. 8149 (ALC)(SLC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAUL PHILLIPS, et al.,

Plaintiffs,

-against-

CITY OF NEW YORK, et al.,

Defendants.

**DEFENDANT CITY OF NEW YORK'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

*STEVEN BANKS*
*Corporation Counsel of the City of New York*
*Attorney for Defendant City*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Mark Zuckerman*
*Tel: (212) 356-3519*

# TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES ........ II

PRELIMINARY STATEMENT ........ 1

FACTUAL STATEMENT ........ 1

A. Paul Phillips ........ 1

B. Khaori Wright ........ 2

C. Arrests of and Production to Court of Individuals Arrested on Warrants ........ 3

ARGUMENT

POINT I

PLAINTIFFS FAILED TO MOVE TO AMEND TO THEIR CLASS DEFINITION ........ 6

POINT II

PLAINTIFFS HAVE NOT MET THE REQUIRED ELEMENTS TO CERTIFY A CLASS ........ 9

A. Numerosity ........ 12

B. Commonality ........ 15

C. Typicality ........ 21

D. Adequacy ........ 23

E. Ascertainability ........ 24

F. Rule 23(b)(2) ........ 26

G. Rule 23(b)(3) ........ 29

CONCLUSION ........ 32

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

Alharbi v. Miller,
368 F. Supp. 3d 527 (E.D.N.Y. 2019) ....................12

In re Aluminum Warehousing Antitrust Litig.,
13-md-2481 (KBF), 2016 U.S. Dist. LEXIS 54643
(S.D.N.Y. Apr. 25, 2016) ....................8

An v. City of New York,
230 F. Supp. 3d 224 (S.D.N.Y. 2017) ....................27

Azor-El v. City of New York,
20 Civ. 3650 (KPF), 2024 U.S. Dist. LEXIS 178121
(S.D.N.Y. Sept. 27, 2024) ....................9, 10, 11, 15, 21, 23, 24, 25

Barnes v. District of Columbia,
242 F.R.D. 113 (D.D.C. 2007) ....................19

Berni v. Barilla, S.P.A.,
964 F.3d 141 (2d Cir. 2020) ....................25, 26

Burley v. City of New York,
03 Civ. 735 (WHP), 2005 U.S. Dist. LEXIS 4439
(S.D.N.Y. Mar. 23, 2005) ....................10

Comcast Corp. v. Behrend,
569 U.S. 27 (2013) ....................29

County of Riverside v. McLaughlin v. Riverside,
500 U.S. 44 (1991) ....................17, 18, 21

De La Cruz v. City of New York, et al.,
24 Civ. 2289 (ALC), 2026 U.S. Dist. LEXIS 70482
(S.D.N.Y. Mar. 31, 2026) ....................27

de Lecour v. Colgate-Palmolive Co.,
338 F.R.D. 324 (S.D.N.Y. 2021) ....................24

DeMarco v. Edens,
390 F.2d 836 (2d Cir. 1968) ....................12

In re Drexel Burnham Lambert Grp., Inc.,
960 F.2d 285 (2d Cir. 1992) ....................23

**Cases** **Pages**

Eisen v. Carlisle & Jacqueline, DeCoppet & Doremus,
391 F.2d 555 (2d Cir. 1968)....27

Elisa W. v. City of New York,
82 F.4th 115 (2d Cir. 2023) ....15

Erica P. John Fund, Inc. v. Halliburton Co.,
563 U.S. 804 (2011)....29

General Telephone Co. of Southwest v. Falcon,
457 U.S. 147 (1982)....10, 16

Haus v. City of New York, et. al.,
03 Civ. 4915 (RWS)(MHD), 2011 U.S. Dist. LEXIS 155735
(S.D.N.Y. Aug. 31, 2011) ....16

Huang v. Shanghai City Corp.,
19 Civ. 7702 (LJL), 2022 U.S. Dist. LEXIS 84498
(S.D.N.Y. May 10, 2022)....12

Hyland v. Navient Corp.,
48 F.4th 110 (2d Cir. 2022) ....26

ICOS Vision Systems Corp., N.V. v. Scanner Technologies Corp.,
699 F. Supp. 2d 664 (S.D.N.Y. 2010)....26

Liberian Cmty. Ass'n of Conn. v. Lamont,
970 F.3d 174 (2d Cir. 2020)....28

Marcavage v. City of New York,
689 F.3d 98 (2d Cir. 2012)....27

Marisol A. v. Giuliani,
126 F.3d 372 (2d Cir. 1997)....15, 21

People ex rel. Maxian v. Brown,
77 N.Y.2d 422 (1991) ....18, 19, 21, 29

Mazzei v. Money Store,
829 F.3d 260 (2d Cir. 2016)....28

Miller v. Kennebec County,
219 F.3d 8 (1st Cir. 2000) ....17

Myers v. Hertz Corp.,
624 F.3d 537 (2d Cir. 2010)....10

**Cases** **Pages**

Novella v. Westchester County,
661 F.3d 128 (2d Cir. 2011)....................12

Pa. Pub. Sch. Emples. Ret. Sys. v. Morgan Stanley & Co.,
772 F.3d 111 (2d Cir. 2014)....................12

People v. Small,
26 N.Y.3d 253 (2015)....................18, 19, 21

In re Petrobas Secs.,
862 F.3d 250 (2d Cir. 2017)....................10, 11, 12, 24, 28

Pub. Emps. Ret. Sys. v. Merrill Lynch & Co.,
714 F. Supp. 2d 475 (S.D.N.Y. 2010)....................28

In re Pub. Offerings Sec. Litig.,
471 F.3d 24 (2d Cir. 2006).................... 9-10

In re REFCO Inc. Securities Litig.: Krys v. Aaron,
07-md-1902 (JSR), 08 Civ. 7416 (JSR), 2010 U.S. Dist. LEXIS 142588
(S.D.N.Y. July 19, 2010)....................26

Roach v. T.L. Cannon Corp.,
778 F.3d 401 (2d Cir. 2015).................... 28-29, 30

Robidoux v. Celani,
987 F.2d 931 (2d Cir. 1993)....................9, 12, 21

Simon v. City of New York,
893 F.3d 83 (2d Cir. 2018)....................17, 21, 29

Stinson v. City of New York,
282 F.R.D. 360 (S.D.N.Y. 2012)....................24

Sykes v. Mel S. Harris & Assoc.,
780 F.3d 70 (2d Cir. 2015)....................31

Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,
546 F.3d 196 (2d Cir. 2008)....................10

United States v. Doherty,
786 F.2d 491 (2d Cir. 1986)....................26

Vincent v. Money Store,
304 F.R.D. 446 (S.D.N.Y. 2015)....................8

**Cases** **Pages**

Walmart v. Dukes,
564 U.S. 338 (2011)....10, 15, 16, 25, 26

**Statutes**

C.P.L. § 120.90....18

C.P.L. § 120.90(1)....18

C.P.L. § 140.20(1)....18

C.P.L. § 530.70....18, 19, 21

C.P.L. § 530.70(2)....14, 16

Fed. R. Civ. P. 12....8

Fed. R. Civ. P. 23....9, 10

Fed. R. Civ. P. 23(a)....10, 11, 12, 14, 19, 21, 23, 29

Fed. R. Civ. P. 23(a)(2)....15, 16

Fed. R. Civ. P. 23(a)(3)....15, 21

Fed. R. Civ. P. 23(b)....11

Fed. R. Civ. P. 23(b)(2)....11, 25, 26, 27

Fed. R. Civ. P. 23(b)(3)....11, 15, 28, 29, 31

Fed. R. Civ. P. 30(b)(6)....7, 12

**Other Authorities**

5 Moore's Federal Practice, § 23.24(3) (2019)....16

Patrol Guide 208-42(8)(a)(1)....3

Patrol Guide 208-42(8)(b)(1)....3

Patrol Guide 208-42(8)(b)(2)....3

Patrol Guide 208-42(8)(b)(2)(a)....3

**Other Authorities** **Pages**


Patrol Guide 208-42(8)(b)(2)(b) ....................3

Patrol Guide 208-42(8)(b)(2)(c) ....................3

## PRELIMINARY STATEMENT

Defendant City of New York, hereby respectfully submits its Memorandum of Law in opposition to the plaintiffs Phillips and Wright's motion for class certification. For the following reasons, plaintiffs' motion to certify a class should be denied in its entirety. Plaintiffs' motion is based on improperly and unilaterally changed class definitions, inaccurate facts, hyperbole and ultimately incorrect legal conclusions. Further, determinations of whether there were unlawful delays in the arrest processing or production to court of persons detained on bench warrants, and any responsibility therefor, require individualized analyses of each such arrest and detention. Plaintiffs' motion should therefore easily be denied.

