UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

---

PAUL PHILLIPS, KHAORI WRIGHT, RANDY ROSARIO, AND KYLAYSIA THOMPSON, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,

Plaintiffs,

-against- Civil Action No.:

THE CITY OF NEW YORK, 21-cv-8149 (ALC)(SLC)

NEW YORK CITY POLICE DEPARTMENT ("NYPD") LT. JOHN PIRANDO, NYPD MEMBER GABRIEL MONTALVO; DEPARTMENT OF CORRECTIONS ("DOC") MEMBER EDWARD HORTON; DOC MEDICAL STAFF MEMBER KRYSTALBELLA MURNANE-VICTORELLI; DOC MEDICAL STAFF MEMBER DAVID ROSENBERG, M.D.; DOC MEDICAL STAFF MEMBER AUNG OO, M.D., DOC MEDICAL STAFF MEMBER JASDEEP MANGAT, M.D., et al.,

Defendants.

into a separate information field on IIS, right?

A Yes.

Q Is there any field for the without unnecessary delay or that type of information on IIS?

A No.

Q Do they upload the warrant itself to IIS?

A No.

Q Okay. So they take the warrant, they copy some information from it, not including the unreasonable delay provision, and that gets put into IIS; is that correct?

A Yes.

Q Okay. And then after that -- so in IIS, we have being tracked the person's name, a confirmed fact that the warrant goes with the individual, and some personal details like name, date of birth, NYSID number, and that sort of thing.

Does anything else -- does the warrant get entered or tracked anywhere else other than IIS?

MR. ZUCKERMAN: Object to form. Hello?

MX. GREEN: I -- yeah. I'm just waiting for an answer.

THE WITNESS: Repeat the question. I'm sorry.

BY MX. GREEN:

Q Handwritten. So does somebody -- so somebody handwrites -- or scratch that.

What part of the warrant is handwritten on the accompany card?

A The -- the docket or indictment number, the borough, and the -- the date that the warrant was -- was -- the date the individual came in on the warrant.

Q Okay. So again, this does not include any information about whether the warrant says to produce somebody without unreasonable delay?

A No.

Q Okay. So we've got IIS, we've got the accompany card. When somebody comes in, is there any other system that tracks the warrant?

A No.

Q Okay. So those two systems are it. So I think you said in the accompany card we get the date somebody came in. What systems exist to track when somebody needs to be produced to court?

A The -- the same system, the IIS.

Q The IIS. Okay. So how does IIS track when somebody needs to be produced to court?

MR. ZUCKERMAN: Object to form.

You can answer.

THE WITNESS: In the -- the initial input

screen of the -- of placing the warrant in the IIS, there's a -- there's a date field that the user will fill out that says next court date.

BY MX. GREEN:

Q Okay. But when we're talking about a bench warrant, people don't have a next court date, do they?

A The -- the next day for a bench warrant is normally the next business day for court. The next business day.

Q So somebody -- so somebody is having an intake with the OC and somebody's filling in on IIS.

What you're saying is the City's policy is that the officer filling in the IIS system is supposed to just put the next business day as the next court date on IIS?

MR. ZUCKERMAN: Object to form.

THE WITNESS: I'm not saying that.

BY MX. GREEN:

Q Okay. Then help me understand what you are saying. So I've been -- I'm asking -- or you said that the next business day is the court date and that the court date is filled in on IIS.

Is somebody supposed to put the next business day in IIS?

A Yes.

me close this exhibit.

Is that something that would be covered by the spreadsheet that is in Topic 1?

A Is that the spreadsheet?

Q Yes. It is.

THE WITNESS: Can you see it?

MR. ZUCKERMAN: Yeah.

MX. GREEN: And -- yeah. Feel free to scroll around here.

MR. ZUCKERMAN: So to answer your question, no.

MX. GREEN: No. Okay.

So we're going to call for production of this information as to all the class members. That seems like it would be pretty important information. Okay.

