UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

---

PAUL PHILLIPS, KHAORI WRIGHT, RANDY ROSARIO, AND KYLAYSIA THOMPSON, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,

Plaintiffs,

-against- Civil Action No.:

THE CITY OF NEW YORK, 21-cv-8149 (ALC)(SLC)
NEW YORK CITY POLICE DEPARTMENT ("NYPD") LT. JOHN PIRANDO, NYPD MEMBER GABRIEL MONTALVO; DEPARTMENT OF CORRECTIONS ("DOC") MEMBER EDWARD HORTON; DOC MEDICAL STAFF MEMBER KRYSTALBELLA MURNANE-VICTORELLI; DOC MEDICAL STAFF MEMBER DAVID ROSENBERG, M.D.; DOC MEDICAL STAFF MEMBER AUNG OO, M.D., DOC MEDICAL STAFF MEMBER JASDEEP MANGAT, M.D., et al.,

Defendants.



---

30(b)(6) DEPOSITION

---

WITNESS: JAMAL RIGAULT, as corporate witness of the City of New York
DATE: Tuesday, May 12, 2026
START TIME: 10:01 a.m., ET
END TIME: 2:06 p.m., ET
REMOTE LOCATION: Remote Legal platform
PROCEEDINGS OFFICER: Stephanie Webster, CER-3580
JOB NO.: 49468



A P P E A R A N C E S

COHEN & GREEN, PLLC
1639 Centre Street
Suite 216
Ridgewood, New York 11385
By: J. REMY GREEN, ESQUIRE
remy@femmelaw.com
Appearing for Plaintiffs

NYC LAW DEPARTMENT
100 Church Street
New York, New York 10007
By: MARK D. ZUCKERMAN, ESQUIRE
mzuckerm@law.nyc.gov
Appearing for Defendants



I N D E X O F T E S T I M O N Y


EXAMINATION OF JAMAL RIGAULT: PAGE
By Mx. Green 11
By Mr. Zuckerman 174
By Mx. Green 175

INDEX OF EXHIBITS

(available for download)


| EXHIBIT | DESCRIPTION | PAGE |
|---|---|---|
| 1 | Subjects of Deposition | 19 |
| 2 | DOC List Kings County | 27 |
| 3 | Bench Warrant | 36 |
| 4 | Inmate Movement History | 68 |
| 5 | NYPD Document | 86 |
| 6 | DOC IT Spreadsheet | 88 |
| 7 | DOC List Queens County | 134 |
| 8 | DOC List Bronx | 145 |
| 9 | DOC List New York County | 148 |
| 10 | Email Chain | 154 |




INDEX OF REQUESTS


| DESCRIPTION | PAGE | LINE |
|---|---|---|
| Request for production of any folders not produced like a warrant, a discharge checklist, relevant paperwork. | 30 | 2 |
| Request for production of the information as to all the class members. | 53 | 12 |
| Request for production of all the CDAT for all relevant days for all relevant plaintiffs. | 72 | 22 |
| Request for production of the spreadsheet that includes all pertinent parameters. | 116 | 24 |




FEDERAL STIPULATIONS

IT IS HEREBY STIPULATED AND AGREED by and between the attorneys for the respective parties that the presence of the Referee be waived;

IT IS FURTHER STIPULATED AND AGREED that all objections, except as to form, are reserved until the time of trial;

IT IS FURTHER STIPULATED AND AGREED that this deposition may be utilized for all purposes as provided by the Federal Rules of Civil Procedure;

AND FURTHER STIPULATED AND AGREED that all rights provided to all parties by the Federal Rules of Civil Procedure shall not be deemed waived and the appropriate sections of the Federal Rules of Civil Procedure shall be controlling with respect thereto.



FEDERAL REMOTE STIPULATIONS

IT IS HEREBY STIPULATED, by and between the attorneys of record for all parties to the above-entitled action, that:

Pursuant to Rule 30(b)(4) of the Federal Rules of Civil Procedure, this deposition will be conducted by remote videoconference with the oath being administered remotely and a court reporter creating an accurate written record; that, if necessary, the parties agree that each witness can be identified with picture identification;

No attorney, nor any party or witness, shall capture any still photographs, nor record, by video or audio, any part of these deposition proceedings;

Each attorney agrees to instruct their witness that there is to be no communication with anyone outside of the identified and participating group, by chat, text, email, or other means during the deposition;

There shall be no other person in the room with the witness during their deposition;

Any phone or electronic device in the room with a witness shall be identified and not read, referred to, or otherwise used during the witness' deposition, unless agreed to by all counsel on record.

P R O C E E D I N G S

THE PROCEEDINGS OFFICER: Good morning. We are now on the record. Today's date is Tuesday, May 12, 2026, and the time is approximately 10:01 a.m., Eastern Time.

My name is Stephanie Webster, and I'm the officer designated by Remote Legal, 11 Broadway, Suite 468, New York, New York, to take the record of this proceeding.

This is the deposition of Jamal Rigault, taken in the matter of Paul Phillips, et al., versus the City of New York, et al., Civil Action Number 21-CV-8149 (ALC) (SLC), filed in the United States District Court for the Southern District of New York.

Would all counsel please identify themselves for the record and state who they represent starting with the noticing attorney.

MX. GREEN: Good morning. This is Remy Green, and I should appear in any transcript as Mx. Green, spelled M-X period, rather than Mr. and Ms., or Mr. or Ms., from Cohen & Green, PLLC. I'm here on behalf of Plaintiffs.

MR. ZUCKERMAN: Mark Zuckerman, Office of the Corporation Counsel, appearing for Defendants.

THE PROCEEDINGS OFFICER: Thank you.



This deposition is being taken remotely on behalf of the plaintiff and is being conducted pursuant to the procedural rules and laws governing this matter.

As such, all parties agree to this means of capturing the official record, which may include recording by audio, audiovisual, and/or stenographic means, and agree not to oppose admissibility of the testimony in this proceeding on the basis of the personnel or method by which the testimony was captured.

Further, all parties agree that the proceedings officer or person administering the oath may be authorized to administer the oath under the rules where they reside.

Do the parties so stipulate?

MX. GREEN: We do.

MR. ZUCKERMAN: Yes.

THE PROCEEDINGS OFFICER: Thank you.

I will now swear in the witness.

Sir, if I could please have you state and spell your name for the record.

CAPTAIN RIGAULT: Good morning. My name is Jamal Rigault, J-A-M-A-L, last name R-I-G-A-U-L-T.

THE PROCEEDINGS OFFICER: Thank you. And can I please have you raise your right hand.



Do you swear or affirm that the testimony you shall give in today's proceeding will be the truth, the whole truth, and nothing but the truth?

CAPTAIN RIGAULT: Yes.

WHEREUPON,

J A M A L R I G A U L T ,

having been called as a witness, being duly sworn by the notary public present, testified as follows:

THE PROCEEDINGS OFFICER: Thank you. You can drop your hand.

Counsel, the witness is sworn.

MX. GREEN: Thank you, Ms. Webster.

EXAMINATION

BY MX. GREEN:

Q Before we get started, I just want to be clear, and we'll talk a bit more about what this means in a moment.

Ms. Webster said that this was the deposition of Captain Rigault. This is, in fact, the deposition of the City of New York through Captain Rigault under Rule 30(b)(6).

Captain Rigault, am I saying that correctly?

**A Yes. Yes, Counsel. Thank you.**

Q Great. So I pronounce the T?

**A Yes.**



Q So I am sure at your rank and with the amount of experience you've had, you've had your deposition taken before.

I'm going to give you some things that are probably very similar to what you've heard in the past. I'd ask that you just kind of follow along with me and do it the way that we discuss today.

So on a basic level, to help Ms. Webster, I'm going to ask that you wait for me to finish any questions, you answer verbally rather than shaking your head or saying mm-hmm or mm-mm.

Does that make sense?

MR. ZUCKERMAN: Remy, he's never been deposed before, so.

MX. GREEN: Oh. He hasn't? Okay.

BY MX. GREEN:

Q Then scratch all of that.

Let's go over how to do this. So like I said, is it okay for me to ask you to wait for me to finish questions before you answer, and I'll try to wait for you to answer before I ask the next question?

Does that make sense?

**A Yes, Counsel. Thank you.**

Q Likewise, I'd like to ask you to answer your - - answer any questions verbally. So no nodding your

head, no shaking your head, no mm-hmm, no mm-mm.
Does that make sense?
**A Yes, Counsel.**
Q At no point today am I going to ask you to disclose the content of your discussions with any attorney that represents you.
So if you think my question is getting at that, please feel free to clarify, but please do not state anything that is the contents of your conversations with your counsel.
Does that make sense?
**A Yes.**
Q Okay. If you don't understand a question, will you tell me?
**A Yes.**
Q Okay. If you don't hear a question, will you tell me?
**A Yes.**
Q Okay. If my question is unclear in any way, will you tell me?
**A Yes.**
Q If you don't know the answer to my question, will you please say so?
**A Yes.**
Q If there's something that might help you



remember the answer to my questions, will you tell me?
**A Yes.**
Q Okay. Is there any reason you can't testify truthfully and accurately here today?
**A No.**
Q Have you had any alcohol within the last 24 hours, more than one drink?
**A No.**
Q Have you taken any nonprescription drugs within the last 24 hours?
**A No.**
Q Are there any prescription drugs, without telling me what they are, that you would need to take to be sure to be able to testify fully and accurately that you have not taken?
**A No.**
Q Okay. Are you aware of any physical condition that would affect your ability to testify truthfully and accurately here today?
**A No.**
Q Are you aware of any mental condition that would affect your ability to testify truthfully and accurately here today?
**A No.**
Q Are you taking any medications that would



affect your ability to testify truthfully and accurately here today?
**A No.**
Q Okay. And then to put a button on that, can you think of any other reason why you cannot testify truthfully and accurately here today?
**A No.**
Q I just want to make sure, are you aware that you are under oath today the same as it would be if we were physically in a courtroom and that the oath to tell the truth that you've just taken is the same as it would be in, you know, a formal courtroom?
**A Yes.**
Q Do you understand that you may review the transcript that will be generated by the court reporter and you may correct any error you find in the transcript?
**A Yes.**
Q Okay. And do you understand that if you make any such changes, we'll be able to potentially comment on those changes at trial?
**A Yes.**
Q Okay. If I ask you a question and you know the answer because your recollection was refreshed recently by a document or recording, will you tell me



the answer and also tell me what document refreshed your recollection?
**A Yes.**
Q Okay. As the deposition is going along, if you start thinking back to something you said earlier and you realize you made a mistake, you weren't clear, or you just remembered something you'd forgotten or any other reason, just tell me.
And even if we've moved on, I'll come back and let you answer the question and clarify the first earlier question.
Does that make sense?
**A Yes.**
Q Great. So now let's talk about what a 30(b)(6) deposition is.
When I refer to you in this deposition and I ask you questions, unless I've said otherwise, I'm specifically not asking for your individual memory. I'm referring to you in your capacity as a representative of the City of New York.
Do you understand that?
**A Yes.**
Q Okay. For example, when I ask if you know or believe something, I am asking you to testify concerning what the City of New York knows or believes unless I say

Page 17

explicitly otherwise.
Does that make sense?
A Yes.
Q And if at any time the use of the word "you" or the way I refer to you in questions is confusing to you, please just let me know; is that okay?
A Yes.
Q Please also note if I'm using the word "document" or something similar, I mean any kind of recorded information, whether it's paper, electronic, images, tweets, whatever, what have you, unless I explicitly say I'm talking about physical paper documents or something like that.
Does that make sense?
A Yes.
Q Okay. So kind of digging into this, you are here to testify on behalf of the City, or on behalf of the defendant, City of New York; is that correct?
A Yes.
Q Your answers here will be sworn answers made on behalf of the City of New York, correct?
A Yes.
Q Your answers in this deposition will be binding on the City of New York in the same way that any witness testifying on their own behalf would be bound by

Page 18

their own answers, correct?
MR. ZUCKERMAN: Object to form.
You can answer, if you understand.
THE WITNESS: Yes.
BY MX. GREEN:
Q Okay. Do you agree with me that as a corporate witness representing the defendant City of New York in this deposition, you are under a duty to inform yourself as to the designated subject matter of the deposition?
A Can you repeat the question?
Q Do you agree with me that as a witness representing the City of New York in this deposition, you are under a duty to inform yourself as --
MR. ZUCKERMAN: Take your -- turn it off.
THE WITNESS: I'm sorry, Counsel. One minute. Let me just put my phone on silent. My apologies.
BY MX. GREEN:
Q Oh. Of course, yes. That should have been in my instructions.
A To answer your question, yes.
Q Great. Do you believe you have fulfilled that obligation in your -- in your preparation?
A Yes.

Page 19

Q Okay. We'll go more precisely in a moment, but speaking generally, what do you understand the subject matter of this deposition to be?
MR. ZUCKERMAN: Object to form.
THE WITNESS: I understand -- I understand the subject matter of this deposition to -- to -- the plaintiffs stating that they were held in custody without being produced to court in a timely fashion.
BY MX. GREEN:
Q Okay. And is there anything particular about that subject matter that you understand the deposition to be about?
A Anything in particular?
Q Is there anything in particular about that subject that you understand this deposition to be about?
A Yes.
Q Okay. And what is that?
A That there are individuals claiming that they were not produced to court in a timely fashion by DOC.
MX. GREEN: Okay. You know what? Let me do this this way. I'm going to share -- let's mark as Exhibit 1 for the purpose of this deposition, so Rigault Exhibit 1.
(Rigault Exhibit 1 marked for identification.)

Page 20

MX. GREEN: And can everybody see this?
MR. ZUCKERMAN: Yes. But it's up to halfway down. Maybe we can move it down. I don't know.
MX. GREEN: Yeah. You guys can control on your end unless I hit the button "Bring All To Me" and then I -- then I control it.
MR. ZUCKERMAN: Okay.
MX. GREEN: Okay.
MR. ZUCKERMAN: Do you want him -- wait a minute. Do you want him to look at it?
MX. GREEN: Yes.
MR. ZUCKERMAN: Okay. Why don't you read through it. Tell me when you want me to scroll down.
THE WITNESS: Yeah.
BY MX. GREEN:
Q Okay. Captain Rigault, do you -- do you recognize this document?
A Yes.
Q Okay. And what is this document?
A The document, it's -- it's pretty much the -- the proposal of -- of the deposition.
Q Right. So fair to say that these are the subjects that this deposition is about?
A Yes.
Q And so in Topic 1, you're prepared to testify

Page 21

about the meaning and sources and background of various data in a particular spreadsheet, correct?

**A Of this -- of the specific spreadsheet that's listed? Yes.**

Q Yes. Likewise, you are prepared to talk about the background and meaning of various data contained in certain lists, and that's Topic 2, correct?

**A Yes.**

Q And then third, you're prepared to testify more generally about the City's procedures when handling people brought to jail on warrants, correct?

**A Yes.**

Q Okay. Great. Let me close this for now. So we're closing Rigault Exhibit 1.

So zooming out to preparation, did you prepare in any way for this deposition?

**A Yes.**

Q When did you start preparing?

**A More or less March.**

Q In March. Okay. So about two months ago; is that fair?

**A Yes.**

Q Okay. Did you communicate with any attorneys in preparation for this deposition? And just a yes or no.

Page 22

**A Yes.**

Q Okay. Who were those attorneys?

**A Mr. Zuckerman, as well as DOC Legal, Mr. --**

Q Okay. Do you know the name -- I'm sorry. I didn't let you finish. Please finish.

**A DOC Legal Gajtani Antonin, and DOC Legal, Joshua Levin.**

Q Okay. And can I ask you to spell that first name?

MR. ZUCKERMAN: You want me to do it, Remy?

MX. GREEN: Sure. That's fine.

MR. ZUCKERMAN: G-A-J-T-A-N-I, Antonin Gajtani.

MX. GREEN: Antonin Gajtani. Okay. And Joshua Levy, is that L-E-V-Y?

MR. ZUCKERMAN: Levin. Levin. Levin.

MX. GREEN: Levin. Okay. Is that L-E-V-I-N?

MR. ZUCKERMAN: Yes.

BY MX. GREEN:

Q Okay. Do you know in what capacity you were discussing with the two DOC lawyers? Were they acting as your lawyers?

MR. ZUCKERMAN: Object to form.

Page 23

If you know.

THE WITNESS: Yes.

BY MX. GREEN:

Q Okay. They were acting as your personal lawyers?

**A No.**

Q Okay. Were they acting as -- you know, that's fine. So covering those conversations with the three lawyers you listed, can you give me when any of those conversations took place?

**A I can't specifically tell you when it started.**

Q Understood. Let me -- let me ask another way.

About how many times did you have conversations with any of those three lawyers?

MR. ZUCKERMAN: About this deposition? Wait a minute. About this deposition?

MX. GREEN: Well, if he's confused by the question, he can tell me he's confused by it. If you want to object to form.

MR. ZUCKERMAN: Object to -- object to form.

Go ahead.

BY MX. GREEN:

Q Okay. And then I -- since you started preparing for this deposition in March, about how many

Page 24

times have you spoken to any of those three lawyers?

**A About 3 to 4 times.**

Q Three to four times. Okay. About how long -- so let's just go -- about how long was the first discussion that you can remember? Or, you know what? Strike that.

Can you give me about how long in total you have -- you spent speaking with those three lawyers?

MR. ZUCKERMAN: Object to form.

THE WITNESS: An hour.

BY MX. GREEN:

Q An hour total across four meetings?

MR. ZUCKERMAN: He didn't say that.

MX. GREEN: Mr. Zuckerman, if you -- if you -- if you'd like to object to form, you can.

MR. ZUCKERMAN: But you're misstating his testimony. You didn't hear him.

MX. GREEN: Mr. Zuckerman, if you'd like to object to form, please. Let's not have speaking objections.

So --

THE WITNESS: Can I answer?

MX. GREEN: Yes, please.

THE WITNESS: About an hour each session.

BY MX. GREEN:

Page 25

Q Each. Okay. I'm sorry. If you'd said that initially, it was swallowed by the audio. And I apologize then if I was confused. Okay.
To prepare for this deposition, have you looked at any documents or video?
**A I looked at documents.**
Q Okay. And what documents have you looked at?
**A I looked at the spreadsheet and the -- the files for the -- of the four plaintiffs.**
Q Okay. Other than the spreadsheet and the files for the four plaintiffs, did you look at any other documents?
THE PROCEEDINGS OFFICER: Counsel, can I interject?
MX. GREEN: Please.
THE PROCEEDINGS OFFICER: I apologize. My speakers just went. I'm not able to hear anything. Can we go off the record for just a brief moment so I can fix it?
MX. GREEN: Sure.
THE PROCEEDINGS OFFICER: We are off the record.
(Off the record.)
THE PROCEEDINGS OFFICER: We are on the record.

Page 26

BY MX. GREEN:
Q Okay. So you just testified that you'd reviewed to prepare for this deposition the spreadsheet, and that's the one that is specified in Topic 1, the files for the four plaintiffs.
And my question was, are those -- other than those two categories of documents, have you reviewed any other documents to prepare for this deposition?
**A Yes.**
Q Okay. What other documents have you reviewed?
**A The first exhibit.**
Q Got it. Yeah. Anything else?
**A I can't remember the actual acronym, but the TAC.**
Q What are the letters?
**A T-A-C.**
Q T-A-C. I see. The Third Amended Complaint.
**A Correct.**
Q Okay. Anything else other than that?
**A No.**
Q Did you review the lists that we discussed in Topic 2?
**A Can you show me again, please?**
Q Absolutely. We're going to pull back up what's been marked as Exhibit 1. Share with all.

Page 27

Sorry.
And then let me -- do you see Topic 2 where it says: (the "Lists")?
**A Counsel, can you show me the lists? I can't remember what's the correlation.**
Q Understood. Of course.
**A I'm sorry.**
MX. GREEN: Give me one second. Let's mark -- I'll bring up what I can -- what we'll mark as Exhibit 2. And this is one of the four list documents, but we can just use it as an example.
(Rigault Exhibit 2 marked for identification.)
MX. GREEN: Can everyone see this document?
THE WITNESS: Yes.
BY MX. GREEN:
Q Okay. Did you review documents that looked like this to prepare for the deposition?
**A Yes.**
Q Okay. So I'm going to close what we've marked as Exhibit 2.
And so to prepare for this deposition, is it fair to say that all of the documents you reviewed were one, the spreadsheet that we discussed, two, files for four plaintiffs, three, the topic list that we

Page 28

discussed, four, the third amended complaint, and five, the lists we just discussed?
**A Yes.**
Q Okay. And when you say the files for the four plaintiffs, what does that include?
**A Those -- those include the copies of the folders of the four plaintiffs.**
Q Folders. Okay. Do you remember any of the documents that would have been in that folder? Was it -- or scratch that.
Was it a physical folder?
**A I -- I did not review a physical folder. I reviewed a PDF version of the folders.**
Q Understood. Do you remember what documents were in that PDF folder?
**A To the best of my recollection, yes.**
Q Okay. And what documents were those?
**A Who are we referring to?**
Q You said, to the best of your recollection, yes, you remember what documents were in the PDF folder.
So I was asking you what documents were in the PDF folder?
**A Which -- which plaintiff?**
Q Were there different kinds of documents in each folder?

Page 29

A **Yes.**

Q Okay. So let's start with Mr. Phillips. What documents were in that folder?

A **In Mr. Phillips' folder was his accompany card, detention card, classification and arraignment card sheet, custodial accusatory instrument, discharge checklist, and paperwork releasing him from DOC custody.**

Q Was the warrant in there?

A **Yes. That's the accusatory instrument. Yes.**

Q That's the --

A **The warrant. I apologize.**

Q Understood. So other than the warrant, there wasn't some other accusatory instrument?

A **For Mr. Phillips, no. Not that I recall. No.**

Q Understood. And were similar documents -- you know, I don't want to spend too much time on this, but were similar documents in all the other folders?

A **I -- I need you -- you have to specify which plaintiff, Counsel.**

Q Okay. Well, let me try to re-ask this. In all of the folders, were they these kinds of documents, as in they had things like a warrant, a discharge checklist, relevant paperwork, etcetera?

A **I -- I don't -- I don't know what "etcetera" means. Every folder is -- is different, so I don't**

Page 30

**really -- I can't group them all as one.**

MX. GREEN: Okay. How about this? I don't think we need to do this. We'll call for production to the extent that they haven't been produced, of those folders. We'll follow up in writing.

But maybe, Mr. Zuckerman, can you just represent that that's -- he reviewed what you've produced and we can move on?

MR. ZUCKERMAN: Yes. Those are the inmate files.

THE WITNESS: Yes.

MX. GREEN: That's essentially what I was trying to ask. Okay. Thank you.

BY MX. GREEN:

Q Did you communicate with anyone who is not an attorney to prepare for this deposition?

A **No.**

Q Okay. Let me think how to ask this. The documents you reviewed, did you go out and get them yourself or were they provided to you?

A **They were provided to me.**

Q Understood. Who were they provided to you by?

A **By DOC Legal Gajtani Antonin. Aside from Mr. Zuckerman.**

Q And other than having documents provided to

Page 31

you by DOC Legal and having the conversations we discussed with attorneys, did you make any efforts on your own to locate information relevant for this deposition?

A **No.**

Q Okay. Other than what we've discussed, so the four or five meetings with attorneys and the reviewing documents provided by DOC Legal, have you done anything else to prepare for this deposition?

A **No.**

Q Okay. Great. So what we're going to do now is we're going to go to the topics we've discussed. I kind of want to take this out of order because I think that's going to just be easier for all of us and start with the third topic.

I'm going to share this just so we -- share what we've marked as Exhibit 1, just so we can all have this in front of us to discuss and be aware of what we're talking about.

So do you see Topic 3 here, beginning with: Defendants' methods, documents, and so on?

A **Yes.**

MR. ZUCKERMAN: Remy, I just need a two-minute men's room break. I'm sorry.

MX. GREEN: Oh. Of course. Yeah.

Page 32

MR. ZUCKERMAN: That okay?

MX. GREEN: Of course.

And before -- just before, anytime if you need a break, Captain, please just let us know.

THE WITNESS: Thank you, Counsel.

MR. ZUCKERMAN: It'll take two minutes, Remy. Okay?

MX. GREEN: Yeah. No, understood. Let's -- I don't mind getting a glass of water, so let's come back at 9:35.

THE PROCEEDINGS OFFICER: We are off the record.

(Off the record.)

THE PROCEEDINGS OFFICER: We are on the record.

MX. GREEN: Thank you.

BY MX. GREEN:

Q So jumping right in, these next set of questions are going to be -- or this next set of questions is going to be covering what's designated as Topic 3.

I think the best way to do this is going to be to basically walk through what happens to a hypothetical person picked up on a warrant. To understand the methods, documents, policies, and other information

Page 33

concerning tracking the location and processing of people held in defendants' custody pursuant to warrants.

So when I say "warrant" in this context, what I'm specifically referring to is going to be a warrant that requires somebody to be produced to court.

Does that make sense?

**A Yes.**

Q And you're aware of those sort of warrants?

MR. ZUCKERMAN: Remy, I'm sorry. Just a timeframe would help, if you could.

BY MX. GREEN:

Q Okay. Well, let me ask this, as far as you are aware, speaking for the City of New York, have Defendants -- or has the City had different policies and methods for tracking this at different times in, say, the last 10 years?

MR. ZUCKERMAN: Object to form.

THE WITNESS: No.

BY MX. GREEN:

Q No. Okay. How about in the last 20 years?

**A I don't recall.**

Q Okay. So as far as you're aware, the City has never had different policies as far as tracking warrants and the like, as that -- or any of the -- sorry. Strike that.

Page 34

As far as you're aware, the information that you've prepared for Topic 3 on has not changed at any point in the last -- or has never changed as far as you're aware?

MR. ZUCKERMAN: Object to form.

THE WITNESS: To the best of my knowledge, no.

BY MX. GREEN:

Q Okay. So I guess -- so what I'm going to ask you to do is -- sorry. Let me go back to what I'd just said.

So you are aware of the kind of warrant we're going to be talking about here where it requires people to be produced to court, correct?

**A What -- what type of warrants?**

Q Any type of warrant that requires somebody to be produced to court.

**A Depends with --**

Q So a bench warrant, for example --

MR. ZUCKERMAN: He was answering, Remy. He was answering.

MX. GREEN: Sorry.

THE WITNESS: It -- it depends what type of warrant you're referring to, Counsel. Sorry.

BY MX. GREEN:

Page 35

Q Okay. Are you aware of -- how many different types of warrants are you aware of that require people to be produced to court?

**A You have bench warrants, Supreme Court warrants, federal warrants, probation warrants, family court warrants, parole warrants. Which -- which warrant are you referring to?**

Q The question I had asked is just how many types of warrants are you aware of that require people to be produced to court.

So does the City handle federal warrants and producing people to court on federal warrants?

**A The City -- the City doesn't handle producing individuals to -- to city courts for the federal warrants. No.**

Q Okay. So of the warrants that the City handles and handles people to produce them to court or place them in custody, how many types of warrants are you aware of that require people to be produced to court? Or what types of warrants, rather?

**A We have bench warrants, parole warrants, family court warrants, probation warrants. Those are the -- the general warrants to produce individuals to court.**

Q Okay. And so your testimony is that --

Page 36

scratch that.

Understood. So we'll be talking about those four kinds of warrants, at least the subsets of those four kinds of warrants that require people to be produced to court.

Does that make sense when I say "warrants?"

**A Yes.**

Q Okay. And typically, those warrants have language about how quickly somebody is to be produced to court, correct?

**A I would -- I would need to see the warrant that you're referring to.**

Q That's fair. Let me see if I can quickly get a copy of one of the warrants from the case. Yeah. Okay. Here we go. I will just put this on the screen in one moment. Okay. I'm sharing what let's mark as Exhibit 3. Or I'm sorry. I need to close this first. Okay.

MX. GREEN: I'm sharing what we -- what I'm going to ask us to mark as Exhibit 3.

(Rigault Exhibit 3 marked for identification.)

MR. ZUCKERMAN: You can make it a little bigger?

MX. GREEN: I don't have control of that. You guys do.

Page 37

THE WITNESS: You could zoom it.
MR. ZUCKERMAN: Where?
MX. GREEN: I can theoretically do that, actually.
MR. ZUCKERMAN: There we go. There we go. Yeah.
MX. GREEN: Okay. And I'm going to quickly annotate this to try to move us a little quicker.
BY MX. GREEN:
Q Do you see the text that I've highlighted where it says: YOU ARE DIRECTED. And then I'm going to skip a little bit:
FOLLOWING THE ARREST YOU MUST WITHOUT UNNECESSARY DELAY BRING THE DEFENDANT BEFORE THIS COURT.
Do you see that language?
**A Yes.**
Q And is it fair to say that warrants that require you to deliver people to -- require the City to deliver people to courts typically have language like that?
**A Yes.**
Q Okay. And typically, will have that "unnecessary delay" language, right?
**A Yes.**

Page 38

Q Okay. Speaking as the City, do you have an understanding of what "unnecessary delay" means?
MR. ZUCKERMAN: Object to form.
THE WITNESS: Yes.
BY MX. GREEN:
Q Okay. And what's that understanding?
**A Without unnecessary delay, an individual should be produced to court.**
Q Okay. And do you have an understanding of what amount of delay would be unnecessary?
MR. ZUCKERMAN: Object to form.
THE WITNESS: No.
BY MX. GREEN:
Q Okay. So you couldn't tell me if a week would be unnecessary?
**A I wouldn't be able to tell you if a week is unnecessary. No.**
Q Okay. So let's -- okay. We've closed that warrant. Let's go back to what we marked as Exhibit 1. So with the understanding of warrants that we've talked about let's talk about a hypothetical person.
And let's just use a bench warrant as the example. So the City arrests somebody on a bench warrant. Can you describe for me -- and, you know, I'll try to ask follow-up questions.

Page 39

But as best as you can, what steps immediately happen to track that person and the status of that warrant, starting with arrest?
**A I'm -- I'm sorry, Counsel. When -- when you say "the City," who are you referring to?**
Q So the City includes DOC, the City includes the NYPD, the City includes anyone operating on behalf of the City. Meaning, you are here speaking for the City. And so any city agency that includes all of the law enforcement arms of the City, right?
So the NYPD would typically arrest somebody, but they will at some point in this discussion transfer our hypothetical person into DOC custody.
So expansively, anyone working for the City arrests -- somebody who has the authority to arrest somebody, arrests somebody on a warrant.
What happens next, kind of as far as the topics in Topic 3?
MR. ZUCKERMAN: Object to form.
You can answer.
THE WITNESS: Can you repeat your question? I'm sorry.
MR. ZUCKERMAN: Could we have it read back, maybe?
THE WITNESS: Yeah. Can you read -- can

Page 40

you read -- read back the question, Counsel? I'm sorry.
BY MX. GREEN:
Q Yes. So as far as the topics in Topic 3, somebody is arrested by the City on a bench warrant. What happens next?
**A I -- I wouldn't be able to answer that question, but it depends on who's arresting the individual.**
Q Okay. So as far as who is arresting them, as you speak for the City today, who has the authority to arrest somebody on a bench warrant?
MR. ZUCKERMAN: Object to form.
THE WITNESS: Agencies that have arresting powers.
BY MX. GREEN:
Q Okay. What agencies have arresting powers?
**A I can't recall all of the agencies, but NYPD would be one. Some peace officers, New York State police officers as well, but I can't recall all agencies that have arresting powers within the New York City, New York State.**
Q Okay. Well, let's -- you are here to speak for the City. The New York State does not work for New York City, correct?
**A New York State has arresting powers within New**

Page 41

York City.
Q Okay. Fair enough. But you are not here to testify today about the policies, practices, methods for New York State, correct?
**A Correct.**
Q Okay. So we're just talking about what you are here today to talk about, which is the City's methods, documents, policies, and other information concerning tracking the location and processing of people held in defendants' custody pursuant to warrants requiring production to court for any reason.
So if somebody is brought into the City's custody by being arrested, what happens next in terms of tracking the location and processing of that person?
MR. ZUCKERMAN: Object to form.
You can answer.
THE WITNESS: When is -- when is this individual being brought into DOC custody?
BY MX. GREEN:
Q We are not talking about DOC custody. We are just talking about in the City's custody. They've been arrested.
**A I can't -- I can't speak for other city agency custody, Counsel.**
Q Okay. So let me -- so you are not prepared to

Page 42

testify as to any agency's policies other than DOC?
**A I can't testify for the other agencies. No.**
MX. GREEN: Okay. I mean, Mr. Zuckerman, obviously that's a problem.
MR. ZUCKERMAN: Yeah. Just continue.
BY MX. GREEN:
Q Okay. So then, does DOC arrest anyone outside of jails?
**A No.**
Q So DOC is not involved in taking people into custody on warrants, is it?
**A No. We're -- we're -- no. We -- we detain on the -- on bench warrants in this hypothetical situation that you're talking about.**
Q Okay. And so you have not done anything to prepare to discuss tracking people from when they are arrested until they get to DOC custody; is that correct?
**A That's correct. I'm not involved in that tracking process.**
Q So we're going to have to hold the deposition open for a witness about pre-DOC. But let's talk about DOC exclusively, then. Then we don't have to talk about arresting. So somebody arrives in DOC custody.
What is done at that point in terms of tracking the location and processing of them and the

Page 43

requirement to produce them to court?
**A When -- when did this occur? What -- what -- because you're -- you're asking about a hypothetical situation, so you have to give me -- give me a -- a time and date.**
Q Well, I'm asking you about the City's methods and policies, which is the topic that has been designated. I'm not asking you about anything specific. I'm saying if everything goes according to policy, right?
Somebody arrives in DOC custody, what happens to track their warrant and production to court if all the policies are followed?
MR. ZUCKERMAN: Object to form.
THE WITNESS: That's a -- it's a vague -- vague --
MR. ZUCKERMAN: If you understand it, you can --
THE WITNESS: I don't -- I don't understand your question.
BY MX. GREEN:
Q Okay. So let's start with this. Somebody arrives in DOC custody on a -- on a court warrant. Right? The kind we've discussed.
Does DOC do anything to track that warrant?

Page 44

**A Yes.**
Q Okay. What does DOC do to track that warrant?
**A The -- the warrant is entered into our information inmate system, IIS.**
Q Okay. And is there a special category on IIS for warrants or something like that?
MR. ZUCKERMAN: Object to form.
THE WITNESS: Yes.
BY MX. GREEN:
Q Okay. And IIS just -- I -- I know that this is knucklehead-level stuff. IIS is a computer system?
**A IIS is a computer system that we use within DOC, Department of Corrections.**
Q Okay. And so the warrant is entered into IIS. Does it create any -- does IIS create any notifications to anyone that the warrant exists?
**A I'm sorry, Counsel. Can you repeat your question?**
Q Yes. When the warrant is entered into IIS, does it create -- does it send any notifications to anyone?
MR. ZUCKERMAN: Object to form.
THE WITNESS: There's no notification sent to any person. It's -- it's entered into the -- the system.

Page 45

BY MX. GREEN:
Q Okay. Is there -- in terms of how -- again, if policies are followed perfectly, the warrant is entered into IIS.
Does anyone do any review of the contents of the warrant, right, to see what the language is in terms of without unnecessary delay or things like that?
MR. ZUCKERMAN: Object to form.
THE WITNESS: I can't answer for the person that's entering the warrant.
BY MX. GREEN:
Q Okay. But if that person is perfectly following DOC and city policy, does city policy require them to review anything about the warrant before just entering it?
MR. ZUCKERMAN: Object to form.
THE WITNESS: For the most part, yes.
BY MX. GREEN:
Q Okay. So what does city policy require them to review and -- well, let's start with that.
What does city policy require them to review?
MR. ZUCKERMAN: Object to form.
THE WITNESS: Review that the -- the warrant is -- coincides with the individual it belongs to. It has a valid docket indictment on the warrant.