## FACTUAL STATEMENT

### A. Paul Phillips

On July 3, 2020, Phillips was stopped by a New York State ("NYS") Trooper in Guilderland, New York, in connection with an alleged traffic infraction. (TAC, ¶105) The NYS Trooper told Phillips that he had an open warrant, which was in fact a bench warrant from New York County Criminal Court, Part AP17, dating back to June 5, 1989. (Complaint, ¶107 and Ex. A to Zuckerman Decl., Phillips Warrant)) The NYS Trooper then arrested Phillips and transported him to the NYS Trooper Barracks. (TAC, ¶¶110-111) NYS Troopers then transported Phillips to Poughkeepsie, New York, and Phillips was thereafter transported by them to the NYPD's Bronx Warrants Division. (TAC, ¶115; Prilook Decl., ¶2)

July 3, 2020, a Friday, was when the Independence Day holiday was observed and was during the height of the COVID-19 pandemic crisis. (Prilook Decl., ¶3) Upon Phillips's arrival to the NYPD Bronx Warrants Division, Det. Prilook unsuccessfully attempted to call the Manhattan DA's office to determine that Office's intent with respect to the bench warrant that Phillips had been arrested on upstate. (Prilook Decl., ¶4) Det. Prilook also called every court part that he could

to determine if there was a court part that he could take Phillips to. (Prilook Decl., ¶5) None were open upon Det. Prilook's inquiries, and Phillips cannot identify any specific court parts that were available at that time. (Prilook Decl., ¶5 and Ex. B to Zuckerman Decl., Phillips dep., p. 48, ll. 9-17) As a result, Sgt. Brian Garay, Det. Ruben Guerrero and Det. Prilook transported Phillips to Rikers Island for lodging on the bench warrant, which Det. Prilook was informed was active upon his inquiry. (Prilook Decl., ¶6)

**B. Khaori Wright**

On March 18, 2020, at the very onset of the COVID-19 emergency crisis, Wright was a passenger in a vehicle that was stopped by NYPD officers. (TAC, ¶220 and Ex. C to Zuckerman Decl., Arrest Report) Upon the car stop, Wright was arrested for criminal possession of a controlled substance and marihuana. (Ex. C to Zuckerman Decl., Arrest Report) Upon his arrest, Wright was brought by NYPD officers to court. (TAC, ¶225 and Ex. D to Zuckerman Decl., OLPA Report) The Kings County DA's Office subsequently declined to prosecute Wright arising from his narcotics arrest. (Ex. D to Zuckerman Decl., OLPA Report)

Upon Wright's March 18, 2020 arrest, it was also discovered that there was an outstanding **arrest warrant** issued by Superior Court, Kings County Supreme Court, Part TAP2, on or about February 11, 2020 in Docket No. 7146-2019. (Ex. E to Zuckerman Decl., Wright Warrant) NYPD records indicate that on March 19, 2020, Wright was taken to Brookdale Hospital. (Ex. D to Zuckerman Decl., OLPA Report) Wright was thereafter transported again to court (Brooklyn Central Booking) at 10:45 a.m. on March 20, 2020 (Ex. F to Zuckerman Decl., Command Log) by NYPD transport officers and was admitted to DOC custody minutes later. (Ex. G to Zuckerman Decl., DOC Movement Log) Wright does not recall if there were any court parts open when he

was returned to Brooklyn Central Booking. (Ex. H to Zuckerman Decl., Wright dep., p. 52, l. 24-p. 53, l. 6)

On November 22, 2021, Wright was arrested on the arrest warrant. (Ex. H to Zuckerman Decl., Wright dep., p. 90, l. 21-p. 91, l. 5) Wright appeared before a judge on the arrest warrant on November 22, 2021 and was arraigned in Docket No. 7146-2019 at that time. (Ex. I to Zuckerman Decl., Court Record and Ex. H to Zuckerman Decl., Wright dep., p. 97, l. 24-p. 98, l. 16)

**C. Arrests of and Production to Court of Individuals Arrested on Warrants**

NYPD Patrol Guide 208-42(8)(a)(1) states that for "Criminal Court Warrants" issued by New York, Queens, Bronx, or Kings Counties, the officer should "arraign [the] prisoner in Criminal Court or Weekend/Night Court of the borough that issued the warrant." (Ex. J to Zuckerman Decl., Patrol Guide 208-42) NYPD Patrol Guide 208-42(8)(b)(1) states that for "Supreme Court Warrants," "if in session [the officer should] take [the] prisoner before Supreme Court that issued the warrant." (Ex. J to Zuckerman Decl.) NYPD Patrol Guide 208-42(8)(b)(2) states that for "Supreme Court Warrants," "when a police officer cannot bring the defendant to Supreme Court for arraignment (after 1700 hours on weekdays and on weekends), the officer will deliver defendant to [a DOC facility]. (Ex. J to Zuckerman Decl., Sections 208-42(8)(b)(2)(a-c)). In that event, individuals remanded to DOC custody on a warrant are normally produced to court the next business day. (Ex. K to Zuckerman Decl., Rigault dep., p. 51, ll. 5-9; Ex L to Zuckerman Decl., DOC Operations Order)

When an individual is held at a DOC facility on a warrant, the warrant itself is not uploaded to the DOC Inmate Information System ("IIS"), nor is any language such as "without unnecessary delay or that type of information" which may be contained on the warrant itself. (Rigault dep., p. 48, ll. 3-7) Nor is that information entered on an "accompany card" that is prepared by DOC in

such circumstances. (Rigault dep., p. 50, ll. 5-11) The IIS system does track when an individual needs to be produced to court. (Rigault dep., p. 50, ll. 16-20), as Court Date Reports are prepared from the IIS system which identifies individuals who have court the next day. (Rigault dep., p. 53, l. 18-p. 54, l. 13)

Individuals held on warrants may not be produced the next business day, even if scheduled for court, if they are not medically fit for production, they refuse to go to court, or the court, prosecutor or defense counsel contacts the DOC facility stating that their production is not required that day or the court declines or refuses production. (Rigault dep., p. 56. l. 14-p. 57, l. 18; p. 59, l. 16-p. 60, l. 9; p. 61, ll. 4-14; p. 61, l. 22-p. 62, l. 3; p. 73, ll. 16-21) A court may decline production of the individual by, e.g., calling the particular DOC facility and stating that a "particular court part is down." (Rigault dep., p. 62. ll. 4-12) Warrants are returnable to a particular court part and DOC may get a call from that court part stating that the court part is closed on a particular day or not operational. (Rigault dep., p. 62, l. 22-p. 63, l. 8; Ex. A to Zuckerman Decl., Phillips warrant; Ex. E to Zuckerman Decl., Wright Warrant; Ex. M to Zuckerman Decl., plaintiff Thompson Warrant) The IIS system does not record whether a court appearance was cancelled due to court part closure. (Rigault dep., p. 63, l. 9-p. 63, l. 18; p. 64, ll. 4-12) Documents in each individual's hard copy DOC inmate folder, such as a court date report or movement history log, would be documents that may have information as to why an individual was not produced to court on a certain date. (Rigault dep., p. 72, ll. 11-22) DOC does not make or maintain a record of whether a particular court part was closed on a given day. (Rigault dep., p. 65, ll. 10-23; p. 67, ll. 1-5) NYS Office of Court Administration ("OCA") may have records of such court closure information, as well as the date on which a particular warrant was vacated and information concerning the

individual in its criminal inquiry system. (Rigault dep., p. 65, l. 17-p. 66, l. 3; p. 84, ll. 6-12; p. 85, l. 1-p. 86, l. 2)