BY MX. GREEN:

Q So if everything's going right, somebody's come in on a warrant, and in IIS the next business day is entered as their next court date. How does IIS -- and this is not like a got-you question, this is me just trying to understand.

How does IIS make sure that somebody knows that, Hey, there's an appearance tomorrow, we need to bring somebody to that appearance?

A When the -- when the user inputs the -- the next court date, there's a report that's ran within the IIS, and it's called a -- a CDAT report.
Q Can you give us the acronym, like, what the letters are?
A So C -- C-D-A-T. So it stands for Court Date Report.
Q Got it.
A And it's a -- and it's a report that's generated from the IIS, and it pretty much -- pretty much lists individuals who have court or -- or who a user may have entered who may have court for -- for the next date.
Q Okay. And so is that generated in the -- well, scratch that.
Where is that generated? Like, what office or what person is that generated for?
A So each facility on Rikers run -- runs their own CDAT report. It's -- it's specified to the -- to the user of that facility.
Q Sure.
A And then from there, once that's -- that's ran and printed out, it's -- it's given to the various housing areas for individual to be produced for court.
Q Okay. And is that the same for other DOC

Q Okay. Not entirely as in not everybody on the CDAT report gets produced?

MR. ZUCKERMAN: Object to form.

THE WITNESS: Everyone who's on the CDAT report is listed for production. I can't tell you why they -- why everyone is not produced.

BY MX. GREEN:

Q Let's put why to the side for one second. So is it the case that people are often not produced when they are on a CDAT report?

MR. ZUCKERMAN: Object to form.

THE WITNESS: No.

BY MX. GREEN:

Q Okay. Is it the case that people are sometimes not produced when they are on a CDAT report?

A Yes.

MR. ZUCKERMAN: Object to form.

BY MX. GREEN:

Q Okay. And without talking about every possible reason why, do you know some reasons that might happen?

A Yes.

Q Okay. What -- can you give me some of those just as examples?

A Not medically fit for production, refusal of

production, and the -- the court no longer requires their appearance.

Q Okay. Is it sometimes the case that people are not produced because there isn't enough transportation capacity?

A No.

Q Okay. So what kinds of -- or how would DOC find out that a court no longer requires their appearance?

A The court -- the court part will -- will contact the facility the individual is in, stating that they no longer require their production.

Secondly, counsel will notify the facility that the production is no longer required. Those are the -- the two main reasons, as well as medically unfit.

Q Yeah. And when you say counsel, do you mean defense counsel, the prosecuting attorney, or both?

A A mixture of both.

Q Okay. So we are talking about people on warrants. So because there is not an appearance scheduled with the court, this one probably doesn't apply to people on bench warrants, right?

A Correct.

Q And likewise -- never mind. That addresses my question. Okay. So for people on bench warrants, is

something that I don't, which is fine. But I guess I'm asking, how would they know to input the next business day, right? How would they know that somebody hadn't been produced?

MR. ZUCKERMAN: Object to form.

THE WITNESS: They -- they would know that the person wasn't produced because the bench warrant wasn't -- wasn't converted into a securing order.

BY MX. GREEN:

Q Okay. And how would they know that, though?

MR. ZUCKERMAN: Object to form.

THE WITNESS: Because there was no securing order generated on the bench warrant.

BY MX. GREEN:

Q I guess what I'm trying to ask is, does this mean that somebody is going through every single inmate's file every single day to make sure -- to see if there's a new securing order?

Is there some alert the system generates when somebody's supposed to be produced? Is it something -- right. I'm trying to figure out how they know any of this, right?

Because they don't psychically know it. Like, they don't have a psychic connection to a judge and say,

Oh, yes, there was no securing order.

Physically, how do they find out?

MR. ZUCKERMAN: Object to form.

THE WITNESS: In -- in the case -- every scenario is different, Counsel. I'm sorry.

So if -- if the -- if the court declined production, then the officers in the general office would then, in a sense, place the individual for court for the next day if it's just a bench warrant.

So the alert was -- was the call from the courts.