Page 46

The NYSID number correlates to the individual. And then it's entered --
MX. GREEN: Got it.
MR. ZUCKERMAN: Wait, he's not done. He's not done.
MX. GREEN: Calm down, Mr. Zuckerman.
BY MX. GREEN:
Q I'm sorry. You were not done.
**A The user inputting the entry makes sure the NYSID number correlates to the individual being brought in. The docket indictment number on the warrant is legible.**
Q Okay. Do they review anything --
MR. ZUCKERMAN: He's not done. He's not done.
MX. GREEN: He just stopped. Mr. Zuckerman, I need you to calm down.
MR. ZUCKERMAN: He's not done.
Go ahead.
THE WITNESS: Start from the top. The -- the docket number indictment is on the warrant. The NYSID is correct. The -- there's a name on the warrant as well as maybe like date of birth on the warrant as -- as well.
And the court, out of the five boroughs,

Page 47

the court that issued the warrant. And that's entered into the IIS. I'm finished now.
MX. GREEN: Okay. I may ask if you guys can rearrange physically so that the captain is a little closer to the microphone, because I think there is a little delay here.
So when he pauses, you are hearing him start speaking again and I'm not before I say something.
MR. ZUCKERMAN: We're moving. We're moving.
MX. GREEN: And he is a little quiet, so you know, the little vocal "umms" that indicate he's going to keep talking, I don't think I'm getting those.
THE WITNESS: I apologize, Counsel.
MX. GREEN: Oh. No. No. Nothing you're doing wrong. We -- as I said, I'm going to try to let you finish any answer. If I end up stepping on your toes, it's because it sounds like you're done to me.
And again, I apologize, and all you need to do is keep talking and I'll shut up.
BY MX. GREEN:
Q Okay. So you talked about a number of things that somebody would review, and let me just clarify this.
Those are things that they would enter kind of

Page 48

into a separate information field on IIS, right?
**A Yes.**
Q Is there any field for the without unnecessary delay or that type of information on IIS?
**A No.**
Q Do they upload the warrant itself to IIS?
**A No.**
Q Okay. So they take the warrant, they copy some information from it, not including the unreasonable delay provision, and that gets put into IIS; is that correct?
**A Yes.**
Q Okay. And then after that -- so in IIS, we have being tracked the person's name, a confirmed fact that the warrant goes with the individual, and some personal details like name, date of birth, NYSID number, and that sort of thing.
Does anything else -- does the warrant get entered or tracked anywhere else other than IIS?
MR. ZUCKERMAN: Object to form. Hello?
MX. GREEN: I -- yeah. I'm just waiting for an answer.
THE WITNESS: Repeat the question. I'm sorry.
BY MX. GREEN:

Q So we talked about what does get tracked on IIS. Does the warrant get entered or information from the warrant get tracked anywhere other than IIS?
MR. ZUCKERMAN: Object to form.
THE WITNESS: It's -- it's also transcribed on the accompany card.
BY MX. GREEN:
Q Okay. And when you say "transcribed," is that a scanned version of the warrant? Is it a picture of the warrant? Is it -- does somebody physically type in what the warrant says, something else?
MR. ZUCKERMAN: Object to form.
THE WITNESS: The -- the warrant is -- the information from the warrant is written on a DOC -- a DOC -- it's called the accompany card. Our DOC accompany card. The information from the warrant.
BY MX. GREEN:
Q Okay. And just to be clear -- I think I'm hearing you correctly, when we're saying an accompany card, A-C-C-O-M-P-A-N-Y?
**A A-N-Y.**
Q Yeah. Okay. Like go along with them. Okay. So on the accompany card, is that handwritten, typed in, something else?
**A That's handwritten.**



Q Handwritten. So does somebody -- so somebody handwrites -- or scratch that.
What part of the warrant is handwritten on the accompany card?
**A The -- the docket or indictment number, the borough, and the -- the date that the warrant was -- was -- the date the individual came in on the warrant.**
Q Okay. So again, this does not include any information about whether the warrant says to produce somebody without unreasonable delay?
**A No.**
Q Okay. So we've got IIS, we've got the accompany card. When somebody comes in, is there any other system that tracks the warrant?
**A No.**
Q Okay. So those two systems are it. So I think you said in the accompany card we get the date somebody came in. What systems exist to track when somebody needs to be produced to court?
**A The -- the same system, the IIS.**
Q The IIS. Okay. So how does IIS track when somebody needs to be produced to court?
MR. ZUCKERMAN: Object to form.
You can answer.
THE WITNESS: In the -- the initial input



screen of the -- of placing the warrant in the IIS, there's a -- there's a date field that the user will fill out that says next court date.
BY MX. GREEN:
Q Okay. But when we're talking about a bench warrant, people don't have a next court date, do they?
**A The -- the next day for a bench warrant is normally the next business day for court. The next business day.**
Q So somebody -- so somebody is having an intake with the OC and somebody's filling in on IIS.
What you're saying is the City's policy is that the officer filling in the IIS system is supposed to just put the next business day as the next court date on IIS?
MR. ZUCKERMAN: Object to form.
THE WITNESS: I'm not saying that.
BY MX. GREEN:
Q Okay. Then help me understand what you are saying. So I've been -- I'm asking -- or you said that the next business day is the court date and that the court date is filled in on IIS.
Is somebody supposed to put the next business day in IIS?
**A Yes.**



Q Okay. And so that's when somebody's intake -- somebody is in -- well, what's the past tense of that, intaken? If somebody is intaken -- that sounds wrong.
If there is an intake on somebody on a bench warrant, the officer doing that intake is supposed to put in on IIS the next business day as the next -- as the court date?
**A Unless there's something else that -- that -- I'm trying to explain this correctly. Unless it's not - - unless it's noted that then -- then yes. The next court date would be inputted on the IIS.**
Q Okay. So you said you'd reviewed the files for the four plaintiffs in this case.
Do you recall whether the IIS, or I guess the records of IIS had the next business day written in for them?
**A I -- I wouldn't be able to tell from the four files.**
Q Okay. What would we need to be able to tell if somebody had put the next business day in IIS?
**A IT would have to -- our internal technicians would have to pretty much go back and look at the files to see if that was inputted.**
Q Let me ask a different question. Is that something that would be reflected in the -- sorry. Let

Page 53

me close this exhibit.

Is that something that would be covered by the spreadsheet that is in Topic 1?

**A Is that the spreadsheet?**

Q Yes. It is.

THE WITNESS: Can you see it?

MR. ZUCKERMAN: Yeah.

MX. GREEN: And -- yeah. Feel free to scroll around here.

MR. ZUCKERMAN: So to answer your question, no.

MX. GREEN: No. Okay.

So we're going to call for production of this information as to all the class members. That seems like it would be pretty important information. Okay.

BY MX. GREEN:

Q So if everything's going right, somebody's come in on a warrant, and in IIS the next business day is entered as their next court date. How does IIS -- and this is not like a got-you question, this is me just trying to understand.

How does IIS make sure that somebody knows that, Hey, there's an appearance tomorrow, we need to bring somebody to that appearance?

Page 54

**A When the -- when the user inputs the -- the next court date, there's a report that's ran within the IIS, and it's called a -- a CDAT report.**

Q Can you give us the acronym, like, what the letters are?

**A So C -- C-D-A-T. So it stands for Court Date Report.**

Q Got it.

**A And it's a -- and it's a report that's generated from the IIS, and it pretty much -- pretty much lists individuals who have court or -- or who a user may have entered who may have court for -- for the next date.**

Q Okay. And so is that generated in the -- well, scratch that.

Where is that generated? Like, what office or what person is that generated for?

**A So each facility on Rikers run -- runs their own CDAT report. It's -- it's specified to the -- to the user of that facility.**

Q Sure.

**A And then from there, once that's -- that's ran and printed out, it's -- it's given to the various housing areas for individual to be produced for court.**

Q Okay. And is that the same for other DOC

Page 55

facilities that are not Rikers?

**A What -- what timeframe we're talking about? I'm sorry. Are we talking about just in --**

Q Well, your testimony earlier was that none of these policies have changed at any point. So any timeframe.

Is this the same for all facilities?

**A Yes.**

MR. ZUCKERMAN: Object to form.

BY MX. GREEN:

Q Okay. So this is the same, you know, for all the jails, not just Rikers, but we can talk about Rikers because that's a good example?

**A Yes.**

Q Great. All right. So let's say -- or -- okay. So we have a CDAT report. Is it regularly the case that everyone on the CDAT report gets produced? Do people sometimes not get produced even if they're on a CDAT report?

You know, can you explain a little more to me about how a CDAT report kind of gets used and how it plays out?

MR. ZUCKERMAN: Object to form.

THE WITNESS: Not entirely.

BY MX. GREEN:

Page 56

Q Okay. Not entirely as in not everybody on the CDAT report gets produced?

MR. ZUCKERMAN: Object to form.

THE WITNESS: Everyone who's on the CDAT report is listed for production. I can't tell you why they -- why everyone is not produced.

BY MX. GREEN:

Q Let's put why to the side for one second. So is it the case that people are often not produced when they are on a CDAT report?

MR. ZUCKERMAN: Object to form.

THE WITNESS: No.

BY MX. GREEN:

Q Okay. Is it the case that people are sometimes not produced when they are on a CDAT report?

**A Yes.**

MR. ZUCKERMAN: Object to form.

BY MX. GREEN:

Q Okay. And without talking about every possible reason why, do you know some reasons that might happen?

**A Yes.**

Q Okay. What -- can you give me some of those just as examples?

**A Not medically fit for production, refusal of**

Page 57

**production, and the -- the court no longer requires**
**their appearance.**
Q Okay. Is it sometimes the case that people are not produced because there isn't enough transportation capacity?
**A No.**
Q Okay. So what kinds of -- or how would DOC find out that a court no longer requires their appearance?
**A The court -- the court part will -- will contact the facility the individual is in, stating that they no longer require their production.**
**Secondly, counsel will notify the facility that the production is no longer required. Those are the -- the two main reasons, as well as medically unfit.**
Q Yeah. And when you say counsel, do you mean defense counsel, the prosecuting attorney, or both?
**A A mixture of both.**
Q Okay. So we are talking about people on warrants. So because there is not an appearance scheduled with the court, this one probably doesn't apply to people on bench warrants, right?
**A Correct.**
Q And likewise -- never mind. That addresses my question. Okay. So for people on bench warrants, is

Page 58

there any system in place to ensure that if they miss the initial CDAT production, that somebody finds out that that's been missed?
MR. ZUCKERMAN: Object to form.
Go ahead.
THE WITNESS: Yes.
BY MX. GREEN:
Q Okay. What systems are those?
**A The same IIS system would -- would be -- sorry. The same IIS system would -- would then be updated to reflect a future court date.**
Q Okay. And so when you say the same IIS system would be updated, who is updating it?
**A The -- the officers assigned to the general office.**
Q And how would they know to do that?
MR. ZUCKERMAN: Object to form.
THE WITNESS: If the person was not produced to court, then -- and there was no update to the court date, then the user would then -- in this case for bench warrants, would then input the next -- the next day, business date for the person to be updated and produced to court.
BY MX. GREEN:
Q Okay. I think maybe you're assuming I know

Page 59

something that I don't, which is fine. But I guess I'm asking, how would they know to input the next business day, right? How would they know that somebody hadn't been produced?
MR. ZUCKERMAN: Object to form.
THE WITNESS: They -- they would know that the person wasn't produced because the bench warrant wasn't -- wasn't converted into a securing order.
BY MX. GREEN:
Q Okay. And how would they know that, though?
MR. ZUCKERMAN: Object to form.
THE WITNESS: Because there was no securing order generated on the bench warrant.
BY MX. GREEN:
Q I guess what I'm trying to ask is, does this mean that somebody is going through every single inmate's file every single day to make sure -- to see if there's a new securing order?
Is there some alert the system generates when somebody's supposed to be produced? Is it something -- right. I'm trying to figure out how they know any of this, right?
Because they don't psychically know it. Like, they don't have a psychic connection to a judge and say,

Page 60

Oh, yes, there was no securing order.
Physically, how do they find out?
MR. ZUCKERMAN: Object to form.
THE WITNESS: In -- in the case -- every scenario is different, Counsel. I'm sorry.
So if -- if the -- if the court declined production, then the officers in the general office would then, in a sense, place the individual for court for the next day if it's just a bench warrant.
So the alert was -- was the call from the courts.
BY MX. GREEN:
Q Right. But we just talked about how calls from the court are not something that happens for bench warrants, right?
**A No. You -- you asked me reasons why they won't be produced to court.**
Q Okay. So let me -- let me see if I can repeat back to you what you're saying and make sure I understand it.
Are we talking about somebody who DOC tries to produce the court -- to court, and the court says, No, no, we don't want this person?
MR. ZUCKERMAN: Object to form.
BY MX. GREEN:

Page 61

Q Is that the example you're using?
**A Is that the example you're asking me, Counsel? I'm sorry.**
Q I -- okay. So you just testified -- give me one second -- that in some situations the court might decline the production.
So in that situation that you've described, is what's happening that that person is being brought to court and the court is saying, no. We're declining production of this person.
Is that what you're describing?
MR. ZUCKERMAN: Object to form.
THE WITNESS: In -- in -- in this scenario, yes.
BY MX. GREEN:
Q Okay. Okay. So in that situation, is the way that somebody would find out that this person didn't have a court date being brought back to DOC, that would get entered during intake into the IIS system?
**A Repeat that, Counsel. I'm sorry. I'm trying to follow what your -- your frame of -- of --**
Q So in this situation where somebody has been brought to court, court declines the person and they're brought back.
The fact that they were declined would be

Page 62

entered into IIS when they get back to DOC, right?
**A Well in this scenario, they -- they never left DOC because the court declined production.**
Q Okay. So how would -- so somebody with a bench warrant, physically, how does the court decline production?
MR. ZUCKERMAN: Object to form.
You can answer.
THE WITNESS: The court would call the facility and state that maybe a particular court part is down. So individuals who are scheduled for that court part would then be taken off of production.
MX. GREEN: Okay.
THE PROCEEDINGS OFFICER: Counsel, did you want me to mark that last --
MX. GREEN: No. No. It's fine. We'll mark it later.
BY MX. GREEN:
Q So again, and maybe let's go back to Exhibit 3. So we're talking about a warrant here, or a bench warrant.
This bench warrant doesn't say any particular court part, does it?
**A Can you show me what you're referring to?**
Q Yeah.

Page 63

**A This -- this warrant does have a particular court part.**
Q Okay. What is -- is that the AP17 then?
**A That's -- that's correct.**
Q Okay. So in some situations, you might get a call from AP17 saying AP17 is closed today; is that correct?
**A That's correct.**
Q Okay. And so in that situation, it's not that they're saying, We're canceling this specific appearance, but you might get a call saying AP17 is closed. And then when they get that call, they will enter that information into IIS.
Is that more or less correct?
MR. ZUCKERMAN: Object to form.
THE WITNESS: No. There's -- there's no field in our IIS to -- to input that. That part is down. The court part is down.
BY MX. GREEN:
Q Okay. But they would input the next business day as the next court date if IIS is down the day they initially put in?
**A Yes.**
Q Got it. So that kind of -- and this is what I'm trying to -- this is the kind of answer I'm trying

Page 64

to get. Just so that -- I'm trying -- I'm not -- I -- again, I'm not trying to trap you with anything. I'm actually just trying to figure out how this works.
So that phone call will trigger somebody going through and updating IIS for everyone that the phone call applies to?
MR. ZUCKERMAN: Object to form.
THE WITNESS: In -- in this scenario, if the court part AP17 was to call the facility and state that we're down for today or we're not operational, all -- all defendants scheduled for production for this part will be put -- you know, placed over for the next date.
Then all those individuals scheduled for part AP17 would then be scheduled for the next business day by the user.
BY MX. GREEN:
Q And that's on the IIS -- or, yes. IIS system, right?
**A And the -- and the IIS system is -- updated from if it was for production for 5/12 today, it will be updated for production for 5/13 tomorrow.**
Q Okay. And so let's imagine for a second that was one of the days that Mr. Phillips was not produced, right?
Let's say that -- let's imagine for a second

Page 65

that -- and I don't know if this is true -- one of the days he wasn't produced was because AP17 called and said, We're not open today.

Is -- where could I go to look to find out whether AP17 had been closed that day?

MR. ZUCKERMAN: Object to form.

You look now, Remy? Is that what you're asking?

BY MX. GREEN:

Q If I worked at -- if I worked for the City, where could I go to find out whether I -- whether AP17 had been closed on any of the relevant days?

MR. ZUCKERMAN: Object to form.

THE WITNESS: DOC wouldn't have that information.

BY MX. GREEN:

Q DOC would have that information. And where would --

**A DOC wouldn't -- DOC --**

MR. ZUCKERMAN: Wait a minute. You didn't hear him.

THE WITNESS: DOC would not have that information.

BY MX. GREEN:

Q DOC would not have that information. Okay.

Page 66

So DOC doesn't track that. Does anyone track that at the City?

**A I -- I don't know. I would say OCA.**

Q Okay. So putting aside OCA, testifying on behalf of the City, are you prepared to say whether any city agency tracks that information?

MR. ZUCKERMAN: Object to form.

THE WITNESS: I -- I don't know any city -- city agency that tracks that information if the court part is down.

BY MX. GREEN:

Q Right. I'm not asking what you know. I think that's -- and correct me if I'm wrong, that sounded like you were saying you personally do not know; is that right?

**A Yes.**

Q Okay. So speaking on behalf of the City, the question I have is, are you prepared to answer whether the City tracks that kind of information anywhere?

MR. ZUCKERMAN: Object to form.

He can answer.

THE WITNESS: Yeah. I'm not prepared to -- to answer that question for any -- for all -- any -- any and all city agencies.

BY MX. GREEN:

Page 67

Q Okay. Got it. But when DOC gets that kind of phone call, other than updating the IIS system, they don't write down or track anywhere whether there are closures of particular court parts as closures.

**A No.**

MR. ZUCKERMAN: Okay. I just need a two-minute men's room break, Remy.

MX. GREEN: Yeah. Of course. Do we want to take till 10:30 -- or, I'm sorry. Until 11:30?

MR. ZUCKERMAN: Sure.

MX. GREEN: Okay.

THE PROCEEDINGS OFFICER: We are off the record.

(Off the record.)

THE PROCEEDINGS OFFICER: We are on the record.

BY MX. GREEN:

Q Okay. So we were just -- sorry. Are we good?

**A Yes.**

Q Okay. So other than the court declining production, are you aware of any other reasons somebody might not be produced on a CDAT?

MR. ZUCKERMAN: Object to form.

THE WITNESS: Yes. Medically unfit.

BY MX. GREEN:

Page 68

Q Medically unfit. Okay. Other than declining, medically unfit, or the person's refusal, are you aware of any other reasons somebody may not be produced?

MR. ZUCKERMAN: Object to form.

THE WITNESS: Yes. You know, extenuating circumstances. You know, sometimes vehicle accidents, sometimes, you know, weather issues.

You know, a lot of these -- a lot of these plaintiffs during this time of COVID pandemic, those could have been other reasons why people weren't produced.

MX. GREEN: Okay. So I'm going to share what -- sorry. I am sharing something else. Let me close this.

I'm going to share what I'll ask us to mark, I think, as Exhibit 4.

(Rigault Exhibit 4 marked for identification.)

BY MX. GREEN:

Q So Exhibit 4 we have here is the inmate movement history log for plaintiff Khaori Wright. As we can -- I'm sorry.

Let me just start with, do you recognize this exhibit?

**A Yes.**

Q Okay. And is this part of what you reviewed

Page 69

as part of Mr. Wright's file?
**A Yes.**
Q Okay. And so is it fair to say this reflects that he was brought into DOC custody on March 20, 2020, and was eventually released on April 4, 2020?
**A That's correct.**
Q Okay. And that this also reflects that he was not brought to court at any point between March 20th and April 4th, correct?
**A Yes.**
Q Okay. So if I wanted to figure out why he was not brought to court, what documents would I have to look at?
**A Why he wasn't brought to court? I mean, I can tell you during -- during this time was the -- it was the pandemic.**
Q Okay. So was it the City's policy during the pandemic to not produce people to court on bench warrants?
MR. ZUCKERMAN: Object to form.
THE WITNESS: The -- the policy never changed. But if -- but there was no court to produce individuals to.
BY MX. GREEN:
Q Okay. Your testimony is that the court system

Page 70

was completely closed between March 20th and April 4th?
MR. ZUCKERMAN: Object to form.
THE WITNESS: It was -- the court -- the court system was operating in a -- in a very limited capacity.
BY MX. GREEN:
Q Okay. So during this period of time, is it -- is it your testimony that some people were not produced to court because of capacity?
MR. ZUCKERMAN: Object to form.
THE WITNESS: Can -- can -- can you -- what do you -- what do you mean by capacity? Capacity by?
BY MX. GREEN:
Q Well, you said some -- you said that the court system was operating in a very limited capacity.
Is it your testimony that it was because of that limited capacity that some people who should have been produced to court were not produced to court?
MR. ZUCKERMAN: Object to form.
THE WITNESS: Yes.
BY MX. GREEN:
Q Okay. And if I wanted to find out if that is why Mr. Wright was not produced, what would I have to look at?

Page 71

MR. ZUCKERMAN: Object to form.
THE WITNESS: I guess the -- the governor's mandate during that time.
BY MX. GREEN:
Q So I understand your testimony to be that the court parts were not completely closed, but that there were capacity issues.
I also understand your testimony that there are other reasons people might not be brought to court. For example, medical issues.
If I wanted to figure out whether it was because there weren't enough slots to bring Mr. Wright to court, or whether it was a medical issue, or whether there was some other reason the part was closed, what would I look at?
MR. ZUCKERMAN: Object to form.
THE WITNESS: Look at his inmate folder.
BY MX. GREEN:
Q Okay. What in his inmate folder would we look at? What document?
**A I'll just -- just -- well, this is one document I would look at. Other documents would just be -- which the -- the CDAT, if that was available, see if he was on production. Other than that, we don't have anything else.**

Page 72

Q Okay. So the two documents we would look at would be this document and the CDAT; is that right?
MR. ZUCKERMAN: Object to form. Misstates prior testimony.
MX. GREEN: That's why I said, is it -- is that right. If he -- if it's not right, he can tell me that I've misunderstood.
THE WITNESS: Repeat your question, ma'am. I'm sorry, Counsel.
BY MX. GREEN:
Q No. No. All good. So if I'm trying to figure out why he was not produced, right? Whether it was because of the governor's mandate, whether it was because, because a specific issue in that part or something else, you said that I should look at some documents in his inmate folder.
When I asked what documents, I think I understood you to say the two documents you would look at are the inmate movement history log, and then we would need to also go get the CDAT for each of these days; is that correct?
**A That's correct.**
Q Okay. So we're going to call for production for the CDAT for all relevant days for all relevant plaintiffs. Let's look at Exhibit 4, though.

Page 73

Is there anything in this -- in this exhibit that tells us why he was not produced to court in this period of time?

**A No. Not in this exhibit. No.**

Q Okay. So fair to say, if the City has this information, it's in the CDAT?

MR. ZUCKERMAN: Object to form.

THE WITNESS: Yes.

BY MX. GREEN:

Q Okay. Also fair to say that the City does not have any mechanism of tracking why somebody is not being produced to court?

MR. ZUCKERMAN: Object to form.

THE WITNESS: No. We do have.

BY MX. GREEN:

Q Okay. What mechanisms does the City have for tracking why somebody isn't produced to court?

**A If -- if someone refuses, we have a refusal form as to why they weren't produced. And we have undelivered forms for individuals why they weren't produced if they were refused.**

Q Okay. Would those be in the inmate file?

**A They -- they can be. They should be.**

Q They should be. Okay. Did you see any refusal or undelivered forms for any of the four plaintiffs when you reviewed those files?

Page 74

**A I didn't see any of these plaintiffs' refusal.**

Q Okay. So going back to how the City tracks why somebody is not produced, we have refusal forms and undelivered forms.

Are there any other ways the City tracks why somebody is not produced to court?

MR. ZUCKERMAN: Object to form.

THE WITNESS: To my knowledge, those are -- those are the two.

BY MX. GREEN:

Q Okay. Those are the only two. So if somebody's not being -- not refusing to go, there's no way of -- the City does not track that?

MR. ZUCKERMAN: Object to form.

THE WITNESS: Repeat the question.

BY MX. GREEN:

Q So for reasons that somebody is not produced other than them refusing, that would trigger a refusal form and an undelivered form, the City does not track what -- does not have a method of tracking why somebody is not being produced to court?

MR. ZUCKERMAN: Object to form.

THE WITNESS: In my capacity, no. That's -- that's all I know.

Page 75

BY MX. GREEN:

Q Okay. And binding the City, your answer is that there is no other method of tracking?

MR. ZUCKERMAN: Object to form.

THE WITNESS: To my knowledge, that's -- that's the only -- the ones I listed.

BY MX. GREEN:

Q Right. To the City's knowledge, is there any other mode of tracking?

MR. ZUCKERMAN: Object to form.

THE WITNESS: I don't know entirely, Counsel. I just --

BY MX. GREEN:

Q So you're not prepared to answer that question today?

**A I'm not prepared to answer that question in its entirety. No.**

Q Okay. So again, let's use Mr. Wright as an example but let's ignore the COVID piece and assume he's just -- any other time, right? Everything's working normally, or as normally as it works at DOC.

If somebody comes in on, let's say, the 20th of March 2024, and on the 25th, the 26th, they're still there, do any systems generate any alerts, any -- right.

Is there any system to alert people that somebody is not being produced to court?

Page 76

MR. ZUCKERMAN: Object to form. Just put a timeframe on this.

MX. GREEN: Well, I said hypothetically in 2024.

THE WITNESS: I -- I can't answer that definitively because I don't know what -- what's going on in 2024.

BY MX. GREEN:

Q Okay. When do you know what's going on?

**A I mean, based on the exhibit, I can tell you what's going on during that time. Because it was a very, you know, awful time in -- in our history.**

Q I'm going to close the exhibit and bring back up Exhibit 1.

So Topic 3B says that you were supposed to be prepared to testify about:

What efforts and methods Defendants use to ensure people in their custody are produced pursuant to Court Warrants or any other conditions on the court -- or any other conditions on the Court Warrants are complied with.

So I'm asking you, in terms of that topic, if, hypothetically, somebody has been in DOC custody and has not been produced, are there any efforts or methods that

Page 77

defendants use to ensure that that person doesn't fall through a crack?
MR. ZUCKERMAN: Object to form.
You can answer.
THE WITNESS: We utilize the IIS. The -- the information system.
BY MX. GREEN:
Q Okay. And so how does the IIS system ensure that somebody is produced or does -- strike that.
If somebody has not been produced and they don't have a future court date in IIS, does IIS generate an alert about that person?
MR. ZUCKERMAN: Object to form.
You can answer.
THE WITNESS: Repeat the question.
BY MX. GREEN:
Q So if somebody is being held on a warrant and they have not been produced to court, let's say it's day four of them being held, does IIS produce -- or any other day after that, does IIS produce any alert?
MR. ZUCKERMAN: Object to form.
You can answer.
THE WITNESS: Not -- not that I know of.
BY MX. GREEN:
Q Okay. So IIS is not -- strike that.

Page 78

Other than IIS, is there any system that generates some kind of alert when somebody is not -- has not been produced to court?
MR. ZUCKERMAN: Object to form.
THE WITNESS: I -- I don't know, Counsel.
BY MX. GREEN:
Q Okay. Are you not prepared to answer that question, or is your answer that the City doesn't have those systems?
MR. ZUCKERMAN: Object to form.
THE WITNESS: I don't know what other -- what other systems outside of IIS that I have access to gives any types of alerts.
BY MX. GREEN:
Q Right. I'm not asking you what you have access to. I am asking you as a representative of the City of New York who is prepared to testify on Topic 3B, does the City have any other system outside of IIS that generates alerts or does anything else, to make sure that people are either produced pursuant to court warrants or any other conditions on the court warrants are complied with?
MR. ZUCKERMAN: Object to form.
THE WITNESS: I don't know. I'm not prepared to answer it.

Page 79

BY MX. GREEN:
Q You don't know, as in?
**A I'm not prepared to answer that question.**
Q You're not prepared to answer. Okay. Okay. So are you aware of whether -- scratch that.
So let's go to Topic C now -- or subtopic 3C. So we've discussed the C-D-A-T or the CDAT. We've discussed the IIS system.
When somebody is being held pursuant to a court warrant, what other documents are generated as far as making sure the warrant is tracked?
MR. ZUCKERMAN: Object to form.
You can answer.
THE WITNESS: The other documents that's generated are the -- the detention card, the accompany card, the classification and arraignment. It's kind of like a interview -- interview form that we utilize for -- for admission of individuals. Suicide prevention screening, discharge planning questionnaire.
And all of those forms in conjunction with the warrant is -- is -- are combined into a -- a custodial packet.
BY MX. GREEN:
Q Got it. So where is the custodial packet sent?

Page 80

**A The --**
Q Who gets a copy of it? Sorry.
**A Sorry. No. It's okay. The custodial packet is normally generated by the intake and general office staff, and it's placed into a -- I'm sorry. A folder, like a 11-by-14 folder.**
**And it's stored -- all those -- that custodial packet is -- is stored in a folder and -- and given to the general office for final -- for filing. I apologize.**
Q No. Thank you. Okay. And filing with whom or where?
**A It's filed within the general office of each DOC facility of our facilities that we have. And it's then updated by the general office staff on various screens that we have within the IIS.**
**So what's written on the paper is then data entered into the -- the IIS system by general office staff. And then it's filed by housing area court dates.**
**There's different methods that every individual is filed, which varies based on the facility.**
Q Got it. And so this is a physical file in a physical filing cabinet that then gets entered into IIS.
Have I understood that correctly?
MR. ZUCKERMAN: Object to form.

Page 81

THE WITNESS: It's -- it's physical paperwork that's then data entered into the IIS, that's then filed within the general office of the facilities that the individual is housed in.
BY MX. GREEN:
Q Okay. And that -- what it -- what is filed in the general office, that is a physical file filed in like a filing cabinet, right?
**A I wouldn't say a filing cabinet, but it's -- it's a filing method.**
Q Fair enough. Or drawers or boxes or what -- there is a physical file that in -- that is physically stored somewhere.
**A That's -- that's correct, Counsel.**
Q Thank you. Okay. Does the City have any policies or methods that require review of people who have been in for a certain period of time and have not been produced to court?
**A Not to my knowledge.**
Q Okay. And that -- is that a -- is that the City knows it does not exist, or is that a, you are not prepared to answer that question?
**A I'm not prepared to answer that question.**
Q Okay. So then, going down to Topic 3D, let me just see if I've -- if I've understood your testimony

Page 82

today well enough to just confirm the answer to this.
So the specific methods used to track each of the named plaintiffs are the custodial packet that was filed in the general office and then the relevant facility's general office, the various inputs into the IIS system and the IIS system itself.
And then the CDAT reports for each day that they were supposed to be produced to court; is that right?
**A Yes.**
Q And --
**A Yes, Counsel.**
Q Sorry. Please finish.
**A No. Yes, Counsel.**
Q Okay. And other than those three, there are no other ways that were used to track the individual plaintiffs?
**A No.**
MX. GREEN: Okay. I think that this is a decent point to just take a five-minute break -- 10-minute break, and I think the other two topics should go much more quickly.
MR. ZUCKERMAN: Sure. You want to come back at noon, Remy? Or you want less? Or you want less?

Page 83

MX. GREEN: Noon is perfect. And I'm hoping that we'll get this done quickly enough that we can just say, have lunch after the other two topics. I really think those are going to go much faster.
MR. ZUCKERMAN: I'm sorry. Is that -- you mean you'll be done after those two or you have more?
MX. GREEN: Well, after the other two topics, that's it.
MR. ZUCKERMAN: Oh. Okay. So let's come back at noon and see if we can wrap this up.
MX. GREEN: Okay. Great. Thanks.
THE PROCEEDINGS OFFICER: We are off the record.
(Off the record.)
THE PROCEEDINGS OFFICER: We are on the record.
BY MX. GREEN:
Q Okay. So let me just ask two quick cleanup questions. So let's say I wanted to find out if somebody was successfully seen by a court on a warrant that had been in DOC custody, how would I do that? How would I -- how would I look into that?
MR. ZUCKERMAN: Object to form.
You can answer if you understand it.

Page 84

MX. GREEN: Let's please keep the speaking objections to a minimum.
THE WITNESS: How would -- do you -- repeat the question one more time? I'm sorry, Counsel.
BY MX. GREEN:
Q Of course. Let's say I wanted to look into whether a particular inmate had been brought to court to have a bench warrant cleared. How would I look into that?
MR. ZUCKERMAN: Object to form.
THE WITNESS: You -- you would have to go to OCA to find out when that warrant was vacated.
BY MX. GREEN:
Q Sure. But let's say I didn't know if the warrant had been vacated and that person was still in DOC custody.
How would we -- how would I go and look into what happened? And the answer might be, call OCA. I'm just trying to find out.
MR. ZUCKERMAN: Object to form.
Go ahead.
THE WITNESS: It's -- it's -- it's not -- it's not a -- it's not a -- it's not one way to answer that question. I'm sorry.
BY MX. GREEN:

Page 85

Q Well, okay. Let me try to reframe. Let's say I'm aware of somebody who is in DOC custody, or let's say you were aware of somebody who is in DOC custody, and you don't know what -- right?
They were initially brought in on a bench warrant, and you don't know whether they were brought to the court at all, and if they were brought to the court, whether the court resolved the bench warrant.
How would you figure out -- like, what would you look at to figure out the answers to those questions?
MR. ZUCKERMAN: Object to form.
THE WITNESS: I would -- I would have to look at the MA folder, the -- I'm sorry. The person in custody folder, and in conjunction with the IIS system. And also --
BY MX. GREEN:
Q Okay. Sorry. Were you done?
MR. ZUCKERMAN: No. He's not done.
THE WITNESS: And -- and, I'm sorry. And -- and also in conjunction with the criminal inquiry system, OCA system.
BY MX. GREEN:
Q And does DOC have access to the criminal inquiry system, or is that something I'd have to go to

Page 86

OCA to get?
**A You have to go to OCA to get that.**
Q Okay. So the only things in the City's custody would be the folders that we've been discussing extensively and the IIS system that we've been discussing extensively.
**A That's correct, Counsel.**
MX. GREEN: Okay. Great. The other piece of cleanup, and let me just bring up another exhibit. Let's mark this, I think we're at 5.
(Rigault Exhibit 5 marked for identification.)
BY MX. GREEN:
Q Okay. I'm going to try to fix the orientation for everybody. Take a moment to review, but my first question is going to be, do you recognize this?
**A I'm sorry, Counsel. I'm not -- I'm not familiar with this -- this documentation.**
Q Okay. Is this document not part of the folder that you were discussing?
**A No. I don't recall this.**
Q Okay. This isn't -- I'll represent to you that this is an NYPD document. And I'd like to bring us to the bottom of the last page, and I'll quickly do an annotation to bring us all to the same thing that we're looking at.

Page 87

Do you see where it says: Will be returned in the morning for a Supreme Court warrant?
MR. ZUCKERMAN: Or part of ours cut -- oh. There we go. Okay. There we go.
Can you read it? (Indiscernible - simultaneous speech) bigger?
THE WITNESS: Yeah. Yeah. "Defendant removed to Brookdale Hospital for jaw pain by Police Officer Levy and PO Brandes. Will be returned in the morning for a Supreme Court warrant."
BY MX. GREEN:
Q Do you see that?
**A Yes. I see it, Counsel.**
Q Okay. So this is information that the NYPD had when they were bringing -- when they were transporting Plaintiff Khaori Wright.
Is there any way in which this information would make it into DOCCS systems?
MR. ZUCKERMAN: DOC systems?
MX. GREEN: Yes. I'm sorry. Not DOCCS. You're right, DOC.
THE WITNESS: No.
MX. GREEN: No. Okay. All right. Then let's go dig into Topics 1 and 2. Let me just get my copy of the topics in front of me. Okay. So I'm going

Page 88

to pull up on the screen what we'll mark as Exhibit 6, which is the spreadsheet with the the number that we've described, 16475031_1.
(Rigault Exhibit 6 marked for identification.)
BY MX. GREEN:
Q Do you recognize this exhibit?
**A Yes, Counsel.**
Q Okay. So -- and you are prepared to testify about the meaning of various data and the background of various data contained in the spreadsheet, correct?
**A Yes.**
Q Okay. So let me first start with the arraignment date column. What does the arraignment date column mean?
**A The -- the arraignment date column for this particular spreadsheet refers to the dates an individual was initially arraigned on -- on an arrest.**
Q And I'm sorry. You broke up a little bit.
**A I'm sorry.**
Q You said initially arraigned?
**A Initially arraigned on an arrest.**
Q Okay. So this -- or put otherwise, if there is something here that -- if there is information here, that means that they were in fact arraigned on a particular date.