There are also "extenuating circumstances," such as "vehicle accidents" or "weather issues" which are also reasons why an individual may not be brought to court. (Rigault dep., p. 68, l. 1-7). Phillips and Wright were arrested during the height of the COVID pandemic, and that "could have been [another reason] why people weren't produced" to court. (Rigault dep., p. 68, ll. 1-11; p. 69, ll. 11-23) (individuals were not produced if "there was no court to produce individuals to") During COVID, the court system was operating in a "very limited capacity." (Rigault dep., p. 69, l. 25-p. 70, l. 21) Court parts are also regularly closed on weekends and holidays. (Rigault Decl., ¶5)

In order to differentiate whether an individual was held in DOC custody on a bench or arrest warrant, it would be necessary to look at the warrant itself, which would be a hard copy in the individual's inmate file. (Rigault dep., p. 96, l. 22-p. 97, l. 14) The IIS system (from which Ex. 4 to the Green Decl. is derived) does not track such information. (Rigault dep., p. 96, l. 22-p. 98, l. 5) "An individual [held on a warrant] could [also] be held on other accusatory instruments." (Rigault dep., p. 113, ll. 5-10)

A number of law enforcement agencies bring individuals to DOC custody on warrants, including NYPD, Parole, NYS Troopers, peace officers, Marshals, Port Authority and MTA. (Rigualt dep., p. 102, l. 10-p. 103, l. 2) In the event that an arrestee on a warrant is brought directly to Rikers Island, NYPD paperwork does not readily capture whether that individual was brought by an NYPD officer/detective to court prior to being transported to Rikers Island, as there is no such automated field in NYPD generated documents. (Koehler Decl., ¶2) Rather, to make such an individualized determination, one would have to review documents such as command log entries,

officer memobook entries and/or officer BWC videos, in addition to interviewing the officers involved, to potentially make such a determination, if it is possible to do so at all. (Koehler Decl,, ¶2) DOC is generally not made aware of whether individuals admitted to the facilities identified on the DOC spreadsheet submitted as Exhibit 4 to the Green Decl. in support of class certification were brought to a court prior to being transported to the DOC facility listed on the chart because any such events would precede DOC involvement with that individual. (Rigault Decl., ¶2)

The "lists" prepared by Capt. Rigault, Exhibit 1 to the Green Decl., "identif[ied] individuals who had warrants out of [a given county]," and IIS was the primary tool used to create such lists. (Rigault dep., p. 118, ll. 9-20) The "purpose" of the lists "was [to use as] a tool to help OCA as well as DOC to restart after the pandemic to get individuals produced to court after they've been down." (Rigault dep., p. 138, ll. 15-22) Individuals on Capt. Rigault's "lists" "could be held on other...accusatory instruments" as well. (Rigault dep., p. 127, l. 22-p. 128, l. 3) If Capt. Rigault did not specify on the "lists" that the warrants were the only basis for the "hold," such warrants had been vacated or he was "prioritizing" individuals held on another accusatory instrument who had "low" or "nominal" bail. (Rigault dep., p. 138, ll. 2-8) Capt. Rigault "ran [the lists]" for "about two years." (Rigault dep., p. 131, ll. 4-6) (See also Ex. 1 to Green Decl.) The "lists" that were prepared by Capt. Rigault in 2021-2022 do not identify whether the warrants identified therein were arrest or bench warrants. (Rigault Decl., ¶3) The "lists" prepared by Capt. Rigault also did not set forth whether an individual had already been brought to court on the warrant listed nor was Capt. Rigault preparing the lists with the purpose of so identifying such individuals. (Rigault Decl., ¶4)

## ARGUMENT

## POINT I

**PLAINTIFFS FAILED TO MOVE TO AMEND THEIR CLASS DEFINITION**

In its decision on defendants' motion to dismiss, the District Court ruled that the claim being alleged by plaintiffs in this case is as follows: "Plaintiffs allege that the City and the New York Police Department (NYPD) have a policy of bringing individuals directly to Rikers Island and City jails when they discover that the individual has an outstanding warrant in their name, rather than taking them to court in the first instance." Docket 211. In the operative complaint in this case, the corrected TAC at Docket 128, plaintiffs' class definition is as follows: "All persons…whom have been jailed by the NYPD and/or DOC…based on the existence of a warrant bearing their name…**who NYPD and/or DOC did not bring to court prior to incarceration…**who fit into one or both of the Subclasses described below.[1]" Docket 128, ¶424(a-e). In its discovery decisions thereafter, the Court has consistently referred to the foregoing portion of the District Court's ruling on defendants' motion to dismiss as the claim by which the relevance of discovery should be determined. See e.g. Docket 264(1) (allowing plaintiffs a limited Rule 30(b)(6) deposition of IAB regarding IAB's ability to search for "complaints, similar to the Plaintiffs' complaints in this action, that an individual with outstanding warrants was taken directly to Rikers Island or another city jail rather than taking them to court in the first instance. (See Dkt. No. 211).")

[1] Plaintiffs now argue that an individual such as Wright would still fall into the original class definition because he was essentially re-arrested and then transported to jail without being brought to court on the warrant (even though he was brought to court a second time prior to DOC custody and which had to be on the arrest warrant since his underlying narcotics charges had already been declined to prosecute) because he had been "free" for a "moment." (Ps' MOL, p. 3, n.6) However, plaintiffs' operative claim includes only individuals who were not brought to court in the first instance, as correctly read by Judge Carter. Docket 221. Plaintiffs' attempt to unilaterally expand their class definition should be rejected.

In fact, a briefing schedule was even set for plaintiffs' potential motion to amend on this very issue at the discovery conference of January 14, 2026. (Dockets 224, 230). After being granted additional time to serve their motion to amend, Dockets 227, 229, plaintiffs ultimately decided not to bring the motion to amend at all. Docket 232. Instead of moving to amend, plaintiffs unilaterally in their motion for class certification materially altered their class definition to, "All persons…who have been jailed by the City…whose continued detention is premised solely on the existence of a warrant bearing their name…where the warrant contains language requiring production to a court 'without unnecessary delay' who the NYPD, DOC, or another City actor 1) did not bring to court for an appearance on the warrant before detention on the warrant, or 2) otherwise failed to produce that person to court for an appearance on the warrant 'without unnecessary delay' after detention…who fit into one or both Subclasses described below." (Ps' MOL, p. 2)

Plaintiffs were required to move to amend the TAC to change the class definition if they sought to do so. See e.g. Vincent v. Money Store, 304 F.R.D. 446, 453 (S.D.N.Y. 2015) ("The plaintiffs provide no explanation for expanding the class certification without any motion to amend the Complaint."); In re Aluminum Warehousing Antitrust Litig., 13-md-2481 (KBF), 2016 U.S. Dist. LEXIS 54643, at *35 (S.D.N.Y. Apr. 25, 2016) (denying proposed amendment to class definition in the midst of class certification briefing). The undue prejudice to defendants in allowing plaintiffs' maneuver to proceed would be substantial. Plaintiffs' proposed changes to the class definition are fundamental changes to this litigation, not ministerial, i.e., changing the definition from failing to bring an individual to court to failing to bring an individual to court for an appearance on a warrant, as well as the entirety of the addition of class definition par. (e)(2). Defendants did not have the opportunity to move pursuant to Rule 12, Fed. R. Civ. P., because

such claims were never brought, and discovery has been limited by the Court to the existing claim as found by the District Court in its decision on the motion to dismiss, as well as the original class definition. The Court should not allow the class definition to be a moving target. That would be patently unfair. Since plaintiffs did not bring a motion to amend nor are proceeding on the class definition set forth in the TAC, as required, their motion for class certification should be denied for this reason alone.