BY MX. GREEN:

Q Right. But we just talked about how calls from the court are not something that happens for bench warrants, right?

A No. You -- you asked me reasons why they won't be produced to court.

Q Okay. So let me -- let me see if I can repeat back to you what you're saying and make sure I understand it.

Are we talking about somebody who DOC tries to produce the court -- to court, and the court says, No, no, we don't want this person?

MR. ZUCKERMAN: Object to form.

BY MX. GREEN:

Q Is that the example you're using?
A Is that the example you're asking me, Counsel? I'm sorry.
Q I -- okay. So you just testified -- give me one second -- that in some situations the court might decline the production.
So in that situation that you've described, is what's happening that that person is being brought to court and the court is saying, no. We're declining production of this person.
Is that what you're describing?
MR. ZUCKERMAN: Object to form.
THE WITNESS: In -- in -- in this scenario, yes.
BY MX. GREEN:
Q Okay. Okay. So in that situation, is the way that somebody would find out that this person didn't have a court date being brought back to DOC, that would get entered during intake into the IIS system?
A Repeat that, Counsel. I'm sorry. I'm trying to follow what your -- your frame of -- of --
Q So in this situation where somebody has been brought to court, court declines the person and they're brought back.
The fact that they were declined would be

entered into IIS when they get back to DOC, right?

A Well in this scenario, they -- they never left DOC because the court declined production.

Q Okay. So how would -- so somebody with a bench warrant, physically, how does the court decline production?

MR. ZUCKERMAN: Object to form.

You can answer.

THE WITNESS: The court would call the facility and state that maybe a particular court part is down. So individuals who are scheduled for that court part would then be taken off of production.

MX. GREEN: Okay.

THE PROCEEDINGS OFFICER: Counsel, did you want me to mark that last --

MX. GREEN: No. No. It's fine. We'll mark it later.

BY MX. GREEN:

Q So again, and maybe let's go back to Exhibit 3. So we're talking about a warrant here, or a bench warrant.

This bench warrant doesn't say any particular court part, does it?

A Can you show me what you're referring to?

Q Yeah.

A This -- this warrant does have a particular court part.
Q Okay. What is -- is that the AP17 then?
A That's -- that's correct.
Q Okay. So in some situations, you might get a call from AP17 saying AP17 is closed today; is that correct?
A That's correct.
Q Okay. And so in that situation, it's not that they're saying, We're canceling this specific appearance, but you might get a call saying AP17 is closed. And then when they get that call, they will enter that information into IIS.
Is that more or less correct?
MR. ZUCKERMAN: Object to form.
THE WITNESS: No. There's -- there's no field in our IIS to -- to input that. That part is down. The court part is down.
BY MX. GREEN:
Q Okay. But they would input the next business day as the next court date if IIS is down the day they initially put in?
A Yes.
Q Got it. So that kind of -- and this is what I'm trying to -- this is the kind of answer I'm trying

to get. Just so that -- I'm trying -- I'm not -- I -- again, I'm not trying to trap you with anything. I'm actually just trying to figure out how this works.

So that phone call will trigger somebody going through and updating IIS for everyone that the phone call applies to?

MR. ZUCKERMAN: Object to form.

THE WITNESS: In -- in this scenario, if the court part AP17 was to call the facility and state that we're down for today or we're not operational, all -- all defendants scheduled for production for this part will be put -- you know, placed over for the next date.

Then all those individuals scheduled for part AP17 would then be scheduled for the next business day by the user.

BY MX. GREEN:

Q And that's on the IIS -- or, yes. IIS system, right?

A And the -- and the IIS system is -- updated from if it was for production for 5/12 today, it will be updated for production for 5/13 tomorrow.

Q Okay. And so let's imagine for a second that was one of the days that Mr. Phillips was not produced, right?

Let's say that -- let's imagine for a second

that -- and I don't know if this is true -- one of the days he wasn't produced was because AP17 called and said, We're not open today.

Is -- where could I go to look to find out whether AP17 had been closed that day?

MR. ZUCKERMAN: Object to form.