Page 89

Is that -- am I understanding that correctly?
MR. ZUCKERMAN: Object to form.
THE WITNESS: No. No.
BY MX. GREEN:
Q Okay. So what does the data mean?
**A No. The -- the data is -- that column refers to the date someone was arraigned on an arrest.**
Q Right. So my question that I just asked is, if there is information here, right, if there's a date here, that means that that person was actually arraigned on that date. That's not something that was scheduled.
That means that that happened, right?
MR. ZUCKERMAN: Object to form.
THE WITNESS: I can't -- I can't answer that in its entirety, but --
BY MX. GREEN:
Q Okay. Why can't you answer that?
**A Because it's -- it's -- and it's data entered by a user, and that's normally entered from documentation from -- from OCA or NYPD. So it may not always be factual.**
Q So putting aside when somebody made a mistake, right? Like we -- understanding that people inputting data sometimes make mistakes, let's ignore that for a moment.

Page 90

The fact that it says "arraignment date," unless somebody made a mistake, that means that somebody was in fact arraigned on the date it says, right?
MR. ZUCKERMAN: Object to form.
THE WITNESS: I can't -- I can't say for a fact.
BY MX. GREEN:
Q Right. I'm not asking you about any particular piece of data here. What I'm asking is, I'm trying to understand what it means for it to be called an arraignment date, right? Is that a date that is hypothetically scheduled?
Is that a date that somebody input because it appeared in an OCA document? Is it something else, right? I'm just trying to figure out what it's supposed to mean, not whether it's always accurate.
So what is it supposed to mean?
**A It's -- it's a date that was -- that's entered from an OCA or NYPD document.**
Q Okay. And it's supposed to reflect looking backwards an arraignment that happened, not looking forwards an arraignment that's scheduled in the future?
**A It should -- it should reflect an arraignment that happened.**
Q Okay. That is what I was trying to ask.

Page 91

Thank you. Okay. So then let's look at discharge reasons.
Do you see that column?
**A Yes.**
Q Okay. So I'm just going to kind of ask you to explain some of these acronyms. What does ACD mean?
**A ACD stands for Adjourned Contemplating Dismissal.**
Q XSP?
**A XSP is an individual that was transferred to New York State DOCCS custody. From New York City to New York State.**
Q ROR, that's just release on recognizance?
**A Yes, Counsel.**
Q BP. What does that mean?
**A That means bail paid.**
Q Bill paid. What does that mean?
**A Bail -- bail paid is bail.**
Q Bail. Okay. Sorry.
**A Bail. I'm sorry. Bail. B-A-I-L. B-A-I-L.**
Q Got it. Yeah. I was like, okay. They pay their internet bill. I don't know what that means. Okay.
PAR?
**A Means paroled.**

Page 92

Q Paroled. Okay. I should've gotten that one. EXP?
**A Expired on a sentence.**
Q Okay. So that means they were released because their sentence was over. Am I understanding that right?
**A Yes.**
Q Okay. TS? Sorry. I didn't mean to --
**A No. It's okay, Counsel. They were released because their -- their city sentence that was imposed on one of the courts expired. Time was done.**
Q Got it. Okay. And TS?
**A TS is kind of in the same realm as EXP. It means time served, meaning that the -- the sentence imposed was already done.**
Q Okay. DIS?
**A I'm sorry?**
Q D-I-S.
**A D-I-S. Oh. Dismissed.**
Q Dismissed. I should've gotten that one too.
ND?
**A ND is it means that the individual was delivered to -- to another agency, another -- another law enforcement agency, another jurisdiction. They were, in essence, surrendered to -- to another entity**

Page 93

outside of DOC.

Q And would that be because we have XSP also not DOCCS?

**A I'm sorry. Repeat that.**

Q So XSP was a transfer to DOCCS?

**A To DOCCS, correct.**

Q So is ND like when they are transferred to, say, New Jersey?

**A Correct.**

Q Okay. XSH?

**A Is someone that's transferred to OMH, Office of Mental Health and Hygiene hospital.**

Q Got it. Let me just make sure I'm not missing any here, but I think that's pretty much covers it. Okay. So now I think we're going to get into the more difficult ones.

So what does it mean if an arraignment date is missing?

**A If an arraignment date is missing, it -- it means that that date wasn't -- the person was -- who was entering the user into the IIS didn't have that information readily available. --**

Q Got it. So it doesn't necessarily mean an arraignment didn't happen. It means that the person entering the information just didn't have it.

Page 94

**A Person entering the information didn't have it, correct.**

Q Got it. And in terms of the City's policies for entering this kind of information, as a technical matter, would you agree with me that somebody who's brought to court on a -- on a bench warrant isn't being arraigned?

They were arraigned at some point in the past. When they're brought on a bench warrant, they're being brought to address the warrant, right?

**A Depending on the type of warrant.**

Q Sure. But typically, a bench warrant is in an active case or a -- or an old case, but they were already arraigned on the charges in that case, right?

**A Yes.**

Q Okay. So in this spreadsheet, if we're talking about somebody who is exclusively in on a bench warrant, how would I find out -- or, I'm sorry.

Is this column "Arraignment Date" always going to be blank, or is there some other information that might be put in that column?

**A It -- it can be blank; it could be filled out. It -- it depends what -- what information the -- the user has to -- to input.**

**So if a -- if the user has a bench warrant,**

Page 95

**but there is no date as to when that arraignment had occurred prior, then there's no way to update that field.**

Q Got it. I guess if somebody was in on a bench warrant, I'm just trying to figure out what the arraignment date would mean if it was there?

**A It -- if someone was in custody on a bench warrant, the -- the arraignment date would -- it's more like -- it's just a -- it just paints a big -- a better picture of who we have in custody.**

Q Okay. Looking at this spreadsheet, how would I go about finding out which of these people were in on bench warrants or other court warrants?

MR. ZUCKERMAN: Object to form.

THE WITNESS: Repeat the question one more time, Counsel.

BY MX. GREEN:

Q So I have this spreadsheet in front of me. How would I take this -- right? We have each line represents a person.

How do I take this and figure out which, if any of them, were in on bench warrants?

**A I -- I would -- looking at the spreadsheet, I would -- I would look at the column that notates criminal warrant and Supreme Court warrant.**

Page 96

Q Okay. And if it says yes, criminal warrant or Supreme Court warrant, that means that they were in on a bench warrant?

**A Well, no. Because there's criminal bench, there's criminal arrest, there's Supreme Court -- Supreme Court bench and Supreme Court arrest.**

Q Got it.

**A And this -- this doesn't differentiate between the four that I just listed.**

Q Got it. So without this -- or, moving beyond this spreadsheet. So we've got a bunch of people in here, who are in on either a criminal warrant or a Supreme Court warrant.

How would I go about, with full access to all of the City's documents, if I had that, how would I go about figuring out whether somebody was in on a -- if it says "yes" for Supreme Court warrant, let's say, a Supreme Court arrest warrant or a Supreme Court bench warrant?

**A How would I go about identifying -- can you repeat that? I'm sorry.**

Q How would I go about figuring out for the people it says "yes" for under Supreme Court warrant, which ones are bench warrants, and which ones are arrest warrants?

Page 97

**A Just -- just looking at this graph?**
Q Or any other information that the City has access to?
**A I would have to look at the individual's folder.**
Q Okay. What would you look at in the individual's folder?
**A I would look at -- so in -- in this case, if it says "yes" for Supreme Court warrant, I would review their folder and see what type of Supreme Court warrant it was.**
Q Okay. So you would look at the warrant itself?
**A Yes.**
Q Okay. Is the type of warrant tracked anywhere in IIS?
**A The type of warrant? No.**
Q No. Okay. So the City does not track the type of warrant?
MR. ZUCKERMAN: Object to form.
BY MX. GREEN:
Q Sorry. So this -- in IIS, the City does not track the type of warrant?
**A Just criminal and Supreme Court in regards to the -- the warrants we're talking about. Not the**

Page 98

**subsections of the warrants.**
Q I'm sorry. You're right. They track what court it's from, but not whether it is arrest or bench; is that right?
**A Correct.**
Q Okay. Do you have a rough sense about, you know -- you know, is it 50/50 bench/arrest? Is it 99 percent arrest, 1 percent bench?
**A I can't --**
Q Pardon?
MR. ZUCKERMAN: No. Go ahead.
THE WITNESS: Oh.
MR. ZUCKERMAN: Go ahead.
THE WITNESS: I can't answer that definitively.
BY MX. GREEN:
Q Yeah. I'm not asking for a definitive answer. Do you have any sense at all, right?
**A No.**
Q You have no sense at all?
**A Not if it's 50/50, 90/10. I -- no.**
Q Okay. Would it -- so we have 2000 items in this -- in this spreadsheet, right?
**A You're asking me? Oh. I'm sorry.**
Q Well, you reviewed the spreadsheet.

Page 99

**A Yeah.**
Q Is it fair to say there are 99 -- or, I'm sorry. There are 2,000 -- there are more than 2000 entries in this spreadsheet?
**A I didn't count every one, but I -- I reviewed it. I have it in PDF, but approximately.**
Q If I represent to you that there are 2082 lines in this spreadsheet, does that sound right?
**A It sounds right.**
Q Okay. And obviously, the first line is the headings. So 2081 people here.
Now, I'm not asking you to pin down the number, but do you have any sense at all if it's, you know, if it's -- is it less than 1 percent of all of these warrants in here are bench warrants?
**A I would have to look at the folders. I can't -- I can't give a -- an answer to that.**
Q Okay. Your testimony -- okay. You have no sense at all as to the composition of the number of warrants?
MR. ZUCKERMAN: Objection.
You can answer.
THE WITNESS: Oh. I would need -- I would need this sheet in conjunction with the -- the folders of everybody that's listed. I can't just give

Page 100

you a -- I can't give you an arbitrary number, Counsel.
BY MX. GREEN:
Q Okay. Let me move us over to first court date. So what does "first court date" mean? And that's on the right-hand side where I've just brought us.
**A Oh. Okay. So first -- first court date in this column, that signifies the date that the individual was admitted into a court part from one of our -- from -- from his -- from their parent jail.**
Q What is a parent jail?
**A The -- the parent -- the parent jail is the -- is the -- the facility that the inmate -- I'm sorry. The facility that the person in custody resides in during their time -- in their time during incarceration.**
Q Okay. Into a court part. Okay. So what does it mean when the -- when the column is blank here for first court date? And so I'll bring you -- sorry. I'll bring you to a place where we have some blank lines.
MR. ZUCKERMAN: Let counsel finish the question.
THE WITNESS: Sorry.
MX. GREEN: I finished the question.
MR. ZUCKERMAN: Oh.
Just read it back, please, Stephanie.
Thank you.

BY MX. GREEN:
Q I can read it back. I have a live transcript. What does it mean when the column is blank here for the first court date?
MR. ZUCKERMAN: Okay. First court date's on the right.
THE WITNESS: Okay. Okay.
MR. ZUCKERMAN: Go ahead.
THE WITNESS: If that's blank, that means that the individual didn't -- didn't go to court. Or didn't make it to court. Or wasn't -- or was not admitted to one of the court parts.
BY MX. GREEN:
Q Right. So for people in DOC custody, does that mean that they were -- they would be somebody there on a bench warrant?
**A Repeat your question.**
Q So if they didn't go through a court part, right? There's a number of ways people get into DOC custody. One of them is they're arraigned on a crime and then they're brought to custody and they can pay bail or not, etcetera, etcetera.
One of the other ways is they come in on a bench warrant, so they don't have a first court date. They would have a future court -- they need to be



brought to court.
If this column is blank, does that mean that they're on -- they're on a bench warrant, or is there some other reason this might be blank?
**A It could be other reasons why it's blank.**
Q Okay. What other reasons would those be?
**A Again, for this -- this time period, the -- there was no court -- there was no court to produce them to.**
Q Right. I understand that your testimony is that sometimes there is no court to produce them to. But how do they get to DOC in the first place?
**A They're brought into DOC custody by the law enforcement agencies that are -- that are listed earlier in my testimony. NYPD --**
Q Right. And so --
MR. ZUCKERMAN: Let him finish. Let him finish.
MX. GREEN: Calm down, Mark.
MR. ZUCKERMAN: Okay.
THE WITNESS: They'll be brought into custody based on what I first stated in my testimony of the law enforcement agencies, NYPD, parole, troopers.
Sometimes Marshals, other officers of peace officer status, Port Authority, MTA, all these --



all these other -- a lot of enforcement agencies can bring individuals directly into DOC custody on warrants.
BY MX. GREEN:
Q Right. So people come into DOC custody on warrants, but when they're not on warrants, they're either stored at a precinct or stored at the courthouse before they're charged, right?
**A I -- I can't attest to how the other agencies detain their individuals prior to court production.**
Q I'm not asking -- well, you are here on behalf of the City, so you're supposed to be prepared to answer about all city agencies.
Is it fair to say you're not prepared to testify about the meaning of this data outside of DOCCS?
**A Yes.**
Q Okay. So putting aside what the data might mean outside of DOCCS -- or, not DOCCS. I'm sorry. DOC.
For DOC, is there a situation in which somebody comes into DOC custody where they don't have a warrant, and they also have not been arraigned?
MR. ZUCKERMAN: Object to form.
THE WITNESS: No -- no one would -- would come into DOC custody without an accusatory instrument.
BY MX. GREEN:



Q Got it. And so they would either have to be arraigned on that accusatory instrument, or the accusatory instrument would have to already exist and there would be a warrant to bring them in in that case, right?
MR. ZUCKERMAN: Object to form.
THE WITNESS: DOC would only take individuals in custody who possess an accusatory instrument.
BY MX. GREEN:
Q Right. And so either the person would have been arraigned on that accusatory instrument, or the accusatory instrument would exist, and they would have been arraigned in the past and they would be being brought in on some kind of warrant under the accusatory instrument, right?
MR. ZUCKERMAN: Object to form.
THE WITNESS: DOC will only accept individuals in custody with accusatory instruments.
BY MX. GREEN:
Q Right. You've testified to that, and I'm going to ask you to listen to my question carefully and answer the question I'm asking. I understand that an accusatory instrument has to exist. What I'm asking you is, so everyone who is in DOC custody has an accusatory

Page 105

instrument.
For them to be in DOC custody, am I right that one of two things has to be true; either, one, they were arraigned on that accusatory instrument and right after the arraignment they're brought in; or two, they were arraigned at some date in the past and they're being brought in specifically on some kind of warrant?
MR. ZUCKERMAN: Object to form.
THE WITNESS: There's other methods that individuals will come into custody other than what you listed.
BY MX. GREEN:
Q Okay. Okay. What are those other methods?
**A You have parole warrants, federal detainers, you have retention orders from OMH.**
MR. ZUCKERMAN: Speak up a little bit, please.
THE WITNESS: Sorry.
You have parole warrants, we have US Marshal detainers, we have the retention orders from OMH, in -- in addition to the supreme and bench warrants -- I'm sorry. The supreme and criminal warrants that -- that you stated.
BY MX. GREEN:
Q Okay. So is it fair to say that this blank

Page 106

means that one of the following is true; that it's a parole warrant, a federal detainer, a detention order from OMH or a Supreme or criminal bench warrant?
MR. ZUCKERMAN: Object to form.
THE WITNESS: Not -- not based on this -- this exhibit.
BY MX. GREEN:
Q Okay. But I'm not asking you based on this exhibit, I'm asking you the meaning of this column under the topic you were supposed to prepare for.
So can you tell me the meaning of this blank, right? What does it mean that this square is blank?
And that's what we're trying to get at. I thought you had answered and told me it means that, you know, they have come into custody not through an arraignment, but through one of these four things; parole, federal detainer, OMH detention, or a bench warrant.
Is that -- have I misunderstood you?
**A This -- this --**
MR. ZUCKERMAN: Object to form.
Go ahead.
THE WITNESS: This -- this exhibit doesn't address the other warrants that -- that I stated. It only addresses --

Page 107

BY MX. GREEN:
Q Okay --
MR. ZUCKERMAN: Let him finish.
THE WITNESS: It only addresses supreme and criminal court warrants.
BY MX. GREEN:
Q Okay. Let me -- let me bring it back because -- so back in Exhibit 6, we've got --
MR. ZUCKERMAN: This is a different exhibit.
MX. GREEN: Oh. I'm sorry. You're right, this is a different exhibit. I apologize. Let me close that. Close exhibit. You are correct. There it is. Okay. So let me zoom in and bring everyone to me. And let's actually move to the right a little and zoom out a little.
So we've got -- let me see if I can find actually a good example. Here we go. Bring all to me and let me pull up my annotations. Why am I not seeing annotate? Well, I guess I'm not allowed to annotate this document. That's fine.
BY MX. GREEN:
Q So do you see here where we have kind of three quarters of the way down the screen, where there are some yeses in the column that was Supreme Court warrant

Page 108

and the first court date column is blank?
MR. ZUCKERMAN: We're missing the column headings, Remy.
MX. GREEN: I know, but that's because of how you -- how you created the document. I can't fix that.
BY MX. GREEN:
Q I'm asking you to remember what the column headings are as we look at this data.
**A What you're presenting to me, I can't -- I can't see it in its entirety.**
Q Okay. So let me -- let me bring us up here. Do you see the column heading where it says: Supreme Court Warrant and First Court Date?
**A Yes.**
Q Okay. So please remember where on the screen those are as we go down, and I'm going to bring everyone to me.
Do you see where there are some yeses in the column that had been Supreme Court warrant and blank spots under first court date?
**A Yes.**
Q So for those, right? You said this document addresses only Supreme Court warrant or criminal court warrants. For those, does that blank spot mean that

Page 109

that person is in on a Supreme Court warrant?
**A They could be in -- being on other warrants as well.**
Q Okay. What other warrants could they be in on?
**A The ones I listed, U.S. Marshal warrants, parole warrants, detention orders.**
Q Okay. But for example, this leftmost column where we are, that's criminal court warrants, and if there isn't a yes there, that means that they're not in on a criminal court warrant, correct?
**A That means a criminal court warrant was -- was not entered at the time of the admission.**
Q Okay. Which means that there wasn't one, correct? That's not why they're being held?
**A Not that there wasn't one. There wasn't one entered upon the admission.**
Q Right. But that means that that's not why they're being held, even if one exists hypothetically, right?
MR. ZUCKERMAN: Object to form.
THE WITNESS: At the time of admission, it's not noted that a criminal court warrant existed.
BY MX. GREEN:
Q Right. Would you agree with me that it's --

Page 110

that it's important for DOC to note why they're holding somebody at the time of admission?
MR. ZUCKERMAN: Object to form.
THE WITNESS: Yeah. We know why we're holding someone at the time of admission.
BY MX. GREEN:
Q Okay. And so if somebody didn't write down that there was a criminal court warrant, that's because the reason you're holding the person, even if a criminal court warrant exists somewhere, is not the criminal court warrant, correct?
MR. ZUCKERMAN: Object to form.
THE WITNESS: Not correct. Depends when this data was captured.
BY MX. GREEN:
Q Okay. So you -- so there might be -- well, so where would I go to find that data?
**A I would -- I would -- like I stated earlier in my testimony, I would -- I would use the -- the information from this exhibit in conjunction with the individual's personal folder.**
Q Okay. But you did agree with me that it is important for DOC to know why they are holding somebody, right?
**A Yes.**

Page 111

Q It's also important to put important information in the IIS system, right?
**A Correct.**
Q And this information is pulled out of the IIS system, this spreadsheet, correct?
**A Yes.**
Q So if you were holding somebody on a criminal court warrant, right? The reason you were holding them was the criminal court warrant -- it should be here, right?
MR. ZUCKERMAN: Object to form.
THE WITNESS: If that's the only thing I'm holding him on, or we're -- or we're talking about these -- these specific blanks.
BY MX. GREEN:
Q If that's one of the reasons you're holding them.
**A If that's one of the reasons, I'm holding an individual on, and if it's a criminal warrant, then if that's the only thing I'm holding him on, is that what you're asking me?**
Q I'm asking if it's -- what if -- if a criminal court warrant is one of the reasons a person is being held, because of how important it is to know why you're holding somebody, a "yes" should be in the criminal

Page 112

court warrant column, correct?
**A Not -- not entirely. No.**
Q So there's information -- so despite how important it is to know why you're holding somebody, sometimes you don't record that you're doing it.
MR. ZUCKERMAN: Object to form.
THE WITNESS: You made a -- was that a statement or question, ma'am? I'm sorry.
BY MX. GREEN:
Q That was a question.
**A We know why we're holding someone in custody.**
Q Right. And you put it in IIS, right?
**A Yes.**
Q And so this, as an export from the IIS system, if it's not there, you're not holding them because of it, right?
MR. ZUCKERMAN: Object to form.
THE WITNESS: Not entirely true. No.
BY MX. GREEN:
Q Okay. So there are instances where, despite how important it is, DOC does not keep track of why they are holding somebody, correct?
MR. ZUCKERMAN: Object to form.
Misstates prior testimony.
MX. GREEN: That's why it's a new

Page 113

question.
THE WITNESS: We do track why we have individuals in custody.
BY MX. GREEN:
Q Okay. So if it's being tracked, why can't I rely on the fact that there's no "yes" in the criminal court warrant column?
MR. ZUCKERMAN: Object to form.
THE WITNESS: Individual could be held on other accusatory instruments.
BY MX. GREEN:
Q I understand that. What I'm asking about is purely the criminal court. If there is no "yes" in the criminal court warrant column, that person is not being held on a criminal court warrant, correct?
MR. ZUCKERMAN: Object to form.
THE WITNESS: Not -- that's not entirely true, ma'am.
BY MX. GREEN:
Q Okay. So why wouldn't that be there?
**A For these blanks that we're talking about right now?**
Q Yes.
**A Because the -- the -- you also have the Supreme Court that's marked as yes.**

Page 114

Q Right. So we have -- we have somebody here where there is a yes for both of them. Do you see that?
**A I don't -- I -- I see -- I see yeses marked in both columns, yes.**
Q Okay. And so for that person, they are probably being -- or that means at the least they are being held on both a Supreme Court warrant and a criminal court warrant, correct?
**A Yes.**
Q Okay. Great. So how about this person right above them that has a yes for Supreme Court, but nothing for criminal court? That means that that person is not being held on a criminal court warrant, correct?
**A I can't definitively say --**
Q Okay. Why not?
**A Because again, it depends on when this was captured. And I would -- would need to use -- utilize this in conjunction with the individual's folder.**
Q Okay. At the time this was generated, right? We're not talking about whether that person is being held in the future on -- for some other reason.
At the time this is generated, that person is not being held on a criminal court warrant, correct?
**A I can't -- I can't answer that entirely, Counsel.**

Page 115

Q Okay. Is that because DOC's data is so unreliable that you -- that you just don't believe it?
MR. ZUCKERMAN: Object to form.
THE WITNESS: No. You -- I -- I would need to utilize not just this exhibit. I would utilize the exhibit in conjunction with the individual's folder.
BY MX. GREEN:
Q Right. So this data is not trustworthy enough for you to use it without the person's individual folder, is that what you're testifying to?
MR. ZUCKERMAN: Object to form. Objection.
Go ahead.
THE WITNESS: This -- this data is a tool.
BY MX. GREEN:
Q That was not my question. My question is, is this -- is this data trustworthy enough to use it without the person's individual folder?
MR. ZUCKERMAN: Object to form.
THE WITNESS: The data is -- is trustworthy in conjunction with the individual's folder.
BY MX. GREEN:
Q Again, that was not my question. My question is, is this data trustworthy enough to use it without

Page 116

the person's individual folder?
MR. ZUCKERMAN: Object to form.
THE WITNESS: This data in the exhibit?
BY MX. GREEN:
Q Yes.
**A No. Because it doesn't capture everything that -- like, why an individual is in custody. It's based on specific parameters.**
Q Right. And I'm just asking about those parameters. I'm not asking about other parameters. I'm asking for the parameters that are included.
Are those parameters trustworthy enough to rely on without looking at the individual's folder?
MR. ZUCKERMAN: Object to form.
Go ahead.
THE WITNESS: No.
BY MX. GREEN:
Q No. Okay. Thank you. You said other parameters. Does the IIS system have other parameters like for example, whether there's a federal detainer, a parole warrant, or detention orders that could be exported?
**A Yes.**
MX. GREEN: Okay. We're going to call for a reproduction of this spreadsheet that includes

Page 117

that information.
BY MX. GREEN:
Q And as you -- as you testified earlier, it is -- that is information that would be important to have because it tells DOC why they're holding somebody, correct?
MR. ZUCKERMAN: Objection.
THE WITNESS: Yes.
BY MX. GREEN:
Q Okay. If we had all of those columns, would you be able to tell me confidently, based on what was in those columns and the absence or presence of an initial court date, whether you could say whether somebody was being held exclusively on a Supreme Court or criminal court warrant?
MR. ZUCKERMAN: Object to form.
THE WITNESS: No. I would need the folder in conjunction.
BY MX. GREEN:
Q Okay. All right. I'm going to close this and we're going to move on to the DOC lists. Let me start with what we've previously marked as Exhibit 2, and I'm pulling this up.
So these are -- this is a collection of information that you generated, correct?

Page 118

**A That's correct.**
Q Okay. So describe for me what this information is?
**A I got to zoom in. I'm sorry.**
Q No, please. And you should be able to do that.
**A Yeah. I'm doing it on my end. Okay. Your question again, Counsel?**
Q Okay. Can you just describe what information this is that you've generated here?
**A So the information I generated in this particular document, I noted -- noted Kings County. It's a listing consisting of columns; book and case, NYSID, first and last name, facility, housing area, the particular warrant associated with an individual, the hearing borough, and the admit date.**
**So this list was generated by me specifically identifying individuals who had warrants out of Kings County, and I utilized the IIS as the primary tool to export that information from.**
Q Okay. And the people who are listed in each of these, these are people who are still in DOC custody?
**A As of -- as of today?**
Q As of the date --
**A I don't know.**

Page 119

Q No. No. As of the date you're sending it?
**A As for the date that I'm sending it? Yes. They were still in DOC custody for the day I was sending it.**
Q So for example, we see somebody here, let's see. So this is 2022. We see somebody here who has -- who has -- the admit date is 9/12/2021 at the top.
Does that mean that that person had been in custody since 2021 and was approaching a year in DOC custody on a warrant?
**A So we're talking about the first -- the first row, 9/12/2021?**
Q Yeah. The first row.
**A So yeah. 9/12/21 they were admitted. And what was the next question? I'm sorry.**
Q And because of the date you're sending this, that means that that person is still in DOC custody on that warrant?
**A Not -- not necessarily only on that warrant. No.**
Q Okay. Not only on that warrant, but on that warrant?
**A But on that warrant, yes.**
Q Okay. And you had told me the other reason somebody might be in on -- right. They might also be on

Page 120

a parole warrant, they might be also be in on a federal detainer, they might also be in on detention orders from OMH, and there might be another -- right.
This first one I think reflects a criminal court warrant, but there might also be a Supreme Court warrant. Is that -- are those the other options?
**A Correct. When I -- when I ran these, I -- I ran the criminal and -- and Supreme Court warrants in conjunction. They weren't separated.**
Q Okay. So how would I find out if like -- so this person in the first row, I've looked through these. I don't think I see anywhere where two warrant numbers are listed in the same line.
So how would I know if one person is being held on both kinds of warrants?
**A The way the -- the warrant number is arranged would be able to --**
Q In what sense? Can you explain what you mean by that?
**A So in row 3, I'll -- I'll just use the identifying marker 13A.**
Q Okay. Yeah.
**A So the -- the CR-001735-22KN, that -- that would strike me as a -- a criminal court warrant based on the -- the way the docket is written. And right**

Page 121

**below, 71858-21 to me would reflect an indictment, the way that number is written. I can --**

Q Sorry. Please.

**A I can -- I can tell you that these belong to the same individual due to the admit date and times coinciding.**

Q Got it. Okay. And so similarly, these first two rows, even though they're on the same -- well, let me ask that question. So for the first two rows, based on what you just said, I think that those are probably the same person.

Is there a reason that person is listed twice on the same warrant?

**A Those are two different warrant numbers.**

Q Are they? Oh. No. You're right. You are -- sorry. It was a -- I was not zoomed in enough.

**A It's okay.**

Q The last number is different. I see it. Okay. Got it. Okay. That makes a lot of sense to me then. Okay. So is it fair to say then, if somebody doesn't have both a criminal and a -- and a Supreme docket number listed under -- or I'm sorry.

Warrant number listed, that means that they're only in on one of the two, even if they are in on other reasons?

Page 122

**A No. Not definitively.**

Q Not definitively. Okay. How would it happen that something like that would have been excluded from this list?

**A Again, this is pulled from the IIS and it's dependent on what was entered in the -- in the data. So if -- if the data was not -- was not entered, then -- then I can't pull -- I wouldn't be able to generate this -- this information.**

Q Understood. So if the IIS system has the data, it's going to be here?

**A Correct.**

Q Okay. And the only problem is that, as you testified earlier, sometimes IIS is not reliable?

MR. ZUCKERMAN: Object to form.

THE WITNESS: Never said IIS was not reliable.

BY MX. GREEN:

Q You said it was not trustworthy without checking with the individual folders, correct?

MR. ZUCKERMAN: Object to form. Misstates prior testimony.

THE WITNESS: Not -- not trustworthy. I don't -- I don't count that to be unreliable.

BY MX. GREEN:

Page 123

Q Okay. So something that's not trustworthy is reliable?

MR. ZUCKERMAN: Object to form.

THE WITNESS: The IIS used in conjunction with checking the folder is a valuable tool.

BY MX. GREEN:

Q Okay. In generating these lists, are you also checking the individual folder?

**A In generating this list, I'm having conference with the facilities while generating these lists.**

Q Okay. But you're not using the individual folders, correct?

**A I'm utilizing staff to check the folders for me. I'm instructing staff to check the folders.**

Q Okay. So each of these reflects that you talked to somebody on staff who pulled the folder and confirmed the information here?

**A For the most part, yes.**

Q Okay. So given that that happened and you did do the thing that's required to make the IIS information reliable, if a -- if a warrant isn't listed here, someone's not being held on that -- on that warrant, right?

**A A warrant -- a warrant -- false. A warrant could not be listed and the individual could still be**

Page 124

**held on the warrant.**

Q Okay. And is that because the person reviewing the file made a mistake? Is that because the file itself is unreliable? Something else?

MR. ZUCKERMAN: Object to form.

THE WITNESS: No. Could have been the -- the IIS didn't capture the input correctly, or it wasn't -- inputted correctly as well.

BY MX. GREEN:

Q Right. But your testimony was that you weren't just using IIS, you were also calling people at the facilities to verify information.

So even if it's not in IIS, because somebody was reviewing the folder, they should have found it, right?

MR. ZUCKERMAN: Object to form.

THE WITNESS: I can't answer that definitively.

BY MX. GREEN:

Q Well, you were relying on them to find it, correct?

**A I didn't personally have it in my possession, so that's why I can't definitively answer that.**

Q We're not at -- so you are here today as a representative of the City of New York. You are

testifying about the City's procedures.
The people you were talking to, those were city employees, correct?
A Correct.
Q So the -- somebody who works for the City reviewed the folder, correct?
A Yes.
Q And what you've told me is that to get reliable information, you have to have the IIS information and the folder, correct?
MR. ZUCKERMAN: Object to form.
THE WITNESS: To -- to understand the full scope of why someone is in custody, I will utilize the IIS in conjunction with their folder.
BY MX. GREEN:
Q Right. And "I" here has to mean the City. So let's not -- again, let -- please answer on behalf of the City.
So the City, in generating these lists, has reviewed both the IIS and the folders, correct?
MR. ZUCKERMAN: Object to form.
THE WITNESS: Are you -- are you -- when you -- when you refer to this list, this list that I made or the City made? Because I -- I made this list.
BY MX. GREEN:



Q Right. But you are a city employee, correct?
A So -- yes.
Q Right. So the City went -- right. When you are doing this, you are doing it on behalf of the City, correct?
MR. ZUCKERMAN: Objection.
THE WITNESS: Yes.
BY MX. GREEN:
Q So I am asking you about any -- right. You are not here testifying today personally. You are testifying on behalf of the City. So the City employees that worked together to generate this, that includes you, but it also includes people at the facilities.
The City's agents reviewed both parts that you need to, to make this accurate, right? They reviewed the IIS and they reviewed the folder, correct?
MR. ZUCKERMAN: Objection.
THE WITNESS: I reviewed this list and I relied on city employees to help me verify the -- the warrants that are contained in the IIS, by reviewing the folders.
BY MX. GREEN:
Q And as the City, you have no reason to believe that those people gave you personally false information, correct?



MR. ZUCKERMAN: Object to form.
THE WITNESS: I have no reason to believe that.
BY MX. GREEN:
Q Okay. So assuming that those city employees did their job correctly -- and we can discuss whether they did or not later, but assume they did do their job correctly.
In this list, if somebody was being held on a criminal court warrant, we should have the criminal court warrant number here, correct?
A Yes.
Q Okay. And if somebody was being held on a Supreme Court warrant, we should have the Supreme Court warrant number here, correct?
A Yes.
Q And as you sit here representing the City today, you have no reason to think that the information that other city employees gave you personally was wrong, correct?
A Correct.
Q Okay. Great. So of these people, we know whether they're in on a Supreme Court or a criminal court warrant, and they are in on at least one because they're here at all, right?



A No. They could be held on other -- other -- they -- they could be held on other accusatory instruments.
Q I understand that hypothetically they could also be held on other accusatory instruments, but because they're here, one of the reasons they are being held is the listed warrant, correct?
A Yes.
Q Okay. So you reviewed the -- or, I'm sorry. In discussing these with the other city employees, did you discuss whether they were being held for other reasons other than the warrant?
A Not all the time.
Q Okay. Is that a question that you asked them?
MR. ZUCKERMAN: Object to form.
THE WITNESS: The -- that's not a question I -- I would need to ask them all the time because there are other notations in the IIS that show that -- why they also in custody besides the warrants.
BY MX. GREEN:
Q Okay. Did you review those other notations?
A I'm sorry? Did I review?
Q Those other notations in IIS?
A Yes.
Q And so you felt that those notations in IIS

Page 129

were accurate enough that you didn't need to check it with the person reviewing the individual file sometimes, correct?

A **I did check every file.**

Q Okay. So what you're telling me is you did discuss with every -- with the people in the office about every one of these, whether they were also being held for reasons outside of the listed warrants, correct?

A **Yes. For the most part.**

Q Okay. So looking back on that, about how often were people being held for reasons other than the criminal or Supreme Court bench warrants?

MR. ZUCKERMAN: Object to form.

THE WITNESS: I can't answer that definitively.

BY MX. GREEN:

Q I'm not asking for a definitive answer. I'm asking, was it -- was it 100 percent of the time?

A **I can't answer that.**

Q You can't even tell me if it was 100 percent of the time?

A **No. That's -- that's -- that's an exact -- that's the exact answer that you're looking for.**

Q Well, okay. Can you remember at least one

Page 130

instance where somebody was being held only a criminal or Supreme bench warrant or both?

A **Only being held? Yes.**

Q Yeah. So you know it's not 100 percent.

A **I'm not going to say it's not 100 percent, but I'm answering your question based on the -- the question you've given me.**

Q Right. Well, you just testified that you know that it happened at least once, right? You remember at least once when it happened.

A **I remember it happening. Yes. During COVID. Yes.**

Q Okay. And so my question is, you know that it's not 100 percent because you know at least once it was -- it was somebody just on a Supreme or criminal bench warrant, right?