Knowing that their failure to amend is fatal to their motion for class certification, plaintiffs miscite Robidoux v. Celani, 987 F.2d 931, 937 (2d Cir. 1993), in furtherance of their desperate attempt to have the Court *sua sponte* change the class definition for them instead of a proper motion to amend. The full quote from Robidoux is that "[a] court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly." Id. The next line in Robidoux states that "the court need not take on an onerous burden of identifying issues that may be appropriate for class treatment…." Id. This case does not involve an issue of whether the Court should *sua sponte* narrow a class definition, but rather is a case of an attempt to materially broaden the proposed class definition without defendants having had a fair opportunity to defend against it. Simply, defendants have been under the burden of a potential class being a moving target for too long. This should not be allowed to continue. Plaintiffs' motion should be denied for these reasons alone.

**POINT II**

**PLAINTIFFS HAVE NOT MET THE REQUIRED ELEMENTS TO CERTIFY A CLASS**

Should the Court consider plaintiffs' unilaterally modified class definitions, "[c]lass certification is governed by Federal Rule of Civil Procedure 23." Azor-El v. City of New York, 20 Civ. 3650 (KPF), 2024 U.S. Dist. LEXIS 178121, at *20 (S.D.N.Y. Sept. 27, 2024). "[A] district

judge may not certify a class without making a ruling that each Rule 23 requirement is met[.]" In re Pub. Offerings Sec. Litig., 471 F.3d 24, 27 (2d Cir. 2006). "Furthermore, the party seeking certification must establish that the proposed class meets all the requirements of Rule by 'a preponderance of the evidence.'" Azor-El, supra, at *21 (citing Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010)).

"Accordingly, first, under Rule 23(a), the moving party must make a threshold showing that: 1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact common to the class; 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and 4) the representative parties will fairly and adequately protect the interests of the class." Id. "These Rule 23(a) prerequisites—commonly referred to as numerosity, commonality, typicality, and adequacy—must be satisfied after 'rigorous analysis' that examines 'the facts of the dispute, [and] not merely the pleadings.'" Id.

"Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff[s'] underlying claim….'[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiffs' cause of action.'" Walmart v. Dukes, 564 U.S. 338, 351 (2011) (quoting General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 160 (1982)). "A court may consider material outside the pleadings in determining whether class certification is appropriate." Burley v. City of New York, 03 Civ. 735 (WHP), 2005 U.S. Dist. LEXIS 4439, at *9 (S.D.N.Y. Mar. 23, 2005). A plaintiff "bears the burden of satisfying the requirements of Rule 23(a)." In re Petrobas Secs., 862 F.3d 250, 260 (2d Cir. 2017). In other words, in determining class certification, district courts should "receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met"

by a preponderance of the evidence. Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 202, 204 (2d Cir. 2008).

"In addition to Rule 23(a)'s explicit textual requirements, the Second Circuit also recognizes an implicit 'ascertainability" requirement, whereby the proposed class must be 'defined by using objective criteria that establish a membership with definite boundaries.'" Azor-El, supra, at *21. "Ascertainability 'will preclude certification if a proposed class definition is indeterminate in some fundamental way.'" Id.

"[I]f the threshold requirements of Rule 23(a) are met, a plaintiff must also establish that the proposed class falls into one of the…categories set forth in Rule 23(b)." Id. "Under Rule 23(b)(2), class certification is appropriate when 'the party opposing the class has acted or refused to act on grounds that apply generally applicable to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Id., at *21-22. "Rule 23(b)(3),…, permits a class action to proceed 'if the court finds i) that the questions of law or fact common to class members predominated over any questions affecting only individual members, and ii) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" Id., at *22.

"'The [D]istrict [C]ourt has broad discretion in deciding…whether to certify a class, arising from its inherent power to manage and control pending litigation.'" Azor-El, supra, at *22. Plaintiffs are incorrect that the Second Circuit is more deferential to reviews of grants of class certification than to denials. The Second Circuit has stated "that although [they] have sometimes stated in the past that [they] apply[] a 'noticeably less deferential' standard when the district court has denied class certification, this language apparently arose from a misreading of earlier Second Circuit cases. Moreover, it is out of step with recent Supreme Court authority." In re Petrobras

Sec. Litig., supra, at 260 n.11. "[N]o Second Circuit case provides any reasoning or justification for the idea that [the Second Circuit] review[s] denials of class certification with more scrutiny than grants." Id.

**A. Numerosity**

Courts "have long applied a presumption that a class of forty members is sufficiently numerous." Huang v. Shanghai City Corp., 19 Civ. 7702 (LJL), 2022 U.S. Dist. LEXIS 84498, at *15 (S.D.N.Y. May 10, 2022). However, "[t]he numerosity inquiry is not strictly mathematical but must take into account the context of the particular case, in particular whether a class is superior to joinder based on other relevant factors including: (i) judicial economy, (ii) geographic dispersion, (iii) the financial resources of class members, (iv) their ability to sue separately, and (v) requests for injunctive relief that would involve future class members." Pa. Pub. Sch. Emples. Ret. Sys. v. Morgan Stanley & Co., 772 F.3d 111, 119-120 (2d Cir. 2014) (quoting Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993)). "'Determination of practicability depends on all the circumstances surrounding a case, not on mere numbers.'" Novella v. Westchester County, 661 F.3d 128, 143-144 (2d Cir. 2011) (quoting Robidoux, supra, at 936). Where "'the size of the 'class' and the impracticability of joinder [are the result of] pure speculation, DeMarco v. Edens, 390 F.2d 836, 845 (2d Cir. 1968),' a class cannot be certified [based] on [such] speculation." Alharbi v. Miller, 368 F. Supp.3d 527, 548 (E.D.N.Y. 2019).

Plaintiffs fail to meet their burden as to the "numerosity" element of Rule 23(a). Plaintiffs' first unilaterally modified class definition includes individuals who defendants allegedly "did not bring to court for an appearance on the warrant before detention on the warrant." Plaintiffs contend that the "lists" prepared by Capt. Rigault, the DOC Spreadsheet and the Rule 30(b)(6) deposition

testimony of Capt. Rigault demonstrate that "numerosity" is established for this proposed modified class definition. They do not.

At the outset, this lawsuit is about bench warrants only, and the Complaint and plaintiffs' MOL in support of class certification only address bench warrants, rather than other types of warrants such as arrest warrants. Capt. Rigault's "lists," the purpose of which in 2021-2022 "was [only to use as] a tool to help OCA as well as DOC to restart after the pandemic to get individuals produced to court after they've been down," (Rigault dep., p. 138, ll. 15-22), did not differentiate between bench warrants and arrest warrants (Rigault Decl., ¶3), nor were they prepared for the purpose that plaintiffs propose to use them for. The DOC spreadsheet does not differentiate between bench and arrest warrants either, as the DOC spreadsheet is based on information from DOC's IIS system, which does not track such information. (Rigault dep., p. 96, l. 22-p. 98, l. 5)

Additionally, a number of law enforcement agencies bring individuals to DOC custody on warrants, not just NYPD (Rigualt dep., p. 102, l. 10-p. 103, l. 2), meaning that not all of the individuals on the "lists" or the DOC spreadsheet were necessarily brought into custody by City actors. Further, the "lists" prepared by Capt. Rigault did not set forth whether an individual had already been brought to court on the warrant listed,[2] nor was Capt. Rigault preparing these lists with the purpose of so identifying such individuals[3]. (Rigault Decl., ¶4) Furthermore, the DOC spreadsheet does not track this information either, as it explicitly identifies an individual's first

[2] Plaintiffs cite to excerpts from Capt. Rigault's deposition on page 5 of their MOL in support of their assertion that the "City testified" that Capt. Rigault "generated lists of detainees at City jails which included individuals held on an outstanding warrant without having appeared before the judge on that warrant." There is no such testimony. Capt. Rigault was not trying to capture on the "lists" prepared whether such individuals had previously "appeared before a judge."