You look now, Remy? Is that what you're asking?

BY MX. GREEN:

Q If I worked at -- if I worked for the City, where could I go to find out whether I -- whether AP17 had been closed on any of the relevant days?

MR. ZUCKERMAN: Object to form.

THE WITNESS: DOC wouldn't have that information.

BY MX. GREEN:

Q DOC would have that information. And where would --

A DOC wouldn't -- DOC --

MR. ZUCKERMAN: Wait a minute. You didn't hear him.

THE WITNESS: DOC would not have that information.

BY MX. GREEN:

Q DOC would not have that information. Okay.

So DOC doesn't track that. Does anyone track that at the City?

A I -- I don't know. I would say OCA.

Q Okay. So putting aside OCA, testifying on behalf of the City, are you prepared to say whether any city agency tracks that information?

MR. ZUCKERMAN: Object to form.

THE WITNESS: I -- I don't know any city -- city agency that tracks that information if the court part is down.

BY MX. GREEN:

Q Right. I'm not asking what you know. I think that's -- and correct me if I'm wrong, that sounded like you were saying you personally do not know; is that right?

A Yes.

Q Okay. So speaking on behalf of the City, the question I have is, are you prepared to answer whether the City tracks that kind of information anywhere?

MR. ZUCKERMAN: Object to form.

He can answer.

THE WITNESS: Yeah. I'm not prepared to -- to answer that question for any -- for all -- any -- any and all city agencies.

BY MX. GREEN:

Q Okay. Got it. But when DOC gets that kind of phone call, other than updating the IIS system, they don't write down or track anywhere whether there are closures of particular court parts as closures.

A No.

MR. ZUCKERMAN: Okay. I just need a two-minute men's room break, Remy.

MX. GREEN: Yeah. Of course. Do we want to take till 10:30 -- or, I'm sorry. Until 11:30?

MR. ZUCKERMAN: Sure.

MX. GREEN: Okay.

THE PROCEEDINGS OFFICER: We are off the record.

(Off the record.)

THE PROCEEDINGS OFFICER: We are on the record.

BY MX. GREEN:

Q Okay. So we were just -- sorry. Are we good?

A Yes.

Q Okay. So other than the court declining production, are you aware of any other reasons somebody might not be produced on a CDAT?

MR. ZUCKERMAN: Object to form.

THE WITNESS: Yes. Medically unfit.

BY MX. GREEN:

Q Medically unfit. Okay. Other than declining, medically unfit, or the person's refusal, are you aware of any other reasons somebody may not be produced?

MR. ZUCKERMAN: Object to form.

THE WITNESS: Yes. You know, extenuating circumstances. You know, sometimes vehicle accidents, sometimes, you know, weather issues.

You know, a lot of these -- a lot of these plaintiffs during this time of COVID pandemic, those could have been other reasons why people weren't produced.

MX. GREEN: Okay. So I'm going to share what -- sorry. I am sharing something else. Let me close this.

I'm going to share what I'll ask us to mark, I think, as Exhibit 4.

(Rigault Exhibit 4 marked for identification.)

BY MX. GREEN:

Q So Exhibit 4 we have here is the inmate movement history log for plaintiff Khaori Wright. As we can -- I'm sorry.

Let me just start with, do you recognize this exhibit?

A Yes.

Q Okay. And is this part of what you reviewed

as part of Mr. Wright's file?
A Yes.
Q Okay. And so is it fair to say this reflects that he was brought into DOC custody on March 20, 2020, and was eventually released on April 4, 2020?
A That's correct.
Q Okay. And that this also reflects that he was not brought to court at any point between March 20th and April 4th, correct?
A Yes.
Q Okay. So if I wanted to figure out why he was not brought to court, what documents would I have to look at?
A Why he wasn't brought to court? I mean, I can tell you during -- during this time was the -- it was the pandemic.
Q Okay. So was it the City's policy during the pandemic to not produce people to court on bench warrants?
MR. ZUCKERMAN: Object to form.
THE WITNESS: The -- the policy never changed. But if -- but there was no court to produce individuals to.
BY MX. GREEN:
Q Okay. Your testimony is that the court system

was completely closed between March 20th and April 4th?