A **After I checked. Yes.**

Q Yes. And I'm only asking after you checked, right? I'm asking about your checking process. Okay. So we know it's at least one.

Is it at least 20?

A **I don't know that.**

Q You have -- okay. Well, let me ask it this way. You generated -- across the lists that you reviewed for today, you generated a few thousand people,

Page 131

right? There are a few thousand people in these lists.

A **I don't recall the exact amount of individuals, but --**

Q It's at least a few hundred.

A **-- over the course, I mean, I ran that list about two years.**

Q Yeah.

A **So -- and there are some duplicates as well.**

Q Sure. There are some duplicates. I'm just asking, is it fair to say that it is at least 500 people across the entire two years you ran this list?

MR. ZUCKERMAN: Object to form.

THE WITNESS: I -- I can't give a definitive answer. I'd have to count it.

BY MX. GREEN:

Q It's more than one, right?

A **It's more than one.**

Q It's more than 20?

A **More than 20.**

Q More than 100?

A **I can't -- I can't answer that definitively.**

Q I mean, we're talking about -- this document alone that we're looking at. This is 12 pages, and it looks like there are at least 20 people on this page, on this first page. So 12 times 20 --

Page 132

A **Some may be -- some may be duplicates.**

Q Right. I'm including duplicates in the count. I'm happy to go through this and count this up. So okay. Let's just do that. Okay.

So this first one, those first two lines, that's one person, right?

A **Mm-hmm.**

Q The line 3 to 5, that's a second person, right?

A **Yes.**

Q Okay. Line 6, that's a third person. Yes?

A **Yes.**

Q Line 7, that's a fourth person, correct?

A **Yeah.**

Q Lines 8 and 9, that's a fifth person, correct?

A **Yeah.**

Q Line 10, that's a sixth person, right?

A **Yes.**

Q Then the first line of this next one, that's a seventh person?

A **Yeah.**

Q The second line is an eighth?

A **Yeah.**

Q The third and fourth, that's a ninth?

A **Mm-hmm.**

Page 133

Q These next four --

THE PROCEEDINGS OFFICER: Was that a yes?

THE WITNESS: Yes. Yes.

MX. GREEN: I'm sorry?

THE WITNESS: I'm sorry, Ms. Webster.

MX. GREEN: And I'm sorry too.

BY MX. GREEN:

Q These next four, that's a tenth?

**A Yes.**

Q This -- or I'm sorry. Actually, these next three because -- are a tenth. And then this next one after that, with the 2054 admission, that's an eleventh?

**A Yes.**

Q And then the next one, that's a twelfth?

**A Yes.**

Q This EMTC, that's a thirteenth?

**A Yes.**

Q Second EMTC, that's a fourteenth?

**A Yeah. Yes.**

Q And so if we kept doing this for this page, we'd get way over 20, right?

**A It seems so.**

Q And there are 12 pages of this. So is it fair to say 12 times 20 is 240? There are at least 240 people in this document alone, correct?

Page 134

**A Counting the duplicates?**

Q Yes. Because we just processed the duplicates for this page and got over 20. And probably way more than 20. But -- yes. So -- right.

But cut off the duplicates, we're at at least 240 for this document alone, probably, right?

**A Can't definitively say yes. But I'd rather count -- count the whole thing. I didn't keep track of -- I didn't keep track of every -- of everybody that was produced. I just listed them.**

MX. GREEN: Okay. But let's close this exhibit and let's go to what we'll mark as Exhibit -- are we on 7? Yeah. We're on 7. So this is the Queens one. Let's mark this as Exhibit 7. This is another 15 pages.

(Rigault Exhibit 7 marked for identification.)

BY MX. GREEN:

Q Is it fair to say that we'd probably get a similar result if we went through individually each person on this first page?

**A We'd have to go through it.**

Q Right. I mean, if you want to -- if you want Mark and I to spend our whole day here with you going -- counting people on this sheet, that's fine.

All I'm saying, is it fair to say that we

Page 135

would probably get about 20 people or more on this page?

**A Let me see this page. It keeps refreshing. Looks about right. Looks about -- looks about 20 on this page.**

Q And we -- and there are 15 pages in this document, correct?

**A Yes, 15.**

Q Okay. So again, we probably have a few hundred in this document alone, right?

**A I wouldn't say a few hundred, but at least 20.**

Q Right. Not on the page, though, in the whole 15-page document. So if it's about 20 a page, multiply that by 15. 20 times 15, let me just put in a calculator, is 300.

**A Twenty -- 20 a page or two? Oh. Okay. It's looking like -- okay. I was looking at it as each column was one.**

Q Yeah.

**A Including duplicates, 20 a page.**

Q Okay.

**A Yeah.**

Q Yes. And so there's probably about 300 in this 15-page document, correct?

MR. ZUCKERMAN: Object to form.

BY MX. GREEN:

Page 136

Q And I'll represent to you that 20 times 15 is 300?

**A Again, I'd have to count it up, but if we're going by your 20 times 15, then yeah.**

Q Okay.

**A And yes. Sorry.**

Q Okay. So I'm going to bring you to the end of this document. So this is page 15 of Exhibit 7. When you say:

See the defendants below who have open Warrants as the only holds.

What does that mean?

**A That means when I sent this, January 25th, so those -- these are individuals that I identified as being in -- in DOC custody that only had a -- only had warrants as holds.**

Q Okay. So it looks like this is 1, 2, 3, 4, 5, 6, 7, 8, 9, 10. That's 10 people with only warrants?

**A I don't know if those are duplicates, as the names are --**

Q Right. I don't either. There are redactions.

**A Could be five.**

Q Could be five. But these are people who are only being held on warrants, correct?

**A Correct.**

Page 137

Q Okay. And then, so this -- if we scroll, I'll bring you back to me. We have this next email from February 3rd where you said:

Defendants below who have open Warrants as the only holds.

That means the same thing, right?

**A Yeah. Yes.**

Q Okay. So there's no other reason those people are being held. They're being held only on bench warrants, whether from supreme or from criminal, correct?

**A Yes.**

Q Okay. So now let's go to the previous page. This is page 14. You sent this in the same thread, but it doesn't have the same information before that.

Does that mean that these are still people who are being held only on bench warrants, or --

**A What's -- what's the date on the one before? I'm sorry.**

Q The date on the one that we just looked at was February 3, 2021. And the date on this one is February 9, 2021.

**A So if it didn't have "only holds," then these are individuals who are held in custody on -- on warrants in conjunction with other -- other accusatory**

Page 138

**instruments.**

Q Okay. Is there a reason you stopped specifying that they were being held on only warrants?

**A If I stopped specifying it back then because those warrants were either vacated, so then I just kind of, I prioritized those -- individuals first. And then I started kind of like prioritizing individuals afterwards who had low bails or a -- or a nominal bail.**

**So they would -- I didn't have those -- I didn't have that notation needed anymore.**

Q Well, these are people on outstanding warrants, so they wouldn't have bail, would they?

**A They can have bail on other -- other cases on -- in other counties.**

Q Okay. Right. But the purpose of this sheet that you produced is to -- is to produce people to court on warrants, correct?

MR. ZUCKERMAN: Object to form.

THE WITNESS: The -- the purpose of this was to -- was a tool to help OCA as well as DOC to restart after the pandemic to get individuals produced to court after they've been down.

BY MX. GREEN:

Q On -- per the subject line, outstanding warrants, correct?

Page 139

**A Correct.**

Q Right. So the purpose of somebody being on this list is that they have an outstanding warrant, correct?

MR. ZUCKERMAN: Object to form.

THE WITNESS: They can have outstanding warrant as well as other -- other accusatory instruments holding them into DOC custody. The outstanding warrant is -- is just -- would -- would be one -- one reason.

BY MX. GREEN:

Q Okay. I'm going to close this exhibit. Let's go back to Exhibit 2 for a minute.

MR. ZUCKERMAN: I just need a men's room break.

MX. GREEN: Okay. That's fine.

MR. ZUCKERMAN: And how much -- how much longer do we have here?

MX. GREEN: It really depends on the answers.

MR. ZUCKERMAN: Okay.

MX. GREEN: I had hoped that this would be a lot easier, but --

THE PROCEEDINGS OFFICER: We are now off the record.

(Off the record.)

Page 140

BY MX. GREEN:

Q All right. All right. I'm going to bring you to what we've previously marked as Exhibit 2, and we're going to go to the final page of this. Or the final two pages, rather.

So let's start at the bottom of this page. And I'm going to zoom in just so that it's legible. Bring all to me. So this is page 11 of Exhibit 2.

Do you see here where you wrote: Good evening, see defendants below who have open Warrants as the only holds?

**A Yes.**

Q And then I'm going to bring you to the next page, and this is what's below there. So like the last one, this is at least 10 people who had warrant-only holds, correct?

**A Approximately. I don't know if -- if these are duplicates.**

Q Fair enough. Some of them do look like they might be duplicates, but, right. There's, I think there's 1, 2, 3, 4, 5, 6, 7. Looks like there are 20 lines here.

So even assuming every single one is a duplicate, and like maybe that averages out with triplicates and no duplicates, there's probably about 10

Page 141

here, right?
A **Probably.**
Q Yeah. Okay. And so these 10 people, that's warrant-only holds, correct?
A **Yes.**
Q Okay. And so then we have, if we go back to page 11, you've written at the top of this one -- I'm going to bring us to me -- where you say:
See defendants below who have outstanding Warrants, Kings County.
So these are all people who have outstanding warrants. Does the fact that you haven't specified mean that you don't know whether they have other reasons they're being held, something else?
MR. ZUCKERMAN: Object to form.
THE WITNESS: Based -- based on my -- my first notation stating that "only have," coming to this one that says "who have outstanding" and I didn't put "only," then they have other -- other accusatory instruments that -- that would keep them in DOC custody on top of the warrants.
BY MX. GREEN:
Q Right. They may have, or you know they have?
A **Based on me -- while I prepared this list, yeah. They -- they would have.**

Page 142

Q Okay. What about the ones where -- and I'll bring you to one. Or let me just ask a follow-up question on that.
And that is your testimony as the City of New York, having reviewed this and prepared for this deposition, that you are certain that each one of these, in addition to an outstanding warrant, had some -- something else?
MR. ZUCKERMAN: Object to form.
THE WITNESS: Yes. To the best of my knowledge. Yes.
BY MX. GREEN:
Q Okay. You're certain of that?
A **Yes.**
Q Okay. Let's bring all to me. How about here where you don't say anything? Do we know what that means?
A **This is what, February 8th?**
Q 9th, it looks like, but yeah.
A **9th. Just outstanding warrants for that particular borough.**
Q Okay. They are -- sorry. I interrupted you. Please just say what you said again?
A **Just outstanding warrants for that particular borough just based on the subject.**

Page 143

Q Okay. Let me bring all to me again. This is around May 4th. This "Only Hold" column, what does that mean?
A **"Only hold" referred to that this particular warrant for that individual was the only hold that kept them in DOC custody.**
Q Okay. And similarly, where it says under:
Only Hold, NYS Parole Hold, that means that they would have a parole hold as another reason they would be, right?
A **On top -- on top of the -- the warrant. Correct.**
Q Great. So all of these here, I'm going to bring us a little bit up. So each of these where it says: Only Hold, with different warrant numbers.
That means that the person that that's about, each one of those is a person who is being held only on a warrant, correct?
A **Correct.**
Q Okay. Fair to say there's like 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11. So there's 11 on this page. There's probably more than that in this document?
A **It depends because -- I'm sorry. "Only Hold" wasn't a column that was always there in the beginning.**
Q Understood. Can you tell me why you started,

Page 144

or did you start generating the "Only Hold" column?
A **I did.**
Q Okay. And is that -- that's not -- is that a native field from IIS? Is that something that you kind of were putting together with effort, something else?
A **That was something I put together with -- with effort. As I -- as I -- as you see, as this is in May. I started this in January. I got better at compiling this, so I made little columns to kind of keep me abreast as to the mission, if that makes sense.**
Q Totally. So sorry. Were you done?
A **No. I was done.**
Q Okay. So if I count up all of the ones that say, "only hold," that's going to be -- that total number of people is going to be the number -- a minimum number of people that were being held only on warrants, right?
A **Well, you -- you -- I'm sorry, Counsel. Because every day is different. So if you notice, it's May 17th, May 20th, May 26th. So for that particular day you have to reference to the particular day that that chart was generated for.**
Q Understood. Totally understood. But for that individual person on that individual day in that individual chart, that means that that person on that

Page 145

day had an outstanding warrant and that was the only reason they were being held, right?

**A Yes.**

Q And so if I count all of those up, I can know that kind of across time, there were X number of people being held only on warrants, correct? At least X people.

MR. ZUCKERMAN: Objection.

BY MX. GREEN:

Q Is that a yes, a no? Are you speaking that I can't hear? I'm sorry.

**A No. No. I'm -- I'm trying to answer your question.**

Q Take your time.

**A Yes.**

MX. GREEN: Okay. So I'm going to close this one out because I think we've got a good idea of what's in here. Let me next go to the Bronx. And we'll mark this -- we're on 8? Yes. As Exhibit 8.

(Rigault Exhibit 8 marked for identification.)

MX. GREEN: Everyone see it?

THE WITNESS: Yes.

MX. GREEN: Okay. So I'm going to bring everyone to me. This one starts a little differently, so I just want to look at this.

Page 146

BY MX. GREEN:

Q So you have this email from Marcus Diaz that says: Reply (all), with defendants that are being held on outstanding bench warrants for Bronx Supreme Court.

So this thread is just Bronx Supreme, correct?

**A Yes.**

Q Okay. And so what you're replying to this with is people who are being held on outstanding bench warrants, correct?

**A Yes.**

Q Okay. So I'm going to bring all to me on the next page. So for this first one where you say: Thank you, Mr. Diaz, see below.

Are these people warrant-only, or can you not tell? Or are they -- or do you know that they're not warrant-only?

**A I'm sorry. I can't tell if they're warrant-only.**

Q Understood. If we go up the page a little to this January 7th email, you have one person who you say is:

Below defendants who have open Warrants as the only hold.

So this person is a warrant-only, correct?

**A Yes.**

Page 147

Q All right. When you say -- and I'll bring us to me on January 15th: I'm adding on the following individual. And then also above here, on January 19th, where you say: I'm adding the following -- on the following individuals.

Is that adding on to the -- to a warrant-only list, or can you not tell?

**A Are -- are you -- I'm sorry. What -- which -- which date? March, February?**

Q So it's -- you see this January 15th where we are?

**A January 15th. I'm sorry.**

Q Where you say -- where you say: I'm adding on.

**A I can't -- I -- I don't know if that's only warrant or other holds.**

Q Fair enough. Let me just go back a little bit and see if there's any other things I have questions about in this one. If there's no explanation in your email, it's like the last ones where you just don't know, right?

So you know, let me bring you to page 8. So here on August 18th, you just reply with a list.

So there you can't tell whether it's warrant only, correct?

Page 148

**A They -- they would have other holds if I didn't specify it.**

Q Okay.

**A Given -- given the -- the date that I -- I gave -- I put in the graph, the August.**

MX. GREEN: Okay. I'm going to close this and we'll do New York County last. And then after that, just one more line of questioning and then we can be done. So let's mark this as Exhibit 9.

(Rigault Exhibit 9 marked for identification.)

BY MX. GREEN:

Q So let's go to the end again. Bring all to me. Do you see this January 25, 2021 email where you say: Defendants below who have open warrants as the only holds?

**A Yes.**

Q So those people would be warrant only, correct?

**A Yes.**

Q And then you reply all to that with no further specification. Does that mean that these people are warrant only, have something else, or you can't tell?

**A What's -- what's the -- what's the next date that you went to? I'm sorry.**

Q January 27th.

Page 149

A So January 25th to the 27th. These individuals, I mean, have -- have warrants in conjunction with other holds.
Q You're certain they had other holds?
A About 90 -- 95 percent. Yeah.
Q Okay. 95 percent. Okay. I'm going to bring all to me for a February 23rd email.
So like the Kings County one that we looked at before where it says: Only hold. Does that mean that the warrant is the only hold?
A Correct.
Q And then I'm going to bring us up again where it says warrant is the only hold on March 1st. Does that mean that this is the only hold?
A Correct.
Q Okay. And that's going to be true throughout this document, right?
A If it's notated, yes.
Q Okay. Let me bring us here to March 15th and if we scroll down a little bit to March 10th.
Is there a reason you stopped doing the only hold notation between those dates?
A If I did, I don't -- I can't recall why I did that. And, I can't recall. I'm not going to lie. I -- I can't recall.

Page 150

Q That is a perfectly fine answer. So you wouldn't know necessarily whether for these people that's an only hold because you didn't notate it, right?
A For the most part. Yeah.
Q Okay. And so if we keep going back up, we see a bunch more only holds. Fair to say that there are like at least 10 only holds across this page?
A Yes.
Q Okay. All right. I'm going to close for all. Is it fair to say that over those instances where we covered people being only held on warrants, that there were at least 40 of them that we looked -- that we looked at just now.
A To -- to all boroughs?
Q Yes.
A Approximately.
Q Approximately. Meaning the answer is yes there's at least 40?
A Approximately, yes.
Q Okay. So the last thing I have to ask you about is, so you started generating these lists.
Can you tell me a little bit about why you started generating these lists?
A Started generating these lists -- I'm sorry. Started generating these -- these lists back in 2021 as

Page 151

a -- as a tool to help DOC and OCA collaboratively start back court production after the pandemic.
Q So there was a problem with court production kind of during the peak of the pandemic?
MR. ZUCKERMAN: Object to form.
THE WITNESS: As I -- as I stated early in my testimony, the courts were operating in a limited capacity.
MX. GREEN: Okay. And --
THE WITNESS: So once they started to operate in full capacity, we needed a system so that we didn't, in a sense, flood the courts with -- with defendants without a plan once they were able to operate in full capacity.
BY MX. GREEN:
Q Okay. So your testimony is that this system was about reducing the number of people brought to court, not making sure that everyone was brought to court?
MR. ZUCKERMAN: Object to form.
THE WITNESS: No. That's not what I stated, Counsel.
BY MX. GREEN:
Q Okay. So you said that it was to prevent a flood, so?

Page 152

A Meaning that the courts were operating limited capacity during the pandemic. Once they began operating in full capacity, we don't have -- the DOC doesn't have the transportation to, you know -- you know, you send 1000 inmates to court, and nor do the courts have the capacity to deal with that.
So we developed a system, developed a -- a procedure to slowly get everybody online within the City to get defendants produced to court.
Q Right. So the purpose of this was to make sure that you weren't producing too many people, right?
A No.
MR. ZUCKERMAN: Object to form.
THE WITNESS: No. The -- the purpose of this was not -- was not to make sure we weren't producing too many people. That's false.
BY MX. GREEN:
Q Your testimony was, quote, "you know, you send 1000 inmates to court and the courts -- and nor do the courts have capacity to deal with that."
A My -- my statement was that in order to transport defendants in a safe and secure manner to court, we need -- we developed a procedure. It's -- it's not safe for DOC personnel or OCA staff to handle that many defendants at one given time.

Page 153

**So this procedure was put into place to slowly integrate individuals to court as they were opening up full operational status with OCA.**
Q Okay. And again, as I said, the point was to make sure that you weren't -- you weren't -- that you didn't end up putting too many people into the court system, right?
**A That -- that was --**
MR. ZUCKERMAN: Object to form.
THE WITNESS: That wasn't my point. So I hope my statement just now just clarified what I was trying to convey.
BY MX. GREEN:
Q Okay. So you know, let me ask this another way, or let me get at this another way.
When did the court system go back to full capacity?
**A I -- I don't recall. I don't recall when the -- when the court -- when OCA went back into full capacity.**
Q Was it before, let's say, December 2020?
**A I can't recall when they went back into full capacity. I'm sorry.**
Q Okay. So what triggered you starting making -- like, did somebody command you to start making these

Page 154

lists? Did the mayor's office reach out to DOC and say, Let's start making these lists? What triggered this to happen?
**A Just --**
MR. ZUCKERMAN: Object to form.
Go ahead.
THE WITNESS: I -- I triggered this list. My respect for people, my respect for the -- the judicial -- judicial process. And just to kind of help everybody along all three agencies, MOCJ, DOC, and OCA to -- to kind of get this restarted after the pandemic.
BY MX. GREEN:
Q Okay. So you just did this on your own spontaneously?
**A I -- I realized that where I -- where I worked at, custody management, my -- my duty, that eventually the courts would -- would start opening.**
**But although we already have the mechanism of the IIS that we normally utilize to bring individuals to court, we kind of, we needed a -- a -- we needed a -- a more specific strategy to ensure that -- that we did this in a safe and secure manner.**
Q And that was your idea?
**A Yes.**
MX. GREEN: Okay. Let me -- let me bring

Page 155

us to this email thread we'll mark as Exhibit 9.
(Rigault Exhibit 10 marked for identification.)
BY MX. GREEN:
Q The first is blacked out, but if you keep scrolling, please just review this thread, and I'll give you a minute.
THE PROCEEDINGS OFFICER: Counsel, I have marked it as Exhibit 10.
MX. GREEN: Oh. I'm sorry. You're right. I -- it is 10. Thank you for the correction.
THE WITNESS: Counsel, where do you want me to start -- start at? I'm sorry.
BY MX. GREEN:
Q Just review the whole thread and then give me a moment or -- and then tell me when you're done.
**A Okay. So I'll start at page -- from the bottom, 7?**
Q It's probably best to go from the back to the front.
**A Okay.**
Q Okay. So I would like to -- or, I'm sorry. Are you ready?
**A Yeah. I'm ready.**
Q Okay. So let's start at the end of this document. I'll bring us all to page 6. So here we have

Page 156

an email from somebody at the Legal Aid Society to people at the Office of Court Administration and the Mayor's Office of Criminal Justice.
Is that fair to say?
**A Yes.**
Q And it attaches a letter. Are you aware of the letter that it attaches?
**A No.**
Q Okay. So when it says:
Please see the attached letter concerning Legal Aid clients that are arrested on outstanding bench warrants and not brought before the court in a timely manner.
Are you aware of the issue that this is being described -- that is being described here?
**A Yes.**
Q Okay. And that is the issue that you were working on when you were -- when you were creating those lists, correct?
**A Yes.**
Q Okay. So now I'm going to bring us to page 3. Bring all to me. Do you see where Shiri Wolf sends an email on January 21st?
**A Yes.**
Q And Shiri Wolf, that is somebody at the

Page 157

Mayor's Office of Criminal Justice, right?
**A Yes.**
Q Okay. And she says:
We are in active communication with DOC, PD, and OCA on this issue. As soon as I have any concrete updates, I will share it with you.
So that is somebody communicating about this issue before you started making the lists, correct?
**A No. I -- I think my first list was in January of 2021.**
Q Okay. So yes. I believe your first list was in January. Okay. Fair enough. So let me bring you to the next page, page 2. At the very top -- I'm sorry. The part I want to look at splits the two pages, so we just have to do that.
So if you see at the bottom where it says:
DOC has designated an individual to be primarily responsible for addressing this issue. He has reviewed a list of everyone who is in on a warrant to identify the --
Oh. Sorry. "To identify those" -- sorry.
I'm having an issue with what's being covered by the page number.
**A I could kind of see. I can see it.**
Q Yeah:

Page 158

To identify those individuals who are lodged solely on the basis of --
And then we'll go to the next page:
Of an outstanding criminal or Supreme Court warrant. He then contacted and provided those names to the chief clerks in each criminal part to ensure those individuals were brought before a judge expeditiously.
So that's referring to your list process, correct?
**A That's correct.**
Q And so is this email accurately describing the purpose of your task when it says the purpose was to identify those individuals who were lodged solely on the basis of an outstanding criminal or Supreme Court warrant?
MR. ZUCKERMAN: Object to form.
THE WITNESS: It wasn't -- it wasn't solely on that, but --
BY MX. GREEN:
Q So you're saying that -- sorry.
MR. ZUCKERMAN: He's talking.
THE WITNESS: It wasn't solely on that, but it encompassed on what they were -- what they were trying to address as well.
BY MX. GREEN:

Page 159

Q So you're saying that the person at the Mayor's Office of Criminal Justice was wrong about the purpose of the lists?
**A I -- I never said that.**
Q Okay. Well, she says that:
DOC has designated an individual to be primarily responsible for addressing this issue. He has reviewed a list of everyone who is in with a warrant to identify those individuals who were lodged solely on the basis of an outstanding criminal or Supreme Court warrant.
Is she inaccurately describing what you were doing?
MR. ZUCKERMAN: Object to form.
THE WITNESS: I -- I said -- I said she - - I did say that she's correct, but I also encompassed other things as well in conjunction.
BY MX. GREEN:
Q Okay. And what -- sorry. Please finish.
**A That's -- well, I never said that what she said was inaccurate. I said I -- I compiled those lists and encompassed what she was looking for as well.**
Q Okay. And you see where she says:
Going forward, he will review this list on daily, and notify the appropriate clerk if he identifies

Page 160

someone who falls into the above category.
Do you see that?
**A Yes.**
Q So were your emails -- so the emails that didn't say anything, were those identifying people who fell into the above category, or were you doing something else and not identifying individuals who fell into the above category?
MR. ZUCKERMAN: Object to form.
THE WITNESS: Identified individuals who were held in custody on criminal and Supreme Court warrants at that time.
BY MX. GREEN:
Q And based on what she describes, solely on outstanding criminal or Supreme Court warrants, correct?
**A It wasn't always solely on bench and -- it wasn't -- it wasn't -- the list wasn't always solely criminal and Supreme Court warrants.**
Q Okay. So were you not doing what she describes here where you were notifying the appropriate clerk that you identified someone who falls into the above category?
MR. ZUCKERMAN: Object to form.
THE WITNESS: I did, yet I still encompassed the things that she asked for.

BY MX. GREEN:
Q So does that mean that when you didn't comment any further, what you were doing is doing what she says you're doing and identifying people who fall into the above category?
MR. ZUCKERMAN: Object to form.
THE WITNESS: As stated, I identified individuals who were in custody for criminal and supreme warrants.
BY MX. GREEN:
Q I understand that. What I'm asking -- what she describes is specifically solely on outstanding criminal and Supreme Court warrants. We agree about that, right?
**A My list -- my list encompassed those -- those individuals as well.**
Q Right. I'm not -- I'm not asking about what you -- I'm asking about what she's saying here.
We agree that what she says is your job was to alert the appropriate clerk about people who are held solely on outstanding criminal and Supreme Court warrants, correct?
MR. ZUCKERMAN: Object to form.
THE WITNESS: I answered the question, Counsel.



BY MX. GREEN:
Q Well, I'm -- if I -- please give me an answer. I must have missed it.
Do we agree that what she's talking about here is you identifying people to the relevant clerks who are held solely on outstanding criminal and Supreme Court warrants?
MR. ZUCKERMAN: Object to form.
THE WITNESS: The list I compiled consists of individuals who were held on criminal and Supreme Court warrants.
BY MX. GREEN:
Q Okay. So you are not capable of giving me a yes or no answer about whether we agree about what she's saying here?
MR. ZUCKERMAN: Object to form. He answered your question five times. One more time, and I'm --
MX. GREEN: He didn't, though. And I'm going to keep asking it until I get a direct answer.
MR. ZUCKERMAN: Well, I'm going to have to go to the court then. I mean, he's -- you've asked it five times, he's given the best answer.
MX. GREEN: He has not. And if you -- if you're going to instruct him not to answer, we can go to



court.
MR. ZUCKERMAN: I'm not instructing him, but you're not going to ask the same question 10 times.
MX. GREEN: No. I'm going to keep asking the question until he answers.
MR. ZUCKERMAN: Then he's going to give you the same answer. He's going to give you the same answer.
MX. GREEN: Mark, you have -- you have two options here. You can instruct him not to answer, or you can say, "Object to form." Or you can -- I guess three. Or you could just do nothing.
I'm going to keep answering -- asking a yes-or-no question until I get a yes-or-no answer.
MR. ZUCKERMAN: He doesn't have to give a yes-or-no answer. You should know that.
MX. GREEN: No. He can tell me he can't answer yes or no. That's true.
MR. ZUCKERMAN: He can.
BY MX. GREEN:
Q So Captain, do we agree that Ms. Wolf here says that you are generating a list that you will send to the appropriate clerk of people who are lodged solely on the basis of outstanding criminal or Supreme Court warrants?



MR. ZUCKERMAN: Object to form.
THE WITNESS: Again, I compiled a list showing individuals who were held in DOC custody with criminal and Supreme Court warrants, which encompassed what Ms. Wolf was looking for.
BY MX. GREEN:
Q I'm not asking you about what you did. I'm not asking you about what you did encompassed. I am asking you, is what she is -- do we agree, so that we can ask the next question, which is going to get to what you're trying to answer.
But don't get ahead of me here. Just answer the question I'm asking. Listen very carefully to it.
Do we agree that Ms. Wolf has said that what you are doing is generating a list of people who were, quote, "lodged solely on the basis of an outstanding criminal or Supreme Court warrant," end quote, for the purpose of, quote, "notifying the appropriate clerk," end quote?
MR. ZUCKERMAN: Object to form.
You can answer again.
THE WITNESS: Again, I compiled a list that encompassed what Ms. Wolf was looking for, which were individuals in DOC custody who had criminal and Supreme Court warrants.

Page 165

MX. GREEN: Okay. Move to strike. Move to strike all previous answers that did not answer the question.
BY MX. GREEN:
Q Let me ask this, are you not capable of giving a yes-or-no answer to that question?
MR. ZUCKERMAN: Object to form. He answered the question 10 times.
MX. GREEN: He has not. (Indiscernible - simultaneous speech.)
MX. GREEN: I'm not -- I'm not -- or I'm directing him not to answer. It's the same question 10 times. He's answered to the best of his ability. You want -- you want to go to the court and read back the 10 last questions? Go.
MX. GREEN: All right. I -- I will email the court now. Give me five minutes.
MR. ZUCKERMAN: Go ahead. Go ahead.
MX. GREEN: You know what? Let me -- let me just -- let me ask the follow-up questions and then I'll send the email.
BY MX. GREEN:
Q So are you -- are you not capable of giving a yes-or-no question -- answer to the questions I've been asking?

Page 166

MR. ZUCKERMAN: Objection.
Tell Counsel again.
MX. GREEN: No speaking objections, Mark. Stop.
MR. ZUCKERMAN: Tell Counsel again. Well, you've asked it 10 times.
MX. GREEN: No. This is a different question. Stop with the speaking objections.
THE WITNESS: Which question are you --
BY MX. GREEN:
Q Is the reason you haven't given me a yes-or-no question because that is not a way you are capable of answering this question?
**A I -- I gave a -- a answer, Counsel.**
Q Right. That's not the question I'm asking. Okay. Let me ask this.
Do we agree that you didn't give me a yes-or-no answer to that question?
**A I gave an answer to the question.**
Q Right. That's not my question. The answer is, do we agree that you did not give a yes-or-no answer?
**A I'm not agreeing to that.**
Q So you're saying that your answer to my last question was a yes or a no?

Page 167

**A I'm saying I -- I answered the question and I stated that based on what you -- what Ms. Wolf wrote, that I was to provide a list solely on individuals produced on criminal and bench warrants.**
**I'm telling you that I produced a list of individuals in DOC custody who had criminal and Supreme bench warrants or arrest warrants that encompassed what Ms. Wolf was looking for.**
Q Right. So was any of the words you just said yes or no? Just want to make sure we're living in the same reality here.
**A We -- we are. I compiled the list. I was the individual she was referring to.**
Q Okay. Was any of the words you just said a yes or a no? This isn't a trick question.
**A I -- I just answered the question, Counsel.**
Q Right. And this is a new question. Was any of the words you just said a yes or a no?
**A What was the words that I just said?**
Q Well, you just said them. You can -- you can tell me whether you remember saying a yes or a no.
**A I'm the individual that Ms. Wolf is referring to in her email, and I compiled the list of individuals who has Supreme Bench Court warrants that encompass --**
Q Okay. I'm going to read back your --

Page 168

**A -- that encompass what Ms. Wolf is asking for.**
Q Okay. I'm going to read back your answer, and I'm going to ask you to listen to me. Because after that, I'm going to ask if any of those answers were, or any of those words were a yes or no.
Quote, "I'm the individual that Ms. Wolf is referring to in her email, and I compiled a list of individuals who have supreme or supreme bench court warrants. That encompass what Miss Wolf is asking for."
Was any of those words a yes or a no?
MR. ZUCKERMAN: Objection. It's harassment. Go to the court if you want a ruling on this. We've gone through it for the last 20 minutes.
MX. GREEN: Well, if he would answer a yes or no, we'd be done.
MR. ZUCKERMAN: He doesn't have to answer yes or no.
MX. GREEN: No. But he has to -- he has to tell me that he's incapable of doing it.
MR. ZUCKERMAN: No. He doesn't. No. He doesn't. Go to the court if you want -- you want further answers.
MX. GREEN: Okay. Give me one second.
BY MX. GREEN:

Page 169

Q Okay. While we are waiting for a response from the court, let me ask this. Speaking for the City, do you understand what the purpose of alerting the notify -- I'm sorry.

Do you understand what the purpose of notifying the appropriate clerk was?

**A Yes.**

Q Okay. What was the purpose?

**A The purpose was to prioritize individuals who were held on Supreme and bench court warrants to be produced as they -- as they were starting back, you know, full -- full operating procedures within OCA.**

Q Okay. And when you say prioritize, what do you mean by that?

**A Prioritize, so during the pandemic, individuals were being -- were being detained within our custody. OCA was down, so we couldn't produce them to court per our policy.**

**Once OCA, Mr. Antonio Diaz, the -- one of the, I guess chief clerks may notice that, hey, we're going to start opening up the court parts. The individuals who had priority were -- were the ones who were only held on warrants and not -- and not other accusatory instruments.**

**The reason for that was that there was a**

Page 170

**higher probability that those cases would be resolved during the first court appearance after the pandemic, or once the court parts were in full operational status.**

Q Okay. So fair to say a decent number of the people that you included on your list met that condition?

**A In the -- in the first reports. Yes.**

Q In the first reports. Okay. And in fact, we went over this, but at least 40 met that condition, right?

MR. ZUCKERMAN: Object to form.

THE WITNESS: Initially, I -- I can't say 40, but what you counted was 40 for a -- for a time period, but I can't say 40 for that -- for that day.

BY MX. GREEN:

Q I'm not talking about any particular day. Across all of time, it was way more than 40, right?

Across those two years that you were doing that, there were way more than 40 people who were held exclusively on a bench or Supreme Court warrant, correct?

MR. ZUCKERMAN: Object to form.

THE WITNESS: It depends on what -- what time period we're -- we're looking at. Because what I first -- what you first referenced was starting back

Page 171

right after court operations were fully.

In 2022, I think, 2023, my list was still ongoing, but they -- we were already, in a sense, back in full operational, but I still kept track because it was a useful tool to -- to have.

BY MX. GREEN:

Q Right. I need you to listen very carefully to my question, because we're going to be here a lot longer if you don't listen to the questions. Just answer the question I'm asking.

If there's something more you want to add, please feel free to say, But I want to comment, blah, blah, blah, but just answer the question I'm asking. I promise it will make all of our lives easier. Okay.

So you made this list across at least two years, right?

**A Yes.**

Q So across all of those two years, not any particular date, across all of those two years, there were way more than 40 people that you found that were being held exclusively on a Supreme Court or criminal court bench warrant, right?

MR. ZUCKERMAN: Object to form.

THE WITNESS: I'll have -- I'll have to look. I don't know. I can't recall.

Page 172

BY MX. GREEN:

Q Well, we spent the last -- sorry. Please finish.

**A I can't -- I can't recall. You changed the parameters. You said over two years.**

Q Okay. Just across all of the time you've done this, speaking on behalf of the City of New York, just overall, right, total number of people held on bench warrants since you started tracking that in 2021, right?

Is that a fair parameter? Are you able to answer with that parameter?

**A I -- I could answer.**

Q Okay. So that number is going to be way more than 40, right?

MR. ZUCKERMAN: Object to form.

THE WITNESS: Over the course of two years, yes.