[3] Capt. Rigault's "lists" also include individuals who were detained on charges other than in connection with a warrant. (Rigault dep., p. 127, l. 22-p. 128, l. 3)

court appearance only. There may have been prior court "refusals" of individuals produced. (Rigault dep., p. 61, ll. 4-14) Finally, DOC is generally not made aware of whether individuals admitted to the facilities identified on the DOC spreadsheet submitted in support of class certification were brought to a court prior to being transported to the DOC facility listed on the chart because any such events would precede DOC involvement with that individual. (Rigault Decl., ¶2)

Plaintiffs' unilaterally modified class definition is also clearly overbroad and does not address the text of C.P.L. §530.70(2), upon which this lawsuit is based: This statute states that "if the court in which the bench warrant is returnable is a superior court, and such court is not available, and the bench warrant is addressed to a police officer, such executing police officer may bring the defendant to the local correctional facility of the county in which such court sits, to be detained there until not later than the commencement of the next session of such court occurring on the next business day." C.P.L. §530.70(2) Plaintiffs do not account for the fact that such detentions are lawful. As such, plaintiffs' contention that they have met the "numerosity" prong of Rule 23(a) for their first unilaterally modified definition is "purely speculative[4]," and plaintiffs therefore fail to meet their burden of proof.

Plaintiffs also argue that they have met the numerosity prong of Rule 23(a) for the second prong of their unilaterally modified class definition, which is that defendants allegedly "otherwise failed to produce [a] person to court for an appearance on the warrant 'without unnecessary delay' after detention." Neither Capt. Rigault's "lists" nor the DOC spreadsheet even address this issue.

[4] Plaintiffs' argument at page 8 of their MOL is telling. They contend they have met numerosity because there "were far more than 40 individuals detained and held 'exclusively on a supreme court or criminal court bench warrant.'" But that is not plaintiffs' unilaterally modified class definition at all.

Further, the test to be determined in an analysis of this issue, which as will be seen in Point, II(B), infra, is "reasonableness," is obviously not encompassed by the entries on either Capt. Rigault's "lists" nor the DOC Spreadsheet either. In fact, plaintiffs' argument, which is dependent upon certain language in each putative class member's hard copy warrant, also fails because individual warrants are not entered in DOC's IIS system, which was the system used to create Capt. Rigault's "lists" and the DOC Spreadsheet. (Rigault dep., p. 48, ll. 3-7; p. 96, l. 22-p. 98, l. 5; p. 118, ll. 9-20). Plaintiffs' numerosity argument in this regard is thus beyond a speculative level as well.

**B. Commonality**

To meet the commonality "requirement, plaintiffs must affirmatively demonstrate, by a preponderance of the evidence, 'the ability of the action to 'generate common answers apt to drive the resolution of the litigation.''" Azor-El, supra, at *26 (quoting Elisa W. v. City of New York, 82 F.4th 115, 123) (quoting Walmart, supra, at 350). "Thus, commonality exists if there is a question such that 'demonstration of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" Id. (quoting Elisa W. at 123 and Walmart, at 350). ''Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.'" Id. (internal citations omitted) "We consider dissimilarities not in order to determine (as Rule 23(b)(3) requires) whether common questions predominate, but in order to determine (as Rule 23(a)(2) requires) whether there is '[e]ven a single [common] question.'" Id. at 359.

"In order to conduct a commonality inquiry, a court must engage in a 'rigorous analysis,' which will often 'entail some overlap with the merits of plaintiffs' underlying claims.'" Id. (quoting Elisa W. at 123 and Walmart, at 351). "[C]ommonality [requires that] the class members'

injuries 'derive from a unitary course of conduct by a single system.'" Id. (quoting Marisol A. v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997)).

While commonality and typicality are two separate requirements, they "tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." Marisol A., supra, at 376. The purpose of both requirements is to ensure that the class action is economical and that the named plaintiffs' claims and the class claims "are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Falcon, 457 U.S. at 157-58 n.13. Neither commonality [nor typicality] will be satisfied if the court must engage in a "case-by-case evaluation of each encounter" in order to establish liability. Haus v. City of New York, et. al., 03 Civ. 4915 (RWS)(MHD), 2011 U.S. Dist. LEXIS 155735, at *317 (S.D.N.Y. Aug. 31, 2011) (M.J. Dolinger). "If a court must make a highly fact-specific or individualized determination in order to establish a defendant's liability to each class member, typicality will not be met." 5 Moore's Federal Practice, § 23.24[3] (2019). "The [Supreme] Court [has] noted that the wording of Rule 23(a)(2)-- that 'there are questions of law and fact common to the class' -- are easy to misread, since '[a]ny competently crafted class complaint literally raises common questions.'" Haus, 2011 U.S. Dist. LEXIS 155735, at *299--301 (quoting Walmart, supra, 564 U.S. at 349)).

There are not common answers to the issues that plaintiffs have raised that may be answered in "a single stroke" or that will drive the resolution of this case. Plaintiffs do not argue nor is there any law supporting an assertion that taking an individual arrested on a bench warrant to DOC "detention" prior to taking them to court on the warrant is a *per se* violation of the Fourth Amendment. Further, as seen, C.P.L. §530.70(2), upon which this lawsuit is based, states that "if the court in which the bench warrant is returnable is a superior court, and such court is not

available, and the bench warrant is addressed to a police officer, such executing police officer may bring the defendant to the local correctional facility of the county in which such court sits, to be detained there until not later than the commencement of the next session of such court occurring on the next business day." Id.

Rather, plaintiffs argue that in accordance with various cases that they have cited to, such amounts to a Fourth Amendment violation or a violation of state law. However, all of the cases plaintiffs cite to would require individualized determinations to determine liability, and confirm that the answer to the question of liability for putative class members cannot be resolved in "one stroke" because the issue requires a determination of individualized reasonableness.

First, plaintiffs rely on Simon v. City of New York, 893 F.3d 83 (2d Cir. 2018). In ruling that a material witness enjoys Fourth Amendment protections extended to criminal suspects, the Second Circuit stated, that "[a]mong these protections is the rule that 'a seizure conducted pursuant to an arrest warrant must conform to the terms of that warrant." Id., at 93 (quoting Miller v. Kennebec Cty., 219 F.3d 8, 11 (1st Cir. 2000)). The Court emphasized, however, that it was "**hold[ing] only** that the defendants, who were executing a warrant requiring [plaintiff's] production to court at an appointed time and date for a hearing on whether she should be adjudged and detained as a material witness, violated the Fourth Amendment by subjecting her to a daylong detention instead." Id., at 96. (emphasis added). "We do not hold that, where a warrant requires officers to produce a prospective material witness to court at a fixed date and time, it would violate the Fourth Amendment merely to bring the prospective witness late." Id. "Some delays are unavoidable." Id. "A warrant must be executed reasonably…." Id., at 95.

Plaintiff next relies on County of Riverside v. McLaughlin v. Riverside, 500 U.S. 44 (1991). This case is inapposite as it involved probable cause determinations for **warrantless** arrests

only, and was not a ruling on a class certification issue either. See Id., at *47. Regardless, the Court ruled that a jurisdiction that provides judicial determinations of probable cause with 48 hours "general[ly" "passes constitutional muster," id., at *56-57, that the "reasonableness" of the delays determined the constitutionality of probable cause determinations of less than 48 hours following arrest, and that the Government bore the burden of demonstrating an "emergency" or "extraordinary circumstance" for probable cause determinations made more than 48 hours after an arrest. Id., at *56-57.

Plaintiffs next rely on a state court case, People ex rel. Maxian v. Brown, 77 N.Y.2d 422, 427 (1991). In Maxian, which involved alleged pre-arraignment delays for **warrantless** arrests only, the New York Court of Appeals affirmed the Appellate Division, First Department's ruling that "'a delay of arraignment of more than 24 hours is presumptively unnecessary, and unless explained, constitutes a violation of CPL 140.20(1) (as to that statute's requirement of unnecessary delay).'" Id., at 426. "The Legislature did not set rigid temporal limits in enacting C.P.L. 140.20(1); nor do we in construing it. Id., at 427. "Rather, the statute requires that a pre-arraignment detention not be prolonged beyond a time reasonably necessary to accomplish the tasks required to bring an arrestee to arraignment." Id.