MR. ZUCKERMAN: Object to form.

THE WITNESS: It was -- the court -- the court system was operating in a -- in a very limited capacity.

BY MX. GREEN:

Q Okay. So during this period of time, is it -- is it your testimony that some people were not produced to court because of capacity?

MR. ZUCKERMAN: Object to form.

THE WITNESS: Can -- can -- can you -- what do you -- what do you mean by capacity? Capacity by?

BY MX. GREEN:

Q Well, you said some -- you said that the court system was operating in a very limited capacity.

Is it your testimony that it was because of that limited capacity that some people who should have been produced to court were not produced to court?

MR. ZUCKERMAN: Object to form.

THE WITNESS: Yes.

BY MX. GREEN:

Q Okay. And if I wanted to find out if that is why Mr. Wright was not produced, what would I have to look at?

Q Okay. So the two documents we would look at would be this document and the CDAT; is that right?

MR. ZUCKERMAN: Object to form. Misstates prior testimony.

MX. GREEN: That's why I said, is it -- is that right. If he -- if it's not right, he can tell me that I've misunderstood.

THE WITNESS: Repeat your question, ma'am. I'm sorry, Counsel.

BY MX. GREEN:

Q No. No. All good. So if I'm trying to figure out why he was not produced, right? Whether it was because of the governor's mandate, whether it was because, because a specific issue in that part or something else, you said that I should look at some documents in his inmate folder.

When I asked what documents, I think I understood you to say the two documents you would look at are the inmate movement history log, and then we would need to also go get the CDAT for each of these days; is that correct?

A That's correct.

Q Okay. So we're going to call for production for the CDAT for all relevant days for all relevant plaintiffs. Let's look at Exhibit 4, though.

Is there anything in this -- in this exhibit that tells us why he was not produced to court in this period of time?

A No. Not in this exhibit. No.

Q Okay. So fair to say, if the City has this information, it's in the CDAT?

MR. ZUCKERMAN: Object to form.

THE WITNESS: Yes.

BY MX. GREEN:

Q Okay. Also fair to say that the City does not have any mechanism of tracking why somebody is not being produced to court?

MR. ZUCKERMAN: Object to form.

THE WITNESS: No. We do have.

BY MX. GREEN:

Q Okay. What mechanisms does the City have for tracking why somebody isn't produced to court?

A If -- if someone refuses, we have a refusal form as to why they weren't produced. And we have undelivered forms for individuals why they weren't produced if they were refused.

Q Okay. Would those be in the inmate file?

A They -- they can be. They should be.

Q They should be. Okay. Did you see any refusal or undelivered forms for any of the four

MX. GREEN: Let's please keep the speaking objections to a minimum.

THE WITNESS: How would -- do you -- repeat the question one more time? I'm sorry, Counsel.

BY MX. GREEN:

Q Of course. Let's say I wanted to look into whether a particular inmate had been brought to court to have a bench warrant cleared. How would I look into that?

MR. ZUCKERMAN: Object to form.

THE WITNESS: You -- you would have to go to OCA to find out when that warrant was vacated.

BY MX. GREEN:

Q Sure. But let's say I didn't know if the warrant had been vacated and that person was still in DOC custody.

How would we -- how would I go and look into what happened? And the answer might be, call OCA. I'm just trying to find out.

MR. ZUCKERMAN: Object to form.

Go ahead.

THE WITNESS: It's -- it's -- it's not -- it's not a -- it's not a -- it's not one way to answer that question. I'm sorry.

BY MX. GREEN:

Q Well, okay. Let me try to reframe. Let's say I'm aware of somebody who is in DOC custody, or let's say you were aware of somebody who is in DOC custody, and you don't know what -- right?

They were initially brought in on a bench warrant, and you don't know whether they were brought to the court at all, and if they were brought to the court, whether the court resolved the bench warrant.