MX. GREEN: Okay. Great. With that answer, I'm not sure we really need to get the court involved, but why don't we take a 10-minute break, and if we don't hear from the court, we can close the deposition?

MR. ZUCKERMAN: I'm sorry. We can what?

MX. GREEN: Well, I can stop asking questions, and if you want to spend time on the record,

44 (173 - 176)

Page 173

that's fine, and if you don't, that's fine.
MR. ZUCKERMAN: I have a couple questions.
MX. GREEN: Okay.
MR. ZUCKERMAN: We can do it now or -- we could do it now, if you --
MX. GREEN: Why don't we do that. That's fine.
MR. ZUCKERMAN: Okay.
MX. GREEN: Hold, obviously -- well, before we do that, let me just say we're holding open the deposition. We're holding open the deposition as far as failure to produce the CDAT and other relevant documents.
We're holding open the deposition because of failure to be prepared on anything other than DOCCS and we're holding open the deposition as to the issue we've written to the court about.
But otherwise, I'll pass.
MR. ZUCKERMAN: That I've written to the court -- well, okay. We disagree, but that's fine.
MX. GREEN: Well, I mean, we don't disagree that I sent an email to the court.
MR. ZUCKERMAN: Oh. That you wrote to the court about?

Page 174

MX. GREEN: Yes.
MR. ZUCKERMAN: Oh. Okay. All right.
Anyway, Stephanie, are you ready?

EXAMINATION

BY MR. ZUCKERMAN:
Q Just -- Captain, did you want to clarify your testimony regarding the reliability and trustworthiness of the chart --
MR. ZUCKERMAN: What's the exhibit number, Remy, of that chart? Could we just show that?
MX. GREEN: It is -- you can do that on your end, but I believe that would be Exhibit 6. You know, I can -- I can share it. That's fine. Let me close this. Happy to help.
THE WITNESS: Oh. Oh. This -- oh. The -- this is the spreadsheet by IT. Yeah. It's a reliable graph, a reliable report to be used for the -- the timeframe to show individuals that were brought into DOC custody directly into the facility rather than a court part for this specific date of admission.
BY MR. ZUCKERMAN:
Q When you were referring to issues regarding reliability and trustworthiness in your prior testimony, what were you -- what were you referring to?
**A Oh. I was -- I was referring to the -- the**

Page 175

**criminal court and Supreme Court warrant, those fields. Sometimes it could be a -- a internal error, but the actual -- the actual capture at the time the person is inputting, it would be updated to reflect, and it -- it would then become trustworthy.**
MR. ZUCKERMAN: That's all I have, Remy. I see that Judge Cave has responded.
MX. GREEN: Yeah. It looks like we're not going to speak to her today, which is fine. Okay. Let me then redirect.

FURTHER EXAMINATION

BY MX. GREEN:
Q So during any break, did you speak to Mr. Zuckerman about the subject that you just testified about?
**A No.**
Q Okay. So when you are saying that the spreadsheet is reliable, are you now testifying that I could look at that spreadsheet and if a "yes" is missing, I would know that there isn't a criminal court warrant?
**A You -- you would know that there wasn't a criminal court warrant, but the -- the Supreme Court warrant field would have a "yes."**
Q Right. So let me bring us to a specific

Page 176

example. Bring all to me. So -- or let me move over a little bit. So in this --
MR. ZUCKERMAN: It's not --
BY MX. GREEN:
Q In this top line, I would be certain that there wasn't a family court warrant, correct?
**A There wasn't a family court warrant. Yes. At that -- at the time that it was captured. Yes.**
Q At the time that it was captured, of course.
**A Yes.**
Q At the time that this was captured, that there was a criminal court warrant, correct?
**A Yes.**
Q And that there was not a Supreme Court warrant, correct?
**A Yes. At the time it was captured. Yes. Correct.**
Q So for those examples we were discussing earlier, if I looked at that and it did -- it said -- it said that there was not a court date and there was a Supreme Court warrant and there was not a criminal court warrant.
I would know that they were being held on a bench warrant for Supreme and that among the other possible reasons they were being held, it was not

possible they were being held on a family court warrant or a criminal court warrant, correct?

MR. ZUCKERMAN: Object to form.

THE WITNESS: Providing -- providing the -- there's no other holds. Yes.

MX. GREEN: Okay. Nothing further.

MR. ZUCKERMAN: Okay. We'll read and sign the deposition transcript.

MX. GREEN: Yeah.

THE PROCEEDINGS OFFICER: Perfect.

And before going off the record, Counsel Green, the certified transcript is included in your order. You are wanting the transcript be produced, correct?

MX. GREEN: Yes. Normal speed is fine.

MR. ZUCKERMAN: And Remy will provide a copy for us?

MX. GREEN: Even though we're not required to, as a courtesy, we will.

MR. ZUCKERMAN: Okay. I mean, we'll do it for the plaintiffs as well.

MX. GREEN: Okay. Appreciate it.

MR. ZUCKERMAN: All right.

THE PROCEEDINGS OFFICER: Perfect.

So just to confirm, Mx. Green, you'll



provide a copy -- the copy transcript to Mr. Zuckerman?

MX. GREEN: Okay. Yes. I will do that. That's fine. But you should feel -- you should feel free to reply all as well if that's easy. We don't care.

THE PROCEEDINGS OFFICER: That concludes today's deposition. We are now going off the record. The time is approximately 2:06 p.m. Eastern Time.

(Proceedings concluded at 2:06 p.m., ET)

* * * * *



CERTIFICATE OF PROCEEDINGS OFFICER

I, Stephanie Webster, hereby certify:

That the foregoing proceedings were taken before me at the time and place therein set forth;

That the proceedings were recorded by me and thereafter transcribed, and that the foregoing transcript is a true and accurate record of said proceedings to the best of the transcriber's ability;

I further certify that I am neither counsel for nor related to any parties to said action, nor in any way interested in the outcome thereof.

DATED, this 22nd day of May 2026.

______________________________

Stephanie Webster

CER-3580

Proceedings Officer



A C K N O W L E D G M E N T

I do hereby certify that having been first duly sworn to testify to the truth, I gave the above testimony on May 12, 2026.

I further certify that the foregoing transcript is a true and correct transcript of the testimony given by me at the time and place specified.

______________________________

JAMAL RIGAULT

Sworn to before me this ___ day of _______________, 20__

______________________________

Notary Public

46 (181 - 181)



ERRATA SHEET

Deponent: JAMAL RIGAULT

Deposition Date: Tuesday, May 12, 2026

PAGE LINE CHANGE FROM/TO REASON FOR CHANGE

_____ _____ ________________ ___________________________

_____ _____ ________________ ___________________________

_____ _____ ________________ ___________________________

_____ _____ ________________ ___________________________

_____ _____ ________________ ___________________________

_____ _____ ________________ ___________________________

_____ _____ ________________ ___________________________

_____ _____ ________________ ___________________________

_____ _____ ________________ ___________________________

_____ _____ ________________ ___________________________

_____ _____ ________________ ___________________________

_____ _____ ________________ ___________________________

_____ _____ ________________ ___________________________

Under penalties of perjury, I declare that I have read the foregoing deposition and hereby affix my signature that same is true and correct, except as noted above.

___________________ ____________

JAMAL RIGAULT Date

Sworn to before me this ___ day of _______________, 20__

_____________________________

Notary Public

WORD INDEX


< 1 >
**1** 5:5 19:23, 24, 25 20:25 21:14 26:4, 25 31:17 38:19 53:3 76:15 87:24 98:8 99:14 136:17 140:21 143:20
**10** 5:14 33:16 82:20 132:17 136:18 140:15, 25 141:3 143:21 150:7 155:2, 8, 10 163:3 165:8, 12, 14 166:6
**10:01** 2:7 9:4
**10:30** 67:9
**100** 3:12 129:19, 21 130:4, 5, 14 131:20
**1000** 152:5, 19
**10007** 3:13
**10-minute** 172:20
**10th** 149:20
**11** 4:4 9:7 140:8 141:7 143:21
**11:30** 67:9
**11385** 3:6
**116** 6:12
**11-by-14** 80:6
**12** 2:6 6:7 9:4 131:23, 25 133:23, 24 180:5 181:1
**134** 5:11
**13A** 120:21
**14** 137:14
**145** 5:12
**148** 5:13
**15** 134:14 135:5, 7, 13 136:1, 4, 8
**154** 5:14
**15-page** 135:12, 23
**15th** 147:2, 10, 12 149:19
**1639** 3:4
**16475031_1** 88:3
**174** 4:5
**175** 4:6
**17th** 144:20
**18th** 147:23
**19** 5:5
**19th** 147:3
**1st** 149:13

< 2 >
**2** 5:6 6:4 21:7 26:22 27:2, 10, 12, 21 87:24 117:22 136:17 139:12 140:3, 8, 21 143:20 157:13
**2,000** 99:3
**2:06** 2:8 178:8, 9
**20** 33:20 69:4 130:21 131:18, 19, 24, 25 133:21, 24 134:3, 4 135:1, 3, 10, 12, 13, 15, 19 136:1, 4 140:21 168:14 180:15 181:1
**2000** 98:22 99:3
**2020** 69:4, 5 153:21
**2021** 119:9 137:21, 22 148:13 150:25 157:10 172:9
**2022** 119:6 171:2
**2023** 171:2
**2024** 75:23 76:5, 8
**2026** 2:6 9:4 179:14 180:5 181:1
**2054** 133:12
**2081** 99:11
**2082** 99:7
**20th** 69:8 70:1 75:22 144:20
**216** 3:5
**21-cv-8149** 1:10 9:12
**21st** 156:23
**22** 6:9
**22nd** 179:14
**23rd** 149:7
**24** 6:12 14:6, 10
**240** 133:24 134:6

**25** 148:*13*
**25th** 75:*23* 136:*13* 149:*1*
**26th** 75:*23* 144:*20*
**27** 5:*6*
**27th** 148:*25* 149:*1*

**< 3 >**
**3** 5:*7* 24:*2* 31:*20* 32:*21* 34:*2* 36:*17*, *20*, *21* 39:*18* 40:*3* 62:*20* 120:*20* 132:*8* 136:*17* 137:*21* 140:*21* 143:*20* 156:*21*
**30** 6:*4*
**30(b)(4** 8:*6*
**30(b)(6** 2:*2* 11:*21* 16:*15*
**300** 135:*14*, *22* 136:*2*
**36** 5:*7*
**3B** 76:*16* 78:*17*
**3C** 79:*6*
**3D** 81:*24*
**3rd** 137:*3*

**< 4 >**
**4** 5:*8* 24:*2* 68:*16*, *17*, *19* 69:*5* 72:*25* 136:*17* 140:*21* 143:*20*
**40** 150:*12*, *18* 170:*9*, *13*, *14*, *17*, *19* 171:*20* 172:*14*
**468** 9:*8*
**49468** 2:*11*
**4th** 69:*9* 70:*1* 143:*2*

**< 5 >**
**5** 5:*9* 86:*10*, *11* 132:*8* 136:*17* 140:*21* 143:*20*
**5/12** 64:*20*
**5/13** 64:*21*
**50/50** 98:*7*, *21*
**500** 131:*10*
**53** 6:*7*

**< 6 >**
**6** 5:*10* 88:*1*, *4* 107:*8* 132:*11* 136:*18* 140:*21* 143:*21* 155:*25* 174:*12*
**68** 5:*8*

**< 7 >**
**7** 5:*11* 132:*13* 134:*13*, *14*, *16* 136:*8*, *18* 140:*21* 143:*21* 155:*17*
**71858-21** 121:*1*
**72** 6:*9*
**7th** 146:*20*

**< 8 >**
**8** 5:*12* 132:*15* 136:*18* 143:*21* 145:*19*, *20* 147:*22*
**86** 5:*9*
**88** 5:*10*
**8th** 142:*18*

**< 9 >**
**9** 5:*13* 132:*15* 136:*18* 137:*22* 143:*21* 148:*9*, *10* 155:*1*
**9/12/2021** 119:*7*, *12*
**9/12/21** 119:*14*
**9:35** 32:*10*
**90** 149:*5*
**90/10** 98:*21*
**95** 149:*5*, *6*
**99** 98:*7* 99:*2*
**9th** 142:*19*, *20*

**< A >**
**a.m** 2:*7* 9:*4*
**ability** 14:*18*, *22* 15:*1* 165:*13* 179:*9*
**able** 14:*14* 15:*20* 25:*17* 38:*16* 40:*6* 52:*17*, *19* 117:*11* 118:*5* 120:*17* 122:*8* 151:*13* 172:*10*
**abreast** 144:*10*
**absence** 117:*12*
**Absolutely** 26:*24*
**accept** 104:*18*
**access** 78:*12*, *16* 85:*24* 96:*14* 97:*3*
**accidents** 68:*6*
**accompany** 29:*4* 49:*6*, *15*, *16*, *19*, *23* 50:*4*, *13*, *17* 79:*15*

**A-C-C-O-M-P-A-N-Y** 49:*20*
**accurate** 8:*9* 90:*16* 126:*15* 129:*1* 179:*8*
**accurately** 14:*4*, *14*, *19*, *23* 15:*1*, *6* 158:*11*
**accusatory** 29:*6*, *9*, *13* 103:*24* 104:*2*, *3*, *8*, *12*, *13*, *15*, *19*, *24*, *25* 105:*4* 113:*10* 128:*2*, *5* 137:*25* 139:*7* 141:*19* 169:*23*
**ACD** 91:*6*, *7*
**acronym** 26:*13* 54:*4*
**acronyms** 91:*6*
**acting** 22:*23* 23:*4*, *7*
**Action** 1:*9* 8:*5* 9:*12* 179:*11*
**active** 94:*13* 157:*4*
**actual** 26:*13* 175:*3*
**add** 171:*11*
**adding** 147:*2*, *4*, *6*, *13*
**addition** 105:*21* 142:*7*
**address** 94:*10* 106:*24* 158:*24*
**addresses** 57:*24* 106:*25* 107:*4* 108:*24*
**addressing** 157:*18* 159:*7*
**Adjourned** 91:*7*
**administer** 10:*13*
**administered** 8:*8*
**administering** 10:*12*
**Administration** 156:*2*
**admissibility** 10:*8*
**admission** 79:*18* 109:*13*, *17*, *22* 110:*2*, *5* 133:*12* 174:*20*
**admit** 118:*16* 119:*7* 121:*5*
**admitted** 100:*8* 101:*12* 119:*14*
**affect** 14:*18*, *22* 15:*1*
**affirm** 11:*1*
**affix** 181:*1*
**Agencies** 40:*13*, *16*, *17*, *19* 42:*2* 66:*24* 102:*14*, *23* 103:*1*, *8*, *12* 154:*10*
**agency** 39:*9* 41:*23* 66:*6*, *9* 92:*23*, *24*
**agency's** 42:*1*
**agents** 126:*14*
**ago** 21:*20*
**agree** 8:*10* 10:*5*, *8*, *11* 18:*6*, *12* 94:*5* 109:*25* 110:*22* 161:*13*, *19* 162:*4*, *14* 163:*21* 164:*9*, *14* 166:*17*, *21*
**AGREED** 7:*3*, *6*, *9*, *12* 8:*25*
**agreeing** 166:*23*
**agrees** 8:*16*
**ahead** 23:*22* 46:*19* 58:*5* 84:*21* 98:*11*, *13* 101:*8* 106:*22* 115:*13* 116:*15* 154:*6* 164:*12* 165:*18*
**Aid** 156:*1*, *11*
**al** 1:*21* 9:*11*, *12*
**ALC** 9:*13*
**ALC)(SLC** 1:*10*
**alcohol** 14:*6*
**alert** 59:*20* 60:*10* 75:*25* 77:*12*, *20* 78:*2* 161:*20*
**alerting** 169:*3*
**alerts** 75:*24* 78:*13*, *19*
**allowed** 107:*20*
**Amended** 26:*17* 28:*1*
**amount** 12:*1* 38:*10* 131:*2*
**and/or** 10:*7*
**annotate** 37:*8* 107:*20*
**annotation** 86:*24*
**annotations** 107:*19*

**answer** 12:*10*, *20*, *21*, *24*, *25* 13:*22* 14:*1* 15:*24* 16:*1*, *10* 18:*3*, *22* 24:*22* 39:*20* 40:*6* 41:*16* 45:*9* 47:*17* 48:*22* 50:*24* 53:*10* 62:*8* 63:*25* 66:*18*, *21*, *23* 75:*2*, *14*, *16* 76:*6* 77:*4*, *14*, *22* 78:*7*, *8*, *25* 79:*3*, *4*, *13* 81:*22*, *23* 82:*1* 83:*25* 84:*18*, *23* 89:*14*, *17* 98:*14*, *17* 99:*17*, *22* 103:*11* 104:*23* 114:*24* 124:*17*, *23* 125:*17* 129:*15*, *18*, *20*, *24* 131:*14*, *21* 145:*12* 150:*1*, *17* 162:*2*, *14*, *20*, *23*, *25* 163:*7*, *8*, *10*, *14*, *16*, *18* 164:*11*, *12*, *21* 165:*2*, *6*, *12*, *24* 166:*14*, *18*, *19*, *20*, *22*, *24* 168:*2*, *15*, *17* 171:*9*, *13* 172:*11*, *12*, *19*

**answered** 106:*14* 161:*24* 162:*17* 165:*8*, *13* 167:*1*, *16*

**answering** 34:*20*, *21* 130:*6* 163:*13* 166:*13*

**answers** 17:*20*, *23* 18:*1* 85:*10* 139:*19* 163:*5* 165:*2* 168:*4*, *23*

**Antonin** 22:*6*, *13*, *15* 30:*23*

**Antonio** 169:*19*

**A-N-Y** 49:*21*

**anymore** 138:*10*

**anytime** 32:*3*

**Anyway** 174:*3*

**AP17** 63:*3*, *6*, *11* 64:*9*, *14* 65:*2*, *5*, *11*

**apologies** 18:*18*

**apologize** 25:*3*, *16* 29:*11* 47:*14*, *19* 80:*10* 107:*12*

**appear** 9:*19*

**appearance** 53:*24*, *25* 57:*2*, *9*, *20* 63:*11* 170:*2*

**appeared** 90:*14*

**Appearing** 3:*9*, *16* 9:*24*

**applies** 64:*6*

**apply** 57:*22*

**Appreciate** 177:*22*

**approaching** 119:*9*

**appropriate** 7:*15* 159:*25* 160:*20* 161:*20* 163:*23* 164:*18* 169:*6*

**approximately** 9:*4* 99:*6* 140:*17* 150:*16*, *17*, *19* 178:*8*

**April** 69:*5*, *9* 70:*1*

**arbitrary** 100:*1*

**area** 80:*19* 118:*14*

**areas** 54:*24*

**arms** 39:*10*

**arraigned** 88:*17*, *20*, *21*, *24* 89:*7*, *10* 90:*3* 94:*7*, *8*, *14* 101:*20* 103:*21* 104:*2*, *12*, *14* 105:*4*, *6*

**arraignment** 29:*5* 79:*16* 88:*13*, *15* 90:*1*, *11*, *21*, *22*, *23* 93:*17*, *19*, *24* 94:*19* 95:*1*, *6*, *8* 105:*5* 106:*16*

**arranged** 120:*16*

**ARREST** 37:*14* 39:*3*, *11*, *15* 40:*11* 42:*7* 88:*17*, *21* 89:*7* 96:*5*, *6*, *18*, *24*

98:3, 8
167:7
**arrested**
40:4
41:13, 22
42:17
156:11
**arresting**
40:7, 9, 14, 16, 20, 25
42:23
**arrests**
38:23
39:15, 16
**arrives**
42:23
43:11, 23
**Aside**
30:23
66:4
89:22
103:16
**asked**
35:8
60:16
72:17
89:8
128:14
160:25
162:22
166:6
**asking**
16:18, 24
28:21
43:3, 6, 8 51:20
59:2
61:2
65:8
66:12
76:23
78:15, 16 90:8, 9 98:17, 24
99:12
103:10
104:23, 24
106:8, 9
108:8
111:21, 22
113:12
116:9, 10, 11
126:9
129:18, 19
130:18, 19
131:10
161:11, 17, 18
162:20
163:4, 13
164:7, 8, 9, 13
165:25
166:15
168:1, 9
171:10, 13
172:24
**assigned**
58:14

**associated**
118:15
**assume**
75:19
127:7
**assuming**
58:25
127:5
140:23
**attached**
156:10
**attaches**
156:6, 7
**attest**
103:8
**attorney**
8:13, 16
9:17
13:6
30:16
57:17
**attorneys**
7:4
8:4
21:23
22:2
31:2, 7
**audio**
8:15
10:7
25:2
**audiovisual** 10:7
**August**
147:23
148:5
**AUNG**
1:19
**authority**
39:15
40:10
102:25

**authorized**
10:13
**available**
5:2
71:23
93:22
**averages**
140:24
**aware**
14:17, 21 15:8
31:18
33:8, 13, 22 34:1, 4, 12
35:1, 2, 9, 19
67:21
68:2
79:5
85:2, 3
156:6, 14
**awful**
76:13

**< B >**
**back**
16:5, 9
26:24
32:10
34:10
38:19
39:24
40:1
52:22
60:19
61:18, 24 62:1, 19 74:3
76:14
82:24
83:11
100:24
101:2
107:7, 8
129:11
137:2
138:4
139:12
141:6
147:17
150:5, 25
151:2
153:16, 19, 22
155:18
165:14
167:25
168:2
169:11
170:25
171:3

**background**
21:1, 6
88:9
**backwards**
90:21
**bail**
91:16, 18, 19, 20
101:22
138:8, 12, 13
**B-A-I-L**
91:20
**bails**
138:8
**based**
76:11
80:21

102:22
106:5, 8
116:8
117:11
120:24
121:9
130:6
141:16, 24
142:25
160:14
167:2
**basic** 12:8
**basically** 32:23
**basis** 10:9
158:2, 14
159:10
163:24
164:16
**began** 152:2
**beginning** 31:20
143:24
**BEHALF** 1:5
9:22
10:2
17:17, 21, 25
39:7
66:5, 17
103:10
125:17
126:4, 11 172:7
**believe** 16:24
18:23
115:2
126:23
127:2
157:11
174:12
**believes** 16:25
**belong** 121:4
**belongs** 45:24
**Bench** 5:7
34:19
35:4, 21
38:22, 23 40:4, 11
42:13
51:5, 7
52:4
57:22, 25
58:21
59:7, 14
60:9, 14
62:5, 20, 22
69:18
84:8
85:5, 8
94:6, 9, 12, 17, 25 95:4, 7, 13, 22
96:3, 4, 6, 18, 24
98:3, 8
99:15
101:16, 24
102:3
105:21
106:3, 17
129:13
130:2, 16
137:9, 17
146:4, 8
156:11
160:16
167:4, 7, 24
168:8
169:10
170:20
171:22
172:8
176:24
**bench/arrest** 98:7
**best** 28:16, 19
32:22
34:6
39:1
142:10
155:18
162:23
165:13
179:9
**better** 95:9
144:8
**beyond** 96:10
**big** 95:9
**bigger** 36:23
87:6
**Bill** 91:17, 22
**binding** 17:24
75:2
**birth** 46:23
48:16
**bit** 11:16
37:13
88:18
105:16
143:14
147:17
149:20
150:22
176:2
**blacked** 155:4
**blah** 171:12, 13
**blank** 94:20, 22
100:16, 18
101:3, 9
102:2, 4, 5
105:25
106:11, 12
108:1, 20, 25
**blanks** 111:14
113:21
**book** 118:13
**borough** 50:6
118:16
142:21, 25
**boroughs** 46:25
150:14
**bottom** 86:23
140:6
155:17
157:16
**bound** 17:25
**boxes** 81:11
**BP** 91:15
**Brandes** 87:9
**break** 31:24
32:4
67:7
82:20, 21
139:14
172:20
175:13
**brief** 25:18
**Bring** 20:5
27:9
37:15
53:25
71:12
76:14
86:9, 22, 24
100:17, 18

103:*2*
104:*4*
107:*7*, *14*, *18*
108:*12*, *17*
136:*7*
137:*2*
140:*2*, *8*, *13*
141:*8*
142:*2*, *15*
143:*1*, *14*
145:*23*
146:*11*
147:*1*, *22*
148:*12*
149:*6*, *12*, *19*
154:*19*, *25*
155:*25*
156:*21*, *22*
157:*12*
175:*25*
176:*1*
**bringing**
87:*15*
**Broadway**
9:*7*
**broke**
88:*18*
**Bronx**
5:*12*
145:*18*
146:*4*, *5*
**Brookdale**
87:*8*
**brought**
21:*11*
41:*12*, *18*
46:*10*
61:*8*, *18*, *23*, *24*
69:*4*, *8*, *12*, *14*
71:*9*
84:*7*
85:*5*, *6*, *7* 94:*6*, *9*, *10*
100:*5*
101:*21*
102:*1*, *13*, *21*
104:*15*
105:*5*, *7*
151:*17*, *18*
156:*12*
158:*7*
174:*18*
**bunch**
96:*11*
150:*6*
**business**
51:*8*, *9*, *14*, *21*, *23* 52:*6*, *15*, *20*
53:*19*
58:*22*
59:*2*
63:*20*
64:*14*
**button**
15:*4*
20:*5*

**< C >**
**cabinet**
80:*23*
81:*8*, *9*
**calculator**
135:*14*
**call**
30:*3*
53:*13*
60:*10*
62:*9*
63:*6*, *11*, *12* 64:*4*, *6*, *9*
67:*2*
72:*23*
84:*18*
116:*24*
**called**
11:*7*
49:*15*
54:*3*
65:*2*
90:*10*
**calling**
124:*11*
**calls**
60:*13*
**Calm**
46:*6*, *17*
102:*19*
**canceling**
63:*10*
**capable**
162:*13*
165:*5*, *23*
166:*12*
**capacity**
16:*19*
22:*22*
57:*5*
70:*5*, *9*, *12*, *16*, *18* 71:*7*
74:*24*
151:*8*, *11*, *14*
152:*2*, *3*, *6*, *20*
153:*17*, *20*, *23*
**CAPTAIN**
10:*22*
11:*4*, *19*, *20*, *22*
20:*16*
32:*4*
47:*4*
163:*21*
174:*6*
**capture**
8:*14*
116:*6*
124:*7*
175:*3*
**captured**
10:*10*
110:*14*
114:*17*
176:*8*, *9*, *11*, *16*
**capturing**
10:*6*
**card**
29:*5*, *6*
49:*6*, *15*, *16*, *20*, *23* 50:*4*, *13*, *17*
79:*15*, *16*
**care**
178:*5*
**carefully**
104:*22*
164:*13*
171:*7*
**case**
36:*14*
52:*13*
55:*17*
56:*9*, *14*
57:*3*
58:*20*
60:*4*
94:*13*, *14* 97:*8*
104:*4*
118:*13*
**cases**
138:*13*
170:*1*
**categories**
26:*7*
**category**
44:*5*
160:*1*, *6*, *8*, *22*
161:*5*
**Cave**
175:*7*
**CDAT**
6:*9*
54:*3*, *19*
55:*16*, *17*, *19*, *21* 56:*2*, *4*, *10*, *15*
58:*2*
67:*22*
71:*23*
72:*2*, *20*,

24 73:6 79:7 82:7 173:13
**C-D-A-T** 54:6 79:7
**Centre** 3:4
**CER-3580** 2:10 179:19
**certain** 21:7 81:17 142:6, 13 149:4 176:5
**CERTIFICATE** 179:1
**certified** 177:12
**certify** 179:3, 10 180:3, 7
**Chain** 5:14
**CHANGE** 181:1
**changed** 34:2, 3 55:5 69:22 172:4
**changes** 15:20, 21
**charged** 103:7
**charges** 94:14
**chart** 144:22, 25 174:8, 10
**chat** 8:18
**check** 123:13, 14 129:1, 4
**checked** 130:17, 18
**checking** 122:20 123:5, 8 130:19
**checklist** 6:6 29:7, 23
**chief** 158:6 169:20
**Church** 3:12
**circumstances** 68:6
**CITY** 1:10, 11 2:5 9:12 11:20 16:20, 25 17:17, 18, 21, 24 18:7, 13 33:13, 14, 22 35:11, 13, 14, 16 37:19 38:1, 23 39:5, 6, 7, 8, 9, 10, 14 40:4, 10, 20, 23, 24 41:1, 23 45:13, 19, 21 65:10 66:2, 5, 6, 8, 9, 17, 19, 24 73:5, 10, 16 74:3, 6, 14, 20 75:2 78:8, 17, 18 81:15, 21 91:11 92:10 97:2, 18, 22 103:11, 12 124:25 125:3, 5, 16, 18, 19, 24 126:1, 3, 4, 11, 19, 23 127:5, 17, 19 128:10 142:4 152:8 169:2 172:7
**City's** 21:10 41:7, 12, 21 43:6 51:12 69:17 75:8 86:3 94:3 96:15 125:1 126:14
**Civil** 1:9 7:11, 14, 15 8:7 9:12
**claiming** 19:19
**clarified** 153:11
**clarify** 13:8 16:10 47:23 174:6
**class** 6:8 53:14
**classification** 29:5 79:16
**cleanup** 83:19 86:9
**clear** 11:16 16:6 49:18
**cleared** 84:8
**clerk** 159:25 160:21 161:20 163:23 164:18 169:6
**clerks** 158:6 162:5 169:20
**clients** 156:11
**close** 21:13 27:20 36:17 53:1 68:14 76:14 107:13 117:20 134:11 139:11 145:16 148:6 150:9 172:21 174:14
**closed** 38:18 63:6, 12 65:5, 12 70:1 71:6, 14
**closer** 47:5

**closing** 21:14
**closures** 67:4
**COHEN** 3:3 9:21
**coincides** 45:24
**coinciding** 121:6
**collaboratively** 151:1
**collection** 117:24
**column** 88:13, 14, 15 89:6 91:3 94:19, 21 95:24 100:7, 16 101:3 102:2 106:9 107:25 108:1, 2, 8, 13, 20 109:8 112:1 113:7, 14 135:17 143:2, 24 144:1
**columns** 114:4 117:10, 12 118:13 144:9
**combined** 79:21
**come** 16:9 32:9 53:19 82:23 83:10 101:23 103:4, 24 105:10 106:15
**comes** 50:13 75:22 103:20
**coming** 141:17
**command** 153:25
**comment** 15:20 161:2 171:12
**communicate** 21:23 30:15
**communicating** 157:7
**communication** 8:17 157:4
**compiled** 159:21 162:9 164:2, 22 167:12, 23 168:7
**compiling** 144:8
**Complaint** 26:17 28:1
**completely** 70:1 71:6
**complied** 76:22 78:22
**composition** 99:19
**computer** 44:11, 12
**concerning** 16:24 33:1 41:9 156:10
**concluded** 178:9
**concludes** 178:6
**concrete** 157:5
**condition** 14:17, 21 170:6, 9
**conditions** 76:20, 21 78:21
**conducted** 8:7 10:2
**conference** 123:9
**confidently** 117:11
**confirm** 82:1 177:25
**confirmed** 48:14 123:17
**confused** 23:17, 18 25:3
**confusing** 17:5
**conjunction** 79:20 85:15, 21 99:24 110:20 114:18 115:6, 22 117:18 120:9 123:4 125:14 137:25 149:3 159:17
**connection** 59:25
**consisting** 118:13
**consists** 162:10
**contact** 57:11
**contacted** 158:5
**contained** 21:6 88:10 126:20
**Contemplating** 91:7
**content** 13:5
**contents** 13:9 45:5
**context** 33:3
**continue** 42:5
**control** 20:4, 6 36:24
**controlling** 7:16
**conversations** 13:10 23:8, 10, 14 31:1
**converted** 59:8
**convey** 153:12
**copies** 28:6
**copy** 36:14

48:8
80:2
87:25
177:17
178:1
**corporate**
2:4
18:7
**Corporation** 9:24
**correct**
15:16
17:18, 21 18:1
21:2, 7, 11
26:18
34:14
36:10
40:24
41:4, 5
42:17, 18
46:22
48:11
57:23
63:4, 7, 8, 14
66:13
69:6, 9
72:21, 22
81:14
86:7
88:10
93:6, 9
94:2
98:5
107:13
109:11, 15
110:11, 13
111:3, 5
112:1, 22
113:15
114:8, 13, 23
117:6, 25
118:1
120:7
122:12, 20
123:12
124:21
125:3, 4, 6, 10, 20
126:1, 5, 16, 25
127:11, 15, 20, 21
128:7
129:3, 9
132:13, 15
133:25
135:6, 23
136:24, 25
137:11
138:17, 25
139:1, 4
140:16
141:4
143:12, 18, 19
145:6
146:5, 9, 24
147:25
148:18
149:11, 15
156:19
157:8
158:9, 10
159:16
160:15
161:22
170:21
176:6, 12, 15, 17
177:2, 14
180:8
181:1
**correction**
155:10
**CORRECTIONS** 1:14
44:13
**correctly**
11:22
49:19
52:9
80:24
89:1
124:7, 8
127:6, 8
**correlates**
46:1, 10
**correlation** 27:5
**counsel**
8:25
9:15, 24
11:11, 23
12:23
13:3, 10
18:16
25:13
27:4
29:19
32:5
34:24
39:4
40:1
41:24
44:17
47:14
57:13, 16, 17
60:5
61:2, 20
62:14
72:9
75:12
78:5
81:14
82:12, 14 84:4
86:7, 16
87:13
88:7
91:14
92:9
95:16
100:1, 19
114:25
118:8
144:18
151:22
155:7, 11
161:25
166:2, 5, 14
167:16
177:11
179:10
**count**
99:5
122:24
131:14
132:2, 3
134:8
136:3
144:13
145:4
**counted**
170:13
**counties**
138:14
**Counting**
134:1, 24
**County**
5:6, 11, 13
118:12, 19
141:10
148:7
149:8
**couple**
173:2
**course**
18:20
27:6
31:25
32:2
67:8
84:6
131:5
172:16
176:9
**COURT**
1:1
8:9
9:13

15:15 19:8, 20 33:5 34:14, 17 35:3, 4, 6, 10, 12, 17, 20, 22, 24 36:5, 10 37:15 38:8 41:11 43:1, 12, 23 46:25 47:1 50:19, 22 51:3, 6, 8, 14, 21, 22 52:7, 11 53:20 54:2, 6, 11, 12, 24 57:1, 8, 10, 21 58:11, 19, 20, 23 60:6, 8, 14, 17, 22 61:5, 9, 18, 23 62:3, 5, 9, 10, 11, 23 63:2, 18, 21 64:9 66:9 67:4, 20 69:8, 12, 14, 18, 22, 25 70:3, 4, 9, 15, 19 71:6, 9, 13 73:2, 12, 17 74:7, 22 76:1, 20, 21 77:11, 18 78:3, 20, 21 79:10 80:19 81:18 82:8 83:21 84:7 85:7, 8 87:2, 10 94:6 95:13, 25 96:2, 5, 6, 13, 17, 18, 23 97:9, 10, 24 98:3 100:3, 4, 6, 8, 15, 17 101:4, 5, 10, 11, 12, 18, 24, 25 102:1, 8, 11 103:9 107:5, 25 108:1, 14, 20, 21, 24 109:1, 9, 11, 12, 23 110:8, 10, 11 111:8, 9, 23 112:1 113:7, 13, 14, 15, 25 114:7, 8, 11, 12, 13, 23 117:13, 14, 15 120:5, 8, 24 127:10, 11, 14, 23, 24 129:13 138:16, 22 146:4 151:2, 3, 18, 19 152:5, 9, 19, 23 153:2, 6, 16, 19 154:20 156:2, 12 158:4, 14 159:10 160:11, 15, 18 161:13, 21 162:6, 11, 22 163:1, 24 164:4, 17, 25 165:14, 17 167:24 168:9, 13, 22 169:2, 10, 18, 21 170:2, 3, 20 171:1, 21, 22 172:19, 21 173:18, 21, 23, 25 174:20 175:1, 20, 23 176:6, 7, 12, 14, 20, 21 177:1, 2