Plaintiffs ignore a New York Court of Appeals case which is the most on point to the state law issue plaintiffs have raised. "C.P.L. 120.90 (and to which C.P.L. §530.70(2) refers) provides that '[u]pon arresting a defendant for any offense pursuant to a warrant of arrest…a police officer…must without unnecessary delay bring the defendant before the local criminal court in which such warrant is returnable." People v. Small, 26 N.Y.3d 253, 258 (2015) (quoting C.P.L. 120.90 [1]). "Only police officers may execute an arrest warrant, and correction officers are peace officers, not police officers." Id. "Additionally, the People did not violate section 120.90 by failing

to arraign defendant between Friday and Monday." Id. "'No specific time span is universally considered reasonable or per se unreasonable' in bringing a defendant before the local court." Id. (distinguishing Maxian, at 427, on the basis that Maxian involved pre-arraignment delays arising from warrantless arrests).

Plaintiffs fail the commonality prong of Rule 23(a), because based on the authorities that they rely on, a resolution of each putative class member's claim would require a determination of the reasonableness of each such claim, and not by a "single stroke[5]," such as in a case that plaintiffs also rely on, Barnes v. District of Columbia, 242 F.R.D. 113 (D.D.C. 2007), where a class was certified of individuals who were each detained longer than the predetermined date certain for their court ordered release and a determination of liability for each could be made by simple reference to a document (and the defendant in that case did not even submit an opposition to plaintiffs' motion for class certification). See Id., at 115, 119.

Plaintiffs also continually contend without any support whatsoever that a police officer making an arrest on a bench warrant would have less steps to complete than an officer in the warrantless arrest situation, and that therefore it should take less time to produce an individual to court. However, plaintiffs completely ignore the fact that, as exemplified by Phillips, Wright and Thompson's warrants, **bench warrants are returnable to individual court parts[6].** (See Ex. A, E and M to Zuckerman Decl.). And plaintiffs repeatedly argue that an arrest on a bench warrant

[5] Plaintiffs cite no authority for the proposition that the phrase "without unnecessary delay" is the same in all contexts, and an analysis of Maxian and Small are indications that it is not.

[6] Plaintiffs' vague reference to Office of Court Administration Directive 57 (Exhibit 5 to the Green Decl.) does not answer the question of where a particular bench warrant is returnable to, what court parts were open on a given date or time, or what judges were sitting at a particular time. And plaintiffs continue to provide no support of their bald assertion that the required "courts are always open."

must conform to the terms of the warrant, which in all of the three remaining plaintiffs' instances would require returns to individual court parts. C.P.L. §530.70(2) also states that the police officer is to bring the criminal "defendant before the court in which it is returnable."

An example of the importance of the involvement of the judge in the case in which the bench warrant was issued is the case of Thompson (whom plaintiffs' counsel are now attempting to sweep under the rug)[7], and who upon her subject grand larceny arrest had two prior outstanding bench warrants. (Exs. N to Zuckerman Decl., Thompson OLPA Report and Ex. O to Zuckerman Decl., Arraignment Minutes) Upon arraignment following her subject arrest, Thompson's own defense counsel requested that she be heard by the judge who had issued the bench warrant, instead of the arraignment judge, even though Thompson knew she would remain remanded, because of the issuing judge's familiarity with the case in which the bench warrant was issued. ("Judge Roberts is someone who clearly knows Thompson and knows the situation of her past and I think it's an ideal situation to determine whether, after tomorrow's appearance up in [Part] 73, it would make sense to restore her to liberty or not.") (Zuckerman Decl., Ex. O). So, any analysis that does not take into consideration the roles that court parts play in returns of bench warrants is simply wrong.

Capt. Rigault testified (and plaintiffs have not disputed) that there were individualized delays in court productions of persons held on warrants due to the unavailability of open courts or court parts, court, prosecutorial or defense counsel requests, court refusals of produced individuals, COVID-19 restrictions, as well as medical issues and refusals of individuals detained. (Rigault dep., p. 56. l. 14-p. 57, l. 18; p. 59, l. 16-p. 60, l. 9; p. 61, ll. 4-14; p. 61, l. 22-p. 62, l. 3; 62. ll. 4-

[7] Thompson's two outstanding bench warrants were addressed at arraignment immediately and on the very same day of her subject grand larceny arrest (and prior to DOC detention). (Exs. O and P to Zuckerman Decl.) Plaintiffs must withdraw Thompson's unmeritorious claims.

12; p. 62, l. 22-p. 63, l. 8; p. 68, l. 1-11; 69, ll. 11-23; p. 69, l. 25-p. 70. l. 21; p. 73, ll. 16-21) Thus, the claims of putative class members cannot be resolved in a "single stroke," as required to demonstrate commonality. Rather, a determination of such claims would require individual determinations of liability that would require an analysis of the reasonableness of any such individual delays, including whether a particular court part was open and available upon each arrest on a bench warrant.

Plaintiffs cannot even establish that their claims are the result of a unitary course of conduct by a single system. Rather, resolution of the claims contemplated in this case would involve a case by case analysis of the roles of NYPD, DOC and OCA for each separate arrest/detention. OCA is not a City agency. And as the Phillips and Wright arrests/detentions show, the roles of NYPD and DOC in each of them are very different (and plaintiffs have provided no authority whatsoever that the test for liability of a DOC actor is the same as an NYPD actor-even C.P.L. §530.70 has different requirements for police officers and the "correctional facility.").

Finally, though their counsel have attempted to craft "questions" that would be common to the class (see Ps' MOL, p. 10) in order to convince the court of their argument, in the end, reasonableness cannot be decided as to each putative class member's claims "in one stroke," as required by the cases relied on, Simon, McLaughlin, Maxian and Small. And determining whether the City has an unofficial municipal practice of undue delay with respect to arrests based on bench warrants cannot be decided in "one stroke" either since such issue would seemingly be decided on an analysis of individual arrests and detentions. Plaintiffs have failed to establish commonality.

**C. Typicality**

The typicality requirement of Rule 23(a)(3) is satisfied "'when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to

prove the defendant's liability." Azor-El, at *30-31 (quoting Marisol A., supra, at 376). Minor variations in the fact patterns underlying individual claims do not defeat typicality. See Robidoux, supra, at 936-37.

Plaintiffs fail to meet their burden of satisfying the typicality prong of Rule 23(a). As to Phillips, he was arrested in upstate New York on a bench warrant that was issued 30 years ago and transported by New York State troopers to the NYPD Bronx Warrants Division. He was arrested on a Friday, which was July 3, 2020, the day the Independence Day was observed. Phillips's arrest was also at the height of the COVID-19 pandemic crisis. Det. Prilook was thus unable to reach anyone at the Manhattan DA's Office to attempt to determine that Office's intent with respect to Phillips's bench warrant, which was active in the NYPD's system. Det. Prilook also attempted to find a court part available for the return on the bench warrant, but could not, and finally transported Phillips to Rikers Island. Phillips also claims unique medical issues that affected him while detained at Rikers Island. See TAC, ¶¶149-200.

As seen, Wright was arrested on March 18, 2020 by NYPD on narcotics charges and brought to court. The Kings County DA's Office declined to prosecute on those charges. At that time, there was also an outstanding unrelated **arrest warrant** for Wright's arrest. Wright requested to go to the hospital for treatment. Thereafter, he was brought back to court for a second time by NYPD transport officers. It is a reasonable inference that no court part was available to hear the return of the arrest warrant at that time, since the arrest warrant could have been the only reason that he was brought back to court given the Kings County DA declination to prosecute the narcotics charges.

As to Thompson, she had two outstanding bench warrants that were addressed at arraignment immediately (the same day and prior to DOC detention) following her subject grand larceny arrest of November 21, 2019.

The foregoing demonstrates that there are major variations between the claims of the three remaining plaintiffs, and plaintiffs make no showing whatsoever that their claims are typical of each other or putative class members. Their claims vary greatly and involve vastly different conduct by actors from NYPD and DOC (not to mention any role that the court system had as to these claims). The facts of the Phillips arrest on a bench warrant from 30 years ago are inherently unique. Wright was not held on a bench warrant at all, but rather an arrest warrant, despite the TAC and motion for class certification focusing only addressing bench warrants. Unlike Phillips, Wright was brought to court **twice**, on March 18 and 20, 2020 before DOC detention. The second time Wright was brought to court, it had to have been on the arrest warrant only. Thus, because Wright was held on an arrest warrant and was brought to court on the arrest warrant before DOC detention, he does not even meet plaintiffs' first unilaterally modified class definition. Also, when Wright was arrested on the arrest warrant on November 22, 2021, he indisputably did see a judge immediately. (Exs. H and I to Zuckerman Decl.) Thompson was heard on her outstanding bench warrants immediately upon her subject grand larceny arrest before DOC detention.