How would you figure out -- like, what would you look at to figure out the answers to those questions?

MR. ZUCKERMAN: Object to form.

THE WITNESS: I would -- I would have to look at the MA folder, the -- I'm sorry. The person in custody folder, and in conjunction with the IIS system. And also --

BY MX. GREEN:

Q Okay. Sorry. Were you done?

MR. ZUCKERMAN: No. He's not done.

THE WITNESS: And -- and, I'm sorry. And -- and also in conjunction with the criminal inquiry system, OCA system.

BY MX. GREEN:

Q And does DOC have access to the criminal inquiry system, or is that something I'd have to go to

OCA to get?

A You have to go to OCA to get that.

Q Okay. So the only things in the City's custody would be the folders that we've been discussing extensively and the IIS system that we've been discussing extensively.

A That's correct, Counsel.

MX. GREEN: Okay. Great. The other piece of cleanup, and let me just bring up another exhibit. Let's mark this, I think we're at 5.

(Rigault Exhibit 5 marked for identification.)

BY MX. GREEN:

Q Okay. I'm going to try to fix the orientation for everybody. Take a moment to review, but my first question is going to be, do you recognize this?

A I'm sorry, Counsel. I'm not -- I'm not familiar with this -- this documentation.

Q Okay. Is this document not part of the folder that you were discussing?

A No. I don't recall this.

Q Okay. This isn't -- I'll represent to you that this is an NYPD document. And I'd like to bring us to the bottom of the last page, and I'll quickly do an annotation to bring us all to the same thing that we're looking at.

Do you see where it says: Will be returned in the morning for a Supreme Court warrant?

MR. ZUCKERMAN: Or part of ours cut -- oh. There we go. Okay. There we go.

Can you read it? (Indiscernible - simultaneous speech) bigger?

THE WITNESS: Yeah. Yeah. "Defendant removed to Brookdale Hospital for jaw pain by Police Officer Levy and PO Brandes. Will be returned in the morning for a Supreme Court warrant."

BY MX. GREEN:

Q Do you see that?

A Yes. I see it, Counsel.

Q Okay. So this is information that the NYPD had when they were bringing -- when they were transporting Plaintiff Khaori Wright.

Is there any way in which this information would make it into DOCCS systems?

MR. ZUCKERMAN: DOC systems?

MX. GREEN: Yes. I'm sorry. Not DOCCS. You're right, DOC.

THE WITNESS: No.

MX. GREEN: No. Okay. All right. Then let's go dig into Topics 1 and 2. Let me just get my copy of the topics in front of me. Okay. So I'm going

Q Okay. And if it says yes, criminal warrant or Supreme Court warrant, that means that they were in on a bench warrant?

A Well, no. Because there's criminal bench, there's criminal arrest, there's Supreme Court -- Supreme Court bench and Supreme Court arrest.

Q Got it.

A And this -- this doesn't differentiate between the four that I just listed.

Q Got it. So without this -- or, moving beyond this spreadsheet. So we've got a bunch of people in here, who are in on either a criminal warrant or a Supreme Court warrant.

How would I go about, with full access to all of the City's documents, if I had that, how would I go about figuring out whether somebody was in on a -- if it says "yes" for Supreme Court warrant, let's say, a Supreme Court arrest warrant or a Supreme Court bench warrant?

A How would I go about identifying -- can you repeat that? I'm sorry.

Q How would I go about figuring out for the people it says "yes" for under Supreme Court warrant, which ones are bench warrants, and which ones are arrest warrants?

A Just -- just looking at this graph?
Q Or any other information that the City has access to?
A I would have to look at the individual's folder.
Q Okay. What would you look at in the individual's folder?
A I would look at -- so in -- in this case, if it says "yes" for Supreme Court warrant, I would review their folder and see what type of Supreme Court warrant it was.
Q Okay. So you would look at the warrant itself?
A Yes.
Q Okay. Is the type of warrant tracked anywhere in IIS?
A The type of warrant? No.
Q No. Okay. So the City does not track the type of warrant?
MR. ZUCKERMAN: Object to form.
BY MX. GREEN:
Q Sorry. So this -- in IIS, the City does not track the type of warrant?
A Just criminal and Supreme Court in regards to the -- the warrants we're talking about. Not the

subsections of the warrants.