**courtesy** 177:19

**courthouse** 103:6

**courtroom** 15:10, 12

**courts** 35:14 37:20 60:11 92:11 151:7, 12 152:1, 5, 19, 20 154:17

**covered** 53:2 150:11 157:22

**covering** 23:8 32:20

**covers** 93:14

**COVID** 68:9 75:19 130:11

**CR-001735-22KN** 120:23

**crack** 77:2

**create** 44:15, 20

**created** 108:5

**creating** 8:9 156:18

**crime** 101:20

**criminal** 85:21, 24 95:25 96:1, 4, 5, 12 97:24 105:22 106:3 107:5

108:24 109:9, 11, 12, 23 110:8, 9, 10 111:7, 9, 19, 22, 25 113:6, 13, 14, 15 114:8, 12, 13, 23 117:14 120:4, 8, 24 121:21 127:10, 23 129:13 130:1, 15 137:10 156:3 157:1 158:4, 6, 14 159:2, 10 160:11, 15, 18 161:8, 13, 21 162:6, 10 163:24 164:4, 17, 24 167:4, 6 171:21 175:1, 20, 23 176:12, 21 177:2

**custodial**
29:6 79:22, 24 80:3, 7 82:3

**custody**
19:8 29:7 33:2 35:18 39:13 41:10, 13, 18, 20, 21, 24 42:11, 17, 23 43:11, 23 69:4 76:19, 24 83:22 84:16 85:2, 3, 15 86:4 91:11 95:7, 10 100:13 101:14, 20, 21 102:13, 22 103:2, 4, 20, 24 104:8, 19, 25 105:2, 10 106:15 112:11 113:3 116:7 118:22 119:3, 9, 10, 17 125:13 128:19 136:15 137:24 139:8 141:20 143:6 154:16 160:11 161:8 164:3, 24 167:6 169:17 174:19

**cut**
87:3 134:5

**< D >**

**daily**
159:25

**data**
21:2, 6 80:17 81:2 88:9, 10 89:5, 6, 18, 24 90:9 103:14, 16 108:9 110:14, 17 115:1, 8, 14, 18, 21, 25 116:3 122:6, 7, 11

**DATE**
2:6 9:3 43:5 46:23 48:16 50:6, 7, 17 51:2, 3, 6, 14, 21, 22 52:7, 11 53:20 54:2, 6, 13 58:11, 20, 22 61:18 63:21 64:12 77:11 88:13, 15, 25 89:7, 9, 11 90:1, 3, 11, 13, 18 93:17, 19, 20 94:19 95:1, 6, 8 100:4, 6, 7, 17 101:4, 24 105:6 108:1, 14, 21 117:13 118:16, 24 119:1, 2, 7, 16 121:5 137:18, 20, 21 147:9 148:4, 23 171:19 174:20 176:20 181:1

**DATED**
179:14

**dates**
80:19 88:16 149:22

**date's**
101:5

**DAVID**
1:18

**day**
51:7, 8, 9, 14, 21, 24 52:6, 15, 20 53:19 58:22 59:3, 18 60:9 63:21 64:15 65:5 77:18, 20 82:7 119:3 134:23

144:*19, 21, 24* 145:*1* 170:*14, 16* 179:*14* 180:*15* 181:*1*
**days** 6:*10* 64:*23* 65:*2, 12* 72:*21, 24*
**deal** 152:*6, 20*
**December** 153:*21*
**decent** 82:*20* 170:*4*
**declare** 181:*1*
**decline** 61:*6* 62:*5*
**declined** 60:*6* 61:*25* 62:*3*
**declines** 61:*23*
**declining** 61:*9* 67:*20* 68:*1*
**deemed** 7:*14*
**defendant** 17:*18* 18:*7* 37:*15* 87:*7*
**Defendants** 1:*22* 3:*16* 9:*24* 31:*21* 33:*2, 14* 41:*10* 64:*11* 76:*18* 77:*1* 136:*10* 137:*4* 140:*10* 141:*9* 146:*3, 22* 148:*14* 151:*13* 152:*9, 22, 25*
**defense** 57:*17*
**definitive** 98:*17* 129:*18* 131:*14*
**definitively** 76:*7* 98:*15* 114:*14* 122:*1, 2* 124:*18, 23* 129:*16* 131:*21* 134:*7*
**DELAY** 37:*15, 24* 38:*2, 7, 10* 45:*7* 47:*6* 48:*4, 10* 50:*10*
**deliver** 37:*19, 20*
**delivered** 92:*23*
**DEPARTMENT** 1:*11, 14* 3:*11* 44:*13*
**dependent** 122:*6*
**Depending** 94:*11*
**Depends** 34:*18, 23* 40:*7* 94:*23* 110:*13* 114:*16* 139:*18* 143:*23* 170:*23*
**Deponent** 181:*1*
**deposed** 12:*14*
**DEPOSITION** 2:*2* 5:*5* 7:*10* 8:*7, 15, 19, 21, 25* 9:*10* 10:*1* 11:*18, 19* 12:*2* 16:*4, 15, 16* 17:*23* 18:*8, 10, 13* 19:*3, 6, 12, 16, 23* 20:*21, 23* 21:*16, 24* 23:*15, 16, 25* 25:*4* 26:*3, 8* 27:*18, 22* 30:*16* 31:*4, 9* 42:*20* 142:*6* 172:*22* 173:*12, 15, 17* 177:*8* 178:*7* 181:*1*
**describe** 38:*24* 118:*2, 9*
**described** 61:*7* 88:*3* 156:*15*
**describes** 160:*14, 20* 161:*12*
**describing** 61:*11* 158:*11* 159:*12*
**DESCRIPTION** 5:*4* 6:*3*
**designated** 9:*7* 18:*9* 32:*20* 43:*8* 157:*17* 159:*6*
**despite** 112:*3, 20*
**details** 48:*16*
**detain** 42:*12* 103:*9*
**detained** 169:*16*
**detainer** 106:*2, 17* 116:*20* 120:*2*
**detainers** 105:*14, 20*
**detention** 29:*5* 79:*15* 106:*2, 17* 109:*7* 116:*21* 120:*2*
**developed** 152:*7, 23*
**device** 8:*22*
**Diaz** 146:*2,*

13
169:19
**different**
28:24
29:25
33:14, 15, 23
35:1
52:24
60:5
80:20
107:9, 12
121:14, 18
143:15
144:19
166:7
**differentiate** 96:8
**differently** 145:24
**difficult**
93:16
**dig**
87:24
**digging**
17:16
**direct**
162:20
**DIRECTED**
37:12
**directing**
165:12
**directly**
103:2
174:19
**DIS**
92:16
**D-I-S**
92:18, 19
**disagree**
173:21, 23
**discharge**
6:5
29:6, 22
79:19
91:1
**disclose**
13:5
**discuss**
12:7
31:18
42:16
127:6
128:11
129:6
**discussed**
26:21
27:24
28:1, 2
31:2, 6, 12
43:24
79:7, 8
**discussing**
22:23
86:4, 6, 19
128:10
176:18
**discussion**
24:5
39:12
**discussions** 13:5
**Dismissal**
91:8
**Dismissed**
92:19, 20
**DISTRICT**
1:1, 2
9:13, 14
**DOC**
1:14, 15, 17, 19, 20 5:6, 10, 11, 12, 13
19:20
22:3, 6, 23 29:7
30:23
31:1, 8
39:6, 13
41:18, 20 42:1, 7, 10, 17, 22, 23
43:11, 23, 25
44:2, 13
45:13
49:14, 15
54:25
57:7
60:21
61:18
62:1, 3
65:14, 17, 19, 22, 25
66:1
67:1
69:4
75:21
76:24
80:14
83:22
84:16
85:2, 3, 24
87:19, 21 93:1
101:14, 19
102:12, 13
103:2, 4, 18, 19, 20, 24
104:7, 18, 25
105:2
110:1, 23
112:21
117:5, 21
118:22
119:3, 9, 17
136:15
138:20
139:8
141:20
143:6
151:1
152:3, 24
154:1, 10
157:4, 17
159:6
164:3, 24
167:6
174:19
**DOCCS**
87:18, 20
91:11
93:3, 5, 6
103:14, 17
173:16
**docket**
45:25
46:11, 21 50:5
120:25
121:22
**DOC's**
115:1
**Document**
5:9
15:25
16:1
17:9
20:17, 19, 20
27:14
71:20, 22 72:2
86:18, 22
90:14, 19
107:21
108:5, 23
118:12
131:22
133:25
134:6
135:6, 9, 12, 23
136:8
143:22
149:17
155:25
**documentation**

86:17
89:20
**documents**
17:13
25:5, 6, 7, 12
26:7, 8, 10
27:10, 17, 23
28:9, 14, 17, 20, 21, 24
29:3, 15, 17, 21
30:19, 25 31:8, 21
32:25
41:8
69:12
71:22
72:1, 16, 17, 18
79:10, 14
96:15
173:14
**doing**
47:16
52:5
112:5
118:7
126:4
133:20
149:21
159:13
160:6, 19
161:3, 4
164:15
168:20
170:18
**download**
5:2
**drawers**
81:11
**drink**
14:7
**drop**
11:10
**drugs**
14:9, 12
**due**
121:5
**duly**
11:7
180:4
**duplicate**
140:24
**duplicates**
131:8, 9
132:1, 2
134:1, 2, 5
135:19
136:19
140:18, 20, 25
**duty**
18:8, 14
154:16

**< E >**
**earlier**
16:5, 11
55:4
102:14
110:18
117:3
122:14
176:19
**early**
151:6
**easier**
31:14
139:22
171:14
**Eastern**
9:5
178:8
**easy**
178:4
**EDWARD**
1:15
**effort**
144:5, 7
**efforts**
31:2
76:18, 25
**eighth**
132:22
**either**
78:20
96:12
103:6
104:1, 11
105:3
136:21
138:5
**electronic**
8:22
17:10
**eleventh**
133:12
**Email**
5:14
8:19
137:2
146:2, 20
147:20
148:13
149:7
155:1
156:1, 23
158:11
165:16, 21
167:23
168:7
173:23
**emails**
160:4
**employee**
126:1
**employees**
125:3
126:11, 19
127:5, 19
128:10
**EMTC**
133:16, 18
**encompass**
167:24
168:1, 9
**encompassed**
158:23
159:16, 22
160:25
161:15
164:4, 8, 23 167:7
**enforcement** 39:10
92:24
102:14, 23 103:1
**ensure**
58:1
76:19
77:1, 8
154:21
158:6
**enter**
47:25
63:13
**entered**
44:3, 14, 19, 24
45:4
46:2
47:1
48:19
49:2
53:20
54:12
61:19
62:1
80:18, 23 81:2
89:18, 19
90:18
109:13, 17
122:6, 7
**entering**
45:10, 15
93:21, 25 94:1, 4
**entire**
131:11
**entirely**
55:24
56:1
75:11
112:2,

18 113:17 114:24
**entirety** 75:17 89:15 108:11
**entitled** 8:5
**entity** 92:25
**entries** 99:4
**entry** 46:9
**error** 15:16 175:2
**ESQUIRE** 3:7, 14
**essence** 92:25
**essentially** 30:12
**et** 1:21 2:7, 8 9:11, 12 178:9
**etcetera** 29:23, 24 101:22
**evening** 140:10
**eventually** 69:5 154:16
**everybody** 20:1 56:1 86:14 99:25 134:9 152:8 154:10
**everything's** 53:18 75:20
**exact** 129:23, 24 131:2
**EXAMINATION** 4:3 11:13 174:4 175:11
**example** 16:23 27:11 34:19 38:23 55:13 61:1, 2 71:10 75:19 107:18 109:8 116:20 119:5 176:1
**examples** 56:24 176:18
**excluded** 122:3
**exclusively** 42:22 94:17 117:14 170:20 171:21
**EXHIBIT** 5:4 19:23, 24, 25 21:14 26:11, 25 27:10, 12, 21 31:17 36:17, 20, 21 38:19 53:1 62:19 68:16, 17, 19, 23 72:25 73:1, 4 76:11, 14, 15 86:10, 11 88:1, 4, 6 106:6, 9, 23 107:8, 10, 12, 13 110:20 115:5, 6 116:3 117:22 134:12, 14, 16 136:8 139:11, 12 140:3, 8 145:19, 20 148:9, 10 155:1, 2, 8 174:9, 12
**exist** 50:18 81:21 104:3, 13, 24
**existed** 109:23
**exists** 44:16 109:19 110:10
**EXP** 92:2, 13
**expansively** 39:14
**expeditiously** 158:7
**experience** 12:2
**Expired** 92:3, 11
**explain** 52:9 55:20 91:6 120:18
**explanation** 147:19
**explicitly** 17:1, 12
**export** 112:14 118:20
**exported** 116:22
**extensively** 86:5, 6
**extent** 30:4
**extenuating** 68:5

**< F >**

**facilities** 55:1, 7 80:14 81:3 123:10 124:12 126:13
**facility** 54:18, 20 57:11, 13 62:10 64:9 80:14, 21 100:12, 13 118:14 174:19
**facility's** 82:5
**fact** 11:19 48:14 61:25 88:24 90:1, 3, 6 113:6

141:*12*
170:*8*
**factual**
89:*21*
**failure**
173:*13*, *16*
**fair**
20:*22*
21:*21*
27:*23*
36:*13*
37:*18*
41:*2*
69:*3*
73:*5*, *10*
81:*11*
99:*2*
103:*13*
105:*25*
121:*20*
131:*10*
133:*23*
134:*18*, *25*
140:*19*
143:*20*
147:*17*
150:*6*, *10*
156:*4*
157:*12*
170:*4*
172:*10*
**fall**
77:*1*
161:*4*
**falls**
160:*1*, *21*
**false**
123:*24*
126:*24*
152:*16*
**familiar**
86:*17*
**family**
35:*5*, *22*
176:*6*, *7*
177:*1*
**far**
33:*12*, *22*, *23*
34:*1*, *3*
39:*17*
40:*3*, *9*
79:*10*
173:*13*
**fashion**
19:*9*, *20*
**faster**
83:*4*
**February**
137:*3*, *21*
142:*18*
147:*9*
149:*7*
**FEDERAL**
7:*1*, *11*, *13*, *15*
8:*1*, *6*
35:*5*, *11*, *12*, *14*
105:*14*
106:*2*, *17*
116:*20*
120:*1*
**feel**
13:*8*
53:*8*
171:*12*
178:*3*
**fell**
160:*6*, *7*
**felt**
128:*25*
**field**
48:*1*, *3*
51:*2*
63:*17*
95:*3*
144:*4*
175:*24*
**fields**
175:*1*
**fifth**
132:*15*
**figure**
59:*22*
64:*3*
69:*11*
71:*11*
72:*12*
85:*9*, *10*
90:*15*
95:*5*, *21*
**figuring**
96:*16*, *22*
**file**
59:*18*
69:*1*
73:*22*
80:*22*
81:*7*, *12*
124:*3*, *4*
129:*2*, *4*
**filed**
9:*13*
80:*13*, *19*, *21*
81:*3*, *6*, *7* 82:*4*
**files**
25:*9*, *11*
26:*5*
27:*24*
28:*4*
30:*10*
52:*12*, *18*, *22*
74:*1*
**filing**
80:*9*, *11*, *23* 81:*8*, *9*, *10*
**fill**
51:*3*
**filled**
51:*22*
94:*22*
**filling**
51:*11*, *13*
**final**
80:*9*
140:*4*
**find**
15:*16*
57:*8*
60:*2*
61:*17*
65:*4*, *11*
70:*23*
83:*20*
84:*12*, *19*
94:*18*
107:*17*
110:*17*
120:*10*
124:*20*
**finding**
95:*12*
**finds**
58:*2*
**fine**
22:*12*
23:*8*
59:*1*
62:*16*
107:*21*
134:*24*
139:*15*
150:*1*
173:*1*, *8*, *21*
174:*13*
175:*9*
177:*15*
178:*3*
**finish**
12:*9*, *19*
22:*5*
47:*17*
82:*13*
100:*19*
102:*17*, *18*
107:*3*
159:*19*
172:*3*
**finished**
47:*2*
100:*22*
**first**
16:*10*
22:*8*
24:*4*
26:*11*
36:*17*
86:*14*
88:*12*
99:*10*
100:*3*, *4*, *6*, *17*
101:*4*, *5*, *24*
102:*12*, *22*

108:*1, 14, 21* 118:*14* 119:*11, 13* 120:*4, 11* 121:*7, 9* 131:*25* 132:*5, 19* 134:*20* 138:*6* 141:*17* 146:*12* 155:*4* 157:*9, 11* 170:*2, 7, 8, 25* 180:*3*

**fit**
56:*25*

**five**
28:*1* 31:*7* 46:*25* 136:*22, 23* 162:*17, 23* 165:*17*

**five-minute**
82:*20*

**fix**
25:*19* 86:*13* 108:*5*

**flood**
151:*12, 25*

**folder**
28:*9, 11, 12, 15, 20, 22, 25* 29:*3, 4, 25* 71:*17, 19* 72:*16* 80:*5, 6, 8* 85:*14, 15* 86:*18* 97:*5, 7, 10* 110:*21* 114:*18* 115:*6, 10, 19, 22* 116:*1, 13* 117:*18* 123:*5, 8, 16* 124:*14* 125:*6, 10, 14* 126:*16*

**folders**
6:*4* 28:*7, 8, 13* 29:*17, 21* 30:*5* 86:*4* 99:*16, 25* 122:*20* 123:*12, 13, 14* 125:*20* 126:*21*

**follow**
12:*6* 30:*5* 61:*21*

**followed**
43:*13* 45:*3*

**FOLLOWING**
37:*14* 45:*13* 106:*1* 147:*2, 4, 5*

**follows**
11:*8*

**follow-up**
38:*25* 142:*2* 165:*20*

**foregoing**
179:*4, 7* 180:*7* 181:*1*

**forgotten**
16:*7*

**form**
7:*7* 18:*2* 19:*4* 22:*25* 23:*19, 21* 24:*9, 15, 19* 33:*17* 34:*5* 38:*3, 11* 39:*19* 40:*12* 41:*15* 43:*14* 44:*7, 22* 45:*8, 16, 22* 48:*20* 49:*4, 12* 50:*23* 51:*16* 55:*9, 23* 56:*3, 11, 17* 58:*4, 17* 59:*5, 12* 60:*3, 24* 61:*12* 62:*7* 63:*15* 64:*7* 65:*6, 13* 66:*7, 20* 67:*23* 68:*4* 69:*20* 70:*2, 10, 20* 71:*1, 16* 72:*3* 73:*7, 13, 19* 74:*8, 15, 20, 23* 75:*4, 10* 76:*2* 77:*3, 13, 21* 78:*4, 10, 23* 79:*12, 17* 80:*25* 83:*24* 84:*10, 20* 85:*12* 89:*2, 13* 90:*4* 95:*14* 97:*20* 103:*22* 104:*6, 17* 105:*8* 106:*4, 21* 109:*21* 110:*3, 12* 111:*11* 112:*6, 17, 23* 113:*8, 16* 115:*3, 11, 20* 116:*2, 14* 117:*16* 122:*15, 21* 123:*3* 124:*5, 16* 125:*11, 21* 127:*1* 128:*15* 129:*14* 131:*12* 135:*24* 138:*18* 139:*5* 141:*15* 142:*9* 151:*5, 20* 152:*13* 153:*9* 154:*5*

158:16
159:14
160:9, 23
161:6, 23
162:8, 16
163:11
164:1, 20
165:7
170:11, 22
171:23
172:15
177:3
**formal**
15:12
**forms**
73:20, 25 74:4, 5 79:20
**forth**
179:5
**forward**
159:24
**forwards**
90:22
**found**
124:14
171:20
**four**
24:3, 12
25:9, 11
26:5
27:10, 25 28:1, 4, 7
31:7
36:3, 4
52:13, 17
73:25
77:19
96:9
106:16
133:1, 8
**fourteenth**
133:18
**fourth**
132:13, 24
**frame**
61:21
**free**
13:8
53:8
171:12
178:4
**FROM/TO**
181:1
**front**
31:18
87:25
95:18
155:19
**fulfilled**
18:23
**full**
96:14
125:13
151:11, 14
152:3
153:3, 16, 19, 22
169:12
170:3
171:4
**fully**
14:14
171:1
**FURTHER**
7:6, 9, 12
10:11
148:20
161:3
168:23
175:11
177:6
179:10
180:7
**future**
58:11
77:11
90:22
101:25
114:21

**< G >**
**GABRIEL**
1:13
**Gajtani**
22:6, 14, 15 30:23
**G-A-J-T-A-N-I**
22:13
**general**
35:23
58:14
60:7
80:4, 9, 13, 15, 18 81:3, 7 82:4, 5
**generally**
19:2
21:10
**generate**
75:24
77:11
122:8
126:12
**generated**
15:15
54:10, 14, 16, 17
59:14
79:10, 15 80:4
114:19, 22
117:25
118:10, 11, 17
130:24, 25
144:22
**generates**
59:20
78:2, 19
**generating**
123:7, 9, 10
125:19
144:1
150:21, 23, 24, 25
163:22
164:15
**getting**
13:7
32:9
47:13
**give**
11:2
12:4
23:9
24:7
27:8
43:4
54:4
56:23
61:4
99:17, 25
100:1
131:13
155:5, 14
162:2
163:6, 7, 15
165:17
166:17, 21
168:24
**given**
54:23
80:8
123:19
130:7
148:4
152:25
162:23
166:11
180:9
**gives**
78:13
**giving**
162:13
165:5, 23
**glass**
32:9
**go**
12:18
19:1
23:22
24:4

25:18
30:19
31:12
34:10
36:15
37:5, 6
38:19
46:19
49:22
52:22
58:5
62:19
65:4, 11
72:20
74:13
79:6
82:21
83:4
84:11, 17, 21
85:25
86:2
87:4, 24
95:12
96:14, 15, 20, 22
98:11, 13
101:8, 10, 18
106:22
107:18
108:17
110:17
115:13
116:15
132:3
134:12, 21
137:13
139:12
140:4
141:6
145:18
146:19
147:17
148:12
153:16
154:6
155:18
158:3
162:22, 25
165:14, 15, 18
168:13, 22

**goes**
43:9
48:15

**going**
12:4, 9
13:4
16:4
19:22
26:24
27:20
31:11, 12, 14, 16
32:19, 20, 22
33:4
34:9, 13
36:20
37:7, 12
42:20
47:13, 16
53:13, 18
59:17
64:4
68:12, 15
72:23
74:3
76:7, 10, 12, 14
81:24
83:4
86:13, 15
87:25
91:5
93:15
94:19
104:22
108:17
116:24
117:20, 21
122:11
130:5
134:23
136:4, 7
139:11
140:2, 4, 7, 13
141:8
143:13
144:14, 15
145:16, 23
146:11
148:6
149:6, 12, 16, 24
150:5, 9
156:21
159:24
162:20, 21, 25
163:3, 4, 6, 7, 13
164:10
167:25
168:2, 3, 4
169:20
171:8
172:13
175:9
177:11
178:7

**Good**
9:2, 18
10:22
55:13
67:18
72:11
107:18
140:9
145:17

**gotten**
92:1, 20

**got-you**
53:21

**governing**
10:3

**governor's**
71:3
72:13

**graph**
97:1
148:5
174:17

**Great**
11:24
16:14
18:23
21:13
31:11
55:15
83:12
86:8
114:10
127:22
143:13
172:18

**GREEN**
3:3, 7
4:4, 6
9:18, 19, 20, 21
10:16
11:12, 14
12:15, 16
18:5, 19
19:10, 21
20:1, 4, 8, 11, 15
22:12, 15, 18, 21
23:3, 17, 23
24:11, 14, 18, 23, 25
25:15, 20
26:1
27:8, 13, 16
30:2, 12, 14
31:25
32:2, 8, 16, 17
33:11, 19
34:8, 22, 25
36:19, 24
37:3, 7, 10

38:5, 13 40:2, 15 41:19 42:3, 6 43:21 44:9 45:1, 11, 18 46:3, 6, 7, 16 47:3, 11, 15, 21 48:21, 25 49:7, 17 51:4, 18 53:8, 12, 17 55:10, 25 56:7, 13, 18 58:7, 24 59:10, 15 60:12, 25 61:15 62:13, 16, 18 63:19 64:16 65:9, 16, 24 66:11, 25 67:8, 11, 17, 25 68:12, 18 69:24 70:6, 14, 22 71:4, 18 72:5, 10 73:9, 15 74:11, 17 75:1, 7, 13 76:4, 9 77:7, 16, 24 78:6, 14 79:1, 23 81:5 82:19 83:1, 8, 12, 18 84:1, 5, 13, 25 85:17, 23 86:8, 12 87:11, 20, 23 88:5 89:4, 16 90:7 95:17 97:21 98:16 100:2, 22 101:1, 13 102:19 103:3, 25 104:10, 20 105:12, 24 106:7 107:1, 6, 11, 22 108:4, 7 109:24 110:6, 15 111:15 112:9, 19, 25 113:4, 11, 19 115:7, 16, 23 116:4, 17, 24 117:2, 9, 19 122:18, 25 123:6 124:9, 19 125:15, 25 126:8, 22 127:4 128:20 129:17 131:15 133:4, 6, 7 134:11, 17 135:25 138:23 139:10, 15, 18, 21 140:1 141:22 142:12 145:9, 16, 21, 23 146:1 148:6, 11 151:9, 15, 23 152:17 153:13 154:12, 25 155:3, 9, 13 158:19, 25 159:18 160:13 161:1, 10 162:1, 12, 19, 24 163:4, 9, 17, 20 164:6 165:1, 4, 9, 11, 16, 19, 22 166:3, 7, 10 168:15, 19, 24, 25 170:15 171:6 172:1, 18, 24 173:4, 7, 10, 22 174:1, 11 175:8, 12 176:4 177:6, 9, 12, 15, 18, 22, 25 178:2

**group** 8:18 30:1

**guess** 34:9 52:14 59:1, 16 71:2 95:4 107:20 163:11 169:20

**guys** 20:4 36:25 47:3

**< H >**

**halfway** 20:3

**hand** 10:25 11:10

**handle** 35:11, 13 152:24

**handles** 35:17

**handling** 21:10

**handwrites** 50:2

**handwritten** 49:23, 25 50:1, 3

**happen** 39:2

56:21 93:24 122:2 154:3
**happened** 84:18 89:12 90:21, 24 123:19 130:9, 10
**happening** 61:8 130:11
**happens** 32:23 39:17 40:5 41:13 43:11 60:14
**happy** 132:3 174:14
**harassment** 168:13
**head** 12:11 13:1
**heading** 108:13
**headings** 99:11 108:3, 9
**Health** 93:12
**hear** 13:16 24:17 25:17 65:21 145:11 172:21
**heard** 12:5
**hearing** 47:7 49:19 118:16
**held** 19:7 33:2 41:10 77:17, 19 79:9 109:15, 19 111:24 113:9, 15 114:7, 13, 21, 23 117:14 120:15 123:22 124:1 127:9, 13 128:1, 2, 5, 7, 11 129:8, 12 130:1, 3 136:24 137:9, 17, 24 138:3 141:14 143:17 144:16 145:2, 6 146:3, 8 150:11 160:11 161:20 162:6, 10 164:3 169:10, 23 170:19 171:21 172:8 176:23, 25 177:1
**Hello** 48:20
**help** 12:8 13:25 33:10 51:19 126:19 138:20 151:1 154:9 174:14
**Hey** 53:24 169:20
**higher** 170:1
**highlighted** 37:11
**History** 5:8 68:20 72:19 76:13
**hit** 20:5
**hold** 42:20 143:2, 4, 5, 8, 9, 15, 23 144:1, 14 146:23 149:9, 10, 13, 14, 22 150:3 173:10
**holding** 110:1, 5, 9, 23 111:7, 8, 13, 16, 18, 20, 25 112:4, 11, 15, 22 117:5 139:8 173:11, 12, 15, 17
**holds** 136:11, 16 137:5, 23 140:11, 16 141:4 147:16 148:1, 15 149:3, 4 150:6, 7 177:5
**hope** 153:11
**hoped** 139:21
**hoping** 83:2
**HORTON** 1:15
**Hospital** 87:8 93:12
**hour** 24:10, 12, 24
**hours** 14:7, 10
**housed** 81:4
**housing** 54:24 80:19 118:14
**hundred** 131:4 135:9, 10
**Hygiene** 93:12
**hypothetical** 32:23 38:21 39:13 42:13 43:3
**hypothetically** 76:4, 24 90:12 109:19 128:4

**< I >**
**idea** 145:17 154:23

**identification**
8:12 19:25 27:12 36:21 68:17 86:11 88:4 134:16 145:20 148:10 155:2

**identified**
8:11, 18, 23 136:14 160:10, 21 161:7

**identifies**
159:25

**identify**
9:15 157:20, 21 158:1, 13 159:9

**identifying** 96:20 118:18 120:21 160:5, 7 161:4 162:5

**ignore**
75:19 89:24

**IIS**
44:4, 5, 10, 11, 12, 14, 15, 19 45:4 47:2 48:1, 4, 6, 10, 13, 19 49:2, 3 50:12, 20, 21 51:1, 11, 13, 15, 22, 24 52:6, 11, 14, 15, 20 53:19, 20, 23 54:3, 10 58:9, 10, 12 61:19 62:1 63:13, 17, 21 64:5, 17, 19 67:2 77:5, 8, 11, 19, 20, 25 78:1, 12, 18 79:8 80:16, 18, 23 81:2 82:6 85:15 86:5 93:21 97:16, 22 111:2, 4 112:12, 14 116:19 118:19 122:5, 10, 14, 16 123:4, 20 124:7, 11, 13 125:9, 14, 20 126:16, 20 128:18, 23, 25 144:4 154:19

**images**
17:11

**imagine**
64:22, 25

**immediately** 39:1

**important**
53:15 110:1, 23 111:1, 24 112:4, 21 117:4

**imposed**
92:10, 15

**I-N**
22:19

**inaccurate**
159:21

**inaccurately**
159:12

**incapable**
168:20

**incarceration**
100:14

**include**
10:6 28:5, 6 50:8

**included**
116:11 170:5 177:12

**includes**
6:13 39:6, 7, 9 116:25 126:12, 13

**including**
48:9 132:2 135:19

**indicate**
47:12

**indictment**
45:25 46:11, 21 50:5 121:1

**Indiscernible**
87:5 165:9

**individual**
16:18 38:7 40:8 41:18 45:24 46:1, 10 48:15 50:7 54:24 57:11 60:8 80:21 81:4 82:16 88:16 91:10 92:22 100:7 101:10 111:19 113:9 115:9, 19 116:1, 7 118:15 121:5 122:20 123:8, 11, 25 129:2 143:5 144:24, 25 147:3 157:17 159:6 167:13, 22 168:6

**individually**
134:19

**individuals** 19:19 35:14, 23 54:11

62:*11* 64:*13* 69:*23* 73:*20* 79:*18* 103:*2*, *9* 104:*8*, *19* 105:*10* 113:*3* 118:*18* 131:*3* 136:*14* 137:*24* 138:*6*, *7*, *21* 147:*5* 149:*2* 153:*2* 154:*19* 158:*1*, *7*, *13* 159:*9* 160:*7*, *10* 161:*8*, *16* 162:*10* 164:*3*, *24* 167:*3*, *6*, *23* 168:*8* 169:*9*, *16*, *21* 174:*18*

**individual's** 97:*4*, *7* 110:*21* 114:*18* 115:*6*, *22* 116:*13*

**inform** 18:*8*, *14*

**information** 6:*7* 17:*10* 31:*3* 32:*25* 34:*1* 41:*8* 44:*4* 48:*1*, *4*, *9* 49:*2*, *14*, *16* 50:*9* 53:*14*, *15* 63:*13* 65:*15*, *17*, *23*, *25* 66:*6*, *9*, *19* 73:*6* 77:*6* 87:*14*, *17* 88:*23* 89:*9* 93:*22*, *25* 94:*1*, *4*, *20*, *23* 97:*2* 110:*20* 111:*2*, *4* 112:*3* 117:*1*, *4*, *25* 118:*3*, *9*, *11*, *20* 122:*9* 123:*17*, *20* 124:*12* 125:*9*, *10* 126:*24* 127:*18* 137:*15*

**initial** 50:*25* 58:*2* 117:*12*

**initially** 25:*2* 63:*22* 85:*5* 88:*17*, *20*, *21* 170:*12*

**Inmate** 5:*8* 30:*10* 44:*4* 68:*19* 71:*17*, *19* 72:*16*, *19* 73:*22* 84:*7* 100:*12*

**inmates** 152:*5*, *19*

**inmate's** 59:*18*

**input** 50:*25* 58:*21* 59:*2* 63:*17*, *20* 90:*13* 94:*24* 124:*7*

**inputs** 54:*1* 82:*5*

**inputted** 52:*11*, *23* 124:*8*

**inputting** 46:*9* 89:*23* 175:*4*

**inquiry** 85:*21*, *25*

**instance** 130:*1*

**instances** 112:*20* 150:*10*

**instruct** 8:*16* 162:*25* 163:*10*

**instructing** 123:*14* 163:*2*

**instructions** 18:*21*

**instrument** 29:*6*, *9*, *13* 103:*24* 104:*2*, *3*, *9*, *12*, *13*, *16*, *24* 105:*1*, *4*

**instruments** 104:*19* 113:*10* 128:*3*, *5* 138:*1* 139:*7* 141:*20* 169:*24*

**intake** 51:*10* 52:*1*, *4*, *5* 61:*19* 80:*4*

**intaken** 52:*3*

**integrate** 153:*2*

**interested** 179:*12*

**interject** 25:*14*

**internal** 52:*21* 175:*2*

**internet** 91:*22*

**interrupted** 142:*22*

**interview** 79:*17*

**involved** 42:*10*, *18* 172:*20*

**issue** 71:*13* 72:*14* 156:*14*, *17* 157:*5*, *8*, *18*, *22* 159:*7* 173:*17*

**issued** 47:1
**issues** 68:7 71:7, 10 174:22
**items** 98:22
**It'll** 32:6
**its** 75:17 89:15 108:11

**< J >**
**jail** 21:11 100:9, 10, 11
**jails** 42:8 55:12
**JAMAL** 2:4 4:3 9:10 10:23 180:13 181:1
**J-A-M-A-L** 10:23
**January** 136:13 144:8 146:20 147:2, 3, 10, 12 148:13, 25 149:1 156:23 157:9, 12
**JASDEEP** 1:21
**jaw** 87:8
**Jersey** 93:8
**JOB** 2:11 127:6, 7 161:19
**JOHN** 1:12
**Joshua** 22:7, 16
**judge** 59:25 158:7 175:7
**judicial** 154:9
**jumping** 32:18
**jurisdiction** 92:24
**Justice** 156:3 157:1 159:2

**< K >**
**keep** 47:13, 20 84:1 112:21 134:8, 9 141:20 144:9 150:5 155:4 162:20 163:4, 13
**keeps** 135:2
**kept** 133:20 143:5 171:4
**KHAORI** 1:4 68:20 87:16
**kind** 12:6 17:9, 16 31:13 34:12 39:17 43:24 47:25 55:21 63:24, 25 66:19 67:1 78:2 79:16 91:5 92:13 94:4 104:15 105:7 107:23 138:5, 7 144:4, 9 145:5 151:4 154:9, 11, 20 157:24
**kinds** 28:24 29:21 36:3, 4 57:7 120:15
**Kings** 5:6 118:12, 18 141:10 149:8
**know** 13:22 15:12, 23 16:23 17:6 19:21 20:3 22:4, 22 23:1, 7 24:5 29:16, 24 32:4 38:24 44:10 47:12 55:11, 20 56:20 58:16, 25 59:2, 3, 6, 11, 22, 24 64:12 65:1 66:3, 8, 12, 14 68:5, 6, 7, 8 74:25 75:11 76:7, 10, 13 77:23 78:5, 11, 24 79:2 84:14 85:4, 6 91:22 98:7 99:14 106:15 108:4 110:4, 23 111:24 112:4, 11 118:25 120:14 127:22 130:4, 8, 13, 14, 20, 22 136:19 140:17 141:13, 23 142:16 145:4 146:15 147:15, 21, 22 150:2 152:4, 18 153:14 163:16 165:19 169:12 171:25 174:13 175:20, 22 176:23