The three remaining plaintiffs' claims arise from separate and vastly different incidents, not the same course of conduct by defendants. Each of their incidents have major variations, and no showing is made that their claims are typical of putative class members. Class treatment would not be economical.

**D. Adequacy**

"'Adequacy has two components: First, class counsel must be qualified, experienced and generally able to conduct the litigation,' and [s]econd, the class members must not have interests that are antagonistic to one another.'" Azor-El, at *35 (quoting In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 291 (2d Cir. 1992)). Plaintiffs fail to meet this prong of Rule 23(a) as well.

Plaintiffs concede that the work that their counsel have done in the case bears on the adequacy of class counsel. As seen, Thompson was brought to court upon her subject grand larceny arrest of November 21, 2019, and at arraignment, the two outstanding bench warrants were addressed by the arraignment judge, yet she has not been dismissed from this case. Second, Wright was not detained on a bench warrant at all, but rather an arrest warrant, so he is not part of plaintiffs' proposed class either. Third, counsel are attempting to unilaterally expand their class definition without moving to amend the complaint.

As to Phillips's representation of the class, although plaintiffs argue that a *per diem* damage should be affixed for class members who were allegedly held too long, Phillips has unique claims for damages based on allegations that go well beyond a typical day of incarceration, i.e., the medical issues that he has raised. As to Wright, he is not a class member at all because he was held on an arrest warrant, and not a bench warrant, and was brought to court on the arrest warrant on two separate occasions before any DOC detention. (March 20, 2020 and November 22, 2021). Thus, Phillips and Wright have claims antagonistic to those of the putative class members. Adequacy has therefore not been met.

**E. Ascertainability**

"[T]he implied requirement of ascertainability dictates that 'a class must be 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular

individual is a member,' and must be 'defined by objective criteria that are administratively feasible,' such that 'identifying its members would not require a mini-hearing on the merits of each case.''" Azor-El, at *38 (citing de Lecour v. Colgate-Palmolive Co., 338 F.R.D. 324, 334 (S.D.N.Y. 2021) (quoting In re Petrobas Secs., supra, at 260) "The ascertainability doctrine that governs in this Circuit requires only that a class be defined by objective criteria that establish a membership with definite boundaries." Id., at 265.

Plaintiffs cannot meet their burden of demonstrating ascertainability as to their first unilaterally modified class definition, which attempts to include individuals arrested on bench warrants that City actors "did not bring to court for an appearance on the warrant before detention on the warrant." But such individuals cannot be readily identified and thus the proposed class is "truly indeterminable." See Stinson v. City of New York, 282 F.R.D. 360, 373-74 (S.D.N.Y. 2012). The reason for this is that in the event that an arrestee on a warrant is brought directly to Rikers Island, NYPD paperwork does not readily capture whether that individual was brought by an NYPD officer/detective to court prior to being transported to Rikers Island, as there is no such automated field in NYPD generated documents. (Koehler Decl., ¶2) Rather, to make such an individualized determination, one would have to review documents such as command log entries, officer memobook entries and/or officer BWC videos, in addition to interviewing the officers involved, to potentially make such a determination, if it is possible to do so at all. (Koehler Decl,, ¶2)

As to DOC, the "lists" prepared by Capt. Rigault did not set forth whether an individual had already been brought to court on the warrant listed nor was Capt. Rigault preparing the "lists" with the purpose of so identifying such individuals. (Rigault Decl., ¶4) Furthermore, the DOC spreadsheet does not track this information either, as it explicitly identifies an individual's first

court appearance only. There may have been prior court "refusals" of individuals produced. (Rigault dep., p. 61, ll. 4-14) And DOC is generally not made aware of whether individuals admitted to the facilities identified on the DOC spreadsheet were brought to a court prior to being transported to the DOC facility listed on the chart because any such events would precede DOC involvement with that individual. (Rigault Decl., ¶2)

As to plaintiffs' second unilaterally modified class definition, individuals who the City "otherwise failed to produce…to court for an appearance on the warrant 'without unnecessary delay' after detention," as seen in Point II(B), supra, determining whether an individual is a member of the class as defined would require individualized mini-hearings to ascertain the reasonableness of time periods held in each case, and there is no "definite boundary" to determine individuals falling into this definition (and the individual warrants upon which such class definition is dependent on to determine type of warrant or language are not even maintained by DOC in its computer systems; rather, as seen, would rather require a search of each putative class member's paper inmate file). Plaintiffs fail ascertainability.

**F. Rule 23(b)(2)**

Plaintiffs seek to certify a declaratory relief class pursuant to Rule 23(b)(2). Plaintiffs' motion fails for a number of reasons. First, the Second Circuit has made clear that the standard for Rule 23(b)(2) is not satisfied unless "a single injunction or declaratory judgment would provide relief to each member of the class." Berni v. Barilla, S.P.A., 964 F.3d 141, 146 (2d Cir. 2020) (quoting Walmart, 564 U.S. at 360). "Because of this requirement, Rule 23(b)(2) is 'most commonly relied upon by litigants seeking institutional reform in the form of injunctive relief.'" Azor-El, supra, at *39. Thus, "a class may not be certified under Rule 23(b)(2) if any class

member's injury is not remediable by the injunctive or declaratory relief sought." Hyland v. Navient Corp., 48 F.4th 110, 119 (2d Cir. 2022) (quoting Berni, 964 F.3d at 146).

For declaratory relief to lie, courts require an "actual controversy between the parties." In re REFCO Inc. Securities Litig.: Krys v. Aaron, 07-md-1902 (JSR), 08 Civ. 7416 (JSR), 2010 U.S. Dist. LEXIS 142588, at *41 (S.D.N.Y. July 19, 2010) (citing United States v. Doherty, 786 F.2d 491, 498-99 (2d Cir. 1986)). To warrant declaratory relief, "[t]here must be a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." ICOS Vision Systems Corp., N.V. v. Scanner Technologies Corp., 699 F. Supp. 2d 664, 667 (S.D.N.Y. 2010).

Plaintiffs have not demonstrated that either Phillips or Wright may seek, or any other putative class member for that matter, much less the entire class, would be entitled to declaratory relief. Based on the TAC, neither Phillips nor Wright has pled that they have an outstanding bench warrant at this time or are in custody on one. There is thus no actual controversy involving the named plaintiffs. While there theoretically could be putative class members in custody on a bench warrant, any putative class member who does not have an outstanding bench warrant nor is in custody on one presently would not, like Phillips or Wright, be entitled to declaratory relief. As such, the entirety of the putative class would not be entitled to declaratory relief, and plaintiffs' motion thus fails for this reason alone.

Second, in Walmart, supra, the Supreme Court held that Rule 23(b)(2) does not authorize class certification when each class member would be entitled to an individualized award of monetary damages and the monetary damage claims were not incidental to the claims for declaratory relief. Id. at 340, 360 (claims for monetary relief may not be certified under (b)(2) "at least where (as here) the monetary relief is not incidental to the injunctive or declaratory relief";

"back pay awards are not incidental"). In fact, it is long established that certification under Rule 23(b)(2) is appropriate only when the relief sought is exclusively or predominately injunctive or declaratory or otherwise equitable. Eisen v. Carlisle & Jacqueline, DeCoppet & Doremus, 391 F.2d 555, 564 (2d Cir. 1968).

Here, plaintiffs withdrew their claim for injunctive relief upon defendants' motion to dismiss. See Docket 199 (Green Decl., ¶8) ("Plaintiffs agree to withdraw their injunctive claims, among other reasons, because (among other things) it appears things have actually significantly improved in the last two years….This also means Plaintiffs are not seeking to certify an injunctive class."). So, given counsel's statement, the relief sought going forward is primarily monetary, and is not being driven by any proposed changes to the City's practices (or a declaration of unconstitutionality). And damages for time in custody is not incidental either, as there are intangible, subjective differences among putative class representatives and members, as exemplified by Phillips's medical issues complained of. Because plaintiffs' claims for monetary relief are not incidental to their claim for declaratory relief, plaintiffs' motion fails for this reason as well.