Q I'm sorry. You're right. They track what court it's from, but not whether it is arrest or bench; is that right?

A Correct.

Q Okay. Do you have a rough sense about, you know -- you know, is it 50/50 bench/arrest? Is it 99 percent arrest, 1 percent bench?

A I can't --

Q Pardon?

MR. ZUCKERMAN: No. Go ahead.

THE WITNESS: Oh.

MR. ZUCKERMAN: Go ahead.

THE WITNESS: I can't answer that definitively.

BY MX. GREEN:

Q Yeah. I'm not asking for a definitive answer. Do you have any sense at all, right?

A No.

Q You have no sense at all?

A Not if it's 50/50, 90/10. I -- no.

Q Okay. Would it -- so we have 2000 items in this -- in this spreadsheet, right?

A You're asking me? Oh. I'm sorry.

Q Well, you reviewed the spreadsheet.

brought to court.

If this column is blank, does that mean that they're on -- they're on a bench warrant, or is there some other reason this might be blank?

A It could be other reasons why it's blank.

Q Okay. What other reasons would those be?

A Again, for this -- this time period, the -- there was no court -- there was no court to produce them to.

Q Right. I understand that your testimony is that sometimes there is no court to produce them to. But how do they get to DOC in the first place?

A They're brought into DOC custody by the law enforcement agencies that are -- that are listed earlier in my testimony. NYPD --

Q Right. And so --

MR. ZUCKERMAN: Let him finish. Let him finish.

MX. GREEN: Calm down, Mark.

MR. ZUCKERMAN: Okay.

THE WITNESS: They'll be brought into custody based on what I first stated in my testimony of the law enforcement agencies, NYPD, parole, troopers.

Sometimes Marshals, other officers of peace officer status, Port Authority, MTA, all these --

all these other -- a lot of enforcement agencies can bring individuals directly into DOC custody on warrants.

BY MX. GREEN:

Q Right. So people come into DOC custody on warrants, but when they're not on warrants, they're either stored at a precinct or stored at the courthouse before they're charged, right?

A I -- I can't attest to how the other agencies detain their individuals prior to court production.

Q I'm not asking -- well, you are here on behalf of the City, so you're supposed to be prepared to answer about all city agencies.

Is it fair to say you're not prepared to testify about the meaning of this data outside of DOCCS?

A Yes.

Q Okay. So putting aside what the data might mean outside of DOCCS -- or, not DOCCS. I'm sorry. DOC.

For DOC, is there a situation in which somebody comes into DOC custody where they don't have a warrant, and they also have not been arraigned?

MR. ZUCKERMAN: Object to form.

THE WITNESS: No -- no one would -- would come into DOC custody without an accusatory instrument.

BY MX. GREEN:

question.

THE WITNESS: We do track why we have individuals in custody.

BY MX. GREEN:

Q Okay. So if it's being tracked, why can't I rely on the fact that there's no "yes" in the criminal court warrant column?

MR. ZUCKERMAN: Object to form.

THE WITNESS: Individual could be held on other accusatory instruments.

BY MX. GREEN:

Q I understand that. What I'm asking about is purely the criminal court. If there is no "yes" in the criminal court warrant column, that person is not being held on a criminal court warrant, correct?

MR. ZUCKERMAN: Object to form.

THE WITNESS: Not -- that's not entirely true, ma'am.

BY MX. GREEN:

Q Okay. So why wouldn't that be there?

A For these blanks that we're talking about right now?

Q Yes.

A Because the -- the -- you also have the Supreme Court that's marked as yes.