**knowledge**
34:7
74:9
75:5, 8
81:19
142:11
**knows**
16:25
53:23
81:21
**knucklehead-level**
44:11
**KRYSTALBELLA** 1:16
**KYLAYSIA**
1:5

**< L >**
**language**
36:9
37:16, 20, 24
45:6
**LAW**
3:11
39:10
92:24
102:13, 23
**laws**
10:3
**lawyers**
22:23, 24 23:5, 9, 14
24:1, 8
**left**
62:2
**leftmost**
109:8
**Legal**
2:9
9:7
22:3, 6
30:23
31:1, 8
156:1, 11
**legible**
46:12
140:7
**letter**
156:6, 7, 10
**letters**
26:15
54:5
**L-E-V**
22:18
**level**
12:8
**Levin**
22:7, 17, 18
**Levy**
22:16
87:9
**L-E-V-Y**
22:16
**lie**
149:24
**Likewise**
12:24
21:5
57:24
**limited**
70:4, 16, 18
151:7
152:1
**LINE**
6:3
95:19
99:10
120:13
132:8, 11, 13, 17, 19, 22
138:24
148:8
176:5
181:1
**lines**
99:8
100:18
132:5, 15
140:22
**List**
5:6, 11, 12, 13
27:10, 25
118:17
122:4
123:9
125:23, 24
126:18
127:9
131:5, 11
139:3
141:24
147:7, 23
154:7
157:9, 11, 19
158:8
159:8, 24
160:17
161:15
162:9
163:22
164:2, 15, 22
167:3, 5, 12, 23
168:8
170:5
171:2, 15
**listed**
21:4
23:9
56:5
75:6
96:9
99:25
102:14
105:11
109:6
118:21
120:13
121:12, 22, 23
123:21, 25
128:7
129:8
134:10
**listen**
104:22
164:13
168:3
171:7, 9
**listing**
118:13
**lists**
21:7
26:21
27:3, 4
28:2
54:11
117:21
123:7, 10
125:19
130:24
131:1
150:21, 23, 24, 25
154:1, 2
156:19
157:8
159:3, 21
**little**
36:22
37:8, 13
47:4, 6, 11, 12
55:20
88:18
105:16
107:15, 16
143:14
144:9
145:24
146:19
147:17
149:20
150:22
176:2
**live**
101:2
**lives**
171:14
**living**
167:10
**locate**
31:3
**LOCATION**
2:9
33:1

41:9, 14
42:25
**lodged**
158:1, 13
159:9
163:23
164:16
**log**
68:20
72:19
**long**
24:3, 4, 7
**longer**
57:1, 8, 12, 14
139:17
171:8
**look**
20:10
25:11
52:22
65:4, 7
69:13
70:25
71:15, 17, 19, 22 72:1, 15, 18, 25
83:23
84:6, 8, 17
85:10, 14 91:1
95:24
97:4, 6, 8, 12
99:16
108:9
140:19
145:25
157:14
171:25
175:19
**looked**
25:5, 6, 7, 8
27:17
120:11
137:20
149:8
150:12, 13
176:19
**looking**
86:25
90:20, 21
95:11, 23 97:1
116:13
129:11, 24
131:23
135:16
159:22
164:5, 23
167:8
170:24
**looks**
131:24
135:3
136:17
140:21
142:19
175:8
**lot**
68:8
103:1
121:19
139:22
171:8
**low**
138:8
**LT** 1:12
**lunch**
83:3

**< M >**
**M.D**
1:18, 19, 21
**MA** 85:14
**ma'am**
72:9
112:8
113:18
**main**
57:15
**making**
79:11
151:18
153:24, 25
154:2
157:8

**management**
154:16
**mandate**
71:3
72:13
**MANGAT**
1:21
**manner**
152:22
154:22
156:13
**March**
21:19, 20
23:25
69:4, 8
70:1
75:23
147:9
149:13, 19, 20
**Marcus**
146:2
**MARK**
3:14
9:23
19:22
27:9
36:16, 20
62:15, 17
68:16
86:10
88:1
102:19
134:12, 14, 23
145:19
148:9
155:1
163:9
166:3
**marked**
19:25
26:25
27:12, 20
31:17
36:21
38:19
68:17
86:11
88:4
113:25
114:3
117:22
134:16
140:3
145:20
148:10
155:2, 8
**marker**
120:21
**Marshal**
105:20
109:6
**Marshals**
102:24
**matter**
9:11
10:4
18:9
19:3, 6, 12 94:5
**mayor's**
154:1
156:3
157:1
159:2
**mean**
17:9
42:3
57:16
59:17
69:14
70:12
76:11
83:6
88:14
89:5
90:16, 17 91:6, 15, 17
92:8
93:17, 23 95:6
100:4, 16

101:3, 15
102:2
103:17
106:12
108:25
119:8
120:18
125:16
131:5, 22
134:22
136:12
137:16
141:12
143:3
148:21
149:2, 9, 14
161:2
162:22
169:14
173:22
177:20
**meaning**
21:1, 6
39:8
88:9
92:14
103:14
106:9, 11
150:17
152:1
**means**
8:19
10:5, 8
11:16
29:25
38:2
88:24
89:10, 12 90:2, 10
91:16, 22, 25
92:4, 14, 22
93:20, 24 96:2
101:9
106:1, 14
109:10, 12, 14, 18
114:6, 12
119:17
121:23
136:13
137:6
142:17
143:8, 16
144:25
**mechanism**
73:11
154:18
**mechanisms**
73:16
**MEDICAL**
1:15, 17, 19, 20
71:10, 13
**medically**
56:25
57:15
67:24
68:1, 2
**medications** 14:25
**meetings**
24:12
31:7
**MEMBER**
1:13, 15, 16, 18, 19, 20
**members**
6:8
53:14
**memory**
16:18
**men's**
31:24
67:7
139:13
**mental**
14:21
93:12
**met**
170:5, 9
**method**
10:10
74:21
75:3
81:10
**methods**
31:21
32:25
33:15
41:3, 8
43:6
76:18, 25
80:20
81:16
82:2
105:9, 13
**microphone**
47:5
**mind**
32:9
57:24
**minimum**
84:2
144:15
**minute**
18:17
20:10
23:16
31:24
65:20
67:7
82:21
139:12
155:6
**minutes**
32:6
165:17
168:14
**missed**
58:3
162:3
**missing**
93:13, 18, 19
108:2
175:20
**mission**
144:10
**Misstates**
72:4
112:24
122:22
**misstating**
24:16
**mistake**
16:6
89:22
90:2
124:3
**mistakes**
89:24
**misunderstood**
72:7
106:19
**mixture**
57:18
**mm-hmm**
12:11
13:1
132:7, 25
**mm-mm**
12:11
13:1
**MOCJ**
154:10
**mode**
75:9
**moment**
11:17
19:1
25:18
36:16
86:14
89:25
155:15
**MONTALVO**
1:13
**months**
21:20
**morning**
9:2, 18
10:22
87:2, 10
**move**
20:3
30:8
37:8
100:3
107:15
117:21

165:1
176:1
**moved**
16:9
**Movement**
5:8
68:20
72:19
**moving**
47:9, 10
96:10
**MTA**
102:25
**multiply**
135:12
**MURNANE-VICTORELLI**
1:17
**Mx** 4:4,
6 9:18,
19
10:16
11:12,
14
12:15,
16 18:5,
19
19:10,
21 20:1,
4, 8, 11,
15
22:12,
15, 18,
21 23:3,
17, 23
24:11,
14, 18,
23, 25
25:15,
20 26:1
27:8, 13,
16 30:2,
12, 14
31:25
32:2, 8,
16, 17
33:11,
19 34:8,
22, 25
36:19,
24 37:3,
7, 10
38:5, 13
40:2, 15
41:19
42:3, 6
43:21
44:9
45:1, 11,
18 46:3,
6, 7, 16
47:3, 11,
15, 21
48:21,
25 49:7,
17 51:4,
18 53:8,
12, 17
55:10,
25 56:7,
13, 18
58:7, 24
59:10,
15
60:12,
25
61:15
62:13,
16, 18
63:19
64:16
65:9, 16,
24
66:11,
25 67:8,
11, 17,
25
68:12,
18
69:24
70:6, 14,
22 71:4,
18 72:5,
10 73:9,
15
74:11,
17 75:1,
7, 13
76:4, 9
77:7, 16,
24 78:6,
14 79:1,
23 81:5
82:19
83:1, 8,
12, 18
84:1, 5,
13, 25
85:17,
23 86:8,
12
87:11,
20, 23
88:5
89:4, 16
90:7
95:17
97:21
98:16
100:2,
22
101:1,
13
102:19
103:3,
25
104:10,
20
105:12,
24
106:7
107:1, 6,
11, 22
108:4, 7
109:24
110:6,
15
111:15
112:9,
19, 25
113:4,
11, 19
115:7,
16, 23
116:4,
17, 24
117:2, 9,
19
122:18,
25
123:6
124:9,
19
125:15,
25
126:8,
22
127:4
128:20
129:17
131:15
133:4, 6,
7
134:11,
17
135:25
138:23
139:10,
15, 18,
21
140:1
141:22
142:12
145:9,
16, 21,
23
146:1
148:6,
11
151:9,
15, 23
152:17
153:13
154:12,
25
155:3, 9,
13
158:19,
25
159:18
160:13
161:1,
10
162:1,
12, 19,
24
163:4, 9,
17, 20
164:6
165:1, 4,
9, 11, 16,
19, 22
166:3, 7,
10
168:15,
19, 24,
25
170:15
171:6
172:1,

18, 24
173:4, 7, 10, 22
174:1, 11
175:8, 12
176:4
177:6, 9, 15, 18, 22, 25
178:2
**M-X** 9:20
**mzuckerm@law.nyc.gov** 3:15

**< N >**
**name** 9:6 10:21, 22, 23 22:4, 9 46:22 48:14, 16 118:14
**named** 82:3
**names** 136:20 158:5
**native** 144:4
**ND** 92:21, 22 93:7
**necessarily** 93:23 119:19 150:2
**necessary** 8:10
**need** 14:13 29:18 30:3 31:23 32:4 36:11, 17 46:17 47:19 52:19 53:24 67:6 72:20 99:23, 24 101:25 114:17 115:5 117:17 126:15 128:17 129:1 139:13 152:23 171:7 172:19
**needed** 138:10 151:11 154:20
**needs** 50:19, 22
**neither** 179:10
**never** 12:13 33:23 34:3 57:24 62:2 69:21 122:16 159:4, 20
**NEW** 1:2, 10, 11 2:5 3:6, 13 5:13 9:8, 12, 14 11:20 16:20, 25 17:18, 21, 24 18:7, 13 33:13 40:18, 20, 23, 25 41:4 59:19 78:17 91:11 93:8 112:25 124:25 142:4 148:7 167:17 172:7
**ninth** 132:24
**nodding** 12:25
**nominal** 138:8
**nonprescription** 14:9
**noon** 82:24 83:1, 11
**Normal** 177:15
**normally** 51:8 75:21 80:4 89:19 154:19
**notary** 11:8 180:19 181:1
**notate** 150:3
**notated** 149:18
**notates** 95:24
**notation** 138:10 141:17 149:22
**notations** 128:18, 21, 23, 25
**note** 17:8 110:1
**noted** 52:10 109:23 118:12 181:1
**notice** 144:19 169:20
**noticing** 9:17
**notification** 44:23
**notifications** 44:15, 20
**notify** 57:13 159:25 169:4
**notifying** 160:20 164:18 169:6
**Number** 9:12 46:1, 10, 11, 21 47:22 48:16 50:5 88:2 99:13, 19 100:1 101:19 120:16 121:2, 18, 22, 23 127:11, 15 144:15, 16 145:5 151:17 157:23 170:4 172:8, 13 174:10
**numbers** 120:12

121:*14*
143:*15*
**NYC** 3:*11*
**NYPD**
1:*12, 13*
5:*9*
39:*7, 11*
40:*17*
86:*22*
87:*14*
89:*20*
90:*19*
102:*15, 23*
**NYS**
143:*8*
**NYSID**
46:*1, 10, 22*
48:*16*
118:*14*

**< O >**
**oath**
8:*8*
10:*12, 13* 15:*9, 10*
**Object**
18:*2*
19:*4*
22:*25*
23:*19, 20* 24:*9, 15, 19*
33:*17*
34:*5*
38:*3, 11*
39:*19*
40:*12*
41:*15*
43:*14*
44:*7, 22*
45:*8, 16, 22*
48:*20*
49:*4, 12*
50:*23*
51:*16*
55:*9, 23*
56:*3, 11, 17* 58:*4, 17* 59:*5, 12* 60:*3, 24*
61:*12*
62:*7*
63:*15*
64:*7*
65:*6, 13*
66:*7, 20*
67:*23*
68:*4*
69:*20*
70:*2, 10, 20* 71:*1, 16* 72:*3*
73:*7, 13*
74:*8, 15, 23* 75:*4, 10* 76:*2*
77:*3, 13, 21* 78:*4, 10, 23*
79:*12*
80:*25*
83:*24*
84:*10, 20*
85:*12*
89:*2, 13*
90:*4*
95:*14*
97:*20*
103:*22*
104:*6, 17*
105:*8*
106:*4, 21*
109:*21*
110:*3, 12*
111:*11*
112:*6, 17, 23*
113:*8, 16*
115:*3, 11, 20*
116:*2, 14*
117:*16*
122:*15, 21*
123:*3*
124:*5, 16*
125:*11, 21*
127:*1*
128:*15*
129:*14*
131:*12*
135:*24*
138:*18*
139:*5*
141:*15*
142:*9*
151:*5, 20*
152:*13*
153:*9*
154:*5*
158:*16*
159:*14*
160:*9, 23*
161:*6, 23*
162:*8, 16*
163:*11*
164:*1, 20*
165:*7*
170:*11, 22*
171:*23*
172:*15*
177:*3*
**Objection**
99:*21*
115:*12*
117:*7*
126:*6, 17*
145:*8*
166:*1*
168:*12*

**objections**
7:*7*
24:*20*
84:*2*
166:*3, 8*

**obligation**
18:*24*
**obviously**
42:*4*
99:*10*
173:*10*
**OC** 51:*11*
**OCA**
66:*3, 4*
84:*12, 18*
85:*22*
86:*1, 2*
89:*20*
90:*14, 19*
138:*20*
151:*1*
152:*24*
153:*3, 19*
154:*10*
157:*5*
169:*12, 17, 19*
**occur**
43:*2*
**occurred**
95:*2*
**Office**
9:*23*
54:*16*
58:*15*
60:*7*
80:*4, 9, 13, 15, 18* 81:*3, 7* 82:*4, 5* 93:*11*
129:*6*
154:*1*
156:*2, 3*
157:*1*
159:*2*
**OFFICER**
2:*10*
9:*2, 7, 25*
10:*12, 18, 24*
11:*9*
25:*13, 16, 21,*

24
32:11, 14
51:13
52:5
62:14
67:12, 15
83:13, 16 87:9
102:25
133:2
139:23
155:7
177:10, 24
178:6
179:1, 20

**officers**
40:18, 19
58:14
60:7
102:24

**official**
10:6

**Oh**
12:15
18:20
31:25
47:15
60:1
83:10
87:4
92:19
98:12, 24
99:23
100:6, 23
107:11
121:15
135:15
155:9
157:21
173:24
174:2, 15, 25

**Okay**
12:15, 19
13:13, 16, 19
14:3, 17
15:4, 19, 23 16:4, 23 17:6, 16 18:6
19:1, 11, 18, 21
20:7, 8, 12, 16, 19
21:13, 20, 23
22:2, 4, 8, 15, 18, 22 23:4, 7, 24
24:3
25:1, 3, 7, 10
26:2, 10, 19
27:17, 20 28:4, 8, 17
29:2, 20
30:2, 13, 18 31:6, 11 32:1, 7 33:12, 20, 22
34:9
35:1, 16, 25 36:8, 15, 16, 18 37:7, 23 38:1, 6, 9, 14, 18 40:9, 16, 22
41:2, 6, 25 42:3, 7, 15
43:22
44:2, 5, 10, 14
45:2, 12, 19
46:13
47:3, 22
48:8, 13
49:8, 18, 22 50:8, 12, 16, 21 51:5, 19 52:1, 12, 19
53:12, 16
54:14, 25
55:11, 16 56:1, 14, 19, 23 57:3, 7, 19, 25
58:8, 12, 25
59:11
60:18
61:4, 16
62:4, 13
63:3, 5, 9, 20
64:22
65:25
66:4, 17
67:1, 6, 11, 18, 20 68:1, 12, 25
69:3, 7, 11, 17, 25 70:7, 23
71:19
72:1, 23
73:5, 10, 16, 22, 24 74:3, 12 75:2, 18
76:10
77:8, 25
78:7
79:4
80:3, 11
81:6, 15, 20, 24
82:15, 19
83:10, 12, 19
85:1, 18
86:3, 8, 13, 18, 21 87:4, 14, 23, 25 88:8, 12, 22
89:5, 17
90:20, 25 91:1, 5, 19, 21, 23 92:1, 4, 8, 9, 12, 16
93:10, 15
94:16
95:11
96:1
97:6, 12, 15, 18
98:6, 22
99:10, 18
100:3, 6, 15
101:5, 7
102:6, 20
103:16
105:13, 25
106:8
107:2, 7, 14
108:12, 16
109:4, 8, 14
110:7, 16, 22
112:20
113:5, 20
114:5, 10, 15, 19
115:1
116:18, 24
117:10, 20
118:2, 7, 9, 21
119:21,

24 120:10, 22 121:7, 17, 19, 20 122:2, 13 123:1, 7, 11, 15, 19 124:2 127:5, 13, 22 128:9, 14, 21 129:5, 11, 25 130:13, 19, 23 132:4, 11 134:11 135:8, 15, 16, 20 136:5, 7, 17 137:1, 8, 13 138:2, 15 139:11, 15, 20 141:3, 6 142:1, 13, 15, 22 143:1, 7, 20 144:3, 13 145:16, 23 146:7, 11 148:3, 6 149:6, 16, 19 150:5, 9, 20 151:9, 16, 24 153:4, 14, 24 154:13, 25 155:16, 20, 21, 24 156:9, 17, 21 157:3, 11, 12 159:5, 19, 23 160:19 162:13 165:1 166:16 167:14, 25 168:2, 24 169:1, 8, 13 170:4, 8 171:14 172:6, 13, 18 173:4, 9, 21 174:2 175:9, 17 177:6, 7, 20, 22 178:2

**old** 94:13

**OMH** 93:11 105:15, 21 106:3, 17 120:3

**once** 54:22 130:9, 10, 14 151:10, 13 152:2 169:19 170:3

**ones** 75:6 93:16 96:24 109:6 142:1 144:13 147:20 169:22

**ongoing** 171:3

**online** 152:8

**OO** 1:19

**open** 42:21 65:3 136:10 137:4 140:10 146:22 148:14 173:11, 12, 15, 17

**opening** 153:2 154:17 169:21

**operate** 151:11, 13

**operating** 39:7 70:4, 16 151:7 152:1, 2 169:12

**operational** 64:10 153:3 170:3 171:4

**operations** 171:1

**oppose** 10:8

**options** 120:6 163:10

**order** 31:13 59:9, 14, 19 60:1 106:2 152:21 177:13

**orders** 105:15, 20 109:7 116:21 120:2

**orientation** 86:13

**outcome** 179:12

**outside** 8:17 42:7 78:12, 18 93:1 103:14, 17 129:8

**outstanding** 138:11, 24 139:3, 6, 8 141:9, 11, 18 142:7, 20, 24 145:1 146:4, 8 156:11 158:4, 14 159:10 160:15 161:12, 21 162:6 163:24 164:16

**overall** 172:8

**< P >**

**p.m** 2:8 178:8, 9

**packet** 79:22, 24 80:3, 8 82:3

**PAGE** 4:3 5:4 6:3 86:23 131:24, 25 133:20 134:3, 20 135:1, 2, 4, 11, 12, 15, 19 136:8 137:13, 14 140:4, 6, 8, 14 141:7 143:21 146:12, 19 147:22 150:7 155:16, 25 156:21 157:13, 23 158:3 181:1
**pages** 131:23 133:23 134:15 135:5 140:5 157:14
**paid** 91:16, 17, 18
**pain** 87:8
**paints** 95:9
**pandemic** 68:9 69:16, 18 138:21 151:2, 4 152:2 154:11 169:15 170:2
**paper** 17:10, 12 80:17
**paperwork** 6:6 29:7, 23 81:2
**PAR** 91:24
**parameter** 172:10, 11
**parameters** 6:13 116:8, 10, 11, 12, 19 172:5
**Pardon** 98:10
**parent** 100:9, 10, 11
**parole** 35:6, 21 102:23 105:14, 19 106:2, 17 109:7 116:21 120:1 143:8, 9
**paroled** 91:25 92:1
**part** 8:15 45:17 50:3 57:10 62:10, 12, 23 63:2, 17, 18 64:9, 11, 14 66:10 68:25 69:1 71:14 72:14 86:18 87:3 100:8, 15 101:18 123:18 129:10 150:4 157:14 158:6 174:20
**participating** 8:18
**particular** 19:11, 14, 15 21:2 62:10, 22 63:1 67:4 84:7 88:16, 25 90:9 118:12, 15 142:21, 24 143:4 144:20, 21 170:16 171:19
**parties** 7:4, 13 8:4, 10 10:5, 11, 15 179:11
**parts** 67:4 71:6 101:12 126:14 169:21 170:3
**party** 8:13
**pass** 173:19
**PAUL** 1:4 9:11
**pauses** 47:7
**pay** 91:21 101:21
**PD** 157:4
**PDF** 28:13, 15, 20, 22 99:6
**peace** 40:18 102:25
**peak** 151:4
**penalties** 181:1
**people** 21:11 33:2 34:13 35:2, 9, 12, 17, 19 36:4 37:19, 20 41:10 42:10, 16 51:6 55:18 56:9, 14 57:3, 19, 22, 25 68:10 69:18 70:8, 18 71:9 75:25 76:19 78:20 81:16 89:23 95:12 96:11, 23 99:11 101:14, 19

103:4 118:21, 22 124:11 125:2 126:13, 24 127:22 129:6, 12 130:25 131:1, 10, 24 133:25 134:24 135:1 136:18, 23 137:8, 16 138:11, 16 140:15 141:3, 11 144:15, 16 145:5, 7 146:8, 14 148:17, 21 150:2, 11 151:17 152:11, 16 153:6 154:8 156:2 160:5 161:4, 20 162:5 163:23 164:15 170:5, 19 171:20 172:8

**percent** 98:8 99:14 129:19, 21 130:4, 5, 14 149:5, 6

**perfect** 83:1 177:10, 24

**perfectly** 45:3, 12 150:1

**period** 9:20 70:7 73:3 81:17 102:7 170:14, 24

**perjury** 181:1

**person** 8:20 10:12 32:24 38:21 39:2, 13 41:14 44:24 45:10, 12 54:17 58:18, 22 59:7 60:23 61:8, 10, 17, 23 77:1, 12 84:15 85:14 89:10 93:20, 24 94:1 95:20 100:13 104:11 109:1 110:9 111:23 113:14 114:5, 10, 12, 20, 22 119:8, 17 120:11, 14 121:11, 12 124:2 129:2 132:6, 8, 11, 13, 15, 17, 20 134:20 143:16, 17 144:24, 25 146:20, 24 159:1 175:3

**personal** 23:4 48:16 110:21

**personally** 66:14 124:22 126:10, 24 127:19

**personnel** 10:10 152:24

**person's** 48:14 68:2 115:9, 19 116:1

**pertinent** 6:13

**PHILLIPS** 1:4 9:11 29:2, 4, 14 64:23

**phone** 8:22 18:17 64:4, 5 67:2

**photographs** 8:14

**physical** 14:17 17:12 28:11, 12 80:22, 23 81:1, 7, 12

**physically** 15:10 47:4 49:10 60:2 62:5 81:12

**picked** 32:24

**picture** 8:11 49:9 95:10

**piece** 75:19 86:9 90:9

**pin** 99:12

**PIRANDO** 1:12

**place** 23:10 35:18 58:1 60:8 100:18 102:12 153:1 179:5 180:9

**placed** 64:12 80:5

**placing** 51:1

**plaintiff** 10:2 28:23

29:19
68:20
87:16

**Plaintiffs** 1:8 3:9 6:11 9:22 19:7 25:9, 11 26:5 27:25 28:5, 7 52:13 68:9 72:25 74:1, 2 82:3, 17 177:21
**plan** 151:13
**planning** 79:19
**platform** 2:9
**plays** 55:22
**please** 9:15 10:20, 25 13:8, 23 17:6, 8 22:5 24:19, 23 25:15 26:23 32:4 82:13 84:1 100:24 105:17 108:16 118:5 121:3 125:17 142:23 155:5 156:10 159:19 162:2 171:12 172:2
**PLLC** 3:3 9:21
**PO** 87:9
**point** 13:4 34:3 39:12 42:24 55:5 69:8 82:20 94:8 153:4, 10
**POLICE** 1:11 40:19 87:8
**policies** 32:25 33:14, 23 41:3, 8 42:1 43:7, 13 45:3 55:5 81:16 94:3
**policy** 43:9 45:13, 19, 21 51:12 69:17, 21 169:18
**Port** 102:25
**possess** 104:8
**possession** 124:22
**possible** 56:20 176:25 177:1
**potentially** 15:20
**powers** 40:14, 16, 20, 25
**practices** 41:3
**precinct** 103:6
**precisely** 19:1
**pre-DOC** 42:21
**preparation** 18:24 21:15, 24
**prepare** 21:15 25:4 26:3, 8 27:18, 22 30:16 31:9 42:16 106:10
**prepared** 20:25 21:5, 9 34:2 41:25 66:5, 18, 22 75:14, 16 76:17 78:7, 17, 25 79:3, 4 81:22, 23 88:8 103:11, 13 141:24 142:5 173:16
**preparing** 21:18 23:25
**prescription** 14:12
**presence** 7:5 117:12
**present** 11:8
**presenting** 108:10
**pretty** 20:20 52:22 53:15 54:10 93:14
**prevent** 151:24
**prevention** 79:18
**previous** 137:13 165:2
**previously** 117:22 140:3
**primarily** 157:18 159:7
**primary** 118:19
**printed** 54:23
**prior** 72:4 95:2 103:9 112:24 122:22 174:23
**prioritize** 169:9, 13, 15
**prioritized** 138:6
**prioritizing** 138:7
**priority** 169:22
**probability** 170:1
**probably** 12:5 57:21 114:6 121:10 134:3, 6,

18
135:1, 8, 22
140:25
141:2
143:22
155:18
**probation** 35:5, 22
**problem** 42:4
122:13
151:3
**procedural** 10:3
**Procedure** 7:11, 14, 16 8:7
152:8, 23 153:1
**procedures** 21:10
125:1
169:12
**proceeding** 9:9
10:9
11:2
**PROCEEDINGS** 2:10
8:15
9:2, 25
10:12, 18, 24
11:9
25:13, 16, 21, 24
32:11, 14
62:14
67:12, 15
83:13, 16
133:2
139:23
155:7
177:10, 24
178:6, 9
179:1, 4, 6, 9, 20
**process** 42:19
130:19
154:9
158:8
**processed** 134:2
**processing** 33:1
41:9, 14
42:25
**produce** 35:17, 23 43:1
50:9
60:22
69:18, 22
77:19, 20
102:8, 11
138:16
169:17
173:13
**produced** 6:5
19:8, 20
30:5, 8
33:5
34:14, 17 35:3, 10, 19
36:5, 9
38:8
50:19, 22
54:24
55:17, 18 56:2, 6, 9, 15
57:4
58:19, 23 59:4, 7, 21
60:17
64:23
65:2
67:22
68:3, 11
70:8, 19, 24
72:12
73:2, 12, 17, 19, 21 74:4, 7, 18, 22
76:1, 19, 25 77:9, 10, 18
78:3, 20
81:18
82:8
134:10
138:16, 21
152:9
167:4, 5
169:11
177:13
**producing** 35:12, 13
152:11, 16
**production** 6:4, 7, 9, 12
30:4
41:11
43:12
53:13
56:5, 25
57:1, 12, 14 58:2
60:7
61:6, 10
62:3, 6, 12
64:11, 20, 21
67:21
71:24
72:23
103:9
151:2, 3
**promise** 171:14
**pronounce** 11:24
**proposal** 20:21
**prosecuting** 57:17
**provide** 167:3
177:16
178:1
**provided** 7:10, 13
30:20, 21, 22, 25 31:8
158:5
**Providing** 177:4
**provision** 48:10
**psychic** 59:25
**psychically** 59:24
**public** 11:8
180:19
181:1
**pull** 26:24
88:1
107:19
122:8
**pulled** 111:4
122:5
123:16
**pulling** 117:23
**purely** 113:13
**purpose** 19:23
138:15, 19
139:2
152:10, 14
158:12
159:3
164:18

169:3, 5, 8, 9
**purposes** 7:10
**Pursuant** 8:6 10:3 33:2 41:10 76:19 78:20 79:9
**put** 15:4 18:17 36:15 48:10 51:14, 23 52:6, 20 56:8 63:22 64:12 76:2 88:22 94:21 111:1 112:12 135:13 141:18 144:6 148:5 153:1
**putting** 66:4 89:22 103:16 144:5 153:6

**< Q >**
**quarters** 107:24
**Queens** 5:11 134:13
**question** 12:21 13:7, 13, 16, 19, 22 15:23 16:10, 11 18:11, 22 23:18 26:6 35:8 39:22 40:1, 7 43:20 44:18 48:23 52:24 53:11, 21 57:25 66:18, 23 72:8 74:16 75:14, 16 77:15 78:8 79:3 81:22, 23 84:4, 24 86:15 89:8 95:15 100:20, 22 101:17 104:22, 23 112:8, 10 113:1 115:17, 24 118:8 119:15 121:9 128:14, 17 130:6, 13 142:3 145:13 161:24 162:17 163:3, 5, 14 164:10, 13 165:3, 6, 8, 12, 24 166:8, 9, 12, 13, 15, 18, 19, 20, 25 167:1, 15, 16, 17 171:8, 10, 13
**questioning** 148:8
**questionnaire** 79:19
**questions** 12:10, 20, 25 14:1 16:17 17:5 32:19, 20 38:25 83:20 85:11 147:18 165:15, 20, 24 171:9 172:25 173:3
**quick** 83:19
**quicker** 37:9
**quickly** 36:9, 13 37:8 82:22 83:2 86:23
**quiet** 47:11
**quote** 152:18 164:16, 17, 18, 19 168:6

**< R >**
**raise** 10:25
**ran** 54:2, 22 120:7, 8 131:5, 11
**RANDY** 1:4
**rank** 12:1
**reach** 154:1
**read** 8:23 20:12 39:23, 25 40:1 87:5 100:24 101:2 165:14 167:25 168:2 177:7 181:1
**readily** 93:22
**ready** 155:22, 23 174:3
**reality** 167:11
**realize** 16:6
**realized** 154:15
**really** 30:1 83:4 139:18 172:19
**realm** 92:13
**rearrange** 47:4
**re-ask** 29:20
**reason** 14:3 15:5

16:8
41:11
56:20
71:14
102:4
110:9
111:8
114:21
119:24
121:12
126:23
127:2, 18
137:8
138:2
139:9
143:9
145:2
149:21
166:11
169:25
181:1
**reasons**
56:20
57:15
60:16
67:21
68:3, 10
71:9
74:18
91:2
102:5, 6
111:16, 18, 23
121:25
128:6, 12
129:8, 12
141:13
176:25
**recall**
29:14
33:21
40:17, 19
52:14
86:20
131:2
149:23, 24, 25
153:18, 22
171:25
172:4
**recognizance** 91:13
**recognize**
20:17
68:22
86:15
88:6
**recollection**
15:24
16:2
28:16, 19
**record**
8:4, 10, 14, 25
9:3, 8, 16 10:6, 21
25:18, 22, 23, 25
32:12, 13, 15
67:13, 14, 16
83:14, 15, 17
112:5
139:24, 25
172:25
177:11
178:7
179:8
**recorded**
17:10
179:6
**recording**
10:7
15:25
**records**
52:15
**redactions**
136:21
**redirect**
175:10
**reducing**
151:17
**refer**
16:16
17:5
125:23
**Referee**
7:5
**reference**
144:21
**referenced**
170:25
**referred**
8:24
143:4
**referring**
16:19
28:18
33:4
34:24
35:7
36:12
39:5
62:24
158:8
167:13, 22
168:7
174:22, 24, 25
**refers**
88:16
89:6
**reflect**
58:11
90:20, 23
121:1
175:4
**reflected**
52:25
**reflects**
69:3, 7
120:4
123:15
**reframe**
85:1
**refreshed**
15:24
16:1
**refreshing**
135:2
**refusal**
56:25
68:2
73:18, 25 74:2, 4, 19
**refused**
73:21
**refuses**
73:18
**refusing**
74:13, 19
**regarding**
174:7, 22
**regards**
97:24
**regularly**
55:16
**related**
179:11
**release**
91:13
**released**
69:5
92:4, 9
**releasing**
29:7
**relevant**
6:6, 10
29:23
31:3
65:12
72:24
82:4
162:5
173:13
**reliability** 174:7, 23
**reliable**
122:14, 17
123:2, 21
125:9
174:17
175:18
**relied**
126:19
**rely**
113:6
116:13

**relying** 124:*20*
**remember** 14:*1* 24:*5* 26:*13* 27:*5* 28:*8, 14, 20* 108:*8, 16* 129:*25* 130:*9, 11* 167:*21*
**remembered** 16:*7*
**REMOTE** 2:*9* 8:*1, 8* 9:*7*
**remotely** 8:*9* 10:*1*
**removed** 87:*8*
**REMY** 3:*7* 9:*18* 12:*13* 22:*11* 31:*23* 32:*7* 33:*9* 34:*20* 65:*7* 67:*7* 82:*24* 108:*3* 174:*10* 175:*6* 177:*16*
**remy@femmelaw.com** 3:*8*
**repeat** 18:*11* 39:*21* 44:*17* 48:*23* 60:*18* 61:*20* 72:*8* 74:*16* 77:*15* 84:*4* 93:*4* 95:*15* 96:*21* 101:*17*
**Reply** 146:*3* 147:*23* 148:*20* 178:*4*
**replying** 146:*7*
**report** 54:*2, 3, 7, 9, 19* 55:*16, 17, 19, 21* 56:*2, 5, 10, 15* 174:*17*
**reporter** 8:*9* 15:*15*
**reports** 82:*7* 170:*7, 8*
**represent** 9:*16* 30:*7* 86:*21* 99:*7* 136:*1*
**representative** 16:*19* 78:*16* 124:*25*
**representing** 18:*7, 13* 127:*17*
**represents** 13:*6* 95:*20*
**reproduction** 116:*25*
**Request** 6:*4, 7, 9, 12*
**require** 35:*2, 9, 19* 36:*4* 37:*19* 45:*13, 19, 21* 57:*12* 81:*16*
**required** 57:*14* 123:*20* 177:*19*
**requirement** 43:*1*
**requires** 33:*5* 34:*13, 16* 57:*1, 8*
**requiring** 41:*11*
**reserved** 7:*7*
**reside** 10:*14*
**resides** 100:*13*
**resolved** 85:*8* 170:*1*
**respect** 7:*16* 154:*8*
**respective** 7:*4*
**responded** 175:*7*
**response** 169:*1*
**responsible** 157:*18* 159:*7*
**restart** 138:*21*
**restarted** 154:*11*
**result** 134:*19*
**retention** 105:*15, 20*
**returned** 87:*1, 9*
**review** 15:*14* 26:*21* 27:*17* 28:*12* 45:*5, 14, 20, 21, 23* 46:*13* 47:*23* 81:*16* 86:*14* 97:*9* 128:*21, 22* 155:*5, 14* 159:*24*
**reviewed** 26:*3, 7, 10* 27:*23* 28:*13* 30:*7, 19* 52:*12* 68:*25* 74:*1* 98:*25* 99:*5* 125:*6, 20* 126:*14, 15, 16, 18* 128:*9* 130:*25* 142:*5* 157:*19* 159:*8*
**reviewing** 31:*7* 124:*3, 14* 126:*20* 129:*2*