Third, "[d]eclaratory judgment, like an injunction, is a form of prospective relief that requires a plaintiff to show 'a sufficient likelihood that he…will again be wronged in a similar way.'" An v. City of New York, 230 F. Supp. 3d 224, 231 (S.D.N.Y. 2017) (quoting Marcavage v. The City of New York, 689 F.3d 98, 103 (2d Cir. 2012)). "A 'plaintiff seeking…declaratory relief cannot rely on past injury to satisfy [standing's] injury requirement but must show a likelihood that he or she will be injured in the future.'" De La Cruz v. City of New York, et. al., 24 Civ. 2289 (ALC), 2026 U.S. Dist. LEXIS 70482, at *30 (S.D.N.Y. Mar. 31, 2026) (quoting An, supra, at 232). Even in the class context, standing remains a "threshold question—antecedent to

class certification." Pub. Emps. Ret. Sys. v. Merrill Lynch & Co., 714 F. Supp. 2d 475, 480-481 (S.D.N.Y. 2010); see also Liberian Cmty. Ass'n of Conn. v. Lamont, 970 F.3d 174, 185 n.14 (2d Cir. 2020) ("Because we conclude that none of the named plaintiffs has standing to pursue their claims for prospective relief, the class … necessarily fails as well.").

Here, for the reasons discussed above, namely that neither Phillips nor Wright has pled an outstanding bench warrant at present nor that they are presently in custody on a bench warrant, they lack standing to seek declaratory relief and plaintiffs' motion fails for this reason as well.

**F. Rule 23(b)(3)**

**1. Predominance**

"The Rule 23(b)(3) predominance requirement 'tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation.'" Azor-El, supra, at *43 (internal quotation omitted). "The purpose of this requirement is to limit class certification to only those cases where it would 'achieve economies of time, effort, and expense, and to promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" Id. (quoting Mazzei v. Money Store, 829 F.3d 260, 272 (2d Cir. 2016)).

"The predominance inquiry is a core feature of the Rule 23(b)(3) class mechanism, and is not satisfied simply by showing that the class claims are framed by common harm suffered by potential plaintiffs." In re Petrobras Sec. Litig., supra, at 270. "Predominance is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" Roach v. T.L. Cannon Corp., 778 F.3d 401, 405 (2d Cir. 2015). The application of this test "begins, of course, with the

elements of the underlying cause of action." Erica P. John Fund, Inc. v. Halliburton Co., 563 U.S. 804, 809 (2011). "The Supreme Court has noted that the standard for Rule 23(b)(3) is considerably 'more demanding' than the commonality requirement of Rule 23(a)." Id. (quoting Comcast Corp. v. Behrend, 569 U.S. 27, 34 (2013)).

Here, issues requiring individual proof are significantly more substantial than issues requiring only general proof. As seen in Point II(b), supra, the reasonableness of any alleged delays that plaintiffs may claim is an essential element of liability. So, in order to determine liability of the City as to any putative class member's claim, it would be required to analyze certain documents in that individual's DOC inmate file such as warrants (Rigault dep., p. 96, l. 22-p. 98, l. 5), court date reports and movement logs (Rigault dep., p. 72, ll. 11-22), their underlying NYPD documents such as command logs, officer memobook entries and BWC (Koehler Decl,, ¶2), court records regarding closures and court part availability (Rigault dep., p. 65, l. 17-p. 66, l. 3), as well as to develop testimony of such individuals and the officers or DOC personnel involved. (Koehler Decl,, ¶2) The individualized proof required for each putative class member's claim, including demonstrating that an appropriate court part to hear the return of the warrant was available at a particular time, predominates over any generalized proof plaintiffs may point to.

On pp. 19-20 of their MOL, plaintiffs pose five questions that they contend supports their argument that generalized proof predominates. The first two questions pose an inquiry as to whether the City has an unofficial practice of not timely producing individuals arrested on bench warrants to court[8]. But the facts involving just the named plaintiffs in this case demonstrate that

[8] Plaintiffs' repeated assertion that the City has no mechanism for ensuring the timely return of individuals to court on warrants is completely untrue. DOC's IIS system does track when an individual needs to be produced to court. (Rigault dep., p. 50, ll. 16-20) Court Date Reports are prepared from the IIS system which identifies individuals who have court the next day. (Rigault dep., p. 53, l. 18-p. 54, l. 13)

this issue is sharply contested and that individualized proof will be required to demonstrate whether such a practice exists (and if so, when, over the seven year period posited by plaintiffs). As seen above, Wright was brought to court twice upon his subject narcotics arrest, on March 18 and 20, 2020, and the latter had to be on his open arrest warrant and before DOC detention. When he was arrested on the still open arrest warrant on November 22, 2021, he indisputably immediately was immediately brought to court before DOC detention. Thompson, upon her subject November 21, 2019 arrest, was immediately brought before an arraignment judge who addressed her two outstanding bench warrants before DOC detention as well. So, obviously, individualized proof will be necessary to resolve the unofficial custom or practice municipal liability issues raised by plaintiffs.

"'[T]he fact that damages may have to be ascertained on an individual basis is not [alone] sufficient to defeat class certification.'" Roach, supra, at 405. But it is still a "'factor that [courts] consider in deciding whether issues susceptible to generalized proof outweigh individual issues'" when deciding whether to certify a class as a whole. Id. Although plaintiffs in their desperate zeal to certify a class claim that a *per diem* damage can be affixed, no support is provided for the propriety of such assertion, and damage awards are not determined that way in individual cases in this District involving detentions that span multiple days. Plaintiffs' predominance argument fails.

**2. Superiority**

Rule 23(b)(3) also provides a non-exhaustive list of individual factors for the court to consider regarding superiority including: A) the class members' interest in individually controlling the prosecution or defense of separate actions; B) the extent and nature of any litigation concerning the controversy already begun by or against class members; C) the desirability or undesirability of

concentrating the litigation of claims in the particular forum; and D) the likely difficulties in managing a class action. "[M]anageability is by far the most critical in determining whether a class action is a superior means of adjudication." Sykes v. Mel S. Harris & Assoc., 780 F.3d 70, 82 (2d Cir. 2015).

Plaintiffs' arguments as to superiority fail. First, plaintiffs' argument on manageability is dependent on the notion that there are hundreds or more individuals "waiting" to see if a class is certified to determine whether to bring their own claims. (See Ps' MOL, p. 23) Plaintiffs of course provide no basis for this assertion, and the opposite appears true per plaintiffs' statement that there exists only one similar state court case. If there were putative class members lining up to bring such claims, there would be some evidence of it. There are no separate cases to worry about in terms of multiple claimants and resulting manageability issues. And cases alleging 24 hour detentions are routinely brought in this District in individual cases for, i.e., false arrest. So, this is not an instance either of putative class members not being able to assert their claims due to low damages and instead being dependent on a class mechanism.

Second, as seen, there are numerous individualized considerations here, including class membership, liability and damages. These create significant manageability concerns that should defeat class treatment. There is simply no evidence that a class action would be the superior way to proceed here.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for class certification should be denied in its entirety.

Dated: New York, New York
August 17, 2026

STEVEN BANKS
Corporation Counsel of the City of New York
*Attorney for Defendant City of New York*
100 Church Street
New York, New York 10007
(212) 356-3519

By: */s/ Mark D. Zuckerman*
Mark D. Zuckerman
*Senior Counsel*

**CERTIFICATE OF COMPLIANCE**

I, Mark Zuckerman, certify that the Reply Memorandum of Law in support of defendants' motion to dismiss contains approximately 10,475 words and complies with the Court's formatting rules. I have relied on the word count function of Microsoft Word to prepare this certification.

Dated: New York, New York
August 17, 2026

By: */s/ Mark D. Zuckerman*
Mark D. Zuckerman
*Senior Counsel*