A That's correct.
Q Okay. So describe for me what this information is?
A I got to zoom in. I'm sorry.
Q No, please. And you should be able to do that.
A Yeah. I'm doing it on my end. Okay. Your question again, Counsel?
Q Okay. Can you just describe what information this is that you've generated here?
A So the information I generated in this particular document, I noted -- noted Kings County. It's a listing consisting of columns; book and case, NYSID, first and last name, facility, housing area, the particular warrant associated with an individual, the hearing borough, and the admit date.
So this list was generated by me specifically identifying individuals who had warrants out of Kings County, and I utilized the IIS as the primary tool to export that information from.
Q Okay. And the people who are listed in each of these, these are people who are still in DOC custody?
A As of -- as of today?
Q As of the date --
A I don't know.

MR. ZUCKERMAN: Object to form.

THE WITNESS: I have no reason to believe that.

BY MX. GREEN:

Q Okay. So assuming that those city employees did their job correctly -- and we can discuss whether they did or not later, but assume they did do their job correctly.

In this list, if somebody was being held on a criminal court warrant, we should have the criminal court warrant number here, correct?

A Yes.

Q Okay. And if somebody was being held on a Supreme Court warrant, we should have the Supreme Court warrant number here, correct?

A Yes.

Q And as you sit here representing the City today, you have no reason to think that the information that other city employees gave you personally was wrong, correct?

A Correct.

Q Okay. Great. So of these people, we know whether they're in on a Supreme Court or a criminal court warrant, and they are in on at least one because they're here at all, right?

A No. They could be held on other -- other -- they -- they could be held on other accusatory instruments.
Q I understand that hypothetically they could also be held on other accusatory instruments, but because they're here, one of the reasons they are being held is the listed warrant, correct?
A Yes.
Q Okay. So you reviewed the -- or, I'm sorry. In discussing these with the other city employees, did you discuss whether they were being held for other reasons other than the warrant?
A Not all the time.
Q Okay. Is that a question that you asked them?
MR. ZUCKERMAN: Object to form.
THE WITNESS: The -- that's not a question I -- I would need to ask them all the time because there are other notations in the IIS that show that -- why they also in custody besides the warrants.
BY MX. GREEN:
Q Okay. Did you review those other notations?
A I'm sorry? Did I review?
Q Those other notations in IIS?
A Yes.
Q And so you felt that those notations in IIS

right? There are a few thousand people in these lists.

A I don't recall the exact amount of individuals, but --

Q It's at least a few hundred.

A -- over the course, I mean, I ran that list about two years.

Q Yeah.

A So -- and there are some duplicates as well.

Q Sure. There are some duplicates. I'm just asking, is it fair to say that it is at least 500 people across the entire two years you ran this list?

MR. ZUCKERMAN: Object to form.

THE WITNESS: I -- I can't give a definitive answer. I'd have to count it.

BY MX. GREEN:

Q It's more than one, right?

A It's more than one.

Q It's more than 20?

A More than 20.

Q More than 100?

A I can't -- I can't answer that definitively.

Q I mean, we're talking about -- this document alone that we're looking at. This is 12 pages, and it looks like there are at least 20 people on this page, on this first page. So 12 times 20 --

instruments.

Q Okay. Is there a reason you stopped specifying that they were being held on only warrants?

A If I stopped specifying it back then because those warrants were either vacated, so then I just kind of, I prioritized those -- individuals first. And then I started kind of like prioritizing individuals afterwards who had low bails or a -- or a nominal bail.

So they would -- I didn't have those -- I didn't have that notation needed anymore.

Q Well, these are people on outstanding warrants, so they wouldn't have bail, would they?

A They can have bail on other -- other cases on -- in other counties.

Q Okay. Right. But the purpose of this sheet that you produced is to -- is to produce people to court on warrants, correct?

MR. ZUCKERMAN: Object to form.

THE WITNESS: The -- the purpose of this was to -- was a tool to help OCA as well as DOC to restart after the pandemic to get individuals produced to court after they've been down.

BY MX. GREEN:

Q On -- per the subject line, outstanding warrants, correct?