**Ridgewood**
3:*6*
**RIGAULT**
2:*4*
4:*3*
9:*10*
10:*22*, *23* 11:*4*, *19*, *20*, *22*
19:*23*, *25*
20:*16*
21:*14*
27:*12*
36:*21*
68:*17*
86:*11*
88:*4*
134:*16*
145:*20*
148:*10*
155:*2*
180:*13*
181:*1*
**R-I-G-A-U-L-T**
10:*23*
**right**
10:*25*
20:*22*
32:*18*
37:*24*
39:*10*
43:*10*, *24* 45:*6*
48:*1*
53:*18*
55:*15*
57:*22*
59:*3*, *22*, *23*
60:*13*, *15* 62:*1*
64:*18*, *24*
66:*12*, *15* 72:*2*, *6*, *12*
75:*8*, *20*, *24*
78:*15*
81:*8*
82:*9*
85:*4*
87:*21*, *23* 89:*8*, *9*, *12*, *23*
90:*3*, *8*, *11*, *15*
92:*6*
94:*10*, *14*
95:*19*
98:*2*, *4*, *18*, *23*
99:*8*, *9*
101:*6*, *14*, *19*
102:*10*, *16*
103:*4*, *7*
104:*5*, *11*, *16*, *21*
105:*2*, *4*
106:*12*
107:*12*, *15*
108:*23*
109:*18*, *20*, *25*
110:*24*
111:*2*, *8*, *10*
112:*12*, *16*
113:*22*
114:*1*, *10*, *19*
115:*8*
116:*9*
117:*20*
119:*25*
120:*3*, *25*
121:*15*
123:*23*
124:*10*, *15*
125:*16*
126:*1*, *3*, *9*, *15*
127:*25*
130:*8*, *9*, *16*, *19*
131:*1*, *16*
132:*2*, *6*, *9*, *17*
133:*21*
134:*4*, *6*, *22*
135:*3*, *9*, *11*
136:*21*
137:*6*
138:*15*
139:*2*
140:*2*, *20*
141:*1*, *23*
143:*10*
144:*17*
145:*2*
147:*1*, *21*
149:*17*
150:*3*, *9*
152:*10*, *11*
153:*7*
155:*10*
157:*1*
161:*14*, *17*
165:*16*
166:*15*, *20*
167:*9*, *17*
170:*10*, *17*
171:*1*, *7*, *16*, *22*
172:*8*, *9*, *14*
174:*2*
175:*25*
177:*23*
**right-hand**
100:*5*
**rights**
7:*13*
**Rikers**
54:*18*
55:*1*, *12*
**room**
8:*20*, *22*
31:*24*
67:*7*
139:*13*
**ROR**
91:*13*
**ROSARIO**
1:*4*
**ROSENBERG**
1:*18*
**rough**
98:*6*
**row**
119:*12*, *13*
120:*11*, *20*
**rows**
121:*8*, *9*
**Rule**
8:*6*
11:*20*
**Rules**
7:*11*, *13*, *15* 8:*6*
10:*3*, *13*
**ruling**
168:*13*
**run**
54:*18*
**runs**
54:*18*

**< S >**
**safe**
152:*22*, *24*
154:*22*
**saying**
11:*22*
12:*11*
43:*9*
49:*19*
51:*12*, *17*, *20*
60:*19*
61:*9*
63:*6*, *10*, *11*
66:*14*

134:25
158:20
159:1
161:18
162:15
166:24
167:1, 21
175:17
**says**
27:3
37:12
49:11
50:9
51:3
60:22
76:16
87:1
90:1, 3
96:1, 17, 23 97:9
108:13
141:18
143:7, 15
146:3
149:9, 13
156:9
157:3, 16
158:12
159:5, 23
161:3, 19
163:22
**scanned**
49:9
**scenario**
60:5
61:14
62:2
64:8
**scheduled**
57:21
62:11
64:11, 13, 14
89:11
90:12, 22
**scope**
125:13
**scratch**
12:17
28:10
36:1
50:2
54:15
79:5
**screen**
36:15
51:1
88:1
107:24
108:16
**screening**
79:19
**screens**
80:16
**scroll**
20:13
53:9
137:1
149:20
**scrolling**
155:5
**second**
27:8
56:8
61:5
64:22, 25
132:8, 22
133:18
168:24
**Secondly**
57:13
**sections**
7:15
**secure**
152:22
154:22
**securing**
59:8, 14, 19 60:1
**see**
20:1
26:17
27:2, 13
31:20
36:11, 13
37:11, 16 45:6
52:23
53:6
59:18
60:18
71:23
73:24
74:2
81:25
83:11
87:1, 12, 13 91:3
97:10
107:17, 23
108:11, 13, 19
114:2, 3
119:5, 6
120:12
121:18
135:2
136:10
140:9, 10
141:9
144:7
145:21
146:13
147:10, 18
148:13
150:5
156:10, 22
157:16, 24
159:23
160:2
175:7
**seeing**
107:19
**seen**
83:21
**send**
44:20
152:4, 18
163:22
165:21
**sending**
119:1, 2, 3, 16
**sends**
156:22
**sense**
12:12, 22 13:2, 11
16:12
17:2, 14
33:6
36:6
60:8
98:6, 18, 20
99:13, 19
120:18
121:19
144:10
151:12
171:3
**sent**
44:24
79:25
136:13
137:14
173:23
**sentence**
92:3, 5, 10, 14
**separate**
48:1
**separated**
120:9
**served**
92:14
**session**
24:24
**set**
32:18, 19 179:5
**seventh**
132:20
**shaking**
12:10
13:1
**share**
19:22
26:25
31:16
68:12, 15

157:6 174:13
**sharing** 36:16, 19 68:13
**sheet** 29:6 99:24 134:24 138:15
**Shiri** 156:22, 25
**should've** 92:1, 20
**show** 26:23 27:4 62:24 128:18 174:10, 18
**showing** 164:3
**shut** 47:20
**side** 56:8 100:5
**sign** 177:8
**signature** 181:1
**signifies** 100:7
**silent** 18:17
**similar** 12:5 17:9 29:15, 17 134:19
**SIMILARLY** 1:6 121:7 143:7
**simultaneous** 87:6 165:10
**single** 59:17, 18 140:23
**Sir** 10:20
**sit** 127:17
**SITUATED** 1:7
**situation** 42:13 43:4 61:7, 16, 22 63:9 103:19
**situations** 61:5 63:5
**sixth** 132:17
**skip** 37:13
**SLC** 9:13
**slots** 71:12
**slowly** 152:8 153:1
**Society** 156:1
**solely** 158:2, 13, 18, 22 159:9 160:14, 16, 17 161:12, 21 162:6 163:23 164:16 167:3
**somebody** 33:5 34:16 36:9 38:23 39:11, 15, 16 40:4, 11 41:12 42:23 43:11, 22 47:23 49:10 50:1, 10, 13, 18, 19, 22 51:10, 23 52:2, 3, 4, 20 53:23, 25 58:2 59:3, 17 60:21 61:17, 22 62:4 64:4 67:21 68:3 73:11, 17 74:4, 7, 18, 21 75:22 76:1, 24 77:9, 10, 17 78:2 79:9 83:21 85:2, 3 89:22 90:2, 13 94:5, 17 95:4 96:16 101:15 103:20 110:2, 7, 23 111:7, 25 112:4, 22 114:1 117:5, 13 119:5, 6, 25 121:20 123:16 124:13 125:5 127:9, 13 130:1, 15 139:2 153:25 156:1, 25 157:7
**somebody's** 51:11 52:1 53:18 59:21 74:13
**someone's** 123:22
**soon** 157:5
**sorry** 18:16 22:4 25:1 27:1, 7 31:24 33:9, 24 34:10, 22, 24 36:17 39:4, 22 40:1 44:17 46:8 48:24 52:25 55:3 58:10 60:5 61:3, 20 67:9, 18 68:13, 21 72:9 80:2, 3, 5 82:13 83:5 84:4, 24 85:14, 18, 20 86:16 87:20 88:18, 19

91:19, 20 92:8, 17 93:4 94:18 96:21 97:22 98:2, 24 99:3 100:12, 17, 21 103:17 105:18, 22 107:11 112:8 118:4 119:15 121:3, 16, 22 128:9, 22 133:4, 5, 6, 10 136:6 137:19 142:22 143:23 144:11, 18 145:11 146:17 147:8, 12 148:24 150:24 153:23 155:9, 12, 21 157:13, 21 158:20 159:19 169:4 172:2, 23
**sort** 33:8 48:17
**sound** 99:8
**sounded** 66:13
**sounds** 47:18 52:3 99:9
**sources** 21:1
**SOUTHERN** 1:2 9:14
**speak** 40:10, 22 41:23 105:16 175:9, 13
**speakers** 25:17
**speaking** 19:2 24:8, 19 33:13 38:1 39:8 47:8 66:17 84:2 145:10 166:3, 8 169:2 172:7
**special** 44:5
**specific** 21:3 43:8 63:10 72:14 82:2 111:14 116:8 154:21 174:20 175:25
**specifically** 16:18 23:11 33:4 105:7 118:17 161:12
**specification** 148:21
**specified** 26:4 54:19 141:12 180:9
**specify** 29:18 148:2
**specifying** 138:3, 4
**speech** 87:6 165:10
**speed** 177:15
**spell** 10:21 22:8
**spelled** 9:20
**spend** 29:16 134:23 172:25
**spent** 24:8 172:2
**splits** 157:14
**spoken** 24:1
**spontaneously** 154:14
**spot** 108:25
**spots** 108:21
**Spreadsheet** 5:10 6:12 21:2, 3 25:8, 10 26:3 27:24 53:3, 4 88:2, 10, 16 94:16 95:11, 18, 23 96:11 98:23, 25 99:4, 8 111:5 116:25 174:16 175:18, 19
**square** 106:12
**STAFF** 1:16, 17, 19, 20 80:5, 15, 19 123:13, 14, 16 152:24
**stands** 54:6 91:7
**START** 2:7 16:5 21:18 29:2 31:14 43:22 45:20 46:20 47:8 68:22 88:12 117:21 140:6 144:1 151:1 153:25 154:2, 17 155:12, 16, 24 169:21
**started** 11:15 23:11, 24 138:7 143:25 144:8

150:21, 23, 24, 25
151:10
157:8
172:9
**starting**
9:17
39:3
153:24
169:11
170:25
**starts**
145:24
**state**
9:16
10:20
13:9
40:18, 21, 23, 25 41:4
62:10
64:9
91:11, 12
**stated**
102:22
105:23
106:25
110:18
151:6, 22
161:7
167:2
**statement**
112:8
152:21
153:11
**STATES**
1:1
9:13
**stating**
19:7
57:11
141:17
**status**
39:2
102:25
153:3
170:3
**stenographic** 10:7
**Stephanie**
2:10
9:6
100:24
174:3
179:3, 18
**stepping**
47:17
**steps**
39:1
**stipulate**
10:15

**STIPULATED**
7:3, 6, 9, 12
8:3
**STIPULATIONS** 7:1
8:1
**Stop**
166:4, 8
172:24
**stopped**
46:16
138:2, 4
149:21
**stored**
80:7, 8
81:13
103:6
**strategy**
154:21
**Street**
3:4, 12
**Strike**
24:6
33:24
77:9, 25
120:24
165:1, 2
**stuff**
44:11
**subject**
18:9
19:3, 6, 12, 16
138:24
142:25
175:14
**Subjects**
5:5
20:23
**subsections** 98:1
**subsets**
36:3
**subtopic**
79:6
**successfully** 83:21
**Suicide**
79:18
**Suite**
3:5 9:7
**supposed**
51:13, 23 52:5
59:21
76:16
82:8
90:15, 17, 20
103:11
106:10
**Supreme**
35:4
87:2, 10
95:25
96:2, 5, 6, 13, 17, 18, 23
97:9, 10, 24
105:21, 22
106:3
107:4, 25
108:13, 20, 24
109:1
113:25
114:7, 11
117:14
120:5, 8
121:21
127:14, 23
129:13
130:2, 15
137:10
146:4, 5
158:4, 14
159:10
160:11, 15, 18
161:8, 13, 21
162:6, 11
163:24
164:4, 17, 25
167:6, 24
168:8
169:10
170:20
171:21
175:1, 23
176:14, 21, 24
**sure**
12:1
14:14
15:8
22:12
25:20
46:9
53:23
54:21
59:18
60:19
67:10
78:19
79:11
82:23
84:14
93:13
94:12
131:9
151:18
152:11, 15
153:5
167:10
172:19
**surrendered** 92:25
**swallowed**
25:2
**swear**
10:19
11:1

**sworn**
11:*7, 11*
17:*20*
180:*4, 15* 181:*1*
**system**
44:*4, 11, 12, 25*
50:*14, 20*
51:*13*
58:*1, 9, 10, 12*
59:*20*
61:*19*
64:*17, 19* 67:*2*
69:*25*
70:*4, 16*
75:*25*
77:*6, 8*
78:*1, 18*
79:*8*
80:*18*
82:*6*
85:*15, 22, 25*
86:*5*
111:*2, 5*
112:*14*
116:*19*
122:*10*
151:*11, 16*
152:*7*
153:*7, 16*
**systems**
50:*16, 18* 58:*8*
75:*24*
78:*9, 12*
87:*18, 19*

**< T >**
**TAC**
26:*14*
**T-A-C**
26:*16, 17*
**take**
9:*8*
14:*13*
18:*15*
31:*13*
32:*6*
48:*8*
67:*9*
82:*20*
86:*14*
95:*19, 21*
104:*7*
145:*14*
172:*20*
**taken**
9:*11*
10:*1*
12:*3*
14:*9, 15*
15:*11*
62:*12*
179:*4*
**talk**
11:*16*
16:*14*
21:*5*
38:*21*
41:*7*
42:*21, 22* 55:*12*
**talked**
38:*20*
47:*22*
49:*1*
60:*13*
123:*16*
**talking**
17:*12*
31:*19*
34:*13*
36:*2*
41:*6, 20, 21*
42:*14*
47:*13, 20* 51:*5*
55:*2, 3*
56:*19*
57:*19*
60:*21*
62:*20*
94:*17*
97:*25*
111:*13*
113:*21*
114:*20*
119:*11*
125:*2*
131:*22*
158:*21*
162:*4*
170:*16*
**task**
158:*12*
**technical**
94:*4*
**technicians** 52:*21*
**tell**
13:*14, 17, 20*
14:*1*
15:*10, 25* 16:*1, 8* 20:*13*
23:*11, 18*
38:*14, 16*
52:*17, 19* 56:*5*
69:*15*
72:*6*
76:*11*
106:*11*
117:*11*
121:*4*
129:*21*
143:*25*
146:*15, 17*
147:*7, 24*
148:*22*
150:*22*
155:*15*
163:*17*
166:*2, 5*
167:*21*
168:*20*
**telling**
14:*13*
129:*5*
167:*5*
**tells**
73:*2*
117:*5*
**tense**
52:*2*
**tenth**
133:*8, 11*
**terms**
41:*13*
42:*24*
45:*2, 6*
76:*23*
94:*3*
**testified**
11:*8*
26:*2*
61:*4*
104:*21*
117:*3*
122:*14*
130:*8*
175:*14*
**testify**
14:*3, 14, 18, 22*
15:*1, 5*
16:*24*
17:*17*
20:*25*
21:*9*
41:*3*
42:*1, 2*
76:*17*
78:*17*
88:*8*
103:*14*
180:*4*
**testifying**
17:*25*
66:*4*
115:*10*
125:*1*
126:*10, 11*
175:*18*
**testimony**
10:*9, 10*
11:*1*
24:*17*
35:*25*
55:*4*
69:*25*
70:*8, 17*
71:*5, 8*

72:4
81:25
99:18
102:10, 15, 22
110:19
112:24
122:22
124:10
142:4
151:7, 16
152:18
174:7, 23
180:5, 9
**text**
8:19
37:11
**Thank**
9:25
10:18, 24 11:9, 12, 23
12:23
30:13
32:5, 16
80:11
81:15
91:1
100:25
116:18
146:12
155:10
**Thanks**
83:12
**theoretically** 37:3
**thereof**
179:12
**thereto**
7:16
**thing**
48:17
86:24
111:12, 20
123:20
134:8
137:6
150:20
**things**
12:4
29:22
45:7
47:22, 25 86:3
105:3
106:16
147:18
159:17
160:25
**think**
13:7
15:5
30:3, 18
31:13
32:22
47:5, 13
49:18
50:17
58:25
66:12
68:16
72:17
82:19, 21 83:4
86:10
93:14, 15
120:4, 12
121:10
127:18
140:20
145:17
157:9
171:2
**thinking**
16:5
**third**
21:9
26:17
28:1
31:15
132:11, 24
**thirteenth**
133:16
**THOMPSON**
1:5
**thought**
106:14
**thousand**
130:25
131:1
**thread**
137:14
146:5
155:1, 5, 14
**three**
23:8, 14
24:1, 3, 8 27:25
82:15
107:23
133:11
154:10
163:12
**till**
67:9
**TIME**
2:7, 8
7:8
9:4, 5
17:4
29:16
43:4
68:9
69:15
70:7
71:3
73:3
75:20
76:12, 13
81:17
84:4
92:11, 14
95:16
100:14
102:7
109:13, 22
110:2, 5
114:19, 22
128:13, 17
129:19, 22
145:5, 14
152:25
160:12
162:17
170:13, 17, 24
172:6, 25
175:3
176:8, 9, 11, 16
178:8
179:5
180:9
**timeframe**
33:10
55:2, 6
76:3
174:18
**timely**
19:8, 20
156:12
**times**
23:13
24:1, 2, 3 33:15
121:5
131:25
133:24
135:13
136:1, 4
162:17, 23
163:3
165:8, 13 166:6
**today**
12:7
13:4
14:4, 19, 23 15:2, 6, 9
40:10
41:3, 7
63:6
64:10, 20 65:3
75:15
82:1
118:23
124:24
126:10
127:18

130:*25*
175:*9*
**Today's**
9:*3*
11:*2*
178:*7*
**toes**
47:*18*
**told**
106:*14*
119:*24*
125:*8*
**tomorrow**
53:*24*
64:*21*
**tool**
115:*15*
118:*19*
123:*5*
138:*20*
151:*1*
171:*5*
**top**
46:*20*
119:*7*
141:*7*, *21*
143:*11*
157:*13*
176:*5*
**Topic**
20:*25*
21:*7*
26:*4*, *22*
27:*2*, *25*
31:*15*, *20*
32:*21*
34:*2*
39:*18*
40:*3*
43:*7*
53:*3*
76:*16*, *23*
78:*17*
79:*6*
81:*24*
106:*10*
**topics**
31:*12*
39:*18*
40:*3*
82:*21*
83:*3*, *9*
87:*24*, *25*
**total**
24:*7*, *12*
144:*14*
172:*8*
**Totally**
144:*11*, *23*
**track**
39:*2*
43:*12*, *25* 44:*2*
50:*18*, *21* 66:*1*
67:*3*
74:*14*, *20* 82:*2*, *16*
97:*18*, *23* 98:*2*
112:*21*
113:*2*
134:*8*, *9*
171:*4*
**tracked**
48:*14*, *19* 49:*1*, *3* 79:*11*
97:*15*
113:*5*
**tracking**
33:*1*, *15*, *23* 41:*9*, *14*
42:*16*, *19*, *25*
73:*11*, *17*
74:*21*
75:*3*, *9*
172:*9*
**tracks**
50:*14*
66:*6*, *9*, *19* 74:*3*, *6*
**transcribed** 49:*6*, *8* 179:*7*
**transcriber's**
179:*9*
**transcript**
9:*19*
15:*15*, *17*
101:*2*
177:*8*, *12*, *13*
178:*1*
179:*8*
180:*8*
**transfer**
39:*12*
93:*5*
**transferred** 91:*10*
93:*7*, *11*
**transport**
152:*22*
**transportation**
57:*5*
152:*4*
**transporting** 87:*16*
**trap**
64:*2*
**trial**
7:*8*
15:*21*
**trick**
167:*15*
**tries**
60:*21*
**trigger**
64:*4*
74:*19*
**triggered**
153:*24*
154:*2*, *7*
**triplicates** 140:*25*
**troopers**
102:*23*
**true**
65:*1*
105:*3*
106:*1*
112:*18*
113:*18*
149:*16*
163:*18*
179:*8*
180:*8*
181:*1*
**trustworthiness**
174:*7*, *23*
**trustworthy** 115:*8*, *18*, *22*, *25*
116:*12*
122:*19*, *23*
123:*1*
175:*5*
**truth**
11:*2*, *3*
15:*11*
180:*4*
**truthfully**
14:*4*, *18*, *22* 15:*1*, *6*
**try**
12:*20*
29:*20*
37:*8*
38:*25*
47:*16*
85:*1*
86:*13*
**trying**
30:*13*
52:*9*
53:*22*
59:*16*, *22*
61:*20*
63:*25*
64:*1*, *2*, *3* 72:*11*
84:*19*
90:*10*, *15*, *25*
95:*5*
106:*13*
145:*12*

153:12
158:24
164:11
**TS** 92:8, 12, 13
**Tuesday**
2:6
9:3
181:1
**turn**
18:15
**tweets**
17:11
**twelfth**
133:14
**Twenty**
135:15
**twice**
121:12
**two**
21:20
22:23
26:7
27:24
31:23
32:6
50:16
57:15
67:6
72:1, 18
74:10, 12
82:21
83:3, 6, 8, 19
105:3, 5
120:12
121:8, 9, 14, 24
131:6, 11
132:5
135:15
140:4
157:14
163:10
170:18
171:15, 18, 19
172:5, 16
**type**
34:15, 16, 23
48:4
49:10
94:11
97:10, 15, 17, 19, 23
**typed**
49:23
**types**
35:2, 9, 18, 20
78:13
**typically**
36:8
37:20, 23
39:11
94:12

**< U >**
**U.S**
109:6
**umms**
47:12
**unclear**
13:19
**undelivered** 73:20, 25 74:5, 20
**understand**
13:13
15:14, 19
16:21
18:3
19:2, 5, 6, 12, 16
32:24
43:17, 20
51:19
53:22
60:20
71:5, 8
83:25
90:10
102:10
104:23
113:12
125:12
128:4
161:11
169:3, 5
**understanding**
38:2, 6, 9, 20
89:1, 23
92:5
**Understood**
23:12
27:6
28:14
29:12, 15
30:22
32:8
36:2
72:18
80:24
81:25
122:10
143:25
144:23
146:19
**unfit**
57:15
67:24
68:1, 2
**UNITED**
1:1
9:13
**UNNECESSARY** 37:15, 24 38:2, 7, 10, 15, 17 45:7
48:3
**unreasonable** 48:9
50:10
**unreliable**
115:2
122:24
124:4
**update**
58:19
95:2
**updated**
58:11, 13, 22
64:19, 21
80:15
175:4
**updates**
157:6
**updating**
58:13
64:5
67:2
**upload**
48:6
**use**
17:4
27:11
38:22
44:12
75:18
76:18
77:1
110:19
114:17
115:9, 18, 25
120:20
**useful**
171:5
**user**
46:9
51:2
54:1, 12, 20
58:20
64:15
89:19
93:21
94:24, 25
**utilize**
77:5
79:17
114:17
115:5
125:13
154:19
**utilized**
7:10
118:19
**utilizing**
123:13

< V >
**vacated** 84:*12*, *15* 138:*5*
**vague** 43:*15*, *16*
**valid** 45:*25*
**valuable** 123:*5*
**varies** 80:*21*
**various** 21:*1*, *6* 54:*23* 80:*15* 82:*5* 88:*9*, *10*
**vehicle** 68:*6*
**verbally** 12:*10*, *25*
**verify** 124:*12* 126:*19*
**version** 28:*13* 49:*9*
**versus** 9:*11*
**video** 8:*14* 25:*5*
**videoconference** 8:*8*
**vocal** 47:*12*

< W >
**wait** 12:*9*, *19*, *20* 20:*9* 23:*16* 46:*4* 65:*20*
**waiting** 48:*21* 169:*1*
**waived** 7:*5*, *14*
**walk** 32:*23*
**want** 11:*15* 15:*8* 20:*9*, *10*, *13* 22:*10* 23:*19* 29:*16* 31:*13* 60:*23* 62:*15* 67:*8* 82:*23*, *24* 134:*22* 145:*25* 155:*11* 157:*14* 165:*14* 167:*10* 168:*13*, *22* 171:*11*, *12* 172:*25* 174:*6*
**wanted** 69:*11* 70:*23* 71:*11* 83:*20* 84:*6*
**wanting** 177:*13*
**Warrant** 5:*7* 6:*5* 29:*8*, *11*, *12*, *22* 32:*24* 33:*3*, *4* 34:*12*, *16*, *19*, *24* 35:*6* 36:*11* 38:*19*, *22*, *24* 39:*3*, *16* 40:*4*, *11* 43:*12*, *23*, *25* 44:*2*, *3*, *14*, *16*, *19* 45:*3*, *6*, *10*, *14*, *24*, *25* 46:*11*, *21*, *22*, *23* 47:*1* 48:*6*, *8*, *15*, *18* 49:*2*, *3*, *9*, *10*, *11*, *13*, *14*, *16* 50:*3*, *6*, *7*, *9*, *14* 51:*1*, *6*, *7* 52:*5* 53:*19* 59:*8*, *14* 60:*9* 62:*5*, *20*, *21*, *22* 63:*1* 77:*17* 79:*10*, *11*, *21* 83:*21* 84:*8*, *12*, *15* 85:*6*, *8* 87:*2*, *10* 94:*6*, *9*, *10*, *11*, *12*, *18*, *25* 95:*5*, *8*, *25* 96:*1*, *2*, *3*, *12*, *13*, *17*, *18*, *19*, *23* 97:*9*, *10*, *12*, *15*, *17*, *19*, *23* 101:*16*, *24* 102:*3* 103:*21* 104:*4*, *15* 105:*7* 106:*2*, *3*, *18* 107:*25* 108:*14*, *20*, *24* 109:*1*, *11*, *12*, *23* 110:*8*, *10*, *11* 111:*8*, *9*, *19*, *23* 112:*1* 113:*7*, *14*, *15* 114:*7*, *8*, *13*, *23* 116:*21* 117:*15* 118:*15* 119:*10*, *18*, *19*, *21*, *22*, *23* 120:*1*, *5*, *6*, *12*, *16*, *24* 121:*13*, *14*, *23* 123:*21*, *22*, *24* 124:*1* 127:*10*, *11*, *14*, *15*, *24* 128:*7*, *12* 130:*2*, *16* 139:*3*, *7*, *8* 142:*7* 143:*5*, *11*, *15*, *18* 145:*1* 146:*17* 147:*16*, *24* 148:*17*, *22* 149:*10*, *13* 157:*19*

158:5, 15 159:8, 11 164:17 170:20 171:22 175:1, 21, 23, 24 176:6, 7, 12, 15, 21, 22, 24 177:1, 2

**warrant-only**
140:15 141:4 146:14, 16, 24 147:6

**warrants**
21:11 33:2, 8, 23 34:15 35:2, 4, 5, 6, 9, 11, 12, 15, 16, 18, 20, 21, 22, 23 36:3, 4, 6, 8, 14 37:18 38:20 41:10 42:11, 13 44:6 57:20, 22, 25 58:21 60:15 69:19 76:20, 21 78:21 95:13, 22 96:24, 25 97:25 98:1 99:15, 20 103:2, 5 105:14, 19, 21, 22 106:24 107:5 108:25 109:2, 4, 6, 7, 9 118:18 120:8, 15 126:20 128:19 129:8, 13 136:11, 16, 18, 24 137:4, 10, 17, 25 138:3, 5, 12, 17, 25 140:10 141:10, 12, 21 142:20, 24 144:16 145:6 146:4, 9, 22 148:14 149:2 150:11 156:12 160:12, 15, 18 161:9, 13, 22 162:7, 11 163:25 164:4, 25 167:4, 7, 24 168:9 169:10, 23 172:9

**water**
32:9

**way**
12:7 13:19 17:5, 24 19:22 21:16 23:12 32:22 61:16 74:14 84:23 87:17 95:2 107:24 120:16, 25 121:2 130:24 133:21 134:3 153:15 166:12 170:17, 19 171:20 172:13 179:12

**ways**
74:6 82:16 101:19, 23

**weather**
68:7

**Webster**
2:10 9:6 11:12, 18 12:8 133:5 179:3, 18

**week**
38:14, 16

**well**
22:3 23:17 29:20 33:12 40:19, 22 43:6 45:20 46:23, 24 52:2 54:15 55:4 57:15 62:2 70:15 71:21 76:4 82:1 83:8 85:1 96:4 98:25 103:10 107:20 109:3 110:16 121:8 124:8, 20 129:25 130:8, 23 131:8 138:11, 20 139:7 144:18 158:24 159:5, 17, 20, 22 161:16 162:2, 21 166:6 167:20 168:15 172:2, 24 173:10, 21, 22 177:21 178:4

**went**
25:17 126:3

134:19
148:24
153:19, 22 170:9
**we're**
21:14
26:24
31:11, 12, 19
34:12
41:6
42:12, 20 47:9
49:19
51:5
53:13
55:2
61:9
62:20
63:10
64:10
65:3
72:23
86:10, 24
93:15
94:16
97:25
106:13
108:2
110:4
111:13
112:11
113:21
114:20
116:24
117:21
119:11
124:24
131:22, 23
134:5, 13
136:3
140:3
145:19
167:10
169:20
170:24
171:8
173:11, 12, 15, 17
175:8
177:18
**we've**
16:9
27:20
31:6, 12, 17
38:18, 20
43:24
50:12
79:7
86:4, 5
88:2
96:11
107:8, 17
117:22
140:3
145:17
168:14
173:18
**WITNESS**
2:4, 5
8:11, 13, 16, 21, 23, 24
10:19
11:7, 11
17:25
18:4, 7, 12, 16
19:5
20:14
23:2
24:10, 22, 24
27:15
30:11
32:5
33:18
34:6, 23
37:1
38:4, 12
39:21, 25
40:13
41:17
42:21
43:15, 19 44:8, 23 45:9, 17, 23
46:20
47:14
48:23
49:5, 13
50:25
51:17
53:6
55:24
56:4, 12
58:6, 18
59:6, 13
60:4
61:13
62:9
63:16
64:8
65:14, 22 66:8, 22
67:24
68:5
69:21
70:3, 11, 21 71:2, 17 72:8
73:8, 14
74:9, 16, 24 75:5, 11 76:6
77:5, 15, 23 78:5, 11, 24
79:14
81:1
84:3, 11, 22
85:13, 20 87:7, 22 89:3, 14 90:5
95:15
98:12, 14
99:23
100:21
101:7, 9
102:21
103:23
104:7, 18
105:9, 18
106:5, 23
107:4
109:22
110:4, 13
111:12
112:7, 18
113:2, 9, 17
115:4, 14, 21
116:3, 16
117:8, 17
122:16, 23
123:4
124:6, 17
125:12, 22
126:7, 18
127:2
128:16
129:15
131:13
133:3, 5
138:19
139:6
141:16
142:10
145:22
151:6, 10, 21
152:14
153:10
154:7
155:11
158:17, 22
159:15
160:10, 24
161:7, 24
162:9
164:2, 22

166:9
170:12, 23
171:24
172:16
174:15
177:4
**Wolf**
156:22, 25
163:21
164:5, 14, 23
167:2, 8, 22
168:1, 7, 9
**word**
17:4, 8
**words**
167:9, 14, 18, 19
168:5, 11
**work**
40:23
**worked**
65:10
126:12
154:15
**working**
39:14
75:20
156:18
**works**
64:3
75:21
125:5
**wrap**
83:11
**WRIGHT**
1:4
68:20
70:24
71:12
75:18
87:16
**Wright's**
69:1
**write**
67:3
110:7
**writing**
30:5
**written**
8:10
49:14
52:15
80:17
120:25
121:2
141:7
173:18, 20
**wrong**
47:16
52:3
66:13
127:19
159:2
**wrote**
140:9
167:2
173:24

**< X >**
**XSH**
93:10
**XSP**
91:9, 10
93:2, 5

**< Y >**
**Yeah**
20:4, 14
26:12
31:25
32:8
36:14
37:6
39:25
42:5
48:21
49:22
53:7, 8
57:16
62:25
66:22
67:8
87:7
91:21
98:17
99:1
110:4
118:7
119:13, 14
120:22
130:4
131:7
132:14, 16, 21, 23
133:19
134:13
135:18, 21
136:4
137:7
141:3, 25
142:19
149:5
150:4
155:23
157:25
174:16
175:8
177:9
**year**
119:9
**years**
33:16, 20
131:6, 11
170:18
171:16, 18, 19
172:5, 17
**yeses**
107:25
108:19
114:3
**yes-or**
166:17
**yes-or-no**
163:14, 16
165:6, 24
166:11, 21
**YORK**
1:2, 10, 11
2:5
3:6, 13
5:13
9:8, 12, 14
11:20
16:20, 25
17:18, 21, 24
18:8, 13
33:13
40:18, 20, 21, 23, 24, 25
41:1, 4
78:17
91:11, 12
124:25
142:5
148:7
172:7

**< Z >**
**zoom**
37:1
107:14, 16
118:4
140:7
**zoomed**
121:16
**zooming**
21:15
**ZUCKERMAN**
3:14
4:5
9:23
10:17
12:13
18:2, 15
19:4
20:2, 7, 9, 12
22:3, 10, 13, 17, 20, 25
23:15, 20
24:9, 13, 14, 16, 18
30:6, 9, 24

31:*23* 32:*1, 6* 33:*9, 17* 34:*5, 20* 36:*22* 37:*2, 5* 38:*3, 11* 39:*19, 23* 40:*12* 41:*15* 42:*3, 5* 43:*14, 17* 44:*7, 22* 45:*8, 16, 22* 46:*4, 6, 14, 17, 18* 47:*9* 48:*20* 49:*4, 12* 50:*23* 51:*16* 53:*7, 10* 55:*9, 23* 56:*3, 11, 17* 58:*4, 17* 59:*5, 12* 60:*3, 24* 61:*12* 62:*7* 63:*15* 64:*7* 65:*6, 13, 20* 66:*7, 20* 67:*6, 10, 23* 68:*4* 69:*20* 70:*2, 10, 20* 71:*1, 16* 72:*3* 73:*7, 13* 74:*8, 15, 23* 75:*4, 10* 76:*2* 77:*3, 13, 21* 78:*4, 10, 23* 79:*12* 80:*25* 82:*23* 83:*5, 10, 24* 84:*10, 20* 85:*12, 19* 87:*3, 19* 89:*2, 13* 90:*4* 95:*14* 97:*20* 98:*11, 13* 99:*21* 100:*19, 23* 101:*5, 8* 102:*17, 20* 103:*22* 104:*6, 17* 105:*8, 16* 106:*4, 21* 107:*3, 9* 108:*2* 109:*21* 110:*3, 12* 111:*11* 112:*6, 17, 23* 113:*8, 16* 115:*3, 11, 20* 116:*2, 14* 117:*7, 16* 122:*15, 21* 123:*3* 124:*5, 16* 125:*11, 21* 126:*6, 17* 127:*1* 128:*15* 129:*14* 131:*12* 135:*24* 138:*18* 139:*5, 13, 16, 20* 141:*15* 142:*9* 145:*8* 151:*5, 20* 152:*13* 153:*9* 154:*5* 158:*16, 21* 159:*14* 160:*9, 23* 161:*6, 23* 162:*8, 16, 21* 163:*2, 6, 15, 19* 164:*1, 20* 165:*7, 18* 166:*1, 5* 168:*12, 17, 21* 170:*11, 22* 171:*23* 172:*15, 23* 173:*2, 5, 9, 20, 24* 174:*2, 5, 9, 21* 175:*6, 14* 176:*3* 177:*3, 7, 16, 20, 23* 178:*